BRIAN J. STRETCH (CABN 163973)
United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Assistant United States Attorney
Chief, Criminal Division

JOHN H. HEMANN (CABN 165823)
COLIN C. SAMPSON (CABN 249784)
    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    John.hemann@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>NAUM MORGOVSKY,<br>IRINA MORGOVSKY, and<br>MARK MIGDAL,<br><br>    Defendants. | CASE NO. 3:16-CR-00411-VC<br><br>UNITED STATES' RESPONSES IN OPPOSITION TO DEFENDANT IRINA MORGOVSKY'S MOTION FOR SEVERANCE PURSUANT TO RULE 14 (DOC. NO. 103) AND MOTION FOR SEVERANCE PURSUANT TO RULE 8 (DOC. NO. 104); AND TO DEFENDANT NAUM MORGOVSKY'S MOTION FOR SEVERANCE (DOC. NO. 105)<br><br>Date:    October 26, 2017<br>Time:    10:30 a.m.<br>Courtroom:    4, 17th Floor, San Francisco |

Defendant Naum Morgovsky is charged in the First Superseding Indictment (Doc. No. 67) with conspiring with Mark Migdal ("Migdal") to defraud and defrauding two federally insured banks (Counts 1 through 3), aggravated identity theft (Count 4), conspiracy to violate the Arms Export Control Act ("AECA"), two counts of money laundering (Counts 10 and 11), and forfeiture allegations. Defendant Irina Morgovsky is charged with possession of a false passport (Count Six) in violation of 18 U.S.C. §

1

1544, and conspiracy to violate the AECA in Count Nine. The Morgovskys have each filed a motion to sever certain counts pursuant to Rule 8(a) of the Federal Rule of Criminal Procedure ("Fed. R. Crim. P."). *See* Doc. Nos. 104, 105. Irina has also filed a motion for severance of her trial from that of Morgovsky pursuant to Fed. R. Crim. P. 8(b) and 14. For the reasons that follow, all motions should be denied, and Naum Morgovsky's *ex parte* under seal declaration should be immediately unsealed and provided to the government.[1]

## I.   BACKGROUND

The original three-count Indictment charges Morgovsky with conspiring with Mark Migdal to defraud Countrywide Home Loans (in the case of 112 Walaka Street, #305, Kihei, Hawaii) and First Horizon Home Loan Corporation (in the case of 112 Walaka Street, #404, Kihei, Hawaii), by using the identity of Gary Piper, a deceased individual, as a straw buyer for the property. The Indictment alleges that Morgovsky held the Gary Piper identity and accounts in Gary Piper's name, allowing Migdal to pose as Gary Piper in order to induce the banks to sell the properties to the stolen identity for approximately half the amount owed on the mortgages. Later, Morgovsky, acting as Gary Piper, transferred title of these Hawaii properties to Migdal's wife.

On April 27, 2017, the Grand Jury returned an eleven-count First Superseding Indictment. The First Superseding Indictment adds the following charges: aggravated identity theft charges against both Naum Morgovsky and Mark Migdal for their use of the Gary Piper identity (Counts 4 and 5), possession of a false passport by an additional defendant, Irina Morgovsky (Count 6), two counts of making false statements to a federally insured financial institution against Mark Migdal (Counts 7 and 8), conspiracy to violate the AECA against Naum Morgovsky and Irina Morgovsky (Count 9), two counts of money laundering against Naum Morgovsky, and forfeiture allegations.

All defendants were arraigned on the First Superseding Indictment and pleaded not guilty on May 2, 2017. Although Mark Migdal pleaded guilty to Counts One, Seven and Eight (Doc. No. 96), the

---

[1] The Court has failed to rule on Naum Morgovsky's Motion to Seal. Counsel for Mr. Morgovsky has refused to provide the sealed document to the United States, and thus it has been improperly filed *ex parte*. The government has a right to the declaration and asks the Court to unseal it in time to oppose the motions. This issue is discussed in further detail below.

