Pages 1 - 40

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Vince Chhabria, Judge

```
UNITED STATES OF AMERICA,      )
                               )
            Plaintiff,         )
                               )
   VS.                         )      CASE NO. 16-CR-00411-VC-3
                               )
IRINA MORGOVSKY,               )
                               )
            Defendant.         )
_____)
```

San Francisco, California
Wednesday, October 31, 2018

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:

ALEX G. TSE
United States Attorney
450 Golden Gate Avenue
San Francisco, California  94102
**BY:  COLIN SAMPSON**
**ASSISTANT UNITED STATES ATTORNEY**

ALEX G. TSE
United States Attorney
Oakland Branch
1301 Clay Street
Oakland, CA  94612
BY:  **ERIN A. CORNELL**
**ASSISTANT UNITED STATES ATTORNEY**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

REPORTED BY:  ANA M. DUB, CSR NO. 7445 RMR, CRR, CCRR, CRG, CCG
OFFICIAL REPORTER

1    **APPEARANCES**:   (CONTINUED)

2    For Defendant
     Irina Morgovsky:          MOEL LAW OFFICE
3                              214 Duboce Avenue
                               San Francisco, California  94103
4                         BY:  **SHAFFY MOEL**
                               **ATTORNEY AT LAW**
5

6    ALSO PRESENT:           **Catheryn Grier, U.S. Probation**
                             **William L. Osterhoudt, Attorney at Law**
7                            **Frank S. Moore, Attorney at Law**
                             **Allen R. Ellis, Attorney at Law**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1   <u>**Wednesday - October 31, 2018**</u>                    <u>**10:12 a.m.**</u>

2                    <u>**P R O C E E D I N G S**</u>

3                        **---o0o---**

4       **THE CLERK:**  Calling Case Number 16-CR-00411, U.S.A.

5   versus Irina Morgovsky.

6       Counsel, please step forward and state your appearances

7   for the record.

8       **MR. SAMPSON:**  Good morning, Your Honor.  May it please

9   the Court, Colin Sampson and Erin Cornell for the

10  United States.

11      **THE COURT:**  Good morning.

12      **THE CLERK:**  We're going to handle Ms. Morgovsky's

13  matter first.

14      **THE COURT:**  Well, we can have a talk about that.  It's

15  fine for everybody to come forward for now.

16      **MR. OSTERHOUDT:**  William Osterhoudt, Your Honor,

17  appearing for Mr. Morgovsky.

18      As you know, there's been these motions pending regarding

19  representation.  Mr. Alan Ellis is here today, who has a

20  substantial background and practice in post-conviction and

21  sentencing representation.  And I think, as we explained in our

22  pleadings, he can step into this case under certain conditions

23  and would be prepared to do so and represent Mr. Morgovsky.

24      **THE COURT:**  Okay.  Hello, Mr. Ellis.

25      **MR. ELLIS:**  Good morning, Your Honor.

P R O C E E D I N G S

1          THE COURT:  We'll get to that in a moment.

2          MS. MOEEL:  Morning, Your Honor.  Shaffy Moeel for

3    Ms. Irina Morgovsky, who's present before the Court on bail.

4          THE COURT:  Good morning.

5      So -- oh, I'm sorry.

6          THE PROBATION OFFICER:  Catheryn Grier with U.S.

7    Probation, Your Honor.

8          THE COURT:  Hello.

9      So one question, the first question is:  How should we

10   proceed in terms of order of issues to address?

11     One possibility would be to proceed with Mrs. Morgovsky's

12   sentencing first on the theory that that might take less time;

13   and then we can address Mr. Morgovsky's motions and possibly

14   sentencing.

15     As I've indicated to everybody, my tentative view was to

16   deny the motion to withdraw, also to deny the motion to

17   discharge counsel, at least for purposes of this sentencing

18   proceeding, and to proceed with sentencing.  But obviously,

19   I'll hear from everybody on that.  We can discuss that.  I

20   expect it will take a long time to get through that.

21     So what are people's views about whether we should just go

22   ahead and proceed with Mrs. Morgovsky's sentencing first?

23         MR. SAMPSON:  No objection to that procedure,

24   Your Honor.

25         MS. MOEEL:  No objection from Mrs. Morgovsky.

**P R O C E E D I N G S**

1          **THE COURT:**  Okay.  Then why don't we do that first,

2     and everybody else can step back and take a seat.

3          Okay.  Let me give you my, kind of, initial reaction to

4     the materials that I've reviewed and then, obviously, give both

5     sides an opportunity to address my initial reactions.

6          It sounds like there is agreement on the guideline

7     calculation and the guideline -- the applicable guideline

8     range.  Is that correct?

9          **MS. MOEEL:**  That's correct.

10          **MR. SAMPSON:**  Yes, Your Honor.

11          **THE COURT:**  Okay.  And so the base offense level that

12     everybody has agreed to -- and when I say "everybody," I mean

13     the defendant and the Government and Probation -- the offense

14     level is 21, and a criminal history category of 1, which gives

15     us a guideline range of 37 months to 46 months.

16          And what I will say -- the only thing I will say about the

17     guideline range is that it's not so clear to me that

18     Mrs. Morgovsky deserves a two-level reduction for acceptance of

19     responsibility.  I think that there is an argument that

20     Mrs. Morgovsky, having submitted substantially the same

21     statement that Mr. Morgovsky submitted to the probation

22     officer, has acted in a way that is contrary to acceptance of

23     responsibility.  But I am not going to disturb that agreement

24     among the parties and Probation that she's entitled to a

25     two-level reduction for acceptance of responsibility.

**P R O C E E D I N G S**

1        Now, is the Government giving her the third point, or is

2   the idea that because the change of plea took place in the

3   middle of jury selection, and perhaps other reasons, that

4   the Government believes she doesn't get the third point?

5        **MR. SAMPSON:**  The latter, Your Honor.  The plea took

6   place during jury selection.  But the parties did also agree

7   that she should receive a minor-role reduction of an additional

8   three points from the guidelines of 26.

9        **THE COURT:**  Right.  Okay.  So there's a minor-role

10  reduction, but also you -- correct me if I'm wrong, but

11  I believe you took the position in your memo that she should

12  get the two-level reduction for acceptance of responsibility.

13       **MR. SAMPSON:**  Yes, Your Honor.

14       **THE COURT:**  Correct?

15       **MR. SAMPSON:**  Yes.

