Pages 1 - 67

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE VINCE CHHABRIA, JUDGE

UNITED STATES OF AMERICA,          )
                                   )
            Plaintiff,             )
                                   )
    VS.                            )      **No. CR 16-0411 VC**
                                   )
NAUM MORGOVSKY; IRINA              )
MORGOVSKY.                         )
                                   )
            Defendants.            )
_____)      San Francisco, California
                                          Wednesday, January 16, 2019

**<u>TRANSCRIPT OF PROCEEDINGS</u>**

**<u>APPEARANCES:</u>**

For Plaintiff:          ALEX G. TSE
                        United States Attorney
                        450 Golden Gate Avenue, 11th Floor
                        San Francisco, California  94102
                  **BY: COLIN C. SAMPSON, AUSA**


                        U.S. Attorneys' Office
                        Oakland Branch
                        1301 Clay Street, #340S
                        Oakland, California 94612
                  **BY: ERIN A. CORNELL, AUSA**

For Defendant           STEVEN KALAR
Naum Morgovsky:         Federal Public Defender
                        450 Golden Gate Avenue
                        San Francisco, California  94102
                  **BY: ELIZABETH FALK**
                        **ASSISTANT FEDERAL PUBLIC DEFENDER**


(Appearances continued on next page)


Reported By:   Katherine Powell Sullivan, CSR #5812, RPR, CRR
               Official Reporter - U.S. District Court

**APPEARANCES (CONTINUED):**

```
For Defendant          MOEL LAW OFFICE
Irina Morgovsky:       1611 Telegraph Ave, Suite 806
                       Oakland, California 94612
                  BY: SHAFFY MOEL, ESQ.


Also Present:          CATHERYN GRIER, U.S. PROBATION
```

1    <u>Wednesday, January 16, 2019</u>                    <u>1:38 p.m.</u>

2                        P-R-O-C-E-E-D-I-N-G-S

3                            ---000---

4        THE CLERK:  Calling case number 16-cr-00411, USA

5    versus Naum Morgovsky, and U.S. versus Irina Morgovsky.

6        Counsel, please step forward and state your appearances

7    for the record.

8        MR. SAMPSON:  Good afternoon, Your Honor.  Colin

9    Sampson and Erin Cornell for the United States.

10       THE COURT:  Good afternoon.

11       MS. FALK:  Good afternoon, Your Honor.  Elizabeth Falk

12   for Mr. Morgovsky, who is present in court.

13       THE COURT:  Good afternoon.

14   Good afternoon, Mr. Morgovsky.

15       THE DEFENDANT:  Good afternoon, Your Honor.

16       MS. MOEEL:  Good afternoon, Your Honor.  Shaffy Moeel

17   for Irina Morgovsky, who is also present.

18       THE COURT:  Good afternoon.

19   Good afternoon, Mrs. Morgovsky.

20       MS. GRIER:  And Catheryn Grier from U.S. Probation,

21   Your Honor.

22       THE COURT:  Ms. Grier, I would say there's no need for

23   you to stand up there while the lawyers are arguing.

24       MS. GRIER:  Okay.

25       THE COURT:  We'll let you know if we have any

1    questions.  I thought it would be good for you to be here.

2              **MS. GRIER:**  Okay.

3              **THE COURT:**  Let's see.  Who should we start with?

4         Ms. Falk, why don't we start with you since you're new to

5    the party.

6              **MR. SAMPSON:**  Right.  I just need to make sure I have

7    my pen.

8              **THE COURT:**  Okay.  Take your time.

9              **MS. FALK:**  Okay.

10             **THE COURT:**  Okay.  So, you know, the main thing I want

11   to focus on today is just whether there is a substantial

12   question on appeal.

13        And let me -- let me give you my sort of initial list of

14   questions that I have about that, and then we can go back and

15   talk about them one by one.

16        So, you know, on the issues relating to this regulation,

17   it seems like there are a number of potential reasons why, at

18   least in the context of this case, if not in the context of any

19   case, that they don't present a substantial question.

20        One is the failure to raise the issue pretrial.  You can

21   correct me if I'm wrong, but I believe that nobody actually

22   raised this in a pretrial motion to dismiss the indictment or

23   anything.  It's possible that I'm wrong about that because this

24   case has a long and convoluted history.

25        But it strikes me that there is a pretty strong argument

1   that the failure to raise it pretrial means that it has been --
2   that the argument has been forfeited and that this is -- this
3   is the type of argument that would need to be raised pretrial
4   under Rule 12.
5        The second issue that may suggest that the arguments
6   relating to the regulation do not present a substantial
7   question, at least in this context -- and this only applies to
8   Mrs. Morgovsky -- is the appellate waiver and the appeal waiver
9   in the plea agreement.
10       So I know that you, Ms. Falk, won't talk about that.  I'll
11  have Ms. Morgovsky's lawyer talk about that.
12       But it seems that even if the issue was not waived by the
13  failure to raise it pretrial, it seems fairly likely that it
14  was raised by Mrs.  -- waived by Mrs. Morgovsky in connection
15  with her plea agreement.
16       I realize, by the way, that this would not apply to the
17  ineffective assistance of counsel claim but the more direct
18  attack on the regulation.
19       And then the third obstacle, I guess, to concluding that
20  the defendants have raised -- that these arguments relating to
21  the regulation raise a substantial question is that the
22  argument seems pretty much foreclosed by Ninth Circuit case law
23  in a case that I think neither side cited.  And that's the
24  *Gurrola-Garcia* case from the Ninth Circuit.  It's an older
25  case.  I think it's from the '80s, if I remember correctly.

1    But in that case the Ninth Circuit was considering the

2  predecessor to this statute, but considered largely the same

3  issue, and rejected an argument that the regulation was not

4  authorized by the statute and rejected an argument -- the

5  nondelegation argument that Mr. Morgovsky makes.  Now, so

6  that's for the direct attack on the statute.

7    Then there's the ineffective assistance -- there's the

8  issue of ineffective assistance.  And then on the -- on the

9  issue of ineffective assistance, I think you have the

10 additional problem.

11   Number one, I think there's a pretty good argument that it

12 was not defective performance by counsel to decline to raise

13 this issue in light of Ninth Circuit precedent.

14   I will say that I think if I were defense counsel I would

15 have raised this issue.  I think if I were defense counsel I

16 would have filed a motion to dismiss the indictment to the

17 extent that it relied on the regulation.  And I would have

18 probably tried to get -- you know, get the Ninth Circuit to

19 take this *Gurrola-Garcia* case *en banc*.  And I might have filed

20 a cert petition in the Supreme Court.  But I don't think I

21 would have been very optimistic in light of Ninth Circuit

22 precedent and other precedent.

23   So I think it would be -- and I think it's debatable

24 whether, you know, it would -- whether such a motion should be

25 filed.  So I think it's debatable whether there was deficient

1    performance for failure to file that motion.

2         And then on the issue of prejudice, certainly as to

3    Mrs. Morgovsky, given the sentence she received, I'm not sure

4    how there could be prejudice.  But I may be missing something

5    on that issue.

6         So that is sort of my -- those, I think, are the potential

7    obstacles to a conclusion that, you know, the arguments

8    relating to the regulation raise substantial questions on

9    appeal.

10        I think any one of those potentially could prevent a

11   conclusion that the arguments relating to the regulation

12   present a substantial question on appeal, but I think they

13   probably combine to give the Government a very strong case that

14   there's no substantial question on appeal.

15        I don't think the argument is frivolous, but I think that

16   in the context of existing case law it probably doesn't present

17   a substantial question on appeal.

18        I realize there's a lot there, so let's go back to the

19   first -- let's start by going back to the first point, which

20   is, am I right that this was never raised in a pretrial motion?

21   And if so, why doesn't the failure to raise it in a pretrial

22   motion constitute waiver?

23        **MS. FALK:**  I think it's fair to say that pre plea it

24   was not raised in the record.  I do think Mr. Morgovsky had

25   some pro se inklings of it presentence.

1          **THE COURT:**  Yes.  But it was never -- in the materials

2     that Mr. Morgovsky filed in connection with his sentencing, it

3     was never "I want to withdraw my guilty plea because my

4     conviction is invalid," as I recall it.  It was sort of a gloss

5     that he wanted to put on his -- on the sentencing arguments,

6     right.

7          So, you know, in other words, I have never been squarely

8     asked to decide whether the Government's effort to prosecute

9     Mr. and Mrs. Morgovsky under this regulation were valid.

10         **MS. FALK:**  So my understanding is the failure to raise

11    was subjected to plain error review, but it wouldn't change the

12    analysis because this is purely a question of law.

13         **THE COURT:**  Okay.  But you agree that it would -- that

14    it would change it to plain error review?

15         **MS. FALK:**  I did agree with that in my brief.

16         **THE COURT:**  Okay.

17         **MS. FALK:**  But constitutional claims are never waived.

18    In other words, a guilty plea itself doesn't bar a defendant

19    from challenging the constitutionality of a conviction on

20    direct appeal.  And that's the *Class* case.

21         **THE COURT:**  Well, that -- *Class* says that a

22    constitutional challenge to a statute, the challenge to the

23    constitutionality of a statute is not waived by a guilty plea.

24         But all sorts of constitutional issues and rights and

25    claims are waived by guilty pleas every day in courts

1    throughout the land.  I mean, when you plead guilty, you waive

2    your Fourth Amendment claims that would come up in a

3    suppression motion.

4         MS. FALK:  Right.  But this is a constitutional

5    challenge to the regulation.  He was convicted by means of a

6    regulation.  And we're saying that regulation --

7         THE COURT:  -- is not authorized by the statute.

8         MS. FALK:  And thus unconstitutional and an

9    unconstitutional delegation.

10        THE COURT:  Well, it seems to me that you have made

11   two arguments.

12        MS. FALK:  Correct.

13        THE COURT:  One is that the regulation is not

14   authorized by the statute.

15        MS. FALK:  Right.

16        THE COURT:  And the other is that the statute itself

17   is unconstitutional to the extent it delegates,

18   unconstitutionally, to the State Department the authority to

19   adopt this regulation.

20        MS. FALK:  Correct.

21        THE COURT:  Right?

22        MS. FALK:  That the regulation itself is a violation

23   of nondelegation because it's creating a crime.  The regulation

24   itself is what created the crime.  And that's what we're saying

25   is un- --

1      **THE COURT:**  But if you had brought this challenge

2   pretrial, what would it have looked like?  And I know you

3   weren't here pretrial, but -- and welcome to the party, by the

4   way.

5      **MS. FALK:**  Thank you.

6      **THE COURT:**  But if you had brought this challenge

7   pretrial, what would it have looked like?

8      **MS. FALK:**  I would have raised both those issues.

9      **THE COURT:**  Right.  But procedurally, sort of

10   procedurally what would you have done?  A motion --

11      **MS. FALK:**  -- to dismiss the indictment for failure to

12   state a federal crime.

13      **THE COURT:**  And a motion to dismiss an indictment for

14   failure to state a federal crime, is that -- is there case law

15   that says that that is the kind of thing that cannot be waived?

16      **MS. FALK:**  Yes.  My understanding is jurisdictional

17   defects can never be waived under the *Broncheau* case.

18      **THE COURT:**  But is it right to think of that as a

19   jurisdictional defect?

20      **MS. FALK:**  I do think so.  Because if it doesn't state

21   a federal -- if it doesn't state a federal crime, then there's

22   no jurisdiction in federal court.  So I think it's

23   constitutional.  I think it's jurisdictional.  I think it

24   easily passes something that can be reviewed.

25      **THE COURT:**  I have not dug as deeply into this issue

1    as I have maybe on some of the others in this case, but it

2    seems to me that -- it's not something that the federal

3    government was incapable of doing -- right? -- creating this

4    crime of conspiracy.  Your argument is just that they didn't

5    quite do it in the right way; right?

6              **MS. FALK:**  That the legislature didn't do it.  And at

7    various points in the history where they added conspiracy to

8    similar statutes they specifically did not add conspiracy to

9    this particular statute.  So why not?

10             **THE COURT:**  Okay.  All right.

11        But doesn't that -- I mean, we've got a list of potential

12   problems with Mr. Morgovsky's arguments.  This is the first on

13   the list.

14             **MS. FALK:**  Right.

15             **THE COURT:**  You know, and it's already made worse for

16   you by the fact that it would be plain error review and not de

17   novo review; right?

18             **MS. FALK:**  Well, but it's a legal challenge.  I'm not

19   actually sure that it matters in -- it's a pure question of

20   law.

21        There's nothing -- the Ninth Circuit is not hindered in

22   any way from considering this issue because it's coming up now.

23   It would be the same analysis, it's just they don't maybe have

24   the benefit of a district court's pass on a legal issue.  But

25   it certainly affects substantial rights, which is usually the

hiccup in an *Olano* analysis; right?  I mean, he could be
convicted completely wrongfully if the Ninth Circuit agreed
with me.  So I don't really see plain error review as a very
big hurdle at all.

       **THE COURT:**  So, in other words, you're saying in this
context, given the issue that you've teed up, you agree that
because it was not raised pretrial, it's reviewed for plain
error.

    But the actual standard of review that would be applied in
this case, the actual standard that the Ninth Circuit would
apply to considering the validity of the regulation, would not
be any different than if it had been raised.

       **MS. FALK:**  I don't think so.

       **THE COURT:**  Then what's the point of having a rule
saying you have to raise the rule issue pretrial?

       **MS. FALK:**  Because in a lot of context there's factual
components to it because it allows the district court to make a
different decision.

       **THE COURT:**  But it sounds like what you're arguing is
that there was no obligation on Mr. Morgovsky's part to raise
this issue pretrial.

       **MS. FALK:**  I'm not saying that at all.

       **THE COURT:**  Well, then, what's the penalty for not
raising it?  If review is the same, then what's the -- what's
the penalty -- I mean, usually when people don't raise

```
 1    things -- I mean, the reason we have these rules about waiver
 2    is if you didn't raise it in the trial court, you can't raise
 3    it on appeal.  Or we're going to have much more limited type of
 4    review on appeal, only to make sure that somebody -- you know,
 5    that it wasn't structural error or something along those lines;
 6    right?
 7         But what you seem to be saying is, in arguing that it
 8    would be the exact same type of review on appeal, that this
 9    legal question would be reviewed in the exact same way under
10    the same standard, what you seem to be arguing is that
11    Mr. Morgovsky was not actually -- there was no rule requiring
12    Mr. Morgovsky to raise this constitutional challenge or raise
13    this challenge to the indictment pretrial.
14         MS. FALK:  Well, I just want to be careful to not
15    waive any ineffective assistance of counsel claim in the future
16    that could -- I don't think it's best practice, but I don't
17    think it forecloses his claim.
18         In other words, there are some very -- there's a very tiny
19    category of issues where I think what the Court is saying is
20    exactly true.
21         THE COURT:  That you don't have to raise it pretrial.
22         MS. FALK:  That there's no penalty for not doing so.
23         THE COURT:  Yeah, yeah.  And you think --
24         MS. FALK:  This fits into that.
25         THE COURT:  There's not a waiver issue?  In other
```

1   words, the first issue I identified when I came out here and

2   ticked off these issues, failure to raise it pretrial, your

3   position is that's actually not an issue at all?  The failure

4   to raise the issue pretrial does not matter one bit in this

5   context?

6           **MS. FALK:**  I don't believe it does.

7           **THE COURT:**  Okay.

8       Now, the second issue is the -- is an issue, I guess,

9   that's specific to Mrs. Morgovsky.  So I'll ask you, Ms. Moeel,

10  why -- and this is an issue I believe you have not addressed in

11  any of your papers, if I recall correctly.  If I missed it,

12  forgive me.  There's a lot of papers flying around in this

13  case.

14      Why doesn't the appeal waiver in the plea agreement

15  foreclose Mrs. Morgovsky from attacking the regulation in her

16  appeal?

17          **MS. MOEEL:**  Sure.  Thank you, Judge.

18      I believe I addressed it, although somewhat briefly, in

19  doc 435, which is my motion on her behalf for bail pending

20  appeal.

21      And I relied primarily on the recent Supreme Court case in

22  *Class*, *Class versus United States*, where the Court --

23          **THE COURT:**  The Court did not discuss at all

24  whether -- what somebody can waive in a plea agreement.  *Class*

25  was only about whether the act of pleading guilty resulted in a

waiver of the ability to challenge the constitutionality of a
statute.

So it seems to me that *Class* has nothing to do with the
Government's argument that Mrs. Morgovsky agreed to waive this
argument on appeal.  In fact, I think the fairly strong
implication of *Class* is had Mr. Class included in the plea
agreement that he was waiving the right to challenge the
constitutionality of the statute under which he was convicted,
then he would have been out of luck.

**MS. MOEL:**  Well, I think that -- I mean, the
Government itself has recognized in their response to the --
or, rather, in their motion to dismiss Mrs. Morgovsky's appeal
in the Ninth Circuit, which is pending, that an appellate
waiver doesn't apply in her case to a sentence that was
obtained in violation of law.

And if she's sentenced in violation of a law that is
constitutionally defective, I think she's allowed to raise the
issue whether her sentence --

**THE COURT:**  Hang on a second.

Mr. Morgovsky, I'm going to have to ask you to sit down.

**MS. FALK:**  This is my fault, Your Honor.

**THE COURT:**  You have -- throughout the tenure of this
case you have been disruptive in these proceedings.

**THE DEFENDANT:**  I'm sorry.

**THE COURT:**  And today is no exception.  And so I'm

1  going to have to ask you to sit down for the remainder of the

2  proceedings.

3            **THE DEFENDANT:**  I'm sorry, Your Honor.

4            **MS. MOEEL:**  I'm sorry, Your Honor.  I'll repeat that

5  briefly, that the Government has indicated that one of the

6  exceptions to the appellate waiver is if Mrs. Morgovsky's

7  sentence was obtained in violation of law.

8      Essentially, if she had an illegal sentence and if she had

9  an illegal sentence based on an unconstitutional statute, I

10 think that applies here.  Whether -- so I think that that would

11 be my answer to that.  And I think -- I do think that the *Class*

12 case is on point with respect to that.

13           **THE COURT:**  Where?  Show me the language.

14           **MS. MOEEL:**  Well, the language -- they say Class did

15 not relinquish his right to appeal the district court's

16 constitutional determination simply by pleading guilty.

17           **THE COURT:**  Right.

18           **MS. MOEEL:**  And he had a plea agreement --

19           **THE COURT:**  And they looked at the plea agreement, and

20 they examined the plea agreement to see if there was language

21 in the plea agreement by which he relinquished his right to

22 challenge the constitutionality of the statute.

23     And there wasn't language in the plea agreement that

24 relinquished his right to challenge the constitutionality of

25 the statute.  There wasn't any general language in the plea

agreement, like there is in this one, that says, "I agree not
to challenge my conviction on appeal."  Rather, there were some
very specific arguments in his plea agreement that he was
agreeing not to pursue on appeal.

And so the question for the Court was simply, does the act
of pleading guilty cause you to relinquish your right to
challenge the constitutionality of the statute under which he
pled guilty?  And the answer is no.

I don't see how that helps Mrs. Morgovsky.

MS. MOEEL:  Well, then, I don't understand what the
exception regarding a sentence obtained in violation of law
would apply to if not for a sentence --

THE COURT:  But those are cases about sentencing.
Those are cases about people appealing their sentences and
creating exceptions when somebody appeals their sentence.

There's a general appeal waiver for appealing your
sentence.  There are a couple of exceptions for when you can
appeal your sentence.  Like if it goes over the statutory
maximum or something like that.  Right?

MS. MOEEL:  Right.

THE COURT:  So I don't understand how that --

MS. MOEEL:  I mean, I think primarily, also back to
one thing Your Honor was talking about with respect to
Mrs. Falk, our position is that a challenge to the
constitutionality of a federal statute is actually a question

1    of law to be reviewed de novo.  And that jurisdictional

2    question of whether the Government has the right to drag

3    someone into federal court on a case is an important

4    jurisdictional claim that is never waived.

5              THE COURT:  So what you're saying is that every

6    defendant all across the country who gets charged by the

7    Government, doesn't challenge the constitutionality of the

8    statute pretrial, agrees in a plea agreement to waive appeal of

9    their conviction, every defendant across the country retains

10   the ability to appeal and challenge the constitutionality of

11   the statute under which they were convicted?

12             MS. MOEEL:  If it is a jurisdictional claim that

13   they're raising, whether or not --

14             THE COURT:  So the answer is yes?  Your answer is,

15   every single defendant across the country, after entering a

16   plea agreement with the Government by which they agree not to

17   appeal their conviction, can nonetheless appeal their

18   conviction to challenge the constitutionality of the statute?

19        If that's not your position, then explain to me why

20   Mrs. Morgovsky is in a different position from any other

21   defendant around the country who fits that description.

22             MS. MOEEL:  Right.  Well, I -- I think that -- I think

23   that has to be our position with respect to the statutory

24   challenge.  I mean, she has a different argument with respect

25   to the ineffective assistance, yes.

1          **THE COURT:**  While I have you, let me ask you this.  Do

2   you have any other case law to support that position than what

3   you have cited in your papers?

4          **MS. MOEEL:**  No, not yet.

5          **THE COURT:**  Okay.

6      So while I have you, while we're talking, why don't we --

7   why don't I ask you the other kind of -- about the other issue

8   that is specific to Mrs. Morgovsky, which is the issue of

9   prejudice on her ineffective assistance claim.

10     Now, the argument, as I understand it, is that:  They

11  should have charged me under 18 U.S.C. Section 371 instead of

12  under this regulation.  And under this regulation I was

13  exposing myself to a 20-year sentence.  And under 18 U.S.C.

14  371, I would have only been exposed to a five year statutory

15  maximum.

16     But Mrs. Morgovsky argued for no custody and got a

17  sentence of 18 months, if I recall correctly.

18         **MS. MOEEL:**  Right.

19         **THE COURT:**  Was it 18 months?

20         **MS. MOEEL:**  Right.

21         **THE COURT:**  So let's just assume for the sake of

22  argument that the issue was waived and counsel was not --

23  counsel's performance was deficient in failing to raise the

24  argument.  For the sake of argument, let's assume that for the

25  ineffective assistance of counsel claim.

```
1        You also have to show prejudice.   Where is the prejudice

2   here?

3        MS. MOEEL:  Well, we submit on that, Your Honor.   I

4   think --

5        THE COURT:  Okay.

6        MS. MOEEL:  May I have a moment?

7        (Defense counsel confer off the record.)

8        MS. MOEEL:  I mean, I think what Ms. Falk is reminding

9   me is that the issue would be that there's no guarantee that

10  they could indict on 18 U.S.C. 371.   We don't know.

11       And if there was a new --

12       THE COURT:  Why not?   What would be the reason why

13  they could not indict under Section 371?

14       MS. MOEEL:  Well, I mean, I don't know why they chose

15  to not indict on 18 U.S.C. 371.   Perhaps there were issues with

16  respect to statute of limitations or any other --

17       THE COURT:  But a defendant attempting to show

18  ineffective assistance of counsel has the burden --

19       MS. MOEEL:  Right.

20       THE COURT:  -- of demonstrating -- of course, you

21  don't have the burden of demonstrating it here, but you have

22  the burden of showing that you would be able -- there's a

23  likelihood that you would be able to demonstrate it in the

24  Court of Appeal; right?

25       So you have the burden of demonstrating prejudice or
```

```
1    you're going to have the burden of demonstrating prejudice.
2    How are you going to meet that burden?
3         You can't just meet it by saying, hey, maybe there was
4    some problem with charging him under Section 371.
5              MS. MOEEL:  I mean, it seems to me --
6              THE COURT:  Excuse me, charging her under 371.
7              MS. MOEEL:  -- that what we have here is prior
8    counsel, through whatever reason, failed to raise a claim that,
9    as Your Honor noted, is not for the list, that Your Honor would
10   have raised had you been litigating this case.
11             THE COURT:  Probably.  I mean, I would have had to
12   investigate it more.  But I think I probably would -- as I sit
13   here now, I think I probably would have said, look, you know,
14   this is a real long shot because of existing case law, but this
15   might be an issue on which we want to take a shot on getting
16   the law changed.  And we might need to go all the way to the
17   en banc court to do it because of existing Ninth Circuit
18   precedent, but it's probably worth -- it's probably worth a
19   shot.
20        Or maybe I would say, you know what, it's not worth a shot
21   because they can turn around and charge us under 18 U.S.C.
22   Section 371 anyway.  I don't know.
23        But let's assume, for the sake of argument only, that it
24   was deficient performance not to raise the issue pretrial.
25   What -- I understand the prejudice argument for Mr. Morgovsky,
```

1    but I still don't understand what your prejudice argument would

2    be for Mrs. Morgovsky, given her sentence.

3         **MS. MOEL:**   I mean, Your Honor is seeing that I am

4    having a difficult time describing exactly what would be her

5    prejudice because -- and perhaps if we had an opportunity to

6    develop the appeal we might be able to uncover additional

7    things.

8         But, I mean, I think for now it's hard to say because we

9    don't have a crystal ball and because she did get a sentence

10   under the statutory maximum and under the guidelines, it's

11   true.  But, at the same time, I just have a hard time with the

12   idea that a lawyer might miss a constitutional argument that

13   may or may not, you know, work.

14        And if she had filed the challenge she might be in a

15   position to stay out pending appeal, including pending appeal

16   all the way up to the Supreme Court, and that she didn't have a

17   chance to do that because she wasn't advised properly by her

18   lawyer.  And that now, because Your Honor was considering --

19   you know, considerate towards her at sentencing, she isn't

20   going to have a chance to raise those constitutional issues.

21   That seems to me not to sit right.

22        **THE COURT:**   Okay.  But, of course, this is not about

23   whether she will have the opportunity to raise the ineffective

24   assistance of counsel claim.  This is only about whether she

25   has presented substantial questions relating to that claim that

1  would be likely to result in a reversal of -- a reversal of the

2  conviction; right?

3      And on that point there's another issue.  And this is an

4  issue I forgot to bring up at the outset, and this applies to

5  Mr. and Mrs. Morgovsky.  And it's another obstacle, I think, to

6  establishing a substantial question on appeal.  With respect to

7  the ineffective assistance of counsel claim, I would think that

8  it is virtually certain that the Ninth Circuit would decline to

9  take up the ineffective assistance of counsel claim on direct

10  appeal and say that that is something that is more

11  appropriately left for a 2255 petition.  That is typically what

12  the Ninth Circuit does.

13      And in this case, you know, the ineffective assistance

14  claim would be dependent, I think, on some factual --

15  resolution of some factual issues about communications that

16  took place between the Morgovskys and their lawyers, for

17  example.

18      I think this is probably the last thing that I need to ask

19  you about with respect to Mrs. Morgovsky's appeal before I --

20  or motion before I turn back to Ms. Falk.  But what -- do you

21  have any response to that?

22          **MS. MOEEL:**  No, Your Honor.

23          **THE COURT:**  Okay.

24      So, Ms. Falk, let's turn back to you.  Obviously we

25  don't -- for Mr. Morgovsky, we do not have an issue of an

1    appeal waiver in a plea agreement because there was no plea
2    agreement.
3         Is there anything else you want to say about the question
4    of whether Mr. Morgovsky waived this on appeal by not raising
5    it in a motion pretrial, before we turn to the other issues?
6         MS. FALK:  Only that actually it's my understanding
7    that the claim will still be reviewed de novo because it's a
8    constitutional claim whether he raised it or not.
9         THE COURT:  Right.
10        MS. FALK:  Okay.
11        THE COURT:  So, in other words, this is not the type
12   of claim that a defendant is required -- in your view, this is
13   not the type of claim that a defendant is required to raise in
14   the trial court?
15        You can just proceed through the trial court, get
16   convicted, get sentenced, and then raise an issue like this for
17   the first time on appeal, and it will get the exact same type
18   of review?
19        MS. FALK:  Yes.
20        THE COURT:  That's your position?
21        MS. FALK:  That's our position.
22        THE COURT:  Just to make sure I have it, what are your
23   best couple of cases for that position?
24        MS. FALK:  I have a -- sorry.  I lost it.  On the de
25   novo review issue --

1          **MS. MOEEL:**  Your Honor, I'm sorry, if I may -- while

2     you look at that.

3          **MS. FALK:**  Yes.

4          **MS. MOEEL:**  What I cited in my papers is *United States*

5     *versus Laursen*, L-a-u.  And that's 847 F.3d 1026.

6          **MS. FALK:**  That's where I'm getting the standard.

7          **THE COURT:**  Okay.

8          **MS. FALK:**  Okay.

9          **THE COURT:**  All right.  Now, in light of

10    *Gurrola-Garcia*, how can you -- how could I conclude that

11    there's a substantial question on appeal as it relates to this

12    regulation?

13         **MS. FALK:**  Okay.  Twofold.  Well, so *Gurrola-Garcia*

14    dealt with a predecessor statute, which was 401.

15         **THE COURT:**  Right.

16         **MS. FALK:**  And they did an extensive legislative

17    history analysis of that particular statute in coming to that

18    conclusion.

19         The Ninth Circuit noted that if the regulation extended or

20    modified --

21         **THE COURT:**  Hold on.  Give me one quick second.  Let

22    me pull it up so I can be with you.

23         **MS. FALK:**  Okay.

24         **THE COURT:**  And tell me what page you're on.

25         **MS. FALK:**  Sure.  So, Your Honor, I actually just

```
 1   became aware of Gurrola-Garcia a very short time ago, I will

 2   say.  So --

 3              THE COURT:  Like in this hearing?

 4         MS. FALK:  Like yesterday evening.

 5              THE COURT:  Okay.  Good.

 6         MS. FALK:  And, I'm sorry, I was -- anyway neither

 7   here nor there.

 8        So my understanding of Gurrola-Garcia is it was an

 9   evaluation of an attempt provision --

10              THE COURT:  Right.

11         MS. FALK:  -- under 22 U.S.C. 401, in 1934.

12              THE COURT:  Right.

13         MS. FALK:  So that's not the same statute we're

14   dealing with here.

15              THE COURT:  Right.  It's the predecessor statute.

16         MS. FALK:  Correct.  And that what the Ninth Circuit

17   said at 1077 --

18              THE COURT:  Yes.

19         MS. FALK:  -- is that if the regulation extended or

20   modified Section 1934, it would be invalid.

21              THE COURT:  Yes.

22         MS. FALK:  Right.  And then it came to the conclusion

23   that under the legislative history and analysis of that

24   particular statute, it did not; it was authorized.

25              THE COURT:  I mean, I don't really see the Court's
```

1   ruling as turning on a detailed analysis of the legislative

2   history.

3        There's some brief mention of the sparse history on the

4   Mutual Security Act, but it's mainly just an analysis of the

5   language of the statute which is similar to the language of the

6   statute that we're dealing with here, and in particular an

7   analysis of the word "control"; right?

8        And you have this paragraph on the page that you cited to

9   me, 1077, that says -- starts "Given the wide sweep of the word

10  'control,' Section 127.01 of the regulations is well within the

11  grant of the authority of the president."  And then it goes on

12  to explain why.

13       And that paragraph seems equally applicable here, and so I

14  don't understand why *Gurrola-Garcia* wouldn't control.

15            **MS. FALK:**  Okay.  So I --

16            **THE COURT:**  And then *Gurrola-Garcia* also goes on to

17  address the nondelegation issue and rejects that argument.

18            **MS. FALK:**  Right.  And now that *Gundy* is up on cert, I

19  think that's all --

20            **THE COURT:**  Well, but that's a very different case.  I

21  mean, if you want to -- I mean, that's a case about sex

22  offender registration.  This is a case about foreign affairs

23  power and the executive branch's exercise of the foreign

24  affairs power.

25       And *Gurrola-Garcia* explains that one of the reasons why

1   this regulation is not an improper delegation is because it's a

2   grant of power to the State Department to exercise its foreign

3   affairs authority.

4        So I think regardless of what happens in the case about

5   the sex offender registration, that doesn't -- I don't think

6   there's any reason to believe that it's going to disturb this

7   Ninth Circuit ruling or the number of other Circuit rulings

8   that have reached the same conclusion about nondelegation in

9   this context.

10        **MS. FALK:**  Okay.  So we can agree to disagree on that

11   point.  I read it differently.  I think there's a new wealth

12   of -- I mean, this is opening up nondelegation in a way that it

13   hasn't in many, many years.  And we don't really know.

14        And the standard on appeal is a very low bar for bail

15   pending appeal.  It doesn't have to be a slam dunk winner.  It

16   just has to be a fairly debatable question.

17        **THE COURT:**  I understand.  But you have a Ninth

18   Circuit -- not only -- it seems to me that you may be in a

19   position where not only do you not have a slam dunk winner but

20   you have a Ninth Circuit case that either directly or almost

21   directly precludes your argument, which I presume, by the way,

22   is why Mr. Morgovsky's lawyers didn't want to bring the motion.

23        But be that as it may, who knows what was going on in

24   everybody's minds.  You know, it seems like given the existing

25   Ninth Circuit case law, you have something that is very, very

1     far from a slam dunk winner.

2         And so what -- is there anything else you want to sort of

3     argue on, with respect to *Gurrola-Garcia*, that I might not be

4     thinking about?

5             MS. FALK:  Just that it's a different -- it's a

6     different statute.  I understand it dealt with attempt.  It's

7     not conspiracy.  I mean, conspiracy is a different crime.

8     Attempt --

9             THE COURT:  Talk to me more about why that might

10    matter.

11            MS. FALK:  Attempt is a way of committing a crime.

12    Conspiracy is a whole different crime.  It's not just adding an

13    element.  It's actually creating a mode of criminal liability.

14    So I would distinguish it on that basis.

15            THE COURT:  So, in other words, a regulation that

16    includes attempt would not -- would not constitute an expansion

17    of a statute or the creation of a new crime, but a regulation

18    that includes conspiracy would.

19            MS. FALK:  Yes.  It's one way.

20            THE COURT:  And I understand that point.  And that

21    sort of gets at why I might have filed the motion.  But if you

22    read *Gurrola-Garcia* its rationale does not seem to allow for

23    that distinction to be drawn.

24         I mean, if you read the paragraph that I started to read

25    to you, given the wide sweep of the word "control," what the

1    Court seems to be saying in *Gurrola-Garcia* is that Congress,

2    through this statute, gave the State Department the ability to

3    control the export of arms to other countries.

4         And if somebody is in the process of making that crime

5    happen, if somebody is involved in the process of shipping arms

6    from the United States to Russia, then even if they haven't

7    completed it yet, even if they're only attempting to do so but

8    haven't completed it yet, or even if they've conspired to do so

9    but actually haven't done it yet, that is something that is as

10   much in the interest of the executive branch to criminalize and

11   prevent from happening, and that it would be inconsistent with

12   the ability of the executive branch to effectively enforce a

13   statute like this if they didn't have the ability to, by

14   regulation, criminalize -- attempt is what they were talking

15   about, but equally so conspiracy.

16        So I do understand that there is -- in many contexts there

17   is a very important and meaningful distinction between attempt

18   and conspiracy.  But under the -- as it relates to this case

19   and as it relates to the rationale set forth by the Ninth

20   Circuit in *Gurrola-Garcia*, I'm not sure that it's a distinction

21   with a difference.

22        **MS. FALK:**  So --

23        (Defense counsel confer off the record.)

24        **MS. FALK:**  Ms. Moeel is reminding me of another

25   distinction here, which is that it's not clear that the

1    penalties substantively change with attempt versus what the

2    Congress authorized in terms of, like, attempts.  There's no

3    global attempt statute, right, like there is an aiding and

4    abetting statute.

5        But here there is an alternative of 371.  And that was a

6    five year stat max.  And so not only what this regulation did

7    is enable a different form of liability but it also quadrupled

8    the typical stat max for a conspiracy that Congress would have

9    authorized.

10       And so I think that, coupled with the fact that it's a new

11   form of criminal liability both goes to the nondelegation and

12   to the substantive distinction with *Gurrola-Garcia*, which is

13   what I would raise.

14       **THE COURT:**  Let me ask you -- I mean, let me ask you

15   one other question on this issue, at least one other question.

16       I think normally what we are saying about the difference

17   between attempt and conspiracy is true, right, that attempt is

18   kind of whatever subspecies or whatever of the crime itself,

19   and conspiracy is a separate crime.  Right?

20       But I think historically there have been exceptions to

21   that general idea that a conspiracy is a separate crime.

22   Right?  For example, adultery.

23       And I think maybe -- I think maybe like, you know, selling

24   alcohol back -- back in the days when you were not allowed to

25   sell it was an example of this, that for certain types of

crimes, crimes where it takes two to tango, that there is no --
there is no real meaningful difference between the conspiracy
crime and the substantive crime such that the two crimes do
merge in the way that an attempt crime merges and the actual
substantive crime would merge, okay.

And another question that I wonder about is maybe
violation of the Arms Export Control Act is an example of that.
I mean, in other words, to complete a violation of the Arms
Export Control Act I think it pretty much is always going to
take two to tango.

So maybe in this specific context the crimes of conspiracy
and the substantive crime of violating the statute would merge
such that there's not a meaningful distinction in this context
between attempt and conspiracy.

            **MS. FALK:**  So is what the Court's saying --

            **THE COURT:**  Somebody has got to receive the weapons on
the other end; right?

            **MS. FALK:**  Yeah.  My understanding of the conviction
was just an agreement.  So even if you agreed with somebody
else to provide the articles that then subsequently got
exported, that you could be even held liable for just that
small part of whatever the --

            **THE COURT:**  Right, the conspiracy.  You can be held
liable for the conspiracy.

            **MS. FALK:**  Right.

1          **THE COURT:**  But if you are convicted of both exporting

2     arms to another country in violation of the statute and

3     conspiring to export arms to another country in violation of

4     the statute, perhaps this is one of those rare circumstances

5     where those two crimes would merge, because in both instances

6     it takes two to tango, like in the case of adultery.

7          **MS. FALK:**  Isn't that true with drug distribution?

8     You have to have it and give it to somebody else.  Then, to me,

9     everything merges.

10         I'm not understanding the distinction the Court is drawing

11    here versus any other iteration of conspiracy.

12         **THE COURT:**  Well, maybe you're right about that.

13    Maybe it would depend on the nature of the conspiracy

14    allegations.

15         Maybe if the conspiracy was no broader -- like, I would

16    think -- I don't know.  You probably know better than I do, but

17    if we had a drug case like, you know, possession with intent to

18    distribute meth, and the person was also charged with

19    conspiracy to possess with intent to distribute meth, but the

20    conspiracy was no broader than the act of possessing with

21    intent to distribute meth, I'm guessing you would argue that

22    those two crimes merge.

23         And you would argue, well, maybe if the conspiracy was

24    broader -- and usually the crime would not merge, but if the

25    Government is only charging a conspiracy to do what was done,

1    that the two crimes would merge.

2         MS. FALK:  Part of my handicap here, Your Honor, I

3    have to say I actually don't know in great detail what Mr. -- I

4    assume if the Government could have charged Mr. Morgovsky with

5    direct export that they would have done so, and they wouldn't

6    have relied on this regulation.

7         THE COURT:  I don't know.  I have to tell you one of

8    the problems in this case and one of the reasons we're here is

9    the Government, throughout this case, has been pretty sloppy.

10        So I don't think the Government's decision to charge under

11   this regulation versus that statute or, you know, the

12   Government's decision not to charge this and yes to charge

13   that, I don't assume that there was any careful thought put

14   into any of that.

15        MS. FALK:  Well, it's been hard to discern from the

16   filings.

17        THE COURT:  The first example is the indictment --

18   right? -- which put all these counts together which obviously

19   shouldn't have been put together.  And I think it started there

20   and it just has continued throughout this case.

21        So, you know, I don't know whether -- I'm guessing the

22   Government probably could have charged him with actual

23   exporting night vision goggles.

24        MS. FALK:  Conspiracy is sort of the darling of the

25   prosecutor's arsenal.  It's the easiest thing to prove usually.

1   But until I get more familiar with the entire record in

2   this case, I would have a hard time speaking to whether it

3   would merge in this case or not.

4   **THE COURT:**  And the issue here, right, is that this is

5   not about whether Mr. Morgovsky wins his appeal or not.

6   **MS. FALK:**  Correct.

7   **THE COURT:**  This is about whether he has raised

8   substantial questions that are likely to result in reversal of

9   the conviction.

10   And in some ways that cuts in your favor.  But in another

11   way it cuts against you, I think, which is, you know, you have

12   to -- as we sit here today, I mean, Mr. Morgovsky got convicted

13   of this quite a while ago.  And as we sit here today, you have

14   to show that there are substantial questions.

15   And if you're not -- if, you know, more investigation is

16   needed to show that there is substantial questions, that's

17   fine.  But it means that you haven't met your burden to get the

18   motion granted for bail pending appeal.  And like virtually

19   every other defendant that you represent, he's going to have to

20   go into custody as planned.

21   **MS. FALK:**  But the standard is not that high.  There's

22   no likelihood of success on appeal that I need to show.

23   **THE COURT:**  So you seem to be arguing -- so the

24   statute says that the substantial question is likely to result

25   in reversal.  "Likely to"; right?

1    You're saying the Ninth Circuit has read those words out

2  of the statute?

3          MS. FALK:  "The term 'likely to result in reversal'

4  defines the type of question that must be presented."  *Handy*,

5  761 F.2d, at 1283.  "In the Ninth Circuit, an appellate need

6  not establish that he will probably prevail on appeal."  So,

7  yes, I'm saying the Ninth Circuit has interpreted that language

8  differently --

9          THE COURT:  That's quite a slight of hand.  Does that

10  mean that "likely" is no longer in the statute?

11          MS. FALK:  I'm just --

12          THE COURT:  Is that really still the standard?

13          MS. FALK:  I'm just reading the *Handy* case, Your

14  Honor.

15      It's about what reasonable jurors could differ --

16          THE COURT:  Where?

17          MS. FALK:  I'm at *Handy*.

18          THE COURT:  Oh, yeah, I remember this Judge Reinhardt

19  opinion, yeah.

20          MS. FALK:  Oh, Judge Reinhardt.

21          THE COURT:  What page is it on again?

22          MS. FALK:  1283.  "In short, a substantial question

23  is" --

24          THE COURT:  Sorry.  I apologize.  Let me just get to

25  it.

1          **MS. FALK:**  I'm sorry, I know that Your Honor does not

2     like to be interrupted.

3          **THE COURT:**  I do like to be interrupted.  I wish these

4     conversations were more like a dinnertime conversation.

5          **MS. FALK:**  I've never been good at that in court.

6          **THE COURT:**  Okay.  So I'm now on that page.  So where

7     are you?

8          **MS. FALK:**  Right.  1283.  It says, "The term 'likely

9     to result in reversal or order for a new trial' defines the

10    type of question that must be presented."

11         **THE COURT:**  Is that still good law in the Ninth

12    Circuit?  I see that -- that "likely" does not mean likely?  If

13    it does, that's fine.  But the statute says that it -- a

14    substantial question has to be raised that is likely to result

15    in reversal of the conviction; right?

16    So is there -- do you have any other Ninth Circuit cases

17    that make the point in a somewhat less obtuse way as is made in

18    this case?

19         **MS. FALK:**  *Handy* is kind of old standard.

20         **THE COURT:**  Okay.

21         **MS. FALK:**  If you could just give me a minute, Your

22    Honor.

23         **THE COURT:**  So what is it, like -- is it like the

24    probable cause standard or something like that?  It doesn't

25    need to be greater than 50 percent, but it needs to be

1   probable?

2          **MS. FALK:**  A quote in *Handy* is, "In short, a

3   substantial question is one of more substance than would be

4   necessary to a finding that it was not frivolous."

5          **THE COURT:**  Okay.  But it also has to be likely to

6   result in the reversal of a conviction; right?

7          **MS. FALK:**  It has to be the type of question that

8   would.  In other words, if it's just a complaint about

9   something that would have no import in the case, then even if

10  it's a great complaint it doesn't matter.

11         **THE COURT:**  Okay.

12         **MS. FALK:**  So *Handy* is good law.

13         **THE COURT:**  Okay.

14         **MS. FALK:**  My understanding.

15         **THE COURT:**  Okay.

16         **MS. FALK:**  I have not heard of it being reversed.

17     If I could just have a minute, though, because I want to

18  review this page and make sure I'm not missing any great quotes

19  here.

20         **THE COURT:**  Sure.

21         **MS. FALK:**  What *Handy* basically says, Your Honor, is

22  my understanding is that they revert to the position they had

23  before Congress made this great provision and added that

24  language.  That's what page 1283 is saying.

25     "Most important were the following:  Congress added a new

1   requirement that the question be of a type that, if resolved in

2   defendant's favor, would be likely to result in reversal or a

3   new trial."  And they shifted the burden of proof to the

4   defendant.

5          But they say reviewing the changes as a whole, they

6   don't -- they say great, but then we don't change our prior

7   definition of substantial question, which is basically you just

8   have to raise the bar a little bit above nonfrivolous.

9          I think we have done that with this issue.

10          **THE COURT:**  I see.  Okay.  I understand.  I understand

11   what you and what *Handy* are saying now.

12          So is another way of saying that, that anytime you raise a

13   nonfrivolous question on appeal that you're entitled to bail

14   pending appeal as long as it doesn't fit within the category of

15   crimes -- you know, drug crimes or gun crimes or whatever?

16          **MS. FALK:**  If it's the type of question that would

17   result in a reversal.

18          Can I just give the Court an example?

19          **THE COURT:**  Yes.

20          **MS. FALK:**  So I tried a case in front of Judge Breyer,

21   a gun-in-a-school-zone case.  And the Government kind of forgot

22   that they needed to prove a school zone element, the type of

23   school.  And so we got all this last-minute stuff, and there

24   was a big flurry about who decides whether it's a school within

25   the meaning of the statute, the jury or the judge.

Lots of debates during trial.  The judge ruled.  He's absolutely confident in his ruling.  We raised Rule 29.  He's confident.  He says, after reviewing the law --

**THE COURT:**  Judge Breyer is confident?

**MS. FALK:**  Yes.  We asked for bail pending appeal, and the Judge said, Absolutely.

He turns to the Government and says, "I'm pretty sure that I'm right.  I'm pretty sure that I know exactly how this is going to turn out.  But can I say that it's definitely more than frivolous?"  And so Mr. Burns remains out of custody.

So I do think that the bar is low.  I think bail pending appeal is not some impossible thing to get.  I think people often do get it who have questions that actually relate to their conviction as opposed to what their sentence was because those questions don't actually come up that much in this court.

**THE COURT:**  So it's interesting, right, because, I mean, I guess it depends partly, I guess, on how you define a nonfrivolous question.  And, you know, if you define -- do you define it in the abstract or do you define it with respect to and with reference to existing case law?

Because the existing case law is so strongly against Mr. and Mrs. Morgovsky on this issue that you know that it does seem -- you know, if you're thinking about it from that static standpoint, maybe there is an argument that it's frivolous. But if you're thinking about it from a more dynamic standpoint,

1    and, you know, is this the kind of issue that maybe we could

2    eventually get the law to change on, then I would say it's not

3    frivolous.

4        But in this context how are you supposed to analyze that

5    question?

6            MS. FALK:  Well, and I know the Court is dismissive of

7    the comparison between the *SORNA* case and this, but I read the

8    cert petition on the *SORNA* case, and I find it to be pretty

9    similar in terms of that's the only issue the Supreme Court

10   wanted to hear about.  And I do think it helps Mr. Morgovsky's

11   case on appeal that they granted cert and they're considering

12   it.

13       And the bar being so low and there being so many other

14   factors in this case about keeping him out, at least an

15   objective review, not having been here for two and a half

16   years, just a pure paper review of the factors, which the Court

17   didn't seem like it wanted to hear about in respect to my

18   surrender motion, you know, why there's good reasons to keep

19   him out.  Forget the bail pending appeal motion.  The Court

20   tentatively came out and said that you were only going to hear

21   the motion for bail pending appeal.

22           THE COURT:  Oh, you mean like the health stuff and

23   whatnot?

24           MS. FALK:  The health stuff, the pending charges, the

25   new counsel, and all of that.

1    And he also has a pretty good choice of counsel issue on

2  appeal as well.  We haven't even discussed that.  That would be

3  a sentencing issue.  So I understand it's in a bit of a

4  different posture.

5         **THE COURT:**  Okay.

6         **MS. FALK:**  And I would like to be heard on the

7  surrender.

8         **THE COURT:**  Go ahead.

9         **MS. FALK:**  Because I just want to make sure the Court

10  understands what is going to happen procedurally if the

11  Court -- well, if I don't get automatic -- if the Court denies

12  motion for bail pending appeal, if I don't get the automatic

13  stay in the Ninth Circuit.  I try to be as transparent about

14  that whole process as possible.

15         **THE COURT:**  Can you explain it to me again?

16         **MS. FALK:**  Yes, I will explain it to you.

17    What will happen if the Court denies the motion is that we

18  will have -- and denies an extension of the surrender to allow

19  us to get a motion on file in the Ninth Circuit is we'll

20  basically have 24 hours to get a brief on file with the Ninth

21  Circuit, along with a transcript.

22    So the court reporter has indicated she will be available

23  tonight to prepare the daily of this hearing.  We've been

24  working on trying to convert this to a motion for bail pending

25  appeal at the Ninth.  But it will trigger an automatic stay,

1    just the filing of the motion itself.  So his stay will be

2    continued by operation of the rule.

3         **THE COURT:**  Okay.

4         **MS. FALK:**  What's complicated about that is that

5    there's never been put in place any kind of order system or

6    communication between the Ninth Circuit and the BOP.  There's

7    no way that the BOP would get that information that the stay

8    has been stopped -- a stay has been effective.

9         So as far as the Bureau knows, they think he still has to

10   show up and --

11        **THE COURT:**  Can you explain to me why that is?  That's

12   because no order would actually be issued?  Just by an

13   operation of law, the filing of the motion for bail pending

14   appeal would stay the surrender date --

15        **MS. FALK:**  Yes.

16        **THE COURT:**  -- is that what you're saying?

17        **MS. FALK:**  Yes.  There's an attorney from our

18   appellate unit who has had discussions with the emergency

19   motion attorney -- or maybe it was the duty attorney at the

20   Ninth Circuit who confirmed yesterday that they don't issue

21   emergency orders; that applying for an emergency order to have

22   something to give to the marshal service would really not help

23   the situation.  There's just never been a mechanism put in

24   place on this issue to somehow let the Bureau know that the

25   operation of the rule is at stake.

1   We have definitely confirmed that the Ninth Circuit
2   considers it automatic.
3       **THE COURT:**  Okay.
4       **MS. FALK:**  Okay.  So there's sort of a logistics issue
5   we would have to work out.  And, I mean, I may ask the Court to
6   confirm that rule.  And I would hope that the Court, if we got
7   the brief on file within the time period, would at least issue
8   the order and cite that rule so we'd have something to give the
9   Marshal Service, which could give it to the Bureau of Prisons
10  so they're not issuing warrants.
11      **THE COURT:**  Well, I would think that if the Ninth
12  Circuit's rule is that -- I mean, it's a Ninth Circuit rule, it
13  sounds like, from what you're telling me --
14      **MS. FALK:**  Correct.
15      **THE COURT:**  -- that the filing of the motion for bail
16  pending appeal automatically stays the surrender date.
17      **MS. FALK:**  Right.
18      **THE COURT:**  Okay.  So it seems like it's incumbent
19  upon the Ninth Circuit, if necessary, to figure out how to get
20  that communicated to the Bureau of Prisons.
21      Now, so I don't think that -- you know, the apparent, you
22  know, doubt about whether the Ninth Circuit is going to be able
23  to make that sort of communication, it doesn't seem to me is a
24  reason to extend the surrender date.
25      What I am, you know, potentially more sympathetic to is

1    not making, you know, your life miserable, the Government's

2    life miserable, and the Ninth Circuit's life miserable trying

3    to turn this around in 24 hours or whatever.

4         I mean, I don't think it's a big deal to create a couple

5    of extra days breathing room for everybody to, you know, have a

6    chance to take a look at this.

7         **MS. FALK:**  Okay.

8         **THE COURT:**  So, you know, I would entertain -- I mean,

9    obviously the government may object to still another extension

10   of the surrender date, and I will listen to that.  But I

11   wouldn't be categorically opposed to that in the interest of

12   making life a little bit easier for everybody.

13        **MS. FALK:**  Okay.  So I appreciate that.  And so then

14   let's get to the bigger picture of this case.

15        So the appeal is going to go forward, and there's still

16   pending charges.  And if the bail pending appeal motion is

17   denied by the Ninth Circuit, of course, Mr. Morgovsky will have

18   to report with these pending charges.

19        He can't -- he will report to Taft, and the Government

20   will immediately have to writ him out of Taft.  So he will be

21   out at Santa Rita Jail.

22        **THE COURT:**  Well, not immediately.  I mean, it depends

23   when the trial is on the next charges.

24        **MS. FALK:**  Correct.  And from my perspective, I would

25   want Mr. Morgovsky at Taft, not at Santa Rita Jail.  It makes

1  preparing for trial quite difficult given the distance --

2          **THE COURT:**  You would want him in Alameda County.

3          **MS. FALK:**  No.  For his health reasons I would want

4  him at the Bureau of Prisons, where he's going to get much

5  better care.  In fact, Taft was the institution requested for

6  that reason.

7          **THE COURT:**  Okay.

8          **MS. FALK:**  So I would feel personally -- in other

9  words, I want to put the burden on myself to go visit him at

10 Taft, to prepare for trial, which is going to be very, very,

11 very difficult.

12     So I'll do it if the Court and the Government really feel

13 like there is no way, given what has happened in this case, he

14 can be allowed to stay the surrender until these charges are

15 resolved, I'll do it.  But it's going to be very, very

16 difficult.

17     The only alternative to make him more accessible to me is

18 to bring him up and put him in Santa Rita, which I would be

19 asking the Government to writ him earlier for my convenience at

20 his detriment, which I honestly cannot do.

21     So it makes resolving Counts One through Four quickly more

22 difficult.

23          **THE COURT:**  Okay.  Well, I'm not sure how much of a

24 priority it is to resolve Counts One through Four quickly,

25 quite frankly.

1          Part of me was wondering if we should wait until this

2     appeal is resolved before resolving those counts.

3          **MS. FALK:**  I hadn't even thought about that

4     possibility.

5          **THE COURT:**  You know, what's -- I'm sure the

6     Government would object to that.  But, you know, the Government

7     really wanted to go forward on these counts.  The Government

8     wanted to go forward on sentencing.

9          By the way, it never entered my mind that there would be

10    any problem with going forward on sentencing.  I don't recall

11    anybody suggesting, anybody from either side suggesting that

12    there would be any problem with going forward on sentencing.

13    Even after you teed up the issue, I'm not sure there's any

14    problem with having gone forward on sentencing.  But the most

15    important point, I think, for now is that nobody objected to

16    it.

17         But since that's what the Government wanted to do, and

18    since the Government got a sentence that it presumably -- I

19    don't think it's quite what the Government wanted, but

20    presumably the Government feels it accomplished more or less

21    what it wanted to accomplish, maybe we should just wait until

22    after this appeal is resolved before we go to trial on the

23    other counts.

24         **MS. FALK:**  Great.

25         **THE COURT:**  Okay.  So that addresses that issue at

```
 1    least.
 2              MR. SAMPSON:  We do --
 3              THE COURT:  I haven't decided the question.  I'm just
 4    saying that that would address the issue --
 5              MS. FALK:  Yes.
 6              THE COURT:  -- that you're raising for now.
 7              MS. FALK:  Okay.
 8              THE COURT:  Anything else you want to raise?
 9              MS. FALK:  No.  I mean, if that's going to be --
10    that's a big issue.
11         So I have provided the Court with a lot of briefing about
12    Mr. Morgovsky's health issues.  He was designated to the place
13    that he requested.  There are a number of appointments he has,
14    but I suspect they could be accomplished while this motion for
15    bail pending appeal is being litigated.
16         I don't know how fast the Circuit decides those issues,
17    but I imagine they're going to give the Government a fair
18    opportunity to respond and then me to reply.
19              THE COURT:  If they need to respond.
20         Okay.  Anything else?  I know Mr. Morgovsky was trying to
21    talk to you earlier.  Do you want to take a quick opportunity
22    to chat with Mr. Morgovsky and see if there's anything else
23    that he would like you to convey?
24              MS. FALK:  Sure.  Thank you.
25              THE COURT:  Go ahead.
```

1          (The defendant conferred with counsel off the record.)

2          **MS. FALK:**  Thank you, Your Honor.

3       The only request is I think perhaps I was too short on

4    Mr. Morgovsky's health issues, the importance of the March

5    appointment.

6       I know the Court thought about potentially giving us more

7    time to get a brief together for the Ninth Circuit in the event

8    the Court denies the motion for bail pending appeal.  But I

9    don't know if there's any way we could work some kind of stay

10   until the end of March to accomplish that purpose for him so he

11   could get a pacemaker installed before he goes to the Bureau,

12   if he needs one.

13         **THE COURT:**  Okay.  I understand that argument.

14         **MS. FALK:**  Okay.

15         **THE COURT:**  Okay.

16         **MS. FALK:**  Otherwise, there are some complications on

17   this with respect to the shutdown and the preparation of a

18   daily transcript.  It's a lot of money to ask the court

19   reporter to prepare a daily transcript as opposed to a 30-day

20   transcript.  So to the extent the Court waits a week versus 30

21   days, I certainly could get a brief together in that period of

22   time and file it exactly on the 30 days.

23      But I have to at least ask, because we're in that posture

24   right now with respect to, you know, Mr. Kalar very rarely

25   authorizes daily transcript.  Certainly never during trial.  It

1    really has to be extraordinary.  And I'm not sure even -- I

2    think it's either daily -- I'm not sure what the breakdown of

3    the time periods are, but it's quite a bit of difference to

4    have a 30 day versus a daily.

5              THE COURT:  Okay.

6              MS. MOEEL:  Your Honor, briefly, before the Government

7    looks like they want to jump in.

8         With respect to Mrs. Morgovsky, I would ask, if you are

9    considering a stay of the surrender date for Mr. Morgovsky to

10   file his appeal in the Ninth Circuit, I would make that same

11   request.

12        Your Honor knows, I think I mentioned that there is a

13   motion to dismiss the appeal pending in the Ninth that they

14   haven't taken up and a motion for Mrs. Morgovsky to obtain

15   appointed counsel, which looks like won't actually be resolved

16   until the motion to dismiss is resolved.  So it may be that the

17   Ninth decides to dismiss our appeal.  But, in any event, I will

18   need to file a motion for bail pending appeal if the Court

19   denies her here.  So we join in that surrender request.

20        And I've learned that the Bureau of Prisons has looked at

21   your amended order recommending a designation for her locally

22   within California, but they have decided to stay with their

23   original designation in Minnesota.

24        And the FIRST STEP Act does say that the Bureau of Prisons

25   shall designate within 500 miles.  So I have to just figure out

1    if there's anything I can do, either with the BOP or otherwise,

2    to ask the BOP to reconsider that designation.

3         So that would be another reason for a stay of the

4    surrender date.

5              THE COURT:  Okay.

6         MR. SAMPSON:  With respect to Mrs. Morgovsky, Your

7    Honor, Mrs. Morgovsky in June stood before this Court.  She

8    told you that she understood that she was waiving her right to

9    appeal; she was waiving her right to attack a sentence other

10   than ineffective assistance.  She told you she was happy with

11   her attorney.

12        On October 31st, with Ms. Moeel being her attorney at that

13   point, she told the Court that she was sorry for committing her

14   crimes and that she was going to accept -- I believe she said

15   she was going to accept her sentence.

16             THE COURT:  The fact that she says she's sorry doesn't

17   have anything to do with this.

18             MR. SAMPSON:  Well, Your Honor --

19             THE COURT:  People have a right, within the confines

20   of whatever they've waived, to appeal.  So the fact that she

21   said sorry is not something to be used against her in any way.

22             MR. SAMPSON:  It is not that she said sorry, Your

23   Honor, it's that she acknowledged that what she did constituted

24   a crime.

25        But now, Your Honor, with respect to the bail on appeal

1    issue, having been sentenced she's asking that you delay the

2    sentence so that she does not have to serve the sentence that

3    she agreed she would do while she's violating her plea

4    agreement by pursuing an appeal that she waived.

5        Your Honor, I think it's inappropriate for

6    Mrs. Morgovsky -- for this Court to continue her bail so that

7    she can pursue an appeal that she waived.

8        With respect to Mr. Morgovsky, Your Honor, 3143 and *Handy*

9    I do not believe stand for the proposition that if you're able

10   to just allege an issue with a Hail Mary chance of succeeding,

11   that that's sufficient for purposes of 3143(b).

12       And, Your Honor, there will not be an order for a new

13   trial.  He pled guilty.  The sentence -- it is extremely

14   unlikely that he would be sentenced to a term that would not

15   include any imprisonment.

16       **THE COURT:**  It wouldn't be an order for new trial; it

17   would be reversal of conviction; right?  If there is success on

18   appeal on this argument that you can't be convicted under this

19   regulation because the regulation doesn't create a crime, then

20   the conviction would be reversed; right?

21       **MR. SAMPSON:**  Well, that goes back to Title 22.  The

22   statute creates the crime.  The regulation defines it.  And

23   so --

24       **THE COURT:**  That's presuming you're going to win your

25   argument.  And the point is that if they win or if they -- if

1    they have raised a substantial question on appeal, that where

2    if they won not only would it likely result in reversal of the

3    conviction, it would definitely result in reversal of the

4    conviction.

5              MR. SAMPSON:  On Count Nine, yes, Your Honor.  If the

6    Court --

7              THE COURT:  So why are you talking about the fact that

8    it's not going to lower the sentence and it's not going to

9    result in a new trial?  I mean, it would result in the

10   conviction being reversed.

11             MR. SAMPSON:  It would result in the conviction on

12   Count Nine being reversed.

13             THE COURT:  Right.

14             MR. SAMPSON:  There's two money laundering counts.

15   The Court sentenced Mr. Morgovsky to nine years on those counts

16   concurrently.  And so it is unlikely that he would receive a

17   zero jail sentence.

18             THE COURT:  Does it matter?  I meant to ask that

19   question to Ms. Falk.  But the money laundering, does it matter

20   that the money laundering was in furtherance of this

21   conspiracy?

22             MR. SAMPSON:  It does not say that the money

23   laundering is in furtherance of the conspiracy, Your Honor.  It

24   says it's to promote the carrying on of violations of the ITAR

25   statute.

1              THE COURT:  What's the difference?

2              MR. SAMPSON:  Well, they would have to succeed in not

3    just winning on the idea that the conspiracy is not allowed by

4    statute but that the entire statute itself is invalidated.

5         And, Your Honor, just going back 30 minutes or so, I'm not

6    aware of any authority that says that a conspiracy has to be in

7    a different statute than the substantive crime.

8         And, Your Honor, there's only one criminal statute that --

9    under Title 22, as far as I'm aware.  It says violations of

10   this statute and any -- of this title and the rules promulgated

11   thereunder are punishable by 20 years.

12        So it provides the penalty, and it says --

13             THE COURT:  I'm sorry, could you say that one more

14   time?  I apologize.  I didn't follow.

15             MR. SAMPSON:  It said that violations --

16             THE COURT:  What said?

17             MR. SAMPSON:  The criminal statute 2778, 22 U.S.C --

18             THE COURT:  Okay.

19             MR. SAMPSON:  -- says that violations of the rules

20   promulgated under the title, Title 22, governing exports, are

21   punishable by 20 years of prison.  And it then explicitly

22   delegates it to the agency to define the violations of that

23   statute.

24        So, Your Honor, the statute itself is a -- it says how

25   it's violated, although it delegates it to the State

1    Department, but it dictates the penalty.

2              THE COURT:  Right.

3              MR. SAMPSON:  And so, Your Honor, it's a little -- it

4    is like the case -- and I don't have it before me, Your Honor,

5    but the Ninth Circuit case from the '80s, that Your Honor

6    mentioned, it does sound substantially similar to that and

7    substantially different from the 10(b)(5), the securities case

8    that was cited.  Because under that the regulation -- not the

9    statute, but the regulation -- didn't say conspiracies.  In

10   this case the regulation does.

11        And so, Your Honor, for those reasons the Government's

12   position is that it is unlikely to result in the categories of

13   relief that 3143 provides for, and that although it may not be

14   a frivolous claim, it is not one that warrants -- not one that

15   raises a substantial question of law, at least the way the

16   Ninth Circuit has ruled in the case that Your Honor mentioned.

17             THE COURT:  Let me ask a question about that.  Hold on

18   one second.  Pulling up this statute.  I know the language is

19   parroted in the papers, but I just want to pull up the actual

20   statutory language to make sure I have it in front of me, the

21   bail pending appeal statute.

22             MR. SAMPSON:  3143.

23             THE COURT:  So what you're saying is that even if

24   this -- even if they were to succeed on this appeal, and even

25   if the Ninth Circuit were ultimately to rule that you should

1    not have charged them under this regulation, that although that

2    would be likely to result in reversal on Count Nine, it would

3    not be likely to result in reversal on Counts Ten and Eleven.

4            **MR. SAMPSON:**  And certainly -- I'm sorry, Your Honor.

5            **THE COURT:**  And, therefore, the statute is not

6    satisfied.

7            **MR. SAMPSON:**  Yes, Your Honor.

8        And, further, that it would not result in a sentence -- it

9    would not result in a reduction down to less than the total

10   amount of time for the appeal process, which would likely be a

11   year and a half or more from the nine years he was sentenced.

12           **THE COURT:**  Okay.  But if you are to read the

13   statute -- I feel like I had a case where this came up one

14   time.

15       If you were to read the statute literally, you might say,

16   well, who cares that it's not going to result in reversal on

17   Counts Ten and Eleven?  Because it is going to -- it is the

18   type of substantial question that would likely result in the

19   reversal of conviction on Count Nine.

20       Is there any case law that says, well, even if you meet

21   that standard as to a particular count, if you would remain in

22   prison other counts, it doesn't -- you don't win your motion?

23           **MR. SAMPSON:**  I think that's assumed by subsection 4.

24           **THE COURT:**  Okay.  Well, but it's "or."  The statute

25   says "or."  It lists 1, 2, 3, and 4, and --

1          MR. SAMPSON:  That's correct, Your Honor.  But --

2          THE COURT:  I don't think you're right about --

3          MR. SAMPSON:  It's any one of those four.

4          THE COURT:  Right.  So it would be reversal in this

5     case.  So if you're going to apply a strictly literal reading

6     of the statute, you might say it doesn't matter about Counts

7     Ten and Eleven because it would result -- would likely result

8     in a reversal on Count Nine.

9          But my vague memory is that there is case law on this

10    issue, but you didn't cite it to me, and -- you know, just like

11    you didn't cite the *Gurrola-Garcia* case.

12         I believe there's case law that says if you -- you know,

13    you don't get to win on a motion for bail pending appeal if

14    there are other counts that would not be disturbed that would

15    keep you in custody.  But I need to go back and research that.

16         MR. SAMPSON:  But to be fair, Your Honor, the

17    defendant is arguing that those would fail as well.  The

18    Government just disagrees with that characterization.

19         THE COURT:  Right.  But you argue that they wouldn't.

20    So one step in making that argument is the fact that they

21    wouldn't matter for purposes for the motion for bail pending

22    appeal.

23         MR. SAMPSON:  Yes, Your Honor.  And I will look for a

24    case that covers that.  I'm sure Your Honor will find it.

25         THE COURT:  Don't worry about it.

1      **MR. SAMPSON:**  But, Your Honor, I think that

2  practically speaking if that is the case that other counts

3  would stand, despite a constitutional question on one count,

4  unless they all fall, Your Honor, and unless the Court finds

5  that it would have sentenced him to less than the period of the

6  appeal, then it doesn't trigger a 3143(b).

7      **THE COURT:**  Okay.  All right.  Anything else from the

8  Government?

9      **MR. SAMPSON:**  Your Honor, with respect to reasons that

10  are not -- that are not covered by 3143, Mr. Morgovsky's health

11  and logistic issues, they are just not covered -- they are just

12  not a consideration that the Court should make.

13      Additionally, Your Honor, I think it is inappropriate to

14  wait for the entire appeal process to resolve before taking up

15  Counts One through Four, Your Honor.  The Government is not

16  agreeing that if it's happy with the result on appeal that it

17  would dismiss those counts.

18      **THE COURT:**  It would be up to you whether to dismiss

19  them or not.  And you may well not dismiss them.  But in

20  terms -- but the Government wanted to go forward with these

21  counts and wanted to go forward with sentencing -- I don't

22  know.

23      **MR. SAMPSON:**  The Court didn't give us that chance.

24  Actually, the Court found that because my office didn't file a

25  reply it waived that issue, and it decided the order.

1    **THE COURT:**  But you wanted to go forward with

2    sentencing after Mr. Morgovsky was convicted of this count;

3    right?

4    **MR. SAMPSON:**  I looked at that issue.  And we didn't

5    ask, Your Honor.  There was a hearing set for July 3rd.  That

6    was three weeks after the trial date that was supposed to

7    happen after the guilty plea.  And the Court set the matter on

8    a particular schedule.  Neither party raised or objected to the

9    order that the Court chose.

10   **THE COURT:**  Right.  So now that we've gone down that

11   path, and we now have this situation where a judgment has been

12   entered against Mr. Morgovsky on this count, on these three

13   counts -- sorry -- and has been sentenced and is appealing the

14   sentence, in the grand scheme of things, like considering

15   priorities and considering all the things the Government could

16   spend its money on, you know, some issues are more urgent than

17   others, and there's, of course, a docket management issue from

18   the Court's standpoint, as well, why -- what's the problem with

19   waiting until the appeal is resolved before going forward on

20   the other counts?

21       It would be the Government's prerogative, of course, to go

22   forward on those counts regardless of what happens on appeal.

23   But what's -- what time sensitivity is there?

24   **MR. SAMPSON:**  Well, Your Honor, without -- without

25   violating Rule 11, Your Honor, the result -- the litigation on

```
 1   appeal may affect the Government's decisions with respect to
 2   the other counts.
 3           THE COURT:  Okay.  Well, all the more reason then to
 4   wait, it sounds like.
 5           MR. SAMPSON:  Well, it may not be as favorable to
 6   Mr. Morgovsky --
 7           THE COURT:  Well, that's up to him and you.  That has
 8   nothing to do with when I schedule the trial.
 9           MR. SAMPSON:  Understood, Your Honor.  The Government
10   does want to get to a resolution of this case.  And we have
11   tried many, many times to do so.  Not just with scheduling a
12   trial, Your Honor, but with discussions with Mr. Morgovsky's
13   attorneys.
14           THE COURT:  Okay.
15           MS. FALK:  So we are being diligent.  I understand the
16   Court has not missed an opportunity to be critical about the
17   Government's case with respect to One through Four when it
18   comes up, but we do --
19           THE COURT:  Remind me what One through Four are.
20           MR. SAMPSON:  Those are the remaining bank fraud
21   counts.
22           MS. FALK:  The Hawaii counts.
23           THE COURT:  The Hawaii counts.  Critical of the
24   Government's case on the Hawaii counts?  You mean because you
25   put them together with the other counts?
```

1          **MR. SAMPSON:**  No, no.  The Court -- well, the Court

2     has --

3          **THE COURT:**  What other ways have I been critical?

4          **MR. SAMPSON:**  The Court has mused many times about the

5     Government's priorities and why it wants to pursue those counts

6     at all.

7          **THE COURT:**  Oh, in light of these other counts.  Okay.

8     Anyway, I don't recall that, but I'm sure the criticism was

9     justified.

10         Okay.  Anything else that you want to say?

11         **MR. SAMPSON:**  No, Your Honor.

12         **THE COURT:**  All right.  I did forget to ask you about

13    the money laundering counts.

14         **MS. FALK:**  Yes, Your Honor.

15         It's our position that -- there's no Ninth Circuit

16    authority that I found, but there's Tenth Circuit authority,

17    and Eighth Circuit authority in *O'Hagan*, about if the

18    underlying activity is reversed, and that's the unlawful

19    specified activity of the conviction that the money laundering

20    rests on and the money laundering convictions are reversed as

21    well.

22         And in the *Rahseparian* case that I cited in our papers, a

23    Tenth Circuit case --

24         **THE COURT:**  Could I ask you a question about that?

25    Does it matter the reason why the underlying -- the conviction

1   for the underlying count is reversed?

2          MS. FALK:  Not to my knowledge, it does not matter.

3   And I also point to the open plea.  The basis of the plea on

4   the money laundering was the unlawful activity, the proceeds of

5   his agreement.

6          THE COURT:  Right.

7          MS. FALK:  So if he didn't violate the law by entering

8   that agreement, then there was no unlawful proceeds.  And,

9   therefore, the money -- we will be very strongly arguing that

10  money laundering counts will be reversed as well.

11         THE COURT:  But the idea is the proceeds of his

12  unlawful activities, namely his -- the successful conspiracy to

13  export arms to Russia were laundered; right?  Is that -- is

14  that the upshot?

15         MS. FALK:  The proceeds of the agreement.

16         THE COURT:  Okay.  What's the difference?  It's the

17  proceeds of successfully -- it's the proceeds relating to

18  shipping arms; right?

19         MS. FALK:  The proceeds of his agreement.

20         THE COURT:  Okay.

21         MS. FALK:  That's all he admitted in the open

22  application.

23         THE COURT:  The agreement --

24         MS. FALK:  Is the proceeds of his agreement.

25         THE COURT:  To?

1          **MS. FALK:**  Export.

2     So if by agreeing to export and not actually exporting he

3  didn't violate the law, then any proceeds he generated are not

4  unlawful because it was only by means of that agreement.

5     So I just would refer back to the open plea form --

6          **THE COURT:**  Okay.

7          **MS. FALK:**  -- and looking at what he actually admitted

8  to doing that was the basis of his conviction on money

9  laundering.

10         **THE COURT:**  Okay.

11         **MR. SAMPSON:**  That open plea form may say "agreement,"

12  Your Honor.  The indictment does not say that they are the

13  proceeds of the conspiracy.  It says they're for promoting and

14  carrying on of unspecified unlawful activity, specifically the

15  exportation of defense articles without a license.

16     So, Your Honor, I think that his open plea to Ten and

17  Eleven would stand unless 2778 as a whole was completely carved

18  out and invalidated.

19         **MS. FALK:**  We would just argue there's no factual

20  basis for his conviction.

21         **THE COURT:**  Another interesting issue.

22         **MS. FALK:**  Another interesting issue, Your Honor.

23  Another substantial question.

24         **THE COURT:**  Not sure if it's substantial, but it's

25  interesting.

1      Okay.  Anything else?

2           **MS. FALK:**  No, Your Honor.

3           **THE COURT:**  Okay.  Thank you.

4           **MS. FALK:**  Except for timing.

5           **THE COURT:**  Sorry, let's talk about timing.

6           **MS. FALK:**  Timing is important.

7           **THE COURT:**  Yeah.  So here's what I'm going to do.  I

8      will issue a written ruling on this tomorrow, okay.

9           **MS. FALK:**  Okay.

10          **THE COURT:**  And are you surprised -- you look

11     surprised.  Do you think I should do it today?

12          **MS. FALK:**  No.  I was only surprised -- I don't know

13     why I was surprised.  I was surprised because I thought the

14     Court was going to give us some extra time.

15          **THE COURT:**  I'm going to give you a little extra time.

16          **MS. FALK:**  Okay.

17          **THE COURT:**  The surrender date is when?

18          **MS. FALK:**  Friday.

19          **THE COURT:**  Friday.  Okay.

20     So what I'm going to do is I'm going to extend the

21     surrender date by seven days, to make life a little bit easier

22     or less difficult for everybody.  So the new surrender date is

23     the 25th.  I will issue a written ruling tomorrow.  And that

24     will give everybody a little bit of breathing room.

25          But I'm instructing you to contact the Ninth Circuit

1    motions unit to let -- immediately, to let them know that I

2    plan to issue a written ruling tomorrow, so that they can give

3    you any deadlines that they want to give you for any briefs

4    that they're expecting you to file.

5            **MS. FALK:**  Oh, I think the way that it would work is

6    just we would -- we would have to file the brief before the

7    surrender date.  And then we get the automatic -- what I still

8    need to iron out is how we communicate that to the BOP.

9            **THE COURT:**  Okay.  Nonetheless, I want you to contact

10   the Ninth Circuit's motions unit to tell them I'll issue a

11   written ruling tomorrow, so if the Ninth Circuit needs to

12   scramble to do anything they get notice for it.

13           So I know that seven days is not a ton of time.  I

14   understand the arguments for why -- the various arguments for

15   why you think you should get more time.

16           I don't -- assuming that I do deny the motion -- which I'm

17   strongly leaning towards doing, but I want to ruminate on what

18   we've discussed here today.  Assuming I deny the motion, I

19   don't believe it's appropriate to grant more time than seven

20   days.  And the seven days is simply to make life a little

21   easier for the lawyers and the appellate court.

22           **MS. FALK:**  Great.  Your Honor, will the Court issue a

23   written order staying the surrender for the seven days?

24   Because I do have to get that to the Bureau of Prisons.

25           **THE COURT:**  I need to do a written order?  Sure.

1          **MS. FALK:**  They are really pressuring me to find out

2    what's happening because of the bed space.

3          **THE COURT:**  I will happily do that.  I will do that

4    today.  And thank you for your time.

5          **MR. SAMPSON:**  Your Honor, I would just add one more

6    thing.  I would ask that the Court set a status hearing on

7    Counts One through Four and exclude time between now and then.

8      Last night I produced to Ms. Falk a preliminary exhibit

9    list on those counts.  It will obviously be updating.  But she

10   and I have been discussing a possible future trial on those

11   counts.  For that reason, I would ask the Court to exclude time

12   between now and a future status date on those counts.

13         **THE COURT:**  So my plan is to vacate all deadlines and

14   resume after the appeal is resolved.  So I assume, in light of

15   that, there is no objection to the exclusion of time.

16         **MS. FALK:**  Your Honor, that's my client's -- I have to

17   make sure.

18         **THE COURT:**  Of course.

19     (The defendant conferred with counsel off the record.)

20         **MS. FALK:**  Your Honor, we don't have any objection to

21   the exclusion of time and kicking the trial until after the

22   appeal is resolved.

23         **THE COURT:**  Okay.  So all deadlines are vacated as

24   they relate to the remaining counts, and a trial on those

25   matters will be scheduled after the appeal is decided.  And the

1  parties can schedule a status conference with the Court, can

2  reach out and schedule a status conference with the Court after

3  the appeal is resolved.

4       **MR. SAMPSON:**  Your Honor, could the Court's minutes

5  reflect that the Government's request for a trial date is

6  overruled?  The Government may request to have that reviewed or

7  reconsidered.

8       **THE COURT:**  Sure.

9       **MR. SAMPSON:**  Thank you.

10       **THE COURT:**  Okay.  Great.  Thank you.

11       **MS. FALK:**  Thank you, Your Honor.

12       **MR. SAMPSON:**  Thank you.

13     (At 3:15 p.m. the proceedings were adjourned.)

14                    -  -  -  -

15               CERTIFICATE OF REPORTER

16       I certify that the foregoing is a correct transcript

17  from the record of proceedings in the above-entitled matter.

18

19  DATE:   Thursday, January 17, 2019

20

21

22               _Katherine Sullivan_

23     _____

24     Katherine Powell Sullivan, CSR #5812, RMR, CRR
                  U.S. Court Reporter

25