Docket No. 18-10448

# IN THE UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

———

## UNITED STATES OF AMERICA

**Plaintiff-Appellee,**

**v.**

## IRINA MORGOVSKY,

**Defendant-Appellant.**

_____

On Appeal from the Judgment and Conviction in
District Court Case No. CR-16-411-VC
In the United States District Court for
the Northern District of California
(Hon. Vince Chhabria, U.S.D.J., Presiding)

## APPELLANT IRINA MORGOVSKY'S

## MOTION FOR BAIL PENDING APPEAL

KAREN L. LANDAU, CSB # 128728
Attorney at Law
2626 Harrison St.
Oakland, California 94612
(510) 839-9230
Attorney for Appellant
Irina Morgovsky

# TABLE OF CONTENTS

APPELLANT'S MOTION FOR BAIL PENDING APPEAL ...................................1

1. Preliminary Statement.................................................................................2

2. Standard For Bail Pending Appeal ..............................................................2

3. The District Court Ruling ............................................................................4

4. It is Fairly Debatable Whether Morgovsky's Waiver of Her Right to Appeal is Valid, and Further, it Whether the Appellate Waiver Applies to the Questions Sought to be Raised...........................................................................................5

   A. The Waiver Cannot Bar the Question to be Appealed. ......................6

   B. The Waiver Is Invalid, Because the District Court Violated Fed. R. Crim. P. 11. ...................................................................................................8

   5. It Is Fairly Debatable Whether The Regulation Purporting to Criminalize Conspiracy to Violate 22 U.S.C. § 2278 is *Ultra Vires*. ......................................11

   A. It is Fairly Debatable Whether section 2278 Violates the Nondelegation Doctrine. .........................................................................................19

   6. It is Fairly Debatable Whether Former Counsel Provided Ineffective Assistance in Failing to Recognize the Potential Invalidity of the Charge of Conspiracy to Violate the AECA, and Further, in Recommending a Guilty Plea to a Non-existent Charge. ...................................................................................23

   CONCLUSION ...................................................................................................25

i

# TABLE OF AUTHORITIES

**Cases**

*Barefoot v. Estelle*, 463 U.S. 880 (1983) ....................................................................3

*Castro Cortez v. INS*, 239 F.3d 1037 (9th Cir. 1999) ...............................................15

*Central Bank N.A. v. First Interstate Bank*, 511 U.S. 164 (1994) ...........................16

*Class v. United States*, 138 S. Ct. 798 (2018) ................................................... passim

*Dixon v. United States*, 548 U.S. 1 (2006) ................................................................12

*Gundy v. United States*, 138 S. Ct. 1260 (2018) .......................................................22

*In re Glenfed Inc.*, 60 F.3d 591 (9th Cir. 1995) ........................................................16

*Iselin v. United States,* 270 U.S. 245 (1926) ............................................................15

*J.W. Hampton Jr. & Co. v. United States*, 276 U.S. 394 (1928) .............................19

*Lafler v. Cooper,* 132 S. Ct. 1376  (2012) ................................................................24

*Massaro v. United States*, 538 U.S. 500 (2003) .......................................................24

*Mistretta v. United States*, 488 U.S. 361 (1989) .................................................. 7, 19

*Nichols v. United States,* 136 S. Ct. 1113 (2016) .....................................................15

*Panama Refining Co. v. Ryan,* 293 U.S. 388 (1935) ................................................19

*Touby v. United States*, 500 U.S. 160 (1991) ................................................. 7, 20, 21

*United States v. Arqueta-Ramos,* 730 F.3d 1133 (9th Cir. 2013)............................10

*United States v. Bibler*, 495 F.3d 621 (9th Cir. 2007)..................................................6

*United States v. Chi Tong Kuok*, 671 F.3d 931 (9th Cir. 2012) ..............................21

*United States v. Covian-Sandoval*, 462 F.3d 1090 (9th Cir. 2006) ..........................9

*United States v. Dhafir*, 461 F.3d 211 (2d Cir. 2006) ..............................................23

*United States v. Dominguez-Benitez*, 542 U.S. 74 (2004) ..........................................9

*United States v. Erskine*, 355 F.3d 1161 (9th Cir. 2004)............................................4

*United States v. Evans*, 333 U.S. 483 (1948)..............................................................20

*United States v. Garcia,* 340 F.3d 1013 (9th Cir. 2003)..............................................3

*United States v. Gurrola-Garcia*, 547 F.2d 1075 (9th Cir. 1974) .................. passim

*United States v. Handy*, 761 F.2d 1279 (9th Cir. 1985) .............................................3

*United States v. Kozminski*, 487 U.S. 931 (1988)....................................................12

*United States v. Nichols*, 784 F.3d 666 (10th Cir. 2015)........................................21

*United States v. Odachyan*, 749 F.3d 798 (9th Cir. 2014)........................................6

*United States v. Peña*, 314 F.3d 1152 (9th Cir. 2003)........................................ 9, 10

*United States v. Pepe*, 895 F.3d 679 (9th Cir. 2018)................................................17

*United States v. Portillo-Cano*, 192 F.3d 1246 (9th Cir. 1999) ................................6

*United States v. Quinn*, 401 F. Supp. 2d 80 (D.D.C. 2005) ............................ 15, 18

*United States v. Santos*, 553 U.S. 507 (2008)............................................................12

*United States v. Sineneng-Smith*, 910 F.3d 461 (9th Cir. 2018)............................18

*United States v. Spear*, 753 F.3d 964 (9th Cir. 2014)............................................11

*United States v. Washington*, 869 F.3d 193  (3d Cir. 2017)....................................24

*Vonn v. United States,* 535 U.S. 55 (2002) ...............................................................9

## Statutes

18 U.S.C. § 3143(b)(1).............................................................................................2, 3

18 U.S.C. § 793(g) ....................................................................................................14

18 U.S.C. § 794(c) .....................................................................................................14

18 U.S.C. § 831(a)(9).................................................................................................14

22 C.F.R. § 127.1(a)(4) ............................................................... 12, 13, 14, 21

22 U.S.C. § 2278.......................................................................................... passim

50 U.S.C. § 4610(b)(1)..............................................................................................14

## Rules

Fed. R. Crim. P. 11.......................................................................... 8, 9, 10, 11

Fed. R. Crim. P. 11(b)(1)(G)......................................................................................9

## APPELLANT'S MOTION FOR BAIL PENDING APPEAL

Irina Morgovsky moves for bail pending appeal. Mrs. Morgovsky is currently on release. Her self-surrender date is stayed pursuant to Ninth Cir. R. 9-1.2(e).

Ms. Morgovsky previously moved for bail pending appeal in the United States District Court, which denied her motion. A copy of the court's order is attached at Exhibit 1-2.[1] Importantly, the district court concluded, by clear and convincing evidence, that Mrs. Morgovsky was neither a flight risk nor a danger. *Id.* Nonetheless, the court concluded that she did not present a substantial question for appeal.

The only question for this Court is whether Mrs. Morgovsky's appeal raises a substantial question for appeal, that is, one that is fairly debatable among jurists of reason. Absent a grant of bail pending appeal, Mrs. Morgovsky is likely to serve her entire term of imprisonment. The average appeal in this Court is resolved in 18 months – the exact length of Mrs. Morgovsky's sentence. Exh. 72. Mrs. Morgovsky will serve, at most, 16 months and six days of her sentence, but is more likely to be required to serve between 9-12 months before being released to a halfway house. Thus, absent a grant of bail pending appeal, she will serve her entire sentence.

---

1 The exhibits are numbered consecutively as with an Excerpts of Record.

1

## 1. Preliminary Statement

Immediately prior to the start of a scheduled jury trial, Irina Morgovsky pleaded guilty to conspiracy to violate the Arms Control Export Act, a violation of 22 U.S.C. § 2278(c). Exh. 79-94. Her husband and codefendant, Naum Morgovsky, pleaded guilty to the same charge. [2] The government agreed to dismiss at sentencing an additional charge against Mrs. Morgovsky, involving misuse of a passport.

Mrs. Morgovsky pleaded guilty pursuant to a written plea agreement. Exh. 94. On October 31, 2018, the district court departed downward from a sentencing guideline range of 37-46 months to impose a sentence of 18 months' imprisonment and a $15,000 fine. *See* CR 366. She filed a timely notice of appeal. Exh. 70.

## 2. Standard For Bail Pending Appeal

To qualify for release pending appeal, a defendant must satisfy the conditions established by 18 U.S.C. § 3143(b)(1). Section 3143(b)(1) provides for release pending appeal if the judicial officer finds -

> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released...:[and]

---

2 Mr. Morgovsky pleaded guilty without a plea agreement.

2

(B) that the appeal is not for the purposes of delay and raises a substantial question of law or fact likely to result in

(i) reversal;

(ii) an order for new trial;

(iii) a sentence that does not include a term of imprisonment; or

(iv) a reduced sentence to a term of imprisonment less than the total time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b)(1); *see United States v. Handy*, 761 F.2d 1279, 1283 (9th Cir. 1985).   As previously stated, the questions of flight risk and danger have already been resolved in favor of Ms. Morgovsky.

A "substantial" question for the purposes of bail is one about which reasonable jurists could differ.  *See Barefoot v. Estelle*, 463 U.S. 880, 892-93 (1983).  The defendant does not need to show a likelihood of success on appeal. *Handy*, 761 F.2d at 1283. The term "likely to result in reversal or an order for a new trial" defines the "type of question that must be presented." *Id*.  A district court's legal conclusions, including whether a question is substantial, are reviewed de novo.  *United States v. Garcia,* 340 F.3d 1013, 1015 (9th Cir. 2003).

3

## 3. The District Court Ruling

The district court concluded that Mrs. Morgovsky did not present a substantial question for appeal. The court first noted that she had failed to move to dismiss the indictment on the basis that count nine, which charged only conspiracy to violate the arms export control act, was *ultra vires*. Exh. 1. The court noted, therefore, that the issue would be reviewed for plain error.

The court further concluded that Mrs. Morgovsky had waived, in her plea agreement, her right to appeal the issue to be raised. The court rejected the notion that the Supreme Court's decision in *Class v. United States*, 138 S. Ct. 798 (2018), supported defendant's argument that the issue could be raised regardless of the guilty plea and waiver of the right to appeal. Exh. 2. Finally, the court concluded that case authority foreclosed her substantive legal argument.[3]

---

3 During the hearing, the judge expressed doubt that Mrs. Morgovsky could show any prejudice because she received an 18 month sentence and because the government might've charged her with conspiracy in violation of 18 U.S.C. § 371. Exh. 21-22. This is not the correct prejudice analysis. A defendant can show prejudice if there is a reasonable probability that she would not have pleaded guilty absent the error. Indeed, a defendant is prejudiced if she pleaded guilty under a misapprehension of the applicable statutory maximum sentence. *United States v. Erskine*, 355 F.3d 1161, 1170 (9th Cir. 2004).

4

The court erred, because it conflated a likelihood of success with whether a substantial question was presented. Importantly, the court failed to consider whether the legal issue to be raised on appeal is one that is subject to an appellate waiver at all. Additionally, the court's characterization of the substantive issues is not substantial, based on *United States v. Gurrola-Garcia*, 547 F.2d 1075 (9th Cir. 1974), is mistaken. *See post* at 11-22. Regardless of the standard of review, Mrs. Morgovsky has presented a substantial issue for appeal.

## 4. It is Fairly Debatable Whether Morgovsky's Waiver of Her Right to Appeal is Valid, and Further, it Whether the Appellate Waiver Applies to the Questions Sought to be Raised.

Mrs. Morgovsky pleaded guilty pursuant to a written plea agreement which contained a waiver of her right to appeal. Exh. 98. In particular, the agreement provided: "I agree to give up my right to appeal my conviction, the judgment, and the orders of the Court, as well as any aspect of my sentence, including any orders relating to forfeiture and/or restitution, except that I reserve my right to claim that my counsel was ineffective." *Id*.

5

## A. The Waiver Cannot Bar the Question to be Appealed.

A waiver of the right to appeal is limited by its terms. Any waiver of the right to appeal, however, is ineffective if a sentence violates the law. *United States v. Bibler*, 495 F.3d 621, 624 (9th Cir. 2007); *United States v. Portillo-Cano*, 192 F.3d 1246, 1252 (9th Cir. 1999). By definition, a criminal sentence imposed for a nonexistent crime is unconstitutional and in violation of law. Thus, although the waiver purports to cover "my conviction," it did not and cannot bar a challenge to a conviction on the grounds that the conduct to which the defendant pleaded is not prohibited by the statute. *United States v. Bibler*, 495 F.3d at 624; *accord United States v. Odachyan*, 749 F.3d 798, 801-02 (9th Cir. 2014) (claim of anti-immigrant bias by sentencing judge cannot be waived). Thus, as to the substantive issue sought to be raised on appeal, *see post* at 11-19, the waiver is inapplicable.

Next, the Supreme Court's recent decision in *Class v. United States*, 138 S.Ct. 798 (2018), supports a conclusion that the waiver in this case does not bar Mrs. Morgovsky's appeal of the question whether the conduct to which she pleaded is actually prohibited by the statute. In *Class*, the Supreme Court held that a challenge to the constitutionality of the statute of conviction was not waived by the defendants guilty plea, because the challenge was not specifically waived.

6

Pursuant to his plea agreement, the defendant in *Class* waived some appellate rights and preserved others. *Id.* at 802. The specifics of the waiver were not identified. Nonetheless, the agreement was silent regarding the constitutional challenge sought to be pursued. Silence was an insufficient basis for waiver and accordingly, the Court held that the defendant had not waived his right to challenge the statute. *Id.* at 803.

Like the defendant in *Class,* Mrs. Morgovsky did not explicitly waive any contention that the conduct to which she admitted is not encompassed by the statute, i.e., that the regulation which purports to criminalize conspiracy is *ultra vires.* Nor did she waive the claim that 22 U.S.C. § 2778 is unconstitutional if it delegates to an unelected administrative body the power to define crimes. *See, e.g., Mistretta v. United States*, 488 U.S. 361, 364 (1989) (constitutional authority to define crimes and fix punishment vested in Congress); *Touby v. United States*, 500 U.S. 160, 165 (1991). *See post* at 19-22. It is at least fairly debatable whether Mrs. Morgovsky's written waiver of her right to appeal bars her constitutional challenges to the validity of her conviction.

7

*B. The Waiver Is Invalid, Because the District Court Violated Fed. R. Crim. P. 11.*

An additional flaw casts further doubt on the validity of the purported waiver of the right to appeal. It is fairly debatable whether the waiver is invalid, because Mrs. Morgovsky did not knowingly and intelligently plead guilty as required by Fed. R. Crim. P. 11.  The that court failed to identify or explain the elements of the offense to Mrs. Morgovsky and also did not advise her that she was broadly waiving all rights to appeal. Exh. 86-87 (RT 60-61). Instead, the court advised only that she was waiving her right to appeal or "otherwise attack the validity of your sentence, other than to argue that you received ineffective assistance of counsel." Exh. 88-89 (RT 62-63). It is fairly debatable whether the court's foregoing advisement, Although the court advised her that she was giving up her right to appeal its pretrial rulings, the court did not advise that she was prohibited from challenging the constitutionality of her conviction. *Id.; Class*, 138 S. Ct. at 802-03.

Rule 11 requires a court to make the minimal investment of time necessary to ensure that a guilty plea is knowing, intelligent, and voluntary. A critical part of the plea process is advising the defendant of the elements of the offense. Such an advisement is necessary to ensure that the defendant understands the nature of the

8

offense to which she is pleading. Fed. R. Crim. P. 11(b)(1)(G); *United States v. Peña*, 314 F.3d 1152, 1155-56 (9th Cir. 2003).

The district court conducted a truncated plea colloquy with Mrs. Morgovsky. The court did not advise her of the elements of the offense to which she pleaded guilty. Exh. 86-87 (RT 60-61). Instead, the court referred to the plea agreement which described "the elements of the offense to which you are pleading guilty." Exh. 86 (RT 60). The court then inquired of Mrs. Morgovsky whether she had had enough opportunity to go over the paragraphs describing the elements of the offense and the factual description of her conduct with her attorney. Exh. 86-87 (RT 60-61). She agreed that she had and also that those paragraphs contained an accurate description of what she did. Exh. 87 (RT 61).

The advisement of the elements of the offense is a core concern of Rule 11, because the elements of the offense are essential to understand the nature of the charge. *United States v. Covian-Sandoval*, 462 F.3d 1090, 1096 (9th Cir. 2006). When a defendant has failed to object to the Rule 11 violation, the claim is reviewed for plain error. *United States v. Dominguez-Benitez*, 542 U.S. 74, 83 (2004); *Vonn v. United States,* 535 U.S. 55, 63 (2002).

9

Here, it is fairly debatable whether the court's failure to even identify the elements of the offense violated Fed. R. Crim. P. 11. *United States v. Peña*, 314 F.3d at 1155-56. The failure to state the elements of the offense comprising the offense of conviction is the type of Rule 11 violation that renders a guilty plea invalid and constitutes plain error. *Id.* The Rule 11 violation was not cured by the court's querying whether the defendant had discussed with her attorney the sections of the plea agreement identifying the nature of the offense. *Pena*, 314 F.3d 1155-56; *see also United States v. Arqueta-Ramos,* 730 F.3d 1133, 1140-42 (9th Cir. 2013) (counsel's statement that he believed the defendant understood her rights and was pleading voluntarily "tells us little about the substance and depth of his conversations with his client."). It is at least fairly debatable whether the court's reference to the plea agreement instead of identifying the elements of the offense constitutes plain error. *Pena*, 314 F.3d at 1155-56. Thus, it is fairly debatable whether Mrs. Morgovsky's guilty plea is valid, and accordingly, whether her waiver of the right to appeal is valid.

Furthermore, the district court never advised Mrs. Morgovsky that by pleading guilty pursuant to the plea agreement, she was waiving all of her appellate rights. Rather, the court specifically informed her that she was waiving her right to

10

appeal her sentence. Exh. 88 (RT 62). The court also said she was waiving her

right to appeal its pretrial rulings. Id. Nowhere, however, did the court advise that

she was waiving her right to challenge the constitutionality of her conviction. *See*

*Class, supra*, 138 S. Ct. at 802-03; *see also United States v. Spear*, 753 F.3d 964,

967-69 (9th Cir. 2014)(defendant's appellate waiver did not encompass Rule 11

claim). Accordingly, jurists of reason could disagree whether Mrs. Morgovsky

knowingly and intentionally waived her right to appeal the constitutionality of her

conviction.

## 5. It Is Fairly Debatable Whether The Regulation Purporting to Criminalize Conspiracy to Violate 22 U.S.C. § 2278 is *Ultra Vires*.

Section 2278, title 22, United States Code, provides for presidential control

of exports and imports of defense articles and services. Subdivision (c) governs

criminal violations and provides:

> Any person who willfully violates any provision of this
> section, section 39, a treaty referred to in subsection (j)(1)(C)(i),
> or any rule or regulation issued under this section or section 39,
> including any rule or regulation issued to implement or enforce a
> treaty referred to in subsection (j)(1)(C)(i) or an implementing
> arrangement pursuant to such treaty, or who willfully, in a
> registration or license application or required report, makes any
> untrue statement of a material fact or omits to state a material
> fact required to be stated therein or necessary to make the
> statements therein not misleading, shall upon conviction be fine

11

for each violation not more than $1 million or imprisoned not more than 20 years, or both.

Thus, by its terms, section 2278(c) criminalizes a willful violation of the statute. It does not prohibit conspiracy.

Pursuant to section 2278's provisions, the executive enacted a number of regulations, including 22 C.F.R. § 127.1(a)(4). This regulation purports to criminalize conspiracy to export any defense article, technical data, or defense service for which a license or written approval is required. The question for this Court on appeal will be whether section 2278 authorized the executive to expand, via regulation, the scope of criminal liability, or whether the undertaken expansion is *ultra vires*.

Generally, "[t]he definition of the elements of a criminal offense is entrusted to the legislature, particularly in the case of federal crimes, which are solely creatures of statute." *Dixon v. United States*, 548 U.S. 1, 7 (2006); *see also United States v. Santos*, 553 U.S. 507, 523 (2008). Congress cannot delegate its inherently legislative task of determining what conduct should be punished as a crime. *United States v. Kozminski*, 487 U.S. 931, 949 (1988).

12

The extent of the President's authority to draft implementing regulations for 22 U.S.C. § 2278 is set forth in specific subdivisions of the statute, namely (a), (b), (e), (f), (g), (j), and (k). None of those subdivisions permit the President to expand a defendant's criminal liability. Rather, they cover matters within the expertise of the executive branch, such as the development of a list of defense articles covered by the Act (§ 2278(a)), registration and licensing requirements for manufacturers, exports or importers of designated defense articles (§ 2278(b)), enforcement powers, including the establishment of civil penalties (§ 2278(e)), periodic review of items on the Munitions List and exemptions (§ 2278(f)), identification of a list of potentially prohibited persons (*see* § 2278(g)), requirements for country exemptions (§ 2278(j)), and licensing of commerce controlled items (§ 2278(j)).

In contrast, 22 C.F.R. § 127.1(a)(4) covers a matter not authorized by the various subdivisions of section 2278. Nowhere did Congress authorize the executive branch to expand the scope of criminal liability by adding a crime. Rather, the expansion of § 2278 to include the offense of conspiracy was accomplished without statutory authorization and is therefore invalid. Congress identified through statute areas in which the executive should act: those areas did not include the scope of criminal liability. The question whether Congress

13

declined to delegate the power to expand the scope of criminal liability to the executive branch when it limited the President's power to enact implementing regulations to specific purposes and failed to create a separate crime of conspiracy to export or import munitions, when it enacted and amended section 2278, is a substantial one.

Moreover, the legislative history of section 2278 supports a conclusion that 22 CFR 127.4(a)(4) is *ultra vires*. Again, in drafting section 2278, Congress did not include conspiracy. This omission appears to be intentional, given that Congress has criminalized conspiracy within a number of other statutes including those governing matters pertinent to national security and defense. *See e.g.* 18 U.S.C. §§ 793(g) (criminalizing conspiracy to gather, transmit, or lose defense information); 794(c) (criminalizing conspiracy to gather or deliver defense information to aid a foreign government); 831(a)(9)( prohibited transactions involving nuclear materials). Congress has failed to criminalize conspiracy in the Arms Export Control Act despite amending the Act more than once. For example, in 1985, Congress simultaneously amended the Export Administration Act ("EAA") and the AECA. Although Congress added conspiracy to the EAA, it did not do so for the AECA. *See* 50 U.S.C. § 4610(b)(1). In 1989, Congress again

14

amended the AECA to incorporate certain civil penalties and administrative sanctions, but did not add conspiratorial liability. "Congressional silence is instructive." *Castro Cortez v. INS*, 239 F.3d 1037, 1052 (9th Cir. 1999).

Congress is familiar with the concept of conspiracy and is well able to include such a charge in a federal criminal statute when it chooses to do so. "To supply omissions transcends the judicial function." *Iselin v. United States,* 270 U.S. 245, 251 (1926); *see Nichols v. United States,* 136 S. Ct. 1113, 1118 (2016)(declining to find that an "involved jurisdiction" included any place in which an offender was found on a registry, when the statute listed three possibilities for an "involved jurisdiction.").

A district court decision, *United States v. Quinn*, 401 F. Supp. 2d 80 (D.D.C. 2005), and Congress' apparent response, is instructive. There, the court dismissed the charge of conspiracy to violate the Export Administration Act, which was based solely on export administrative regulations, 15 C.F.R. § 764.2(d) (2008). The court held that the regulations purporting to criminalize conspiracy were invalid because the EAA had lapsed and was expired at the time of the charged conspiracy. *Id.* at 92. The charge could not be saved by the International Emergency Economic Powers Act ("IEEPA") which did not criminalize

15

conspiracies. In 2007, post-*Quinn*, Congress amended the IEEPA, Pub. L. No. 110-96, § 2, 121 Stat. 1011 (2007), adding language permitting prosecution of conspiracies of the IEEPA, 50 U.S.C. § 1705 (a) and (c). Yet, Congress did not do so with regard to the AECA, despite the obvious parallel.

Similarly, in the securities context, the Supreme Court has held that civil liability cannot be extended to aiders and abettors absent statutory authorization. *Central Bank N.A. v. First Interstate Bank*, 511 U.S. 164, 173 (1994) ("With respect, however, to the first issue, the scope of conduct prohibited by § 10(b), the text of the statute controls our decision. . . . We have refused to allow [Rule] 10-b-5 challenges to conduct not prohibited by the statute."). This Court followed *Central Bank* to conclude that conspiracy liability did not lie under the Securities Act. *In re Glenfed Inc.*, 60 F.3d 591, 592 (9th Cir. 1995). *Central Bank*'s reasoning that the text of Securities Act alone controls the scope of civil liability applies with even greater force in the criminal context.

The district court erroneously concluded that Morgovsky's statutory and constitutional arguments about Count 9 do not present a substantial questions because they are foreclosed on appeal by *United States v. Gurrola-Garcia*, 547 F.2d 1075 (9th Cir. 1976). *See* Exh. 2. First, *Gurrola-Garcia* did not address 22

16

U.S.C. § 2278 at all, but a now-repealed predecessor statute, 22 U.S.C. § 1934. *Id.*
at 1076. "When Congress amends statutes, our decisions that rely on the older
versions of the statutes must be re-evaluated in light of the amended statute."
*United States v. Pepe*, 895 F.3d 679, 686 (9th Cir. 2018) (quoting *United States v.*
*McNeil*, 362 F.3d 570, 574 (9th Cir. 2004)). Thus, *Gurrola-Garcia* is not
controlling, because congressional amendments to the relevant statutes constitute
"intervening authority." *See id. Gurrola-Garcia*'s continuing vitality is
undermined by the AECA's legislative history.

Second, *Gurrola-Garcia* addressed a regulation that criminalized *attempt* to
export munitions, not *conspiracy* to export munitions. In holding that Congress
intended to delegate its authority to the President to thwart attempts to export and
import munitions, the Court relied on specific legislative history that made clear
that the "congressional purpose" in enacting section 1934 was "to thwart and
penalize attempts." 547 F.2d at 1077-78 (discussing draft bill incorporated into
section 1934 that specifically referenced the criminalization of attempt to export
munitions). No parallel legislative history exists with respect to congressional
intent to thwart conspiracy to export munitions under AECA possibly because
Congress had already codified the crime of conspiracy under 18 U.S.C. § 371

17

when it enacted the AECA. The legislative history of AECA is silent as to any congressional intent to create a new inchoate offense of conspiracy to export munitions that both quadrupled the statutory maximum and replaced the general conspiracy statute. *Cf. Gurrola-Garcia, supra,* 547 F.2d at 1077-78 (legislative history specifically referenced attempts to export); *Quinn,* 401 F. Supp. 2d at 96 (finding no congressional intent to criminalize conspiracy under the IEEPA).

Third, *Gurrola-Garcia*'s holding depended on the reasoning that without a regulation criminalizing attempts, the "entire Congressional scheme would be ineffectual," because there would be no mechanism to prosecute perpetrators at the border. 547 F.2d at 1077. This reasoning is inapplicable to conspiracy, because there is a separate federal conspiracy statute, but no general federal law forbidding attempts. *See United States v. Sineneng-Smith*, 910 F.3d 461, 482 (9th Cir. 2018).

Finally, as the district court itself noted, conspiracy and attempt are fundamentally different in that a regulation that criminalizes "attempt" solely adds a mode of conviction to the underlying criminal statute, but does not expand it, while a regulation that criminalizes "conspiracy" would create a new crime, which is an unconstitutional expansion or modification of that statute. *See* Exh. 8, 31 (RT 6, 29) ("THE COURT: And I understand that point. And that sort of gets at why I

18

might have filed the motion [to dismiss].”); *see also Gurrola-Garcia*, 574 F.2d at 1077 (“Nevertheless, if 22 C.F.R. § 127.01 extends or modifies section 1934, it is invalid.”).

This Court’s decision in *Gurrola-Garcia* does not resolve the question sought to be raised on appeal. The legislative history of the AECA, particularly its multiple amendments which did not add conspiracy, differentiates this case from *Gurrola-Garcia.* Mrs. Morgovsky’s legal argument is neither foreclosed nor weak; rather, her argument whether the regulation falls within the delegation given to the executive by Congress is a substantial one.

## A. It is Fairly Debatable Whether section 2278 Violates the Nondelegation Doctrine.

The nondelegation doctrine protects the constitutional separation of powers by limiting Congress’s delegation of its legislative powers. *See, e.g., Mistretta v. United States*, 488 U.S. at 371-72. Congress cannot generally delegate its legislative powers to the President. *Panama Refining Co. v. Ryan,* 293 U.S. 388, 425-26 (1935). Congress may delegate legislative power only if Congress provides an “intelligible principle” for the exercise of the delegated power. *See J.W. Hampton Jr. & Co. v. United States*, 276 U.S. 394, 409 (1928). Regulations

19

enacted pursuant to delegation "become binding rules of conduct but are valid only as subordinate rules and when found to be within the framework of the policy which the delegation has sufficiently defined." *Ryan,* 293 U.S. at 428-29.

The amount of guidance required depends on the character and importance of the delegated power. The nondelegation doctrine is enforced most strictly in the context of criminal law, because defining crimes is a legislative function. *United States v. Evans*, 333 U.S. 483, 486 (1948). For this reason, the Supreme Court has suggested that in the criminal context a higher standard than an "intelligible principle" may govern whether a congressional delegation of the power to define a crime is lawful, but the principles supplied in the Controlled Substances Act were sufficient. *Touby v page down page down. United States*, 500 U.S. 160, 165–66 (1991).

Here, regardless of the applicable standard, Congress failed to provide adequate guidance to the executive branch concerning the scope of criminal conduct that could be criminalized by the executive. *See* 22 U.S.C. §§ 2278-79. Congress's "delegation" thus lacked the required intelligible principle. Instead, Congress simply gave the executive branch carte blanche to define the scope of criminal liability, in contrast to delegations that have been upheld as constitutional.

20

*Cf. United States v. Nichols*, 784 F.3d 666, 673 (10th Cir. 2015) (Gorsuch, J., dissenting from the denial of rehearing en banc) ("Indeed, distilling *Touby* to its essence, at least three "meaningful" limitations emerge: (1) Congress must set forth a clear and generally applicable rule (unauthorized persons may not possess the drug) that (2) hinges on a factual determination by the Executive (does the drug pose an imminent hazard?) and (3) the statute provides criteria the Executive must employ when making its finding (does the drug in question currently have an accepted medical use?)").  The "delegation" here fails all three *Touby* limitations outlined by then-Judge Gorsuch.  *See id.*  While Congress may delegate to the executive branch the responsibility for making the decision, well within its realm of expertise, what defense articles should be subject to export controls, it may not give the executive a blank check to determine what actions in relation to those articles are crimes that may result in a 20 year prison sentence. *See id.; cf. United States v. Chi Tong Kuok*, 671 F.3d 931, 938-39 (9th Cir. 2012) (upholding delegation to executive to determine munitions list of defense articles whose export is to be restricted under § 2278).

The question whether 22 CFR § 127.4(a)(4) represents a valid delegation is a substantial question. Notably, the Supreme Court is currently considering a case

21

raising the issue whether the Sex Offender Registration and Notification Act's

delegation to the executive branch (namely, to the Attorney General) the right to

define the scope of criminal liability under that Act violates the nondelegation

doctrine. *See Gundy v. United States*, 138 S. Ct. 1260, 1261 (2018) (granting

certiorari). *Gundy* presents the particular question whether Congress delegation of

authority to the Attorney General to decide questions of SORNA's retrospective

application to pre-Act offenders violates the nondelegation doctrine.

The Supreme Court's grant of certiorari suggests that there are limits on

what Congress may delegate to the executive branch. The regulation at issue here,

which expands the scope of criminal liability by executive action, is certainly at the

outer reaches of what might be considered a permissible delegation by Congress.

The question whether, even if Congress delegated authority to the executive to

expand the criminal scope of § 2278(c) (which we do not concede), the statute

violates the nondelegation doctrine is a substantial one.

The district court rejected the nondelegation argument based on in *Gurrola-Garcia*, and general deference to the executive in foreign affairs. *See* Exh. 2. As

previously stated, *Gurrola-Garcia* is not controlling because it interpreted a

different, now-repealed statute. More to the point, it is highly questionable

22

whether deference to the executive in foreign affairs can include the expansion of criminal liability via regulation. Finally, although deference is owed to the executive branch in foreign affairs, it does not obviate the need for an "intelligible principle." *See, e.g., United States v. Dhafir*, 461 F.3d 211, 215 (2d Cir. 2006).

Finally, it is worth noting, that the district judge stated that if he had been representing Morgovsky, he would have filed a motion to dismiss Count 9 for the reasons articulated by Morgovsky, *see* Exh. 8 (RT 6) ("I think if I were defense counsel I would have filed a motion to dismiss the indictment to the extent that it relied on the regulation."). The court's own statement belies its conclusion that the question was not substantial.

## 6. It is Fairly Debatable Whether Former Counsel Provided Ineffective Assistance in Failing to Recognize the Potential Invalidity of the Charge of Conspiracy to Violate the AECA, and Further, in Recommending a Guilty Plea to a Non-existent Charge.

Finally, there is a substantial question whether Mrs. Morgovsky's attorneys provided ineffective assistance of counsel in recommending that she plead guilty to a nonexistent offense. Certainly, most reasonable jurists would agree that such a recommendation fell below the standard of reasonable

23

attorney. Prejudice is established if, had correct advice been given, the defendant would not pleaded guilty. *Lafler v. Cooper,* 132 S. Ct. 1376, 1384, 182 L. Ed. 2d 398 (2012).

Generally, claims of ineffective assistance of counsel are properly brought on motions under 28 U.S.C. § 2255. *Massaro v. United States*, 538 U.S. 500, 505-06 (2003). In cases where both deficient performance and prejudice appear from the record, however, a claim of ineffective assistance can be adjudicated on direct appeal. *See United States v. Washington*, 869 F.3d 193, 203-04 (3d Cir. 2017).

Accordingly, it is fairly debatable whether Mrs. Morgovsky can challenge her conviction based on ineffective assistance of counsel on direct appeal.

# CONCLUSION

Based on the foregoing arguments, defendant respectfully requests this

Court to admit her to bail pending appeal.

Dated: March 26, 2019

> /s/Karen L. Landau
> KAREN L. LANDAU
> ATTORNEY FOR APPELLANT
> IRINA MORGOVSKY