Morgovskys have filed Motions for Bills of Particulars, which the Court denied. *See* Doc. Nos. 40, 56, 85, 87, 93. Doron Weinberg, counsel for Irina Morgovsky, has filed a Declaration in Support of her Motion for Rule 14 Severance, indicating his opinion that Naum Morgovsky's purported testimony will completely exculpate her. Irina Morgovsky attaches her husband's declaration to support her claim for severance; Naum Morgovsky has inappropriately filed, *ex parte* and under seal, his own declaration in support of severance, insisting that the government has no right to know his sworn statements in support of severance.

## II. LEGAL STANDARD

### a. Severance of Offenses (Rule 8(a))

Pursuant to Federal Rule of Criminal Procedure 8(a), multiple offenses may be joined in the same indictment if they are "of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Rule 8 provides liberal standard for joinder since "[m]ultiple trials are unfair to both the government and the accused" because "[a] prosecution is expensive and time-consuming, for the government and the court" and "the defendant is put to the expense and embarrassment of two or more trials." *United States v. McGrath*, 558 F.2d 1102, 1106 (2d Cir. 1977), *cert. denied*, 434 U.S. 1064 (1978).

The Ninth Circuit does not require that the similarities justifying joinder be pled on the face of the indictment. *See United States v. Ford*, 632 F. 2d. 1354, (9th Cir. 1980). During an initial joinder inquiry under Fed. R. Crim. P. 8, the Ninth Circuit considers factors such as the elements of statutory offenses, temporal proximity of acts, likelihood and extent of evidentiary overlap, physical location of acts, modus operandi of crimes, and identity of victims in assessing whether an indictment meets the same or similar character prong of Rule 8(a); weight given to particular factor will depend on the specific context of case and the allegations in indictment; the bottom line is that the similar character of joined offenses should be ascertainable—either readily apparent or reasonably inferred—from face of indictment. *See United States v Jawara*, 462 F3d 1173 (9th Cir. 2006); *amd. on other grounds, reh, en banc, den*, 474 F3d 565 (9th Cir. 2007).

///

### b. Severance of Defendants (Rule 8(b))

"The purpose of rule 8(b), rather than the formalities of pleading, controls the analysis of whether joinder was proper in a given case. . . to balance the need to avoid the potential prejudice that may result from joining multiple defendants for trial with the need to attain trial efficiency." *United States v. Martin*, 567 F.2d 849, 853 (9th Cir. 1977) (Kennedy, Cir. Judge); *see also United States v Roselli,* 432 F2d 879 (9th Cir. 1970), *cert. den.* 401 US 924 (1971) ("Rule 8(b)'s goal of maximum trial convenience consistent with minimum prejudice is best served by permitting initial joinder of charges against multiple defendants whenever common activity constitutes substantial portion of proof of joined charges.") (internal quotations omitted). "[A] conspiracy count can be a connecting link between co-defendants who are also charged separately with other substantive offenses in other counts of the indictment." *United States v Donaway* 447 F2d 940 (9th Cir. 1971).

### c. Prejudicial Joinder (Rule 14)

Pursuant to Federal Rule of Criminal Procedure 14, "[i]f the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." A trial judge's decision not to sever defendants is reviewed for abuse of discretion. *Parker v. United States*, 404 F.2d 1193, 1194 (9th Cir. 1968), *cert denied*, 394 U.S. 1004 (1969)).

"No need for severance exists until the defendant makes a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other." *United States v. Valentine*, 706 F. 2d 282, 291 (10th Cir. 1983) (quoting *Baker v. United States,* 401 F. 2d 958 (D.C. Cir. 1968)).

Typically, defendants charged with conspiracy may appropriately be tried together, and risk may be minimized by limiting instructions to the jury. *See United States v. Patterson*, 819 F.2d 1495, 1502-03 (9th Cir. 1987).[2] "There is a preference in the federal system for joint trials of defendants who are

---

[2] The Second Superseding Indictment charges a bank fraud conspiracy between Naum Morgovsky and Mark Migdal, and an arms export conspiracy between Naum and Irina Morgovsky. At least one major fact is common to both conspiracies: the use of the identity of a deceased person, Gary Piper, to conceal ownership of funds and real estate.

4

indicted together." *Zafiro v. United States*, 506 U.S. 534, 537 (1993). Jointly indicted defendants, and particularly coconspirators, should generally be tried together. *See United States v. Escalante*, 637 F. 2d 1197, 1201 (9th Cir. 1980). "Joint proceedings are not only permissible but are often preferable when the joined defendants' criminal conduct arises out of a single chain of events [and . . . .] may enable a jury 'to arrive more reliably at its conclusions regarding the guilt or innocence of a particular defendant and to assign fairly the respective responsibilities of each defendant in the sentencing.'" *Kansas v. Carr*, 136 S. Ct. 633 (2016) (quoting *Buchanan v. Kentucky*, 483 U.S. 402, 418, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987)). However, it is left to the discretion of the District Court to determine that there is no "serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539.

"The mere joint trial of husband and wife does not require severance where . . . the Government did not introduce the statements of one to incriminate the other." *United States v Figueroa-Paz*, 468 F.2d 1055, 1057 (9th Cir. 1972) (citing *Peek v. United States*, 321 F.2d. 934, 942-943 (9th Cir. 1963), *cert denied*, 376 U.S. 954 (1964)). A moving defendant must "meet his burden of proving 'clear,' 'manifest,' or 'undue' prejudice from the joint trial, and . . . show that the jury was unable to compartmentalize the evidence." *United States v. Kaiser*, 660 F.2d 724, 733 (9th Cir. 1981), *cert denied*, 455 U.S. 956 (1982) and 457 U.S. 1121 (1982) (*quoting United States v. Escalante*, 637 F.2d 1197, 1201 (9th Cir. 1980); *see also United States v. Berg*, 714 F.3d 490, 496 (7th Cir. 2013) (holding that defendants bear the "heavy burden" of establishing that the joint trial "prevent[ed] the jury from arriving at a reliable judgment as to guilt or innocence."). The requisite "heavy burden" of showing prejudice is not satisfied by showing that one defendant is less culpable than another, or that the defendant would have a better chance of acquittal in a separate trial, or by a complaint of "spill-over" of damaging evidence presented against a codefendant. *United States v. Adams*, 581 F.2d 193, 198 (9th Cir. 1978), *cert. denied*, 439 U.S. 1006 (1978); *United States v. Morgan*, 748 F.3d 1024 (10th Cir. 2014). *See also United States v. White*, 737 F.3d 1121 (7th Cir. 2013). "The prejudicial effect of evidence relating to the guilt of codefendants is generally held to be neutralized by careful instruction by the trial judge." *Escalante*, 637 F.2d at 1201.

Nor is the mere presence of inconsistent defenses a proper ground for severance. *United States v. O'Connell*, 841 F.2d 1408 (8th Cir. 1988). Severance is appropriate where the joined codefendants' defenses are so mutually antagonistic that "acceptance of one party's defense precludes the acquittal of the other." *United States v. Banks*, 687 F.2d 967, 973 (7th Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983).

### III. ARGUMENT

#### a. Severance of Defendants Is Not Required.

##### i. Naum Morgovsky's "Declaration" Is Insufficient for Severance.

The Motion to Sever argues that, as a result of Naum Morgovsky's "Declaration," her husband will unequivocally provide exculpatory testimony about her participation in export of controlled items. The Declaration, providing few specifics, generally minimizes Irina Morgovsky's role in her export businesses as "ministerial." Recognizing that Irina Morgovsky's signature and name is associated with numerous purchases of controlled technology and records of international shipments, Naum Morgovsky's "Declaration" purports to set the record straight that she was an automaton that operated only at his express direction and who never gained any knowledge that she was participating in a conspiracy.[3] However, an analysis of the "Declaration" reveals serious deficiencies that should result in the denial of the relief Irina Morgovsky seeks.

The "Declaration of Naum Morgovsky In Support of Defendant Irina Morgovsky's Motion for Severance" purports to be electronically signed. The United States is aware that Naum Morgovsky is not a member of the bar of this Court, or of any court, and thus he lacks electronic signature privileges.[4] If, however, Naum and Irina Morgovsky are seeking to have this Court consider the Declaration in granting Irina Morgovsky's motion, the defense should not be allowed to oppose its admission as substantive evidence against Naum Morgovsky at his own trial. Defendants should not be allowed to distance themselves from Naum Morgovsky's Declaration at a later time or if their severance motions

---

[3] Naum Morgovsky only appears willing to implicate himself in his wife's trial. His Declaration states that he will not testify at his own trial related to the export of controlled night vision technology.

[4] *See* Civil L.R. 5-1(i)(4) – in a criminal action, "any document signed by a criminal defendant … shall be scanned in its entirety to ensure that all signatures are visible." Defendant's clever attempt to introduce evidence without a real signature should be rejected.

6

are denied as a result of Naum Morgovsky's failure to provide a physical signature, and the Court should not tolerate any such gamesmanship.

Naum Morgovsky's "Declaration" claims that his wife would not be able to understand the intricacies of the Arms Export Control Act and Regulations (as he claims to understand them through "hundreds, if not thousands, of hours of study, analysis and experience since 1992"). He further claims that he used her signature to acquire and ship items without her knowledge or approval. Leaving the door open in case the government points to evidence refuting this claim, the Declaration concedes that Irina Morgovsky may have signed some records discussing the International Traffic In Arms Regulations ("ITAR"), but only at his direction.

Naum Morgovsky purports to provide exculpatory evidence that would not be admissible or competent at trial, particularly about Irina's knowledge and perception. *See United States v. Trejo-Zambrano*, 582 F.2d 460, 464 (9th Cir. 1978) (affirming district court's rejection of an affidavit in support of severance because it constituted, among other things, inadmissible hearsay). Naum Morgovsky purports to provide an expert opinion with respect to whether his wife could possibly know that the items that he admits she had a part in acquiring and shipping were controlled for export. Any bases for his bald claim that Irina Morgovsky has a "complete lack of technical knowledge" is absent. The Declaration purports to state Irina Morgovsky's lack of knowledge of export controls, while also acknowledging that she may have signed "End User Declarations" that discuss the restrictions of controlled items she was purchasing. Naum Morgovsky further provides inadmissible evidence of what Irina Morgovsy "considered her role as being," and what she "considered herself to be," or whether she was "in a position to perceive or discern" the legal status of her exports. Even Irina Morgovsky's statements to her husband would be inadmissible hearsay pursuant to Federal Rules of Evidence 105 and 801.

Although Naum Morgovsky may be allowed to testify about Irina Morgovsky's activities related to the export of controlled items and perhaps that he has not observed her expressing knowledge that the items she purchased or shipped were controlled for export, the Declaration is not sufficient to establish that she did not know of export restrictions. Given the evidence that she had contact with vendors of

7

controlled items, international shipments she made, and AECA guides and statutes seized from her home, the testimony proffered by Naum Morgovsky is not completely exculpatory, as attorney Weinberg suggests.[5]

The government further possesses evidence that contradicts Naum Morgovsky's claims about his wife's involvement in the export conspiracy. Contrary to Naum Morgovsky's claim that his wife had no interactions with customers or vendors, Irina Morgovsky picked up and shipped many of the controlled items, including from Kobi Bukai of Optics Headquarters and her own son, Marc Vayn of ATN Corporation. Surveillance showed Irina Morgovsky making multiple visits to banks that the Morgovskys' companies (Hitek and VisionTech) used. Irina Morgovsky signed numerous checks, some nearly $200,000, to pay for night vision items, including controlled lenses and tubes. Irina Morgovsky signed numerous End-user statements for receipt of these items, and obtained a California Resale Certificate to avoid paying sales tax on the items. Invoices on the Morgovskys' computer had been edited last by the User Irina Morgovsky. Naum Morgovsky's bald claims that his wife did not understand the restrictions of the International Traffic in Arms Regulations and lacked knowledge of the operations of the Morgovskys' business are false and unsupported.

### ii. In the Alternative, Dual Juries are Appropriate.

Defendants attempt to assure the Court that separate trials of Naum and Irina Morgovsky will not impact judicial economy. They are wrong. Count Nine will require witnesses from dozens of sources, including agents executing several search warrants, several shipping companies, numerous vendors of night vision equipment, several banks, and other witnesses, as well as hundreds, if not thousands, of exhibits. Although Irina's motion claims that the government's case will necessarily be more limited against just her, she provides no basis to support this assertion, and reveals what the Morgovsky's doubtlessly see as an ancillary benefit to severance: the likelihood of a more favorable deal for one or more defendants, increased likelihood for acquittal or a reversible issue at one of the trials, or concession

---

[5] The Declaration is silent on both Morgovskys' lack of an export license. Naum Morgovsky essentially claims that, although Irina opened several night vision companies and participated in the purchase of several million dollars' worth of night vision items over multiple decades with inflows of money from numerous countries, she had no knowledge of the legality of the business.

of defeat by attrition by the government. A severed trial will require a large expenditure of resources, witness time, and juror time. The Court should accord all rights to defendants which are due to them, but should be wary that they are not entitled to all of the remedies they seek.

Should the Court sever defendants, a trial of both Irina Morgovsky and Naum Morgovsky by dual juries would conserve scarce judicial and governmental resources by allowing witnesses to come to trial only once, and would have at least some time savings for the Court and the total trial length over separate back-to-back trials.

### b. Severance of Counts as to Naum Morgovsky is not Appropriate.

#### i. Naum Morgovsky's "Declaration" Constitutes an Improper *Ex Parte* Communication with the Court and has been Inappropriately Withheld from the United States.

In support of Naum Morgovsky's motions, he has moved for permission to file a declaration under seal. Having failed to obtain a favorable ruling on their motion by the motion deadline, attorneys for Naum Morgovsky have apparently filed the purported declaration of their client under seal, insisting that "it contains confidential impressions and strategic considerations concerning Mr. Morgovsky's intention to testify," which "are not matters of concern to the government." Reply in Support of Motion to Seal, Doc. No. 101, p. 2. Defendant misleadingly styles the Motion as one to seal, in which the opposing party still receives a copy of the sealed document. In reality, it is a motion to submit evidence to the Court *ex parte*, to persuade the Court to grant its Motion without the government ever knowing what was argued or raised. The government must now oppose Morgovsky's motion with one hand tied behind its back due to the Defendant's flouting of the Local Rules.

"[A] necessary element of compulsory self-incrimination is some kind of compulsion." *Hoffa v. United States*, 393 U.S. 293, 304 (1966). Here, however, Naum Morgovsky's Declaration was made completely voluntarily to secure a benefit for his codefendant, namely, severance. Defendant has no right to preclude the government's use of his voluntary declaration at a later proceeding. *United States v. Reyes*, 2007 U.S. Dist. LEXIS 95452 (N.D. Cal. Dec. 19, 2007) (rejecting a *Simmons* challenge to admission of statements made to support a codefendant's motion for severance, holding that "Reyes had no constitutional interest in a severed trial; that interest belonged solely to Jensen.").

9

Defendants wish to have their cake and eat it too.  If they keep the government from rebutting their showing, they both increase their chances of winning a severance and prevent the government from possession of Morgovsky's sworn statement should they lose or win.  They cannot have it both ways. The Court should not tolerate Morgovsky's intentional attempt to have an improper *ex parte* communication with the Court in support of a motion which the government must blindly defend, and should immediately unseal the Declaration.  The government has no way to assess, oppose, or meet any evidence proffered by Morgovsky *ex parte* to the Court to support its response to Morgovsky's motion. No basis exists to seal, let alone conduct an *ex parte* communication, between Morgovsky and the Court with respect to his motion, and Morgovsky has pointed to no authority excluding the government from such evidence.  Having no basis for sealing or failing to serve the government, the Court should demand that Morgovsky show cause for attempting to have an inappropriate communication with the Court over a pending motion.

The Court should deny Defendant's improper Motion to Seal.  Even if the Court does allow the filing to remain sealed, the Court should order the Clerk to provide the government with a copy of the filed declaration. "[S]ituations where the court acts with the benefit of only one side's presentation are uneasy compromises with some overriding necessity, such as the need to act quickly or to keep sensitive information from the opposing party. Absent such compelling justification, ex parte proceedings are anathema in our system of justice and, in the context of a criminal trial, may amount to a denial of due process." *United States v. Thompson*, 827 F.2d 1254, 1258–59 (9th Cir. 1987).  In the event that the Declaration is not unsealed by Order of the Court before the due date of the government's Opposition, the government reserves the right to request additional briefing to respond to Morgovsky's game-playing, or dismissal of Morgovsky's motion, if appropriate.  It appears that Morgovsky seeks to cut the government out of this motion entirely, as he fails to cite to any facts which would be supported by the "Declaration."

### ii. Defendant has Failed to Demonstrate Deprivation of a Trial Right as a Result of Joinder of Several Crimes in One Indictment.

Naum Morgovsky's mere denials of a connection between his crimes is insufficient for the Court

to grant severance such that Morgovsky's crimes are tried separately from each other.[6] There is a sufficient overlap of facts to satisfy Rule 8. Naum Morgovsky used the stolen identity of the deceased Gary Piper to perpetrate both schemes. In Counts One through Four, Morgovsky acted as Gary Piper to induce two banks to allow him to be the buyer in the short sale of Mark Migdal's properties. Morgovsky gave Migdal access to a bank account in Piper's name, which Migdal then used to manage his two rental properties in Hawaii.[7] For his services, Mark Migdal executed a $250,000 promissory note to Morgovsky's daughter. Migdal opened another bank account and email accounts for Gary Piper and a fictitious company called GlobalVision, which Morgovsky then used to launder the proceeds of his arms-export crimes. Migdal also used a bank account in the name of Infravision to move money to himself related to a townhouse development in Palo Alto. Morgovsky also used his access to an email account in the name of his daughter to conduct business related to night vision, including receiving export-restricted night vision component specifications from his company's vendors.

To facilitate Migdal's schemes to defraud JP Morgan Chase Bank (Count 8), Migdal provided funds to the Morgovskys who, through Hitek International, issued him numerous fake paychecks (signed by Irina Morgovsky) for him to appear employed. The Morgovskys also provided checks to Migdal purporting to be from their associate in Moscow, Sergui Sofine, purporting to be a deposit to rent part of Migdal's home and a rental contract purportedly signed by Sofine, which Migdal used to seek an extension and modification of his home loan. Taken alone, the use of the stolen Gary Piper identity to perpetrate the bank fraud and to launder the proceeds of the AECA conspiracy satisfy Rule 8(a).

### iii. Naum Morgovsky Fails To Allege Prejudice From Joinder Of Counts.

Morgovsky claims that joinder of Counts 1 through 4 with Counts 9 through 11 are sufficiently prejudicial to him so as to justify two trials and juries. Morgovsky fails to allege anything to support his claim that "it would be highly prejudicial to require Mr. Morgovsky to defend against these serious and

---

[6] Again, it is impossible for the government to know whether Morgovsky has introduced a sworn affidavit regarding any of the claimed denials of a connection between the charges he seeks to sever.

[7] Gary Piper also appears as the beneficiary on a backdated lien on Migdal's Mountain View Condominium, clouding its title near the time that Migdal was seeking a loan modification (see Count 7), and attempted to purchase a loan secured by a deed on Migdal's Portola Valley home from a hard-money lender for pennies on the dollar.

11

complex charges [Counts 9 through 11] at a trial where substantial evidence is presented about the unrelated [bank fraud] charges." <u>Motion to Sever</u>, p. 7. Indeed, Morgovsky fails to indicate which charges would prove prejudicial to which other charges, or why. Without support in the motion, and presumably without support in his *ex parte* under-seal Declaration, Morgovsky's claims are merely arguments without support.

The government seriously disputes the genuineness of Morgovsky's claim of prejudice. Morgovsky incriminated himself on the aggravated identity theft and bank fraud charges when he was interviewed by the government on August 25, 2016. During that interview, Morgovsky explained to government agents how he obtained the deceased Gary Piper's identity and used it to obtain state identification cards, as well as how he used the identity to help Migdal conduct short sales of his properties. Defendant fails to explain how the bank fraud and identity theft charges, which he apparently intends to testify about to prove his innocence despite government's possession of his own incriminating statements, will prejudice his trial on the export conspiracy and money laundering that involved the same deceased person's identity.

Morgovsky further fails to explain why the fact that the "nature and time frame of these alleged violations are different" supports severance.

Morgovsky must present strong evidence to support his claim of prejudicial joinder and must explain how the jury may become confused and how proper instructions would not overcome the danger of unfair prejudice. Morgovsky has failed to present any- let alone enough- information for the Court to conclude that his claim of prejudice is genuine.

**c. Severance of Counts Six and Nine as to Irina Morgovsky is not Appropriate.**

Irina seeks at least three trials: her own on the false passport charge, her own on the AECA conspiracy, and the trial (or trials) of her husband on the conspiracy and other charges.[8] Irina seeks severance principally based upon her self-serving denial of a connection between her use of a passport in

---

[8] Jointly, the two Morgovsky Defendants want the First Superseding Indictment split into four trials, as Naum Morgovsky has sought severance of what he describes as two separate conspiracies. *See* Motion for Severance (Naum Morgovsky), Doc. No. 105. The government responds separately to Naum Morgovsky's motions.

the name of Victoria Ferrara to enter Russia on three occasions with her husband (who also traveled to Russia under a dead person's identity and pleaded guilty to a misdemeanor identity theft charge in 2009).

Irina's attempt to sever her two counts into two trials on this claimed lack of connection fails. Irina, owner of VisionTech, a company in existence since 2000 that used its bank accounts to purchase controlled night vision technology, shipped many of the night vision items to Naum Morgovsky's Moscow company, Infratech, yet now claims that there is no connection between her stealing a woman's identity to use it to travel to Moscow in 2007.

Irina's bald assertion that her 2007 use of the false passport lacks any connection to the charged conspiracy should be rejected. Irina is charged with possession of a false passport, and she possessed the passport through the dates of the conspiracy as alleged in the First Superseding Indictment in the same storage locker (leased in the name of one of Naum Morgovsky's stolen identities – Edward Joseph) as other indicia of the arms export conspiracy, including night vision scopes, documentation of controlled night vision technology, and documents discussing Infratech in Moscow, among other things. Irina also used the fake identity to lease storage space and mail boxes, and had accounts in the name of the stolen identity with FedEx. She opened a bank account using the stolen identity. She also held a fake employee ID card for "Precision Engineering" (an engineering company) indicating a "hire date" of April 23, 1999, possibly to gain access to night-vision industry events. Moreover, the statute of limitations for 18 U.S.C. § 1544, ten years, allows the government to allege acts more remote in time than those charged in Count Nine. However, the scheme to export controlled night vision technology began long before 2012, and Irina signed[9] invoices for items sold and shipped to Infratech in Moscow as early as 2005 (*See,* e.g., Invoice No. 69341, at 1B214-01.0004). She signed checks for the Morgovsky's night vision business, Hitek International, as early as April 2009 (*See, e.g.*, BOFA-S005_000790), and wired money in amounts of over $200,000 to companies selling controlled technology to Hitek and

---

[9] Many of the documents obtained during the execution of search warrants in the investigation of this case appear to be signed by blue and black ink signature, and not by electronic signature which Naum Morgovsky now claims he used without his wife's authorization.

VisionTech.[10] The government has obtained and produced evidence of illegal exports from the Morgovskys' companies since the 1990s.

The government intends to prove that Irina conspired with her husband to export controlled night vision technology. The Morgovskys do not appear to have had any significant business or income, legitimate or not, outside of this scheme since the closure and bankruptcy of their closet and cabinet business in the early 2000s. As he explained to government authorities when he was caught with a fake passport entering the country from Russia in 2007, Morgovsky needed a fake identity to conduct business in Russia. So too did his wife when she accompanied him. The logical connection between use of a false passport to travel to Russia undetected, and the conspiracy to violate the AECA by exporting controlled goods principally to Russia, is satisfied and the Court should not sever Irina's counts from each other.

### d. Defendants are not Entitled to their Preferred Order of Trials.

Although Irina's Rule 14 Motion does not state a preference for the order of trials, Morgovsky asserts without support that his own trial must come before Irina's. Without any authority or even a claim that he has a right to do so,[11] Morgovsky asserts that the Court should not only sever the trials, but it should conduct them in his preferred order. Clearly, Morgovsky wishes to be tried first on the AECA conspiracy in order to remain silent, and then on the bank fraud and aggravated identity theft counts so that he can testify regarding those charges if he chooses[12]. He perceives this to be to his advantage so that the government cannot benefit from the use of his prior testimony at any later trial. For several reasons, the Court should decline Morgovsky's proposal.

Morgovsky has stated no right to multiple trials in the order he chooses. Nor does he even

---

[10] For example, on November 24, 2008, Irina Morgovsky wired $224,595 from her Hitek account at Bank of America to Night Vision Depot, and (BOFA_S005_00267). On July 11, 2011, Irina Morgovsky wired $191,400 to Aurora Tactical from the same account. (BOFA_S005_00349).

[11] Defendant fails to assert any unfair prejudice from being denied his requested order. To the extent that there is any "prejudice" to the defense from doing so, it would not be "unfair prejudice" which Rule 14 is meant to avoid.

[12] Defendant clearly would prefer to testify at his wife's trial (if he does) sometime after his trial on Count 9, such that he might be acquitted of Count Nine prior to any attempt to exculpate his wife by claiming that she lacked an understanding that the exported items were controlled and only acted at his express direction. *See* Declaration of Naum Morgovsky, Doc. No. 103-2.

14

attempt to provide support for his claim that "to testify in the [bank fraud] case prior to the night vision case comes to trial, his 5th Amendment rights will be in serious jeopardy" given that his counsel could object on any number of bases, including relevance and scope, should the government inquire beyond the severed bank fraud and identity theft counts.  Motion to Sever, p. 8.  Nor does he support his assertion that it could "in other ways denigrate his 5th Amendment rights." *Id*.  Further, following Morgovsky's proposed order could have the effect of perverting justice by (he hopes) obtaining an acquittal of the AECA charge in his own trial and then essentially admitting guilt at his wife's trial to obtain her acquittal through false testimony.  Moreover, acceding to Morgovsky's proposal would likely result in exactly as many trials as the Morgovskys propose (four), which would substantially reduce any incentive to resolve the charges short of trial. If his declaration is to be believed, Naum Morgovsky's unclean hands, though using his wife as a pawn in signing important documents related to the controlled items, should alone be a basis to refuse his optimal ordering of trials.

## IV.   CONCLUSION

For all the foregoing reasons, all of the Motions for Severance and Prejudicial Joinder filed by the Morgovskys should be denied.  The Irina's declaration fails to provide substantial competent evidence to warrant separate trials, and the government has adequately shown that there is a connection between Counts Six and Nine to warrant one trial of Irina on both counts.  Moreover, Morgovsky's motion to sever counts should be denied, and his Declaration unsealed, as he has failed to provide support for severance of counts due to the common evidence to both the export-control conspiracy, money laundering crimes, and the bank fraud conspiracy.

Respectfully submitted,

BRIAN J. STRETCH
United States Attorney

Dated:  October 10, 2017.   */s/ Colin Sampson*
JOHN H. HEMANN
COLIN SAMPSON
Assistant United States Attorneys