16       **THE COURT:**  So I'm not going to disturb that, even

17  though I have some doubts about it.

18       If I recall correctly, on the issue of a fine, there is

19  disagreement.  Is that right?  And the Government believes that

20  Mrs. Morgovsky should be fined, and Mrs. Morgovsky believes

21  that she shouldn't and she's attempted to establish that she

22  doesn't have the ability to pay.  Is that --

23       **MS. MOEEL:**  That's correct.

24       **THE COURT:**  Am I remembering that correctly?

25       **MS. MOEEL:**  Yes.

**P R O C E E D I N G S**

1          **THE COURT:**  Okay.  So we need to talk about that.

2      So it seems like the two things that we need to talk about

3  are, one, just application of the 3553(a) factors and whether a

4  variance is warranted.  The guideline range would be 37 months

5  to 46 months.  I have that correct; is that right?

6          **MR. SAMPSON:**  Yes, Your Honor.

7          **MS. MOEEL:**  Yes, Your Honor.

8          **THE COURT:**  Okay.  And then we need to talk about the

9  fine and whether the defendant has established that she doesn't

10  have the ability to pay or wouldn't likely have the ability to

11  pay in the future.

12      My very tentative reaction -- I'll say that it's a very

13  tentative reaction -- is that perhaps a downward variance is

14  worth entertaining in Mrs. Morgovsky's case, considering the

15  fact that she was -- or the possibility, I should say, that she

16  was operating under the significant influence of her husband;

17  considering her age; and considering the lower possibility for

18  Mrs. Morgovsky, I think, than Mr. Morgovsky, that she would be

19  likely to reoffend.  So I think it's worth entertaining a

20  variance, a downward variance.

21      On the other hand, these are very serious crimes; and the

22  picture that the defendants attempt to paint of Mrs. Morgovsky,

23  that she effectively, like, had her head in the sand to all of

24  this and wasn't aware of the significance of what was going on,

25  is rather difficult to believe, given Mrs. Morgovsky's

**P R O C E E D I N G S**

1    education level, her level of intelligence.  And at an absolute

2    minimum, it seems to me that she was aware that criminal

3    activity was going on, aware that it was serious, participated

4    in it on some level, assisted on some level in covering it up,

5    and profited significantly from it.

6        So although I think it's worth entertaining a variance in

7    light of the factors that I've discussed, it is difficult to

8    imagine that Mrs. Morgovsky -- it is difficult to imagine that

9    I would conclude that Mrs. Morgovsky should not go to prison.

10       As for the fine, my initial reaction is that

11   Mrs. Morgovsky has not established that she is unable to pay a

12   fine and she has not established that she would not be likely

13   to become able to pay a fine in the future because, again,

14   she's a very smart person and is highly educated.  The story

15   that Mr. and Mrs. Morgovsky tell about their finances is

16   inherently unbelievable.  I don't believe it.  I believe

17   they're hiding assets, based on the evidence that I've

18   considered so far.

19       And so I would conclude -- and this is something I'm not

20   particularly tentative on.  This issue I'm fairly strong on.

21   Obviously, I'll hear what you all have to say about it, but my

22   view on this topic is less tentative, is that I believe that

23   Mrs. Morgovsky should pay a fine within the range of -- I think

24   the applicable range is 15,000 to 150,000 dollars.  Is that

25   correct?

**P R O C E E D I N G S**

1          **MS. MOEL:**  Yes.

2          **THE PROBATION OFFICER:**  That's correct.

3          **THE COURT:**  And I believe that the Government has

4   requested that she be ordered to pay a fine at the bottom end

5   of that range, which is $15,000.  Is that correct?

6          **MR. SAMPSON:**  Yes, Your Honor.

7          **THE COURT:**  And what went in -- I'm happy to -- I'll

8   open up the floor to you in just a second, but let me just ask

9   you a question.

10      On what basis did you decide to request that she be

11  ordered to pay a fine of only $15,000 as opposed to something

12  closer to $150,000?

13          **MR. SAMPSON:**  Simply, Your Honor, because

14  the Government agreed that Mrs. Morgovsky should receive the

15  low end of the guidelines in terms of prison sentence, we

16  thought it was logically consistent that she should receive a

17  low end but significant fine based on the offense level of the

18  crime.

19          **THE COURT:**  Okay.  All right.  So I think what I will

20  do is maybe turn it over to you and let you go first and

21  address all of the issues that I've discussed and anything

22  else, of course, that you want to make sure to bring to my

23  attention.

24          **MS. MOEL:**  Sure.  Thank you, Your Honor.  I

25  appreciate it.

P R O C E E D I N G S

1          I appreciate the Court's tentative and narrowing of the

2     issues for what you want to hear about today.

3          **THE COURT:**  But I want to make clear that it's not to

4     the exclusion of you emphasizing anything that you believe I

5     should be focusing on.

6          **MS. MOEEL:**  Sure.  Thank you.

7          As an initial matter, I want to stress on behalf of

8     Mrs. Morgovsky that the theme of her, kind of, sticking her

9     head in the sand and being deliberately ignorant, or something

10    along those lines, with her husband's activity is not something

11    that she -- is not something that she is going to state to

12    the Court today.

13         I mean, I think in her allocution, you'll hear from her

14    that she was aware that there was -- that what her husband was

15    doing was not right and that she understood that she was

16    engaging in criminal activity by helping him out and that there

17    was, in essence -- she didn't know how to stop it.  She didn't

18    know how to not do it.

19         I think, really, this case comes down to this.  And this

20    is what we are trying to convey to the Court and even to the

21    Government about how she, as an otherwise strong, smart

22    engineer who has clearly gone through and overcome many

23    difficult obstacles in her life, would be so paralyzed in

24    figuring out how to deal with this problem, which was:  How do

25    I either not engage in my husband's conduct?  How do I not

**P R O C E E D I N G S**

1    encourage it?  How do I make this stop?

2        For Mrs. Morgovsky, the entire time that she knew that her

3    husband was doing this work that was very likely criminal, it

4    was a time of deep anxiety for her.  So Your Honor knows, from

5    the report we submitted by Dr. Khazanov, she is already

6    somebody who has dealt with anxiety and depression and

7    lingering trauma; and so her knowing that at any moment their

8    life could fall apart was an additional -- an additional burden

9    that she bore.

10       It happens that even the strongest women, even the most

11   intellectual find themselves in relationships where they are

12   unable to overcome the control and otherwise, sort of -- I'm

13   going to go ahead and call it mental abuse of their partners.

14   And I think Mrs. Morgovsky found herself in this position.  And

15   it's very difficult to make these arguments on her behalf

16   because, obviously, they're still in a marriage and there is

17   still love there, but it has to be said.

18       And, you know, there are other members in her community

19   who have told me that as well, which is -- and primarily her

20   own son Marc and her daughter Patricia, who, in talking about

21   this with them and me asking them "How is it possible that your

22   mother, being so smart, would have not figured out a way out?"

23   they said, look, they've seen it their entire marriage; that in

24   order to avoid confrontation, in order to avoid abuse, mental

25   and emotional, Mrs. Morgovsky would just acquiesce.

**P R O C E E D I N G S**

1       And that can, you know, be really the only -- the only

2  answer, because Mrs. Morgovsky is otherwise such a warm woman

3  who does everything right by everybody that knows her.

4       And in the courtroom, I would venture to say -- so, to

5  Your Honor's right is an entire courtroom almost entirely

6  packed by supporters of the Morgovskys, and I would venture to

7  say, not to take away from Naum's relationships, but most of

8  these people are here because of Irina's kindness and love and

9  support over the years.

10       So it can't be that a person who is otherwise a criminal,

11  has -- you know, otherwise is willing to, kind of, turn a blind

12  eye to criminal activity and participate and engage, as

13  Your Honor has said, without also having the support unless the

14  activity for which she is being held accountable for really

15  doesn't reflect who she is as a person.

16       And she did it.  And, again, she was in a very difficult

17  situation because, of course she would have wanted to resolve

18  this case sooner, but doing so would have threatened her

19  husband's prosecution, and he wasn't willing to resolve this

20  case earlier.  And so she found herself in a very difficult

21  situation in not having resolved it before the date of their

22  trial.

23       **THE COURT:**  Could I ask you one question about that?

24  I mean, let's take at face value what you're saying for a

25  moment.  Okay?

**P R O C E E D I N G S**

1          **MS. MOEEL:**  Sure.

2          **THE COURT:**  If that's right, it has me thinking about

3   the issue of deterrence and recidivism.

4        And one comment, I believe, that the probation officer

5   made in the presentence report for Mrs. Morgovsky is that she's

6   not likely to commit crimes, further crimes, in the future.

7   But given everything you've said, I guess the question is:  Why

8   would she not commit future crimes in the future at the

9   direction of her husband, who appears to be somebody who

10  believes that he can violate the law whenever he wants and

11  thinks that he's going to get away with it and who, according

12  to you, has a very, sort of, controlling influence over

13  Mrs. Morgovsky?

14       So why should I not be worried -- when I'm thinking about

15  what the sentence should be for Mrs. Morgovsky, why shouldn't I

16  be worried about a significant possibility that she will engage

17  in criminal conduct in the future under the influence of her

18  husband?

19          **MS. MOEEL:**  Sure.  That's a great question.  And I

20  mean, the -- we've had the same conversation.

21       I think the main answer is that, part of dealing with a

22  problem, whether it's an addiction or whether it's a systematic

23  abuse that you're suffering from a loved one, is calling out

24  the problem, is recognizing that there is a problem, to begin

25  with.  And I think that's what Mrs. Morgovsky has learned

**P R O C E E D I N G S**

1    throughout this process.  I mean, here we are -- and this is

2    not easy for her -- in open court.

3         **THE COURT:**  But I mean, did she say any of this to the

4    probation officer?  Or did she submit something to the

5    probation officer in connection with the preparation of her

6    presentence report that is seemingly kind of a cut and paste of

7    everything that Mr. Morgovsky submitted to the probation

8    officer, minimizing the -- seemingly denying, denying, denying?

9         **MS. MOEEL:**  With respect to -- so, as you know, I

10   wasn't on the case when the probation interview occurred.  I

11   came in afterwards.  But what we did is submit to the probation

12   officer Dr. Khazanov's report and made Mrs. Morgovsky and

13   Dr. Khazanov available for any additional follow-up.

14      So I don't know -- if Your Honor is speaking about the

15   facts of the offense, I mean, here, there was certainly a lot

16   of facts alleged and the discovery is voluminous.  So I

17   can't -- I wasn't able, in the period of time that I was

18   retained on the case, to become a hundred percent familiar with

19   the facts.

20      And so what Ms. Morgovsky did is adopt some of

21   Mr. Morgovsky's objections, but I mean, really --

22        **THE COURT:**  Adopted some of his fantastical narrative

23   about what has gone on in their life in the last couple of

24   decades.

25        **MS. MOEEL:**  Yeah.  I mean, I understand, Your Honor.

**P R O C E E D I N G S**

1    I understand that the story does seem incredible.  But

2    nevertheless, I mean, in terms of feeling threatened for a

3    period of time for their lives, that's something Mrs. Morgovsky

4    does stand behind.  Not every fact with respect to what

5    Mr. Morgovsky has described for that.  But I mean, that is a --

6    that is a clear constant.

7          And I think even members of their community will also

8    state, if asked, Yes, there was a period of time where we

9    didn't see or talk to the Morgovskys for periods of time.  We

10   didn't know where they lived.  We weren't able to call them.

11   They called us sporadically.

12         And so that's what I can say with respect to that.  And I

13   don't know if I've answered Your Honor's question about how can

14   I be -- you know, how can I be assured that Mrs. Morgovsky

15   won't recidivate.  But -- well, there are the other factors,

16   which is age and --

17         **THE COURT:**  Age doesn't -- I mean, this doesn't seem

18   to be the type of case where we would assume, as we do in other

19   cases, cases involving violent crimes, or whatever -- that

20   doesn't seem to be the type of case where we would assume that

21   somebody is less likely to recidivate when they're 75 than when

22   they're 70.  I mean, the information we have on the

23   relationship between age and recidivism, it seems to me, is not

24   applicable to a case like this where, at an already fairly

25   advanced age, the defendants are committing these very willful

**P R O C E E D I N G S**

1    and dangerous criminal acts.

2              **MS. MOEL:**  Right.

3              **THE COURT:**  And have been doing so -- seemingly have

4    been doing so repeatedly for many, many years.

5              **MS. MOEL:**  I think the main thing is, I'm convinced

6    that Mrs. Morgovsky does not want to find herself in this

7    situation in the future.  There's no way that she will allow

8    that for herself.  I mean, having lived with the terror of the

9    potential of going to prison, of losing her husband to prison

10   for a very long time, of missing the types of things she is

11   potentially going to miss -- her daughter's first child,

12   spending time with that child in infancy -- I mean, you know,

13   the risk to her is real.

14        And now that we're finally talking about this problem of

15   control and abuse and her obtaining treatment for it,

16   I think -- and having that spoken out loud with her husband in

17   the room and her and him being aware that this is not something

18   that she will tolerate any longer and there's -- not just the

19   United States Government is going to hold them accountable, the

20   Probation Department, but their community of friends, that

21   there is a difference here when you call it out and when you

22   say to the perpetrator:  I'm watching you and I'm no longer

23   going to be subjected to this.

24             **THE COURT:**  Well, you're saying that.  I mean, you're

25   a lawyer who knows what to say on behalf of her client.  You're

1   saying that.

2       **MS. MOEEL:**  Right.  Well, we're just sort of doing

3   this in this order; and typically, allocution comes later.  But

4   you'll hear from Mrs. Morgovsky as well, and I trust that

5   you'll find her authentic in what she has to say to you.

6       Your Honor, I mean, there's more that I can say on her

7   behalf.  And I think what I would say is that prison -- well,

8   I'll say this:  So the goals of 3553 are for just punishment,

9   and I do believe that just punishment in this case means a

10  sentence of probation and that that's not a huge windfall to

11  her.  I think -- I mean, part of it is that the Government

12  essentially -- and they're permitted to do this, and I'm not

13  castigating them for it but -- told Mr. Morgovsky, "If you

14  don't plead or resolve your case, we will charge your wife,"

15  unless that's incorrect.  But that's what I understood to be

16  the posture of the case early on.

17      And Mr. Morgovsky -- is that not correct?  I'm sorry.

18      **MR. SAMPSON:**  This is a Rule 11 violation, Your Honor.

19      **MS. MOEEL:**  Okay.  Well --

20      **THE COURT:**  Well, I mean, I'm not -- there is -- the

21  plea negotiations are over, and the plea agreement has been

22  reached.  So it's not clear to me that it actually is a Rule 11

23  violation.  But I, nonetheless, don't want to hear about

24  Mrs. Morgovsky's negotiations with the Government.

25      **MS. MOEEL:**  That's fine, Your Honor.  Understood.

**P R O C E E D I N G S**

1          Probation in this case will require Ms. Morgovsky -- first

2     of all, I think that dealing with this case and the impending

3     doom of what might happen today has been sufficient punishment

4     for Mrs. Morgovsky.  And knowing that she has disappointed her

5     community, her son, her daughter who needs her so much at this

6     time, and knowing that she's put her daughter at risk of losing

7     her support has been just absolutely devastating for her.

8          And I think that a sentence of probation, even with strict

9     conditions of either staying in a halfway house or a home

10    confinement or other types of conditions that could be imposed

11    with a sentence of probation --

12          **THE COURT:**  How could I -- I just have a very hard

13    time understanding how I could square a probation sentence with

14    the interest of deterrence in a case like this, given the

15    seriousness of the offense and the need for deterrence, general

16    deterrence as well as -- I mean, we've discussed specific

17    deterrence a little bit already, but general deterrence.

18          The idea that somebody could do something like this and

19    not go to prison for it is a little difficult to swallow.  So

20    what's your response to that?

21          **MS. MOEEL:**  Right.  What I would have to say to that

22    is that there is no dispute that the -- that the organizer, the

23    leader, the mastermind, if you will, of this entire enterprise

24    was Mr. Morgovsky.  If it's true that he held himself out to

25    be, as the Government states that witnesses would say at a

**P R O C E E D I N G S**

1  trial, had there been one, that he was the grandfather of night

2  vision, there was no grandmother of night vision.  You know,

3  she wasn't known, as far as I can tell.  It wasn't, you know,

4  Naum and Irina.  It was Irina serving as a -- as her son said

5  to Probation -- a gofer for Mr. Morgovsky.

6      So I understand the issue of general deterrence, and

7  I think that the Court can rightly hold accountable the

8  individual who, but for his conduct, Mrs. Morgovsky would not

9  be here.  And I think it's undisputed that that's true.  She

10  would never have done this on her own.  She would have never

11  developed those contacts or the idea in the first place.

12      She was an engineer at Bechtel at a time when it was very

13  difficult for anybody to get a job at Bechtel, and an immigrant

14  who didn't know English at that -- you know, at that.  She had

15  a solid life there.  She had -- as I talked to her son about

16  this, she was outgoing.  She had friends outside of the family.

17  She was social.  She was engaged.

18      And all of that was taken away when her husband encouraged

19  her to leave the job that took her out of the home and out of

20  his sphere of influence and to come and work for his great

21  idea, which was the closet company.  And she did that in order

22  to support him and because he insisted on it, and she worked

23  tirelessly day and night for his closet company.

24      So, in a sense, gave up her career that she had worked so

25  hard to train for, in a very difficult time in Kiev, under much

**P R O C E E D I N G S**

1    pressure and discrimination.  Was able to, nevertheless, get

2    this education.  And ultimately, she couldn't even put it to

3    use because her husband insisted that she leave this, you know,

4    lucrative, and also a job that she benefited from, outside of

5    just, you know, her salary, and insisted that she come work for

6    him.

7         And then all of a sudden, the contacts outside of the home

8    decreased; and, again, she was within his sphere of influence

9    so that she was available to him to do the participation and

10   the activities that are alleged here.

11        So, you know, I mean, I just want to say that in terms of

12   general deterrence, there is somebody that the Court can hold

13   accountable, and I don't think that the Court needs to take

14   that into account with respect to -- to the extent that you do

15   with Mr. Morgovsky, with Irina.

16        I think that with respect to specific deterrence, I submit

17   on the comments I made.

18        **THE COURT:**  Okay.  Let me ask you one other question

19   before I turn to the Government.

20        Another concern I have in this case is the issue of the

21   defendants being a flight risk.  And I know that after pleading

22   guilty, the defendants were not remanded.  I think there is --

23   I have a concern that Mr. Morgovsky, in particular, thinks he's

24   the smartest person in the room; thinks that he can get away

25   with anything and that he'll beat it and that he won't have to

**P R O C E E D I N G S**

1   answer for his conduct.

2        Now, obviously, Mr. Morgovsky and his team of lawyers will

3   have an opportunity to talk to me about that and disabuse me of

4   that impression that I've developed initially from reading all

5   of the papers and observing Mr. Morgovsky throughout this case.

6   But assuming I'm right about that, now we're in a situation

7   where, assuming Mrs. Morgovsky is going to be sentenced today,

8   Mr. Morgovsky may well be sentenced today, at that point,

9   Mr. Morgovsky learns that he hasn't beaten it.  He has a

10  history -- they have a history of using false documents to

11  travel.  It is very likely that they have access to significant

12  assets.  Why should I not be significantly concerned at this

13  point that Mr. and Mrs. Morgovsky are a flight risk?

14       **MS. MOEEL:**  Well, I think there are a number of

15  factors.  One is that they have had an absolutely perfect

16  compliance record on pretrial release.

17       **THE COURT:**  But that's why I said what I said about

18  Mr. Morgovsky --

19       **MS. MOEEL:**  Right.

20       **THE COURT:**  -- sort of, smartest person in the room.

21  I'm going to beat this.  I'm going to manipulate this process

22  until I win.

23       And now we're at sentencing.  It's sort of different,

24  right, once a sentence has been handed down?

25       **MS. MOEEL:**  Right.  I mean, as --

**P R O C E E D I N G S**

1          **THE COURT:**  And, again, you have said that

2     Mrs. Morgovsky has essentially been controlled and manipulated

3     by her husband.

4          **MS. MOEEL:**  Well, there are a number of things.  I

5     mean, you know, Mrs. Morgovsky took great risk to leave her

6     home country and come to this one and build a life here for

7     herself.  She has said that even despite this, that living in

8     the United States has been a great privilege for her.

9          So the idea that she would leave the United States and

10    never come back, leave where her son lives with her grandsons,

11    leave the community that has showed up here for her today,

12    leave the life that -- you know, she's now a fluent English

13    speaker.  It's just -- it's just not even on her mind that she

14    would leave.  I mean, she has said from the very beginning --

15    and there have been no promises exchanged here between, you

16    know, you're not going to go to prison; everything's going to

17    be fine.  She knows she's facing a significant risk of prison

18    time being here today, and there has been no attempt on her

19    part to try to flee or ask for undue continuances of this

20    hearing today.

21         And even just today --

22         **THE COURT:**  Well, wait a minute.  She's now on her

23    third lawyer in this case.  And I assume that that is a product

24    of Mr. Morgovsky's manipulation as well.  And the reason that

25    this sentencing hearing did not happen three or four months

**P R O C E E D I N G S**

1  ago, or whenever it was supposed to happen, is because

2  Mrs. Morgovsky's lawyer was fired, presumably by Mr. Morgovsky.

3  I'm happy to hear more about that from either you or them later

4  on.

5      So it seems to me that we already have had manipulation of

6  the process to delay sentencing, or at least there is a

7  significant possibility that that's the case.

8      **MS. MOEEL:**  Well, I understand, and I think -- I don't

9  want to go into what I've heard about the relationship between

10  her prior counsel and herself at this time.  But even just

11  today when Your Honor asked, Should we just go forward with

12  Mrs. Morgovsky, I looked over at her and she said, "Sure."

13      So I think she is ready to put this process behind her and

14  receive the judgment of the Court, and knows that with that

15  comes a potential prison sentence.

16      I think to mitigate the concern of the Court, if you were

17  so concerned, if she needed to put on an electronic monitoring

18  device until the time of self-surrender, if that was something

19  that the Court needed to not remand her today, then I think

20  that would be appropriate.  Other than that, I don't even

21  actually think that's necessary, because she has not given any

22  indication that, you know -- and I mean, to be fair, Pretrial

23  Services has the right to search her home at any time, to find

24  any potential identity documents.  I mean, it just -- you know,

25  I understand why the Court is saying that, but I just don't see

**P R O C E E D I N G S**

1   that there has been a risk of non-compliance in the period of

2   time that she has actually been on supervised -- on pretrial

3   supervision.  And it just -- I don't think that it will be a

4   problem.  But electronic monitoring might monitor against

5   that -- mitigate against that.

6          **THE COURT:**  Okay.

7          **MR. SAMPSON:**  Your Honor, I'm not certain that

8   Pretrial can search her home at any time.  It's also not her

9   home, at least on paper.

10      I think the Court is absolutely right and has -- I think

11  all the parties appreciate how thoroughly the Court has

12  considered all the many issues and taken into account the many

13  facts in this case.

14      With regard to flight, Your Honor, I -- although the

15  defendants have both used false identities to travel

16  internationally, I think that the major risk lies with

17  Mr. Morgovsky.  And particularly, if Mrs. Morgovsky is involved

18  in any flight, I think that it might be because Mr. Morgovsky

19  continues to fight and delay his sentencing and may try -- and

20  if Mrs. Morgovsky faces prison as early as today, that risk may

21  go up.  But I trust that the Court will make the correct

22  findings that it must under 3143.

23      With respect to Mrs. Morgovsky's particular

24  characteristics, we're not disputing her upbringing.  We're not

25  disputing the imbalance of the relationship between Mr. and

1    Mrs. Morgovsky.  And I think that the guidelines reduction for

2    her minor role -- it's certainly not a minimal role, but it is

3    a minor role compared to his overarching, overbearing role --

4    appropriately counts for her comparatively lesser role or

5    "going along," although she certainly knew of the objective

6    conspiracy.

7         The Court can -- and I've provided some bank statements

8    that show the degree to which she was involved in the finances

9    of the company, very frequently withdrawing large amounts of

10   cash sourced from almost $10 million in deposits from offshore,

11   writing six-figure checks to purchase controlled night vision.

12   I don't need to go into that any further.

13        But, Your Honor, Mrs. Morgovsky is a very intelligent

14   individual.  She has agency.  And for over ten years, she made

15   shipments, she purchased defense articles, and she handled the

16   money for the conspiracy.  And, Your Honor, I think that the

17   role-based reduction is completely appropriate.

18        Additionally, the idea -- I think the Court is absolutely

19   right.  This imbalance in the relationship or Mr. Morgovsky's

20   dominance does actually undercut the argument that she would

21   not commit this crime again, if asked.  It's certainly possible

22   that if asked, even if Mr. Morgovsky was in prison, she might

23   undertake further activities on his behalf out of her loyalty

24   to him.

25        So I think those are significant concerns, and I think

**P R O C E E D I N G S**

1   they somewhat balance out with the guidelines calculation as

2   the parties agreed.

3       Your Honor, in terms of -- and that's specific deterrence.

4   In terms of general deterrence, it's important that the members

5   of a conspiracy be sentenced appropriately, and the role-based

6   reduction accounts for that.  But, Your Honor, the idea that

7   somebody who had a lesser role may get probation would not be a

8   general deterrence in the community, in the community of night

9   vision or in the community of military parts or exports or

10  anything.  And so, Your Honor, I think the general deterrence

11  does call for a sentence of incarceration.

12      So I don't plan to add too much more to that, Your Honor.

13  I think that it -- I think the Court has really looked at all

14  the facts in this case.  And I don't think anything about

15  Mrs. Morgovsky's conduct, activity, or role warrants a case

16  outside the guidelines in this case.

17          **THE COURT:**  One thing before I forget is, there are a

18  number of objections to the PSR.  There's agreement on the

19  appropriate guideline calculation, all that.  There are a

20  number of objections.  Is there anything else that you would

21  like to say about those objections?

22          **MS. MOEEL:**  No, Your Honor.

23          **THE COURT:**  Those objections are overruled.  I'll

24  adopt the PSR.

25      So can I hear a little bit more about the Government's

**P R O C E E D I N G S**

1    position on self-surrender?

2         **MR. SAMPSON:**  To some degree, Your Honor, it could be

3    affected by what happens in the next -- in the next hearing.

4         **THE COURT:**  So do you want to defer the question of

5    self-surrender until -- I mean, we could -- that is certainly

6    one thing we could do, is we could proceed with the sentence

7    now and we could address the question of self-surrender at the

8    end of Mr. Morgovsky's proceedings.

9         **MR. SAMPSON:**  I defer to the Court on that decision.

10   I think that now that we're at the point of sentencing, I think

11   the Court should treat the defendants separately and set an

12   appropriate date --

13        **THE COURT:**  Well, except that you just said that it

14   may depend on the outcome of Mr. Morgovsky's proceedings.

15        **MR. SAMPSON:**  Fair enough, Your Honor.  It's

16   the Government's position that Mr. Morgovsky should likely be

17   sentenced, depending on the Court's findings, today and that he

18   should report sooner than Mrs. Morgovsky.

19        **THE COURT:**  Okay.

20        **MR. SAMPSON:**  And that's all I'll say about that.

21        **THE COURT:**  Okay.  Fine.

22        I'm trying to think if I have any other questions for you

23   before I turn it over to -- I'll just ask.  Is there anything

24   you want to respond to?  Anything the Government said that you

25   want to respond to?

1          **MS. MOEL:**  No, Your Honor.

2          **THE COURT:**  Okay.  Well, Mrs. Morgovsky, as you know,

3     you have the opportunity to speak at your sentencing hearing.

4     It's not a requirement, but it is your right, and now is the

5     time if you wish to say anything.

6          **THE DEFENDANT:**  Okay.  Your Honor, I'm feeling

7     overwhelmed and embarrassed by situation I am right now.  I

8     would like to apologize to all my friends and especially to my

9     children and my family members for grief I caused them.  I'm

10    deeply, deeply sorry for what I did, for crime I committed.

11         When almost 40 years ago, we were allowed to come to

12    United States, our joy had no limits.  To live in this

13    beautiful country, to have all opportunities, to raise our

14    children as free people was incredible.  After four short

15    months, we were both fully employed.  We had rented small

16    two-bedroom apartment.  My son was attending school.  The life

17    was great.  In 1982, our daughter Patricia was born.  I went

18    back to work eight weeks -- when she was eight weeks old.

19         In 1984, my husband started his own business, Closets

20    Unlimited, making built-in cabinets for homeowners.  I joined

21    him two years later.  He needed my help.  We worked very hard,

22    practically non-stop.  Unfortunately, business was very

23    complicated and unprofitable.  We accumulated huge amount of

24    debt, and after 19 years of struggling, we lost it.

25         Suddenly, after 25 years, almost 25 years of very hard

**P R O C E E D I N G S**

1   work, we were -- we had no jobs, no money, huge debts, and on

2   the run from Russian mob.

3        In no way I'm trying to make excuses for the situation we

4   are in today.  We had to make better decisions definitely.

5        Did I help my husband with some tasks?  Minor mostly, but

6   yes, I did.  Did I suspect that what he was doing was not

7   always legal?  Yes.  Did I confront him, ever confront him?

8   No, I did not.  It's hard to explain why.

9        I'm not a confrontational person, in general.  Fighting

10  with the man who I deeply love is very, very difficult.  My son

11  was growing without his biological father, but I could only

12  imagine what our separation might do to our daughter.  Patricia

13  loves his father.  She's his daddy's girl.  I've always been

14  submissive wife, and I was terrified to ruining our marriage.

15  Even right now, knowing that I have to live without my husband

16  terrifies me more than going to prison, honestly.

17       I'm extremely remorseful for what I did.  If I could be

18  stronger person, more independent, more sure of myself, maybe

19  things would be different.  I know it's too late now.  The only

20  thing I can promise to you, and to everyone in this room, and

21  to myself, that I never, ever, ever going to break the law

22  again.

23       That other thing I want to add, that we are not flight

24  risk, not me, not my husband.  We've been under this process

25  for over two years.  Not one single day or one single moment we

**P R O C E E D I N G S**

1   discussed about leaving the country or do something, you know,

2   like this.  We are not.

3       I'm not even saying that my son paid $1 million cash for

4   us to be outside of prison.  But even without that, our -- any

5   criminal activities for myself and for my husband, I can swear

6   it on my life, it's not going to happen again.

7       That's all.  Thank you.

8       **THE COURT:**  Thank you, Mrs. Morgovsky.

9       I believe that the Probation Office's recommendation in

10  this case is an appropriate one.  Considering all of the

11  3553(a) factors, I think there is a -- there is a reasonable

12  argument for a guideline sentence; but I think that when you

13  combine the undoubtedly overbearing, oppressive influence of

14  Mr. Morgovsky with Mrs. Morgovsky's age, a downward variance is

15  appropriate as recommended by the Probation Office.

16      So the sentence will be -- however, I do not think that it

17  would be appropriate for Mrs. Morgovsky to serve a term only of

18  probation.  I think, in particular, the seriousness of the

19  offense and the need for general deterrence, and perhaps even

20  specific deterrence, a prison sentence is necessary.  So

21  I think the Probation Office got it exactly right on this one,

22  in my view.

23      And so the sentence will be 18 months in prison.

24      Pursuant to the Sentencing Reform Act of 1984, it's the

25  judgment of the Court that Irina Morgovsky is hereby committed

**P R O C E E D I N G S**

1    to the custody of the Bureau of Prisons to be imprisoned for a

2    term of 18 months.

3          Upon release from imprisonment, the defendant shall be

4    placed on supervised release for a term of three years.

5          Within 72 hours of release from the custody of the Bureau

6    of Prisons, the defendant shall report in person to the

7    Probation Office in the district to which the defendant is

8    released.

9          While on supervised release, the defendant shall not

10   commit another federal, state, or local crime; shall comply

11   with the standard conditions that have been adopted by this

12   Court, except that the mandatory drug testing provision is

13   suspended; and shall comply with the following additional

14   conditions.

15         Mrs. Morgovsky, these are the conditions you must comply

16   with when you are on supervised release.

17         You must pay any special assessment that is imposed by

18   this judgment and that remains unpaid at the commencement of

19   the term of supervised release.

20         You must not open any new lines of credit and/or incur any

21   new debt without the prior permission of the probation officer.

22         You must provide the probation officer with access to any

23   financial information, including tax returns, and shall

24   authorize the probation officer to conduct credit checks and

25   obtain copies of income tax returns.

**P R O C E E D I N G S**

1    You must not possess any false identification and shall

2    provide your true identity at all times.

3    You must cooperate in the collection of DNA as directed by

4    the probation officer.

5    You must not own or possess any firearms, ammunition,

6    destructive devices, or other dangerous weapons.

7    And you must submit your person, residence, office,

8    vehicle, electronic devices and their data, including cell

9    phones, computers, and electronic storage media or any other

10   property under your control, to a search.  Such a search shall

11   be conducted by a U.S. probation officer or any federal, state,

12   or local law enforcement officers at any time with or without

13   suspicion.  Failure to submit to such a search may be grounds

14   for revocation.  You must warn any residents that the premises

15   may be subject to searches.

16   So those are the conditions.

17   It's further ordered that the defendant shall pay to the

18   United States a special assessment of $100.  Payment shall be

19   made to the Clerk of the U.S. District Court at the address

20   that will be listed in the judgment.

21   During imprisonment, payment of criminal monetary

22   penalties are due at a rate of not less than $25 per quarter,

23   and payment shall be through the Bureau of Prisons Inmate

24   Financial Responsibility Program.

25   As to the fine, I find that the defendant did not

**P R O C E E D I N G S**

1  establish that she is unable to pay the fine, nor did the

2  defendant establish that she is not likely to be able to pay

3  the fine in the future.  Therefore, I will impose the fine that

4  is recommended by the Government of $15,000.

5          **THE PROBATION OFFICER:**  Your Honor, could we amend,

6  then, the first condition and have it say, "You must pay any

7  special assessment or fine that is imposed by this judgment"?

8          **THE COURT:**  Yes.  So the first condition will specify

9  that Mrs. Morgovsky must pay any special assessment and fine

10  that is imposed by this judgment and that remains unpaid at the

11  commencement of the term of supervised release.

12          **THE PROBATION OFFICER:**  And the Court needs to set a

13  payment plan for that fine once she's released on supervised

14  release.

15          **THE COURT:**  So the payment plan should be set now?

16          **THE PROBATION OFFICER:**  It has to be set.  That's what

17  the case law has told us.

18          **THE COURT:**  What would the standard payment plan be

19  for something like this?

20          **THE PROBATION OFFICER:**  We want her to pay the $15,000

21  during the period of supervision, which is three years.  So

22  often I will just divide that to make it work out.

23      So I would say $500 a month to make sure it's paid during

24  the period of supervision.

25          **THE COURT:**  That's fine.

**P R O C E E D I N G S**

1      **THE PROBATION OFFICER:**  And then I'll use the standard

2  language that that doesn't prevent the Financial Litigation

3  Unit from collecting if they find the defendant has a greater

4  ability to pay.

5      **THE COURT:**  That sounds fine.  So it will be $500 per

6  month.

7      Okay.  As to the issue of continued release and

8  self-surrender, I --

9      Sorry.  Did you need to say something?

10      **MR. SAMPSON:**  I'm sorry, Your Honor.  We needed to

11  address forfeiture.

12      **THE COURT:**  Oh, I'm sorry.  Yes, forfeiture.  I'll go

13  back to that.

14      **MR. SAMPSON:**  And with respect to Mrs. Morgovsky,

15  I believe it's the passport --

16      **THE COURT:**  Yes.

17      **MR. SAMPSON:**  -- as well as the three scopes from the

18  residence.

19      **THE COURT:**  That's right.

20      And so the defendant's interest in the property that is

21  listed in the presentence report, the three rifle scopes and

22  the passport that's issued in the name of Victoria Ferrara,

23  will be forfeited.

24      Thank you for reminding me.

25      On the issue of self-surrender, I do have concerns about

1  flight risk, notwithstanding what Mrs. Morgovsky said.  I would

2  be willing to entertain location monitoring to create further

3  assurance that there will be no flight, pending self-surrender.

4      So what are the location monitoring options?

5          THE PROBATION OFFICER:  Your Honor, that would be done

6  by Pretrial because she is still under pretrial release until

7  she self-surrenders.  So we would have to get Pretrial

8  involved, which I'm not sure how much I could speak to their

9  ability, you know, how soon they could hook her up and that

10  kind of thing.  I could find out fairly quickly.

11          THE COURT:  Well, what we're going to do is we're

12  going to have Mrs. Morgovsky come back here after

13  Mr. Morgovsky's proceedings, and I'll ask Pretrial to be here

14  as well.  I'm assuming that'll be sometime in the afternoon.

15  We'll finish up with Mr. Morgovsky sometime in the afternoon,

16  and I'll ask Pretrial to be here too so that we can modify the

17  conditions of Mrs. Morgovsky's pretrial release, pending

18  self-surrender.

19      And then do we need to set a self-surrender date, assuming

20  that's going to continue to be the route we go?  What's the

21  typical self-surrender day?  30 days?

22          THE CLERK:  60 days.

23          THE COURT:  60 days?  60 days is fine with me as long

24  as nobody objects to that.

25          MS. MOEEL:  Yes, Your Honor.

**P R O C E E D I N G S**

1    **MR. SAMPSON:**  I think that's fine, Your Honor.

2  I think we would suggest this afternoon that GPS monitoring

3  would be more appropriate to alleviate the concern, but 60 days

4  is fine.

5    **THE COURT:**  GPS monitoring as opposed to?

6    **MR. SAMPSON:**  As opposed to the --

7    **THE PROBATION OFFICER:**  Radiofrequency is the other

8  method of monitoring.

9    **THE COURT:**  Okay.  I mean, I'm sure that I will be

10  amenable to that, but we can discuss it further when Pretrial

11  gets here in the afternoon.

12    **MR. SAMPSON:**  Thank you, Your Honor.

13    **THE COURT:**  Okay.

14   What is the self-surrender date going to be?

15    **THE CLERK:**  Should we do December 28 or January 4?

16    **THE COURT:**  Let's do January 4.

17    **THE CLERK:**  That will be at 2:00 p.m. to the

18  designated BOP facility.  If one has not been designated by

19  that time, it will be the 20th floor, the U.S. Marshals.

20    **THE DEFENDANT:**  This building?

21    **THE CLERK:**  Yes.

22    **THE COURT:**  And, Mrs. Morgovsky, just so we're clear,

23  I was assuming you were going to stick around for your

24  husband's proceedings anyway, but --

25    **THE DEFENDANT:**  Of course.

**P R O C E E D I N G S**

1          **THE COURT:**  -- whether you do or not, I want you here

2    after your husband's proceedings have terminated so that we can

3    discuss modifying the conditions of your release.  Okay?

4          **THE DEFENDANT:**  Thank you.

5          **THE COURT:**  All right.  Thank you.

6          **MS. MOEEL:**  One small thing, Your Honor.

7          **THE COURT:**  Oh.

8          **MS. MOEEL:**  Would Your Honor be willing to recommend

9    to the Bureau of Prisons designation somewhere in southern

10   Florida so that she can maintain ties and visits to her

11   husband [sic] Marc's family and her grandchildren who also live

12   there?

13         **THE COURT:**  Any objection?

14         **MR. SAMPSON:**  No, Your Honor.

15         **THE COURT:**  I'm happy to make that recommendation.

16         **MS. MOEEL:**  Thank you, Your Honor.

17         **THE COURT:**  Okay.  Thank you.

18      Why don't we take a two-minute break, and then we'll

19   resume with -- or take a five-minute break.  We'll be back at

20   11:15 to resume with Mr. Morgovsky.

21         **MR. SAMPSON:**  Thank you.

22         **THE CLERK:**  Court is in recess.

23                    (Recess taken at 11:10 a.m.)

24                 (Proceedings resumed at 2:04 p.m.)

25         **THE COURT:**  Okay.  So should we recall

**P R O C E E D I N G S**

1  Mrs. Morgovsky's case?

2        **THE CLERK:**  Recalling Case Number 16-CR-00411, U.S.A.

3  versus Irina Morgovsky.

4     Counsel, please step forward.

5        **MS. MOEEL:**  Hello again, Your Honor.  Shaffy Moeel for

6  Mrs. Morgovsky, who remains present in court.

7        **THE COURT:**  Hello again, Mrs. Morgovsky.

8        **MR. SAMPSON:**  Colin Sampson and Erin Cornell for the

9  United States.

10        **THE PROBATION OFFICER:**  Catheryn Grier with U.S.

11  Probation.

12        **THE COURT:**  Hello.

13     Okay.  So what I would like to do, for me to be able to

14  make a determination by clear and convincing evidence that

15  Mrs. Morgovsky would not be a flight risk, I believe that she

16  should be on electronic monitoring and essentially on lockdown.

17  That's the phrase that the Pretrial Services officers use.  It

18  means that she is on electronic monitoring and she has to

19  remain in the home, absent the permission of the probation

20  officer to leave for medical or legal reasons.

21        **THE PROBATION OFFICER:**  The pretrial officer.

22        **THE COURT:**  Yes, pretrial.

23        **THE PROBATION OFFICER:**  Okay.

24        **THE COURT:**  Yes.  So that is the condition.

25     Imposing that condition, I believe that there is clear and

**P R O C E E D I N G S**

1  convincing evidence that Mrs. Morgovsky would not be a flight

2  risk and she would report for her sentencing.

3         **MS. MOEEL:**  Yes, Your Honor.

4         **THE COURT:**  Okay.

5         **MR. SAMPSON:**  Thank you, Your Honor.

6         **THE COURT:**  Very good.  Thank you.

7         **MS. MOEEL:**  And so I think today, Your Honor, I will

8  have her go and report to Pretrial Services to talk about what

9  needs to be done.

10         **THE COURT:**  I appreciate that.  And I made them aware

11  that I was interested in that condition for Mrs. Morgovsky, and

12  possibly Mr. Morgovsky as well in the event that we don't

13  proceed with sentencing today.

14         **MS. MOEEL:**  Great.  And if you do proceed with

15  sentencing today and it goes long, beyond when Pretrial is

16  still available for business today, may she report tomorrow

17  morning?

18         **THE COURT:**  Well, why doesn't she just go do it right

19  now and then come back?

20         **MS. MOEEL:**  Okay.  I think she just wants to be

21  present for Mr. Morgovsky's hearing.

22         **THE COURT:**  Okay.  So I'm going to let her make the

23  choice.

24      Stick around for 15 minutes.

25         **MS. MOEEL:**  Okay.  Great.

**P R O C E E D I N G S**

1        **THE COURT:**  Then make your decision.

2        **MS. MOEEL:**  Thank you, Your Honor.

3        **THE COURT:**  All right.

4            (Proceedings adjourned at 2:06 p.m.)

5                    ---o0o---

1

2                    **CERTIFICATE OF REPORTER**

3              I certify that the foregoing is a correct transcript

4      from the record of proceedings in the above-entitled matter.

5

6      DATE:   Friday, November 9, 2018

7

8

9

10     _____

11        Ana M. Dub, CSR No. 7445, RMR, CRR, CCRR, CRG, CCG
                     U.S. Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25