No. 18-10448

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

IRINA MORGOVSKY,

*Defendant-Appellant.*

---

On Appeal from the United States District Court
for the Northern District of California,
the Honorable Vince Chhabria, Presiding.
No. 16-cr-00411-VC-3

---

# EXHIBITS TO AMENDED MOTION FOR BAIL PENDING APPEAL

Irina Morgovsky
1423 Avondale Road
Hillsborough, CA 94010
Tel.: 415-706-5404
Email: grandmaira@gmail.com
Defendant-Appellant pro se

**PREFACE**

Appellant Irina Morgovsky hereby submits *pro se* a list of exhibits to her *Pro Se* Amended Motion for Bail Pending Appeal.

Appellant has been advised by this Court's staff that attaching exhibits to her *pro se* motion was not required, so only records explicitly required by Circuit Rule 9-1.2 and records essential for resolution of the motion are attached as exhibits. Appellant was also advised that attaching as exhibit a copy of the Motion for Bail Pending Appeal filed in the related case, 18-10486, Dkt. 6-1, whose portions she adopted by reference pursuant to FRAP 28(i), was desirable for the Court's convenience.

Appellant will file any other records promptly upon request.

The Index of Exhibits below also lists records which are not attached as exhibits, by docket numbers, in order of their appearance in the *Pro Se* Amended Motion for Bail Pending Appeal.

Case: 18-10448, 05/14/2019, ID: 11296122, DktEntry: 38-2, Page 3 of 206

# INDEX OF EXHIBITS

Exhibit 1 – Superseding Indictment (CR 67).

Exhibit 2 – Plea Agreement (CR 295).

Exhibit 3 – Transcript of hearing on motion for bail in the district court (CR 449).

Exhibit 4 – Order on motion for bail pending appeal in district court (CR 453).

Exhibit 5 – Motion for bail pending appeal of Appellant Naum Morgovsky in 9th Cir. 18-10486 Dkt. 6-1.

Exhibit 6 – Transcript of plea hearing in the district court (CR 306).

Additional records:

CR 366; CR 393; CR 363; 9th Cir. 18-10448 Dkt. 3; 9th Cir. 18-10448 Dkt. 5; 9th Cir. 18-10448 Dkt. 14; CR 253; CR 463; CR 103; CR 204; CR 103-2; 9th Cir. 18-71639, Dkt. 1 and 2; 9th Cir. 18-71639, Dkt. 4; CR 292; CR 294; CR 85; CR 87; CR 90; CR 93; CR 252, Exh. 1; 9th Cir. 18-71639 Dkt. 1, Attach. D; CR 327; CR 473; CR 311.

# EXHIBIT 1

# United States District Court

FOR THE
**NORTHERN DISTRICT OF CALIFORNIA**

VENUE: SAN FRANCISCO

FILED
APR 27 2017
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

V.

NAUM MORGOVSKY,
IRINA MORGOVSKY, and
MARK MIGDAL

CR 16-0411 VC

DEFENDANT(S).

## INDICTMENT

18 U.S.C. § 1349 – Conspiracy;
18 U.S.C. § 1344(1) and (2) – Bank Fraud;
18 U.S.C. § 1028A – Aggravated Identity Theft;
18 U.S.C. § 1544 – Misuse of Passport;
18 U.S.C. § 1014 – False Statement on Loan & Credit Applications;
22 U.S.C. §2778 –Consp. to Commit Arms Export Control Violations;
18 U.S.C. § 1956(a)(1)(B)(i) & (2)(A) – Money Laundering;
18U.S.C.§§981(a)(1),982(a), & 22 U.S.C. § 401 – Criminal Forfeiture

A true bill.

Karen Williams
Foreman

Filed in open court this 27 day of
April 2017.

Clerk

Bail, $ Summons as to all defendants for 5/2/17 @930

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT ☐ INFORMATION ☒ INDICTMENT ☒ SUPERSEDING

Name of District Court, and/or Judge/Magistrate Location: NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

**OFFENSE CHARGED**

18U.S.C.§1349–Conspiracy; 18U.S.C.§1344(1)and(2)–Bank Fraud; 18U.S.C.§1028A–Aggravated Identity Theft; 18 U.S.C. §1544–Misuse of Passport; 18U.S.C.§1014–False Statement on Loan and Credit Appl.; 22 U.S.C. § 2778 – Conspiracy to Commit Arms Export Control Violations; 18 U.S.C. § 1956(a)(1)(B)(i) & (2)(A) – Money Laundering; and 18 U.S.C. §§ 981(a)(1), 982(a), and 22 U.S.C. § 401 – Criminal Forfeiture

☐ Petty ☐ Minor ☐ Misdemeanor ☒ Felony

PENALTY: SEE ATTACHED LIST

FILED
APR 27 2017
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**DEFENDANT - U.S**

NAUM MORGOVSKY

DISTRICT COURT NUMBER

**PROCEEDING**

Name of Complaintant Agency, or Person (& Title, if any): INTERNAL REVENUE SERVICE

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of: ☐ U.S. ATTORNEY ☐ DEFENSE — SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant — MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person Furnishing Information on this form: BRIAN J. STRETCH

☒ U.S. Attorney ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned): Colin Sampson, AUSA, Tax Div.

**DEFENDANT**

**IS *NOT* IN CUSTODY**

Has not been arrested, pending outcome this proceeding.

1) ☒ If not detained give date any prior summons was served on above charges ➧ for

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**

4) ☐ On this charge

5) ☐ On another conviction } ☐ Federal ☐ State

6) ☐ Awaiting trial on other charges

If answer to (6) is "Yes", show name of institution

Has detainer been filed? ☐ Yes ☒ No } If "Yes" give date filed

**DATE OF ARREST** ➧ Month/Day/Year

Or... if Arresting Agency & Warrant were not

**DATE TRANSFERRED TO U.S. CUSTODY** ➧ Month/Day/Year

☐ This report amends AO 257 previously submitted

**ADDITIONAL INFORMATION OR COMMENTS**

PROCESS:

☒ SUMMONS ☐ NO PROCESS* ☐ WARRANT

Bail Amount:

If Summons, complete following:

☐ Arraignment ☐ Initial Appearance

** Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment*

Defendant Address:

1423 Avondale Road, Hillsborough, CA 94010

Date/Time: Before Judge:

Comments:

Attachment to Indictment Penalty Sheet
NAUM MORGOVSKY

18 U.S.C. § 1349 - Conspiracy
- 30 years prison
- $1,000,000 fine
- 5 years supervised release
- $100 special assessment

18 U.S.C. § 1344(1) and (2) – Bank Fraud
- 30 years prison
- $1,000,000 fine
- 5 years supervised release
- $100 special assessment

18 U.S.C. § 1028A - Aggravated Identity Theft
- 2 years prison - consecutive to underlying felony
- $250,000 fine
- 1 year supervised release
- $100 special assessment

22 U.S.C. § 2778 – Conspiracy to Commit Arms Export Control Violations;
- 20 years prison - consecutive to underlying felony
- $1,000,000 fine
- 3 years supervised release
- $ 100 special assessment

18 U.S.C. § 1956(a)(1)(B)(i) & (2)(A) – Money Laundering
- 20 years prison - consecutive to underlying felony
- $500,000 fine
- 3 years supervised release
- $ 100 special assessment

18 U.S.C. §§ 981(a)(1), 982(a), & 22 U.S.C. § 401 – Criminal Forfeiture

AO 257 (Rev. 6/78)

# DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT ☐ INFORMATION ☒ INDICTMENT ☒ SUPERSEDING

Name of District Court, and/or Judge/Magistrate Location
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

**OFFENSE CHARGED**

18U.S.C.§1349–Conspiracy; 18U.S.C.§1344(1)and(2)–Bank Fraud; 18U.S.C.§1028A–Aggravated Identity Theft; 18 U.S.C. §1544–Misuse of Passport; 18U.S.C.§1014–False Statement on Loan and Credit Appl.; 22 U.S.C. § 2778 – Conspiracy to Commit Arms Export Control Violations; 18 U.S.C. § 1956(a)(1)(B)(i) & (2)(A) – Money Laundering; and 18 U.S.C. §§ 981(a)(1), 982(a), and 22 U.S.C. § 401 – Criminal Forfeiture

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY: SEE ATTACHED LIST

**DEFENDANT - U.S**

IRINA MORGOVSKY

DISTRICT COURT NUMBER

FILED
APR 27 2017
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**PROCEEDING**

Name of Complainant Agency, or Person (& Title, if any)

INTERNAL REVENUE SERVICE

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY ☐ DEFENSE
SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under
MAGISTRATE CASE NO.

Name and Office of Person Furnishing Information on this form: BRIAN J. STRETCH

☒ U.S. Attorney ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned): Colin Sampson, AUSA, Tax Div.

**DEFENDANT**

**IS *NOT* IN CUSTODY**

Has not been arrested, pending outcome this proceeding.

1) ☒ If not detained give date any prior summons was served on above charges

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**

4) ☐ On this charge

5) ☐ On another conviction } ☐ Federal ☐ State

6) ☐ Awaiting trial on other charges

If answer to (6) is "Yes", show name of institution

Has detainer been filed? ☐ Yes ☒ No } If "Yes" give date filed

**DATE OF ARREST** Month/Day/Year

Or... if Arresting Agency & Warrant were not

**DATE TRANSFERRED TO U.S. CUSTODY** Month/Day/Year

☐ This report amends AO 257 previously submitted

**ADDITIONAL INFORMATION OR COMMENTS**

PROCESS:

☒ SUMMONS ☐ NO PROCESS* ☐ WARRANT

Bail Amount:

If Summons, complete following:

☐ Arraignment ☐ Initial Appearance

** Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment*

Defendant Address:

1423 Avondale Road, Hillsborough, CA 94010

Date/Time: Before Judge:

Comments:

Attachment to Indictment Penalty Sheet
IRINA MORGOVSKY

18 U.S.C. § 1544 – Misuse of Passport
- 10 years prison - consecutive to underlying felony
- $250,000 fine
- 3 years supervised release
- $ 100 special assessment

22 U.S.C. § 2778 – Conspiracy to Commit Arms Export Control Violations;
- 20 years prison - consecutive to underlying felony
- $1,000,000 fine
- 3 years supervised release
- $ 100 special assessment

18 U.S.C. §§ 981(a)(1), 982(a) & 22 U.S.C. § 401 – Criminal Forfeiture

AO 257 (Rev. 6/78)

# DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT ☐ INFORMATION ☒ INDICTMENT ☒ SUPERSEDING

Name of District Court, and/or Judge/Magistrate Location
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

## OFFENSE CHARGED

18U.S.C.§1349–Conspiracy; 18U.S.C.§1344(1)and(2)–Bank Fraud; 18U.S.C.§1028A–Aggravated Identity Theft; 18 U.S.C. §1544–Misuse of Passport; 18U.S.C.§1014–False Statement on Loan and Credit Appl.; 22 U.S.C. § 2778 – Conspiracy to Commit Arms Export Control Violations; 18 U.S.C. § 1956(a)(1)(B)(i) & (2)(A) – Money Laundering; and 18 U.S.C. §§ 981(a)(1), 982(a), and 22 U.S.C. § 401 – Criminal Forfeiture

☐ Petty ☐ Minor ☐ Misde-meanor ☒ Felony

PENALTY: SEE ATTACHED LIST

FILED
APR 27 2017
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

## DEFENDANT - U.S

MARK MIGDAL

DISTRICT COURT NUMBER

## PROCEEDING

Name of Complainant Agency, or Person (& Title, if any)

INTERNAL REVENUE SERVICE

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of: ☐ U.S. ATTORNEY ☐ DEFENSE — SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant — MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person Furnishing Information on this form: BRIAN J. STRETCH
☒ U.S. Attorney ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned): Colin Sampson, AUSA, Tax Div.

## DEFENDANT

### IS NOT IN CUSTODY

Has not been arrested, pending outcome this proceeding.

1) ☒ If not detained give date any prior summons was served on above charges

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

### IS IN CUSTODY

4) ☐ On this charge

5) ☐ On another conviction } ☐ Federal ☐ State

6) ☐ Awaiting trial on other charges

If answer to (6) is "Yes", show name of institution

Has detainer been filed? ☐ Yes ☒ No } If "Yes" give date filed

**DATE OF ARREST** Month/Day/Year

Or... if Arresting Agency & Warrant were not

**DATE TRANSFERRED TO U.S. CUSTODY** Month/Day/Year

☐ This report amends AO 257 previously submitted

## ADDITIONAL INFORMATION OR COMMENTS

PROCESS:

☒ SUMMONS ☐ NO PROCESS* ☐ WARRANT Bail Amount:

If Summons, complete following:
☐ Arraignment ☐ Initial Appearance

** Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment*

Defendant Address:
445 Golden Oak Drive, Portola Valley, CA 94028

Date/Time: Before Judge:

Comments:

Attachment to Indictment Penalty Sheet
MARK MIGDAL

18 U.S.C. § 1349 - Conspiracy
- 30 years prison
- $1,000,000 fine
- 5 years supervised release
- $100 special assessment

18 U.S.C. § 1344(1) and (2) – Bank Fraud
- 30 years prison
- $1,000,000 fine
- 5 years supervised release
- $100 special assessment

18 U.S.C. § 1028A - Aggravated Identity Theft
- 2 years prison - consecutive to underlying felony
- $250,000 fine
- 1 year supervised release
- $100 special assessment

18 U.S.C. § 1014 – Making False Statements to Federally Insured Institution
- 30 years prison - consecutive to underlying felony
- $1,000,000 fine
- 5 years supervised release
- $100 special assessment

18U.S.C. §§ 981(a)(1), 982(a), & 22 U.S.C. § 401 – Criminal Forfeiture

BRIAN J. STRETCH (CABN 163973)
United States Attorney

FILED
APR 27 2017
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>NAUM MORGOVSKY, IRINA MORGOVSKY, and MARK MIGDAL,<br><br>Defendants. | Criminal No. CR 16-0411 VC<br><br>VIOLATIONS: 18 U.S.C. § 1349 – Conspiracy; 18 U.S.C. § 1344(1) and (2) – Bank Fraud; 18 U.S.C. § 1028A – Aggravated Identity Theft; 18 U.S.C. § 1544 – Misuse of Passport; 18 U.S.C. § 1014 – False Statement on Loan and Credit Applications; 22 U.S.C. § 2778 – Conspiracy to Commit Arms Export Control Violations; 18 U.S.C. § 1956(a)(1)(B)(i) – Money Laundering; 18 U.S.C. § 1956(a)(2)(A) – Money Laundering; and 18 U.S.C. §§ 981(a)(1), 982(a), and 22 U.S.C. § 401 – Criminal Forfeiture<br><br>SAN FRANCISCO VENUE |

FIRST SUPERSEDING INDICTMENT

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS

At all times relevant to this Superseding Indictment, with all dates being approximate:

1. Defendant NAUM MORGOVSKY resided in Hillsborough, California.

2. Defendant IRINA MORGOVSKY resided in Hillsborough, California. IRINA MORGOVSKY and NAUM MORGOVSKY were a married couple.

3. Defendant MARK MIGDAL resided in Portola Valley, California.

4. NAUM MORGOVSKY obtained and used the identity of a deceased individual,

"G.P.," to travel and to conduct business and financial transactions. NAUM MORGOVSKY opened bank accounts in "G.P.'s" name.

5. IRINA MORGOVSKY obtained and used the identity of a deceased individual, "V.F.," to travel and to conduct business and financial transactions. IRINA MORGOVSKY opened bank accounts in "V.F.'s" name.

BANK FRAUD AND BANK FRAUD CONSPIRACY

6. Beginning on a date unknown to the Grand Jury, but no later than in or about 2009, and ending on or about July 22, 2016, defendants NAUM MORGOVSKY and MARK MIGDAL conspired to and did defraud federally-insured mortgage lenders by agreeing to and selling properties owned by MIGDAL in short sales to MORGOVSKY, using the name "G.P.," for the purpose of avoiding mortgage payments owed by MIGDAL to the lenders.

Manner and Means of the Conspiracy

7. In 2006, MARK MIGDAL purchased two condominium units in the same development at 112 Walaka Street, Kihei, Hawaii.

8. MARK MIGDAL purchased 112 Walaka Street, Unit #305, Kihei, Hawaii ("Unit #305"), on October 30, 2006, for a sales price of $521,500, financed in part by a 30-year adjustable loan from Countrywide Home Loans in the amount of $392,000. MARK MIGDAL also obtained a loan from Countrywide Home Loans in the amount of $49,000, secured by a second deed of trust. Countrywide Home Loans was later acquired by BAC Home Loan Servicing, LP, a division of Bank of America. The deposits of both Countrywide and BAC were then and at all times relevant to this Superseding Indictment insured by the Federal Deposit Insurance Corporation ("FDIC").

9. MARK MIGDAL purchased 112 Walaka Street, Unit #404, Kihei, Hawaii ("Unit #404"), on November 3, 2006, for a sales price of $511,708, financed in part by a loan of $409,350 from First Horizon Home Loan Corporation. MARK MIGDAL also obtained a loan from First Horizon Home Loan Corporation in the amount of $51,100, secured by a second deed of trust. First Horizon Home Loan Corporation later transferred its first deed of trust with respect to Unit #404 to Everhome Mortgage Company. The deposits of both First Horizon and Everhome, now EverBank, were then and at all times relevant to this Superseding Indictment insured by the FDIC.

10. In 2009, MARK MIGDAL and NAUM MORGOVSKY agreed that MARK MIGDAL would sell both units to "G.P.," NAUM MORGOVSKY'S stolen identity, for prices significantly below what MARK MIGDAL owed the banks on the existing mortgages.

11. On or about June 14, 2009, MARK MIGDAL submitted a letter to Everhome Mortgage Company asking the bank to approve a short sale of Unit #404 to "G.P." The letter contained false information about MARK MIGDAL's financial, income, and employment status. On or about August 3, 2009, MARK MIGDAL provided a false financial statement to Everhome Mortgage Company. MARK MIGDAL falsely stated that he was unemployed and listed false income information, and failed to report his total assets. On August 24, 2009, Everhome Mortgage Company approved the pre-foreclosure short sale of Unit #404 to "G.P." at a sales price of $228,000.

12. On or about June 14, 2009, MARK MIGDAL submitted a letter to Bank of America Home Loans asking the bank to approve a short sale of Unit #305 to "G.P." The letter contained false information about MARK MIGDAL's financial, income, and employment status. On or about June 25, 2009, MARK MIGDAL provided a false financial statement to Bank of America. MARK MIGDAL falsely stated that he was unemployed, listed false income information, and failed to report his total assets. On January 14, 2010, BAC approved the pre-foreclosure short sale of Unit #305 to "G.P." at a sales price of $207,000.

13. After the short sales, MARK MIGDAL retained control of both properties. MARK MIGDAL acted as manager of both properties, collected rent for both properties, and funded homeowner's association and other expenses for both properties. Between 2010 and 2016, MARK MIGDAL, pretending to be "G.P.," issued checks for various expenses related to Unit #404 and Unit #305.

14. On April 7, 2016, NAUM MORGOVSKY, pretending to be "G.P.," transferred title of the two units by quitclaim deed to MARK MIGDAL's wife, A.M., who accepted the properties in her maiden name.

COUNT ONE: (18 U.S.C. § 1349 – Conspiracy)

15. Paragraphs 1 through 4 and 6 through 14 are realleged as if fully set forth herein.

16. From on or about June 14, 2009, and continuing until on or about July 22, 2016, in the

Northern District of California and elsewhere, the defendants,

NAUM MORGOVSKY and
MARK MIGDAL,

and others, did knowingly attempt and conspire to commit bank fraud, in violation of 18 U.S.C. § 1344.

All in violation of Title 18, United States Code, Section 1349.

COUNT TWO: (18 U.S.C. §§ 1344(1) and (2) – Bank Fraud)

17. Paragraphs 1 through 4 and 6 through 14 are realleged as if fully set forth herein.

18. From on or about June 14, 2009, and continuing until on or about July 22, 2016, in the Northern District of California and elsewhere, the defendants,

NAUM MORGOVSKY and
MARK MIGDAL,

did knowingly and intentionally execute and attempt to execute a scheme and artifice to defraud financial institutions as to a material matter, and to obtain moneys, funds, credits, assets, and other property owned by and under the custody and control of financial institutions by means of material false and fraudulent pretenses, representations, and promises, and by concealment of material facts, with respect to the short sale of 112 Walaka Street, #404, Kihei, Hawaii.

All in violation of Title 18, United States Code, Section 1344.

COUNT THREE: (18 U.S.C. §§ 1344(1) and (2) – Bank Fraud)

19. Paragraphs 1 through 4 and 6 through 14 are realleged as if fully set forth herein.

20. From on or about June 14, 2009, and continuing until on or about July 22, 2016, in the Northern District of California and elsewhere, the defendants,

NAUM MORGOVSKY and
MARK MIGDAL,

did knowingly and intentionally execute and attempt to execute a scheme and artifice to defraud financial institutions as to a material matter, and to obtain moneys, funds, credits, assets, and other property owned by and under the custody and control of financial institutions by means of material false and fraudulent pretenses, representations, and promises, and by concealment of material facts,

with respect to the short sale of 112 Walaka Street, #305, Kihei, Hawaii.

All in violation of Title 18, United States Code, Section 1344.

AGGRAVATED IDENTITY THEFT AND PASSPORT FRAUD

COUNT FOUR: (18 U.S.C. § 1028A – Aggravated Identity Theft)

21. Paragraphs 1 through 4 and 6 through 14 are realleged as if fully set forth herein.

22. From on or about July 20, 2009, and continuing until on or about April 7, 2016, in the Northern District of California and elsewhere, the defendant,

NAUM MORGOVSKY,

during and in relation to a felony violations of 18 U.S.C. §§ 1349 (bank fraud conspiracy and bank fraud), knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person, that is, defendant possessed and used the social security number of G.P., a North Dakota identification card in the name of G.P., and the checkbook and signature of G.P.

All in violation of Title 18, United States Code, Section 1028A(a)(1).

COUNT FIVE: (18 U.S.C. § 1028A – Aggravated Identity Theft)

23. Paragraphs 1 through 4 and 6 through 14 are reallaged as if fully set forth herein.

24. From on or about July 20, 2009, and continuing until on or about April 7, 2016, in the Northern District of California and elsewhere, the defendant,

MARK MIGDAL,

during and in relation to a felony violations of 18 U.S.C. §§ 1349 (bank fraud conspiracy and bank fraud), knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person, that is, defendant possessed and used the checkbook and signature of G.P. to control and manage two parcels of real estate located at 112 Walaka Street, #305, Kihei, Hawaii, and 112 Walaka Street, #404, Kihei, Hawaii.

All in violation of Title 18, United States Code, Section 1028A(a)(1).

COUNT SIX: (18 U.S.C. § 1544 – Misuse of Passport)

25. Paragraphs 2 and 5 are realleged as if fully set forth herein.

26. From on or about August 10, 2007, and continuing until at least November 29, 2007, in the Northern District of California and elsewhere, the defendant,

IRINA MORGOVSKY,

willfully and knowingly used and attempted to use United States Passport No. 420799715, which passport had been issued and designed for the use of another person, to wit, an individual with initials "V.F.," in that the defendant traveled to Russia and used said passport for entry and exit to and from Russia.

All in violation of Title 18, United States Code, Section 1544.

FALSE STATEMENT CHARGES

COUNT SEVEN: (18 U.S.C. § 1014 – False Statement on Loan and Credit Applications)

27. Paragraph 3 is realleged as if fully set forth herein.

28. On or about June 24, 2009, in the Northern District of California and elsewhere, the defendant,

MARK MIGDAL,

knowingly made a materially false statement and report for the purpose of influencing the action of JP Morgan Chase Bank, formerly Washington Mutual ("the bank"), which was then and at all times relevant to this Superseding Indictment insured by the FDIC, in connection with a change and extension of a loan by the bank, by renewal, deferment of action and otherwise in that the defendant falsely told the bank via a Home Affordable Modification Program application that he used the property at 1963 Rock Street, Unit 8, Mountain View, California as his principal residence, when in truth and in fact, as the defendant well knew, he did not reside at that address.

All in violation of Title 18, United States Code, Section 1014.

COUNT EIGHT: (18 U.S.C. § 1014 – False Statement on Loan and Credit Applications)

29. Paragraph 3 is realleged as if fully set forth herein.

30. On or about January 19, 2010, in the Northern District of California and elsewhere, the defendant,

MARK MIGDAL,

knowingly made a materially false statement and report for the purpose of influencing the action of JP Morgan Chase Bank, formerly Washington Mutual ("the bank"), which was then and at all times relevant to this Superseding Indictment insured by the FDIC, in connection with a change and

extension of a loan by the bank, by renewal, deferment of action and otherwise in that the defendant submitted a letter to the bank falsely stating that he had obtained employment at Hitek International Corporation, and falsely told the bank that he had rented part of his residence to individuals whose initials were S.S. and L.S. in an effort to convince the bank to delay foreclosure of and modify his existing home loan on real property at 445 Golden Oak Drive, Portola Valley, California, when in truth and in fact, as the defendant well knew, the employment offer letter was false and the named individuals were not actually paying rent to MARK MIGDAL to lease part of his residence.

All in violation of Title 18, United States Code, Section 1014.

ARMS EXPORT CONTROL ACT CONSPIRACY

Introductory Allegations

31. The export of arms, ammunition, implements of war and defense articles and services from the United States was governed by the Arms Export Control Act ("AECA"), Title 22, United States Code, Section 2778, and the International Traffic in Arms Regulations ("ITAR"), Title 22, Code of Federal Regulations, Sections 120-130.

32. The AECA authorized the President to control the export of "defense articles" deemed critical to the national security and foreign policy interests of the United States. In so doing, the AECA authorized the President to designate those items considered "defense articles" and to promulgate regulations for the import and export of such articles and services. The items so designated constituted the United States Munitions List ("USML"). By a lawful executive order, the President delegated the authority to the United States Department of State. Accordingly, the State Department's Directorate of Defense Trade Controls ("DDTC") promulgated the ITAR to implement the AECA. The USML is part of the ITAR.

33. Under the ITAR, any person in the United States who engaged in the business of exporting defense articles was required to register with the DDTC. A shipment or transmission out of the United States, including the sending or taking of a defense article out of the United States in any manner constituted an "export." Any person who intended to export a defense article was required to obtain the approval of DDTC prior to the export or temporary import, unless the export qualified for an exemption. It was a violation of the ITAR to conspire to export any defense article for which a

license or written approval was required without first obtaining the required license or other written approval from the DDTC. Willful violations of the ITAR were crimes under the AECA.

34. The USML set forth 21 categories of defense articles and services that are subject to export licensing controls. Category XII of the USML identified certain fire control, range finder, optical, and guidance and control equipment as defense articles. The following were designated as defense articles under Category XII(c) of the USML: image intensification and other night sighting equipment or systems specifically designed, modified or configured for military use; second generation and above military image intensification tubes specifically designed, developed, modified, or configured for military use, and infrared, visible and ultraviolet devices specifically designed, developed, modified, or configured for military application. For purposes of USML Category XII(c), "second and third generation image intensification tubes" were defined as those having a peak response within the 0.4 to 1.05 micron wavelength range and incorporating a microchannel plate for electron image amplification having a hole pitch (center-to-center spacing) of less than 25 microns and having either: (a) An S–20, S–25 or multialkali photocathode; or (b) A GaAs, GaInAs, or other compound semiconductor photocathode. Category XII(e) of the USML designated components, parts, accessories, attachments and associated equipment specifically designed or modified for defense articles listed elsewhere in Category XII as defense articles.

Manner and Means of the Conspiracy

35. NAUM MORGOVSKY and IRINA MORGOVSKY owed a number of sole proprietorships in the United States. NAUM MORGOVSKY also owned a night vision manufacturing business in Moscow, Russia. Coconspirator 1 resided in Russia and worked for the night vision business in Moscow, Russia.

36. From a time unknown to the Grand Jury, but not later than April 2012, and continuing until at least August 25, 2016, Coconspirator 1 communicated lists of components necessary for the Russian night vision business to manufacture certain finished night vision devices, whereupon NAUM MORGOVSKY and IRINA MORGOVSKY agreed to use and used their U.S. businesses to purchase the requested components.

37. Subsequently, NAUM MORGOVSKY and IRINA MORGOVSKY agreed to use and

used their U.S. businesses to ship the components to the Russian night vision manufacturer. Sometimes they shipped the products directly to Coconspirator 1 and other coconspirators in Russia. Other times, they shipped the products to, or ordered products for delivery to, additional coconspirators in Europe who then arranged for the products to be hand-carried to their coconspirators in Russia.

38. At no time did NAUM MORGOVSKY, IRINA MORGOVSKY, or any entities owned or controlled by NAUM MORGOVSKY or IRINA MORGOVSKY ever apply, or receive, or possess a license or authorization from the DDTC to export defense articles of any description.

COUNT NINE: (22 U.S.C. § 2778 – Conspiracy to Violate the International Traffic in Arms Regulations in violation of the Arms Export Control Act)

39. Paragraphs 1 through 5 and 31 through 38 are realleged as if fully set forth herein.

40. From a time unknown to the Grand Jury, but not later than April 2012, and continuing until at least August 25, 2016, in the Northern District of California and elsewhere, the defendants,

NAUM MORGOVSKY and
IRINA MORGOVSKY,

did knowingly and willfully and intentionally combine, conspire, confederate, and agree with each other and others both known and unknown to the Grand Jury to export, and cause the export from the United States the following defense articles:

a. ITT Industries/Exelis Inc. F9810, Generation 3, 18mm, MX-10130 Image Intensifier Tube;

b. ITT Industries/Exelis Inc. F9815, Generation 3, 18mm, MX-11769 Image Intensifier Tube;

c. ITT Industries/Exelis Inc. F9800, Generation 3, 18mm, MX-10160 Image Intensifier Tube;

d. Janos Technology 30mm Light Lens Assembly, Part Number ("P/N") 41584-001;

e. Janos Technology 30mm Light Front Lens, P/N 41584-501;

f. Janos Technology 30mm Light Back Lens, P/N 41584-502;

g. Janos Technology 30mm Light Lens Set, P/N 907148-01;

h. Janos Technology 50mm Medium Lens Assembly, P/N: 41585-001;

i. Janos Technology 50mm Medium Front Lens, P/N: 41585-501;

j. Janos Technology 50mm Medium Back Lens, P/N: 41585-502;

k. Janos Technology 50mm Medium Lens Set, P/N: 907149-01;

l. Janos Technology 100mm Heavy Lens Assembly, P/N: 41647-001;

m. Janos Technology 100mm Heavy Front Lens, P/N: 41647-501;

n. Janos Technology 100mm Heavy Back Lens, P/N: 41647-502;

o. Janos Technology 100mm Heavy Lens Set, P/N 907421-01;

p. Janos Technology 100mm Heavy Lens Assembly, Wider Tolerance, P/N 907150-02;

q. Janos Technology 100mm Heavy Front Lens, Wider Tolerance, P/N 41647-502;

r. Janos Technology 100mm Heavy Back Lens, Wider Tolerance, P/N 41647-502; and

s. Janos Technology 100mm Heavy Lens Set, Wider Tolerance, P/N 907150-01;

which were, at the time of the conduct described herein, designated as a defense articles on the United States Munitions List, without first obtaining the required license or written authorization from the Department of State, Directorate of Defense Trade Controls, in violation of Title 22, United States Code, Sections 2778(b)(2) and 2778(c); and Title 22, Code of Federal Regulations, Sections 121.1, 122.1, 123.1, 127.l(a)(4), and 127.3.

All in violation of Title 22, United States Code, Section 2778.

MONEY LAUNDERING

COUNT TEN: (18 U.S.C. § 1956(a)(1)(B)(i) – Money Laundering)

41. Paragraphs 1 through 5 and 31 through 38 are realleged as if fully set forth herein.

42. On or about February 9, 2015, in the Northern District of California, the defendant,

NAUM MORGOVSKY,

did knowingly conduct a financial transaction affecting interstate and foreign commerce, to wit, transporting, transmitting and transferring monetary instruments and funds, that is, NAUM MORGOVSKY received $200,000.00 in United States currency, transferred into a Bank of America account held by NAUM MORGOVSKY in the name of G.P. from a Bank of America account in the name of V.M. in exchange for NAUM MORGOVSKY delivering the equivalent of $200,000 to an individual in Russia designated by V.M., which involved the proceeds of a specified unlawful activity, that is the exportation of defense articles without first obtaining an export license from the Department of State, Directorate of Defense, knowing that such transportation was designed in whole or in part to conceal and disguise the nature, source, ownership, and control of the proceeds of said specified

unlawful activity and that while conducting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

All in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

COUNT ELEVEN: (18 U.S.C. § 1956(a)(2)(A) – Money Laundering)

43. Paragraphs 1 through 5 and 31 through 38 are realleged as if fully set forth herein.

44. On or about June 13, 2016, in the Northern District of California and elsewhere, the defendant,

NAUM MORGOVSKY

did knowingly transport and transfer monetary instruments and funds, that is, approximately $22,929.61 in United States currency wired from a place outside the United States, that is Germany, to a place inside the United States, that is California, with intent to promote the carrying on of specified unlawful activity, specifically: the exportation of defense articles without first obtaining an export license from the Department of State, Directorate of Defense.

All in violation of Title 18, United States Code, Section 1956(a)(2)(A).

ASSET FORFEITURE

FORFEITURE ALLEGATIONS: (18 U.S.C. §§ 981(a)(1), 982(a), and 22 U.S.C. § 401)

45. The factual allegations contained in Counts One through Eleven are hereby realleged for the purpose of alleging forfeiture to the United States of America pursuant to Title 18, United States Code, Sections 981(a)(l)(C) and 982(a)(2), and Title 28, United States Code, Section 2461(c).

46. Upon conviction of one or more of the offenses alleged in Counts One through Three of this Superseding Indictment, the defendants,

NAUM MORGOVSKY and
MARK MIGDAL,

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Sections 981(a)(l)(C) and 982(a)(2), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses, including but not limited to:

a. the real property and improvements located at 112 Walaka Street, Unit #305, Kihei, Hawaii, A.P.N. 2-3-9-016-001-0014;

b. the real property and improvements located at 112 Walaka Street, Unit #404, Kihei, Hawaii, A.P.N. 2-3-9-016-001-0017;

and the sum of money equal to the total amount of proceeds defendant obtained or derived from, directly or indirectly, from the violation.

47. Upon conviction of one or more of the offenses alleged in Count Six of this Superseding Indictment, the defendant,

IRINA MORGOVSKY

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(6), any property, real or person, that constitutes, or is derived from or is traceable to the proceeds obtained directly or indirectly from the commission of the offense of which the defendant is convicted, or that is used to facilitate, or is intended to be used to facilitate, the commission of the offense of which the defendant is convicted.

48. Upon conviction of one or more of the offenses alleged in Counts Seven and Eight of this Superseding Indictment, the defendant,

MARK MIGDAL

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses, including but not limited to:

a. the real property and improvements located at 445 Golden Oak Drive, Portola Valley, California, A.P.N. 079-124-020;

b. the real property and improvements located at 1963 Rock Street, Unit 8, Mountain View, California, A.P.N. 153-08-008;

and the sum of money equal to the total amount of proceeds defendant obtained or derived from, directly or indirectly, from the violation.

49. Upon conviction of one or more of the offenses alleged in Count Nine of this

Superseding Indictment, the defendants,

NAUM MORGOVSKY and
IRINA MORGOVSKY,

shall forfeit to the United States of America pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 22, United States Code, Section 401, and Title 28, United States Code, Section 2461(c), the following:

a. Any property constituting or derived from proceeds obtained directly or indirectly as a result of the said violation; and

b. Any property involved in such offense, including but not limited to, defense articles or other export controlled items intended to be illegally exported; and any vessel, vehicle, or aircraft which has been used in exporting or attempting to export any defense articles of other export controlled items.

50. Upon conviction of one or more of the offenses alleged in Counts Ten and Eleven of this Superseding Indictment, the defendant,

NAUM MORGOVSKY,

shall forfeit to the United States of America pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in, or attempted to be involved in, such offense, or any property traceable to such property.

51. If any of the property described above, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 982(b)(1), all pursuant to Title 18, United States Code,

Sections 981 (a)(1)(A), 981(a)(1)(C), 982 (a)(1), 982(a)(2), and 982(a)(6), Title 22, United States Code, Section 401, and Title 28, United States Code, Section 2461(c).

A TRUE BILL

4/27/17
DATE

FOREPERSON

BRIAN J. STRETCH
United States Attorney

, for
BARBARA J. VALLIERE
Chief, Criminal Division

Approved as to Form:

JOHN HEMANN
COLIN SAMPSON
ERIN CORNELL
Assistant United States Attorneys

NATHAN CHARLES
Trial Attorney,
National Security Division

**EXHIBIT 2**

BRIAN J. STRETCH (CABN 163973)
United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

JOHN H. HEMANN (CABN 165823)
COLIN SAMPSON (CABN 249784)
ERIN CORNELL (CABN 227135)
Assistant United States Attorneys

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
FAX: (415) 436-7234
john.hemann@usdoj.gov
colin.sampson @usdoj.gov

JASON B.A. McCULLOUGH (NYBN 4544953)
Trial Attorney, National Security Division
950 Pennsylvania Avenue, NW
Washington, D.C. 20530
Telephone: (202) 233-0986
Email: Jason.mccullough@usdoj.gov

Attorneys for United States of America

FILED
JUN 12 2018
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

IRINA MORGOVSKY,

Defendant.

NO. 3:16-CR-00411-VC-3

PLEA AGREEMENT

I, Irina Morgovsky, and the United States Attorney's Office for the Northern District of California (hereafter "the government") enter into this written Plea Agreement (the "Agreement") pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure:

The Defendant's Promises

1. I agree to plead guilty to Count Nine of the First Superseding Indictment charging me with conspiracy to commit violation of the International Traffic in Arms Regulations (ITAR) in violation of the Arms Export Control Act (AECA), in violation of 22 U.S.C. § 2778. I agree that the elements of conspiracy to violate the AECA are as follows:

a. There existed an agreement between two or more persons to export, or cause to be exported, items from the United States,

b. The items to be exported were defense articles within the United States Munitions List (USML),

c. The individuals exporting the defense articles failed to obtain a license or other authorization from the Department of State, Directorate of Defense Trade Controls prior to exporting the items,

d. The defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it,

e. One or more members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy, and

f. The defendant acted knowingly and willfully.

I agree that the maximum penalties for conspiracy to violate the AECA, in violation of 22 U.S.C. § 2778, are as follows:

| | |
|---|---|
| a. Maximum prison term | 20 years |
| b. Maximum fine | $1,000,000 |
| c. Maximum supervised release term | 3 years |
| d. Restitution | n/a |
| e. Mandatory special assessment | $100 |
| f. Forfeiture | As alleged in the indictment |

I acknowledge that pleading guilty may have consequences with respect to my immigration status if I am not a citizen of the United States. Under federal law, a broad range of crimes are

removable offenses, including the offense to which I am pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and I understand that no one, including my attorney or the district court, can predict to a certainty the effect of this conviction on my immigration status. I nevertheless affirm that I want to plead guilty regardless of any immigration consequences that may result from my guilty plea, even if the consequence is my automatic removal from the United States.

2. I agree that I am guilty of the offense to which I am pleading guilty, and I agree that the following facts are true:

a. I, along with my husband, NAUM MORGOVSKY, owned a number of sole proprietorships in the United States.

b. Together with my husband, we directed a night vision manufacturing business in Moscow, Russia. Coconspirator 1 resided in Russia and worked for the night vision business in Moscow, Russia.

c. From at least April 2012, and continuing until at least August 25, 2016, Coconspirator 1 communicated lists of components necessary for the Russian night vision business to manufacture certain finished night vision devices, whereupon NAUM MORGOVSKY and I agreed to use and used our U.S. businesses to purchase the requested components.

d. Subsequently, NAUM MORGOVSKY and I agreed to use and did use our U.S. businesses to ship the components to the Russian night vision manufacturer. At times, we shipped the products directly to Coconspirator 1 and other coconspirators in Russia. At other times, we shipped the products to, or ordered products for delivery to, additional coconspirators in Europe who then arranged for the products to be hand-carried to their coconspirators in Russia.

e. At no time did I, NAUM MORGOVSKY, or any entities owned or controlled by NAUM MORGOVSKY or I ever apply, or receive, or possess a license or authorization from the Department of State, Directorate of Defense Trade Controls to export defense articles of any description.

f. I did knowingly and willfully and intentionally combine, conspire, confederate, and agree

with each other and others both known and unknown to the Grand Jury to export, and cause the export from the United States the following defense articles:

    i. ITT Industries/Exelis Inc. F9810, Generation 3, 18mm, MX-10130 Image Intensifier Tube;

    ii. ITT Industries/Exelis Inc. F9815, Generation 3, 18mm, MX-11769 Image Intensifier Tube;

    iii. ITT Industries/Exelis Inc. F9800, Generation 3, 18mm, MX-10160 Image Intensifier Tube;

    iv. Janos Technology 30mm Light Lens Assembly, Part Number ("P/N") 41584-001;

    v. Janos Technology 30mm Light Front Lens, P/N 41584-501;

    vi. Janos Technology 30mm Light Back Lens, P/N 41584-502;

    vii. Janos Technology 30mm Light Lens Set, P/N 907148-01;

    viii. Janos Technology 50mm Medium Lens Assembly, P/N: 41585-001;

    ix. Janos Technology 50mm Medium Front Lens, P/N: 41585-501;

    x. Janos Technology 50mm Medium Back Lens, P/N: 41585-502;

    xi. Janos Technology 50mm Medium Lens Set, P/N: 907149-01;

    xii. Janos Technology 100mm Heavy Lens Assembly, P/N: 41647-001;

    xiii. Janos Technology 100mm Heavy Front Lens, P/N: 41647-501;

    xiv. Janos Technology 100mm Heavy Back Lens, P/N: 41647-502;

    xv. Janos Technology 100mm Heavy Lens Set, P/N 907421-01;

    xvi. Janos Technology 100mm Heavy Lens Assembly, Wider Tolerance, P/N 907150-02;

    xvii. Janos Technology 100mm Heavy Front Lens, Wider Tolerance, P/N 41647-502;

    xviii. Janos Technology 100mm Heavy Back Lens, Wider Tolerance, P/N 41647-502; and

    xix. Janos Technology 100mm Heavy Lens Set, Wider Tolerance, P/N 907150-01; which were, at the time of the conduct described herein, designated as a defense articles on the United States Munitions List, without first obtaining the required

license or written authorization from the Department of State, Directorate of
Defense Trade Controls, in violation of Title 22, United States Code, Sections
2778(b)(2) and 2778(c); and Title 22, Code of Federal Regulations, Sections
121.1, 122.1, 123.1, 127.l(a)(4), and 127.3.

g.   In furtherance of the activities described above, I ~~did~~ knowingly and willfully (i) ~~prepare false invoices, (ii)~~ signed checks for purchases of night vision and thermal vision
described above, and (ii) misrepresented the end user in connection with purchases of the
night vision and thermal vision described above.

3.    I agree to give up all rights that I would have if I chose to proceed to trial, including the
rights to a jury trial with the assistance of an attorney; to confront and cross-examine government
witnesses; to remain silent or testify; to move to suppress evidence or raise any other Fourth or Fifth
Amendment claims; to any further discovery from the government; and to pursue any affirmative
defenses and present evidence.

4.    I agree to give up my right to appeal my conviction, the judgment, and orders of the
Court, as well as any aspect of my sentence, including any orders relating to forfeiture and/or restitution,
except that I reserve my right to claim that my counsel was ineffective.

5.    I agree not to file any collateral attack on my conviction or sentence, including a petition
under 28 U.S.C. § 2255 or 28 U.S.C. § 2241, except that I reserve my right to claim that my counsel was
ineffective.  I also agree not to seek relief under 18 U.S.C. § 3582.

6.    I agree not to ask the Court to withdraw my guilty plea(s) at any time after it is entered.
In the event I violate any of the terms of the Agreement, I agree that the facts set forth in Paragraph 2 of
this Agreement and, if applicable, the fact that I made a sworn admission to them in a previous court
proceeding, shall be admissible against me in any subsequent proceeding, including at trial.  In any
subsequent proceeding conducted after I violate any of the terms of the Agreement, I expressly waive
any and all rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410 with regard to the facts set forth in
Paragraph 2 of the Agreement and, if applicable, the fact that I made a sworn admission to them at a
previous court proceeding.

7.    I understand that the Court must consult the United States Sentencing Guidelines and

take them into account when sentencing, together with the factors set forth in 18 U.S.C. § 3553(a). I also understand that the Court is not bound by the Guidelines calculations below; the Court may conclude that a higher Guidelines range applies to me, and, if it does, I will not be entitled, nor will I ask, to withdraw my guilty plea. I further agree that regardless of the sentence that the Court imposes on me, I will not be entitled, nor will I ask, to withdraw my guilty plea**[s]**. I agree that the Sentencing Guidelines offense level should be calculated as set forth below, and that I will not request a downward departure under the Sentencing Guidelines from that offense level, although I reserve the right to seek a downward variance based on the factors set forth in 18 U.S.C. § 3553(a). I understand that the government is free to oppose any such request. The parties have reached no agreement regarding my Criminal History Category.

a. Base Offense Level, U.S.S.G. § 2M5.2: 26

b. Acceptance of Responsibility: -2
If I meet the requirements of U.S.S.G. § 3E1.1(a), I may be entitled to a two-level reduction for acceptance of responsibility, provided that I forthrightly admit my guilt, cooperate with the Court and the Probation Office in any presentence investigation ordered by the Court, and continue to manifest an acceptance of responsibility through and including the time of sentencing.

c. Adjustment for Minor Role 3B1.2: -3

d. Adjusted Offense Level: 21

8. I agree that regardless of any other provision of this Agreement, the government may and will provide the Court and the Probation Office with all information relevant to the charged offenses and the sentencing decision. I agree that, based on the nature of the offense, the Court should impose the following special condition of supervised release which is reasonably related to deterrence and rehabilitation:

<u>Special Condition (Searches)</u>

The defendant shall submit his person, residence, office, vehicle, electronic devices and their data (including cell phones, computers, and electronic storage media), and any property under defendant's control to a search. Such a search shall be conducted by a United States Probation Officer or any federal, state, or local law enforcement officer at any time, with or without suspicion. Failure to submit to such a search may be grounds for revocation; the defendant shall warn any residents that the premises may be subject to searches.

9. I agree to pay restitution for all losses caused by all the schemes or offenses with which I was charged in this case, and I understand that the amount of restitution will not be limited to the loss attributable to the counts to which I am pleading guilty, pursuant to 18 U.S.C. § 3663(a)(3).

I understand that the restitution described above creates a lien in favor of the United States on all property and rights to property I may possess upon entry of judgment and continues for 20 years or until the debt is paid in full. I further understand the government will record a notice of the lien in any county where I reside or have property. I further understand that this order of restitution cannot be discharged in bankruptcy and that if I default on the payment of a fine or restitution, the Court may revoke probation or a term of supervised release, modify the terms or conditions of probation or supervised release, resentence me, hold me in contempt of court, order the sale of property, enter or adjust a payment schedule, or take any other action necessary to obtain compliance.

Within thirty days of the execution of this Plea Agreement, I agree to complete, under penalty of perjury, a financial statement provided by the U.S. Attorney's Office and to update that statement with material changes within seven days of the change. I understand that I must identify all assets and financial interests valued at more than $1,000. I further understand that these assets and financial interests include all assets and financial interests in which I have an interest, direct or indirect, whether held in my own name or in the name of another, in any property, real or personal.

I agree to notify the Financial Litigation Unit, United States Attorney's Office ("FLU") before transferring any interest in property owned directly or indirectly by me, including any interest held or owned under any other name or entity, including trusts, partnerships, and/or corporations. I also agree to notify the FLU of any interest in property I may obtain, directly or indirectly, including any interest obtained under any other name, or entity, including a trust, partnership, or corporation, after the execution of this Plea Agreement until the fine or restitution is paid in full.

I agree that any fine, forfeiture, or restitution imposed by the Court against me will be subject to terms provided in this agreement and subject to enforcement by the government as authorized by 18 U.S.C. § 3613.

10. I agree not to commit or attempt to commit any crimes before sentence is imposed or before I surrender to serve my sentence. I also agree not to violate the terms of my pretrial release; not

to intentionally provide false information to the Court, the Probation Office, Pretrial Services, or the government; and not to fail to comply with any of the other promises I have made in this Agreement. I agree that if I fail to comply with any promises I have made in this Agreement, then the government will be released from all of its promises in this Agreement, including those set forth in the Government's Promises Section below, but I will not be released from my guilty plea.

11. I agree to forfeit the United States passport, number 420799715, issued in the name of Victoria Ferrara.

I admit that the United States passport was, at least in part, proceeds of the specified unlawful offense, and thus is forfeitable to the United States pursuant to the provisions of 18 U.S.C. § 982(a)(6); and 28 U.S.C. § 2461(c); and the procedures outlined in Rule 32.2 of the Federal Rules of Criminal Procedure.

I further agree to forefeit my interest in the following property ("subject property"): (i) one night vision scope, size small, containing image intensifier tube serial no. 4654898, (ii) one night vision scope, size medium, containing image intensifier tube serial no. 4656232, (iii) one night vision scope, size large, containing image intensifier tube serial no. 4732440, and (iv) the three image intensifier tubes and other night vision components contained inside the scopes identified in parts (i) – (iii).

I admit that the subject property was involved in the offense set forth in Count 9 and thus is forfeitable to the United States pursuant to the provisions of 18 U.S.C. § 981(a)(1)(C), 22 U.S.C § 401, and 28 U.S.C. § 2461(c), and the procedures outlined in Rule 32.2 of the Federal Rules of Criminal Procedure.

12. I agree that this Agreement contains all of the promises and agreements between the government and me, and I will not claim otherwise in the future. No modification of this Agreement shall be effective unless it is in writing and signed by all parties.

13. I agree that the Agreement binds the U.S. Attorney's Office for the Northern District of California only, and does not bind any other federal, state, or local agency.

14. The disposition contemplated by this agreement is contingent upon the satisfactory tender and acceptance by the Court of the guilty pleas entered by co-defendant Naum Morgovsky to Counts Nine through Eleven of the First Superseding Indictment, charging conspiracy to violate the

International Traffic in Arms Regulations in violation of the Arms Export Control Act, in violation of 22 U.S.C. § 2778, and Money Laundering, to be filed in this criminal case.

The Government's Promises

15. The government agrees to move to dismiss any open charges pending against the defendant in the captioned First Superseding Indictment at the time of sentencing.

16. The government agrees not to file any additional charges against the defendant that could be filed as a result of the investigation that led to the captioned First Superseding Indictment.

17. The government agrees that it will not seek or argue for a sentence above the low end of the applicable guideline range, as set forth in Paragraph 7.

18. The government agrees that the reasonable and appropriate sentence in this case is as set forth above, unless the defendant violates the terms of the Agreement or fails to accept responsibility.

The Defendant's Affirmations

19. I agree that my participation in the District Court's Conviction Alternative Program is not appropriate and that I will not request to be considered for and will not participate in that program as a result of my convictions for these offenses.

20. I confirm that I have had adequate time to discuss this case, the evidence, and the Agreement with my attorney and that my attorney has provided me with all the legal advice that I requested.

21. I confirm that while I considered signing this Agreement, and at the time I signed it, I was not under the influence of any alcohol, drug, or medicine that would impair my ability to understand the Agreement.

///

///

///

///

///

///

///

22. I confirm that my decision to enter a guilty plea is made knowing the charges that have been brought against me, any possible defense, and the benefits and possible detriments of proceeding to trial. I also confirm that my decision to plead guilty is made voluntarily, and no one coerced or threatened me to enter into this Agreement.

Dated: 06/12/2018

IRINA MORGOVSKY
Defendant

ALEX TSE
Acting United States Attorney

Dated: 6/12/2018

JOHN H. HEMANN
COLIN SAMPSON
ERIN CORNELL
Assistant United States Attorneys

Dated: 6/12/18

JASON B.A. McCULLOUGH
Trial Attorney, National Security Division

23. I have fully explained to my client all the rights that a criminal defendant has and all the terms of this Agreement. In my opinion, my client understands all the terms of this Agreement and all the rights my client is giving up by pleading guilty, and, based on the information now known to me, my client's decision to plead guilty is knowing and voluntary.

Dated: 6/12/18

RICHARD MAZER
Attorney for Defendant

# EXHIBIT 3

**Pages 1 - 67**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE VINCE CHHABRIA, JUDGE

UNITED STATES OF AMERICA, )
Plaintiff, )
VS. ) **No. CR 16-0411 VC**
NAUM MORGOVSKY; IRINA MORGOVSKY. )
Defendants. )

San Francisco, California
Wednesday, January 16, 2019

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff: ALEX G. TSE
United States Attorney
450 Golden Gate Avenue, 11th Floor
San Francisco, California 94102
**BY: COLIN C. SAMPSON, AUSA**

U.S. Attorneys' Office
Oakland Branch
1301 Clay Street, #340S
Oakland, California 94612
**BY: ERIN A. CORNELL, AUSA**

For Defendant Naum Morgovsky: STEVEN KALAR
Federal Public Defender
450 Golden Gate Avenue
San Francisco, California 94102
**BY: ELIZABETH FALK**
**ASSISTANT FEDERAL PUBLIC DEFENDER**

(Appearances continued on next page)

Reported By: Katherine Powell Sullivan, CSR #5812, RPR, CRR
Official Reporter - U.S. District Court

**APPEARANCES (CONTINUED):**

For Defendant Irina Morgovsky: MOEEL LAW OFFICE
1611 Telegraph Ave, Suite 806
Oakland, California 94612
**BY: SHAFFY MOEEL, ESQ.**

Also Present: **CATHERYN GRIER, U.S. PROBATION**

Wednesday, January 16, 2019 1:38 p.m.

**P-R-O-C-E-E-D-I-N-G-S**

**---000---**

**THE CLERK:** Calling case number 16-cr-00411, USA versus Naum Morgovsky, and U.S. versus Irina Morgovsky.

Counsel, please step forward and state your appearances for the record.

**MR. SAMPSON:** Good afternoon, Your Honor. Colin Sampson and Erin Cornell for the United States.

**THE COURT:** Good afternoon.

**MS. FALK:** Good afternoon, Your Honor. Elizabeth Falk for Mr. Morgovsky, who is present in court.

**THE COURT:** Good afternoon.

Good afternoon, Mr. Morgovsky.

**THE DEFENDANT:** Good afternoon, Your Honor.

**MS. MOEEL:** Good afternoon, Your Honor. Shaffy Moeel for Irina Morgovsky, who is also present.

**THE COURT:** Good afternoon.

Good afternoon, Mrs. Morgovsky.

**MS. GRIER:** And Catheryn Grier from U.S. Probation, Your Honor.

**THE COURT:** Ms. Grier, I would say there's no need for you to stand up there while the lawyers are arguing.

**MS. GRIER:** Okay.

**THE COURT:** We'll let you know if we have any

questions. I thought it would be good for you to be here.

**MS. GRIER:** Okay.

**THE COURT:** Let's see. Who should we start with?

Ms. Falk, why don't we start with you since you're new to the party.

**MR. SAMPSON:** Right. I just need to make sure I have my pen.

**THE COURT:** Okay. Take your time.

**MS. FALK:** Okay.

**THE COURT:** Okay. So, you know, the main thing I want to focus on today is just whether there is a substantial question on appeal.

And let me -- let me give you my sort of initial list of questions that I have about that, and then we can go back and talk about them one by one.

So, you know, on the issues relating to this regulation, it seems like there are a number of potential reasons why, at least in the context of this case, if not in the context of any case, that they don't present a substantial question.

One is the failure to raise the issue pretrial. You can correct me if I'm wrong, but I believe that nobody actually raised this in a pretrial motion to dismiss the indictment or anything. It's possible that I'm wrong about that because this case has a long and convoluted history.

But it strikes me that there is a pretty strong argument

that the failure to raise it pretrial means that it has been -- that the argument has been forfeited and that this is -- this is the type of argument that would need to be raised pretrial under Rule 12.

The second issue that may suggest that the arguments relating to the regulation do not present a substantial question, at least in this context -- and this only applies to Mrs. Morgovsky -- is the appellate waiver and the appeal waiver in the plea agreement.

So I know that you, Ms. Falk, won't talk about that. I'll have Ms. Morgovsky's lawyer talk about that.

But it seems that even if the issue was not waived by the failure to raise it pretrial, it seems fairly likely that it was raised by Mrs. -- waived by Mrs. Morgovsky in connection with her plea agreement.

I realize, by the way, that this would not apply to the ineffective assistance of counsel claim but the more direct attack on the regulation.

And then the third obstacle, I guess, to concluding that the defendants have raised -- that these arguments relating to the regulation raise a substantial question is that the argument seems pretty much foreclosed by Ninth Circuit case law in a case that I think neither side cited. And that's the *Gurrola-Garcia* case from the Ninth Circuit. It's an older case. I think it's from the '80s, if I remember correctly.

     But in that case the Ninth Circuit was considering the predecessor to this statute, but considered largely the same issue, and rejected an argument that the regulation was not authorized by the statute and rejected an argument -- the nondelegation argument that Mr. Morgovsky makes. Now, so that's for the direct attack on the statute.

Then there's the ineffective assistance -- there's the issue of ineffective assistance. And then on the -- on the issue of ineffective assistance, I think you have the additional problem.

Number one, I think there's a pretty good argument that it was not defective performance by counsel to decline to raise this issue in light of Ninth Circuit precedent.

I will say that I think if I were defense counsel I would have raised this issue. I think if I were defense counsel I would have filed a motion to dismiss the indictment to the extent that it relied on the regulation. And I would have probably tried to get -- you know, get the Ninth Circuit to take this *Gurrola-Garcia* case *en banc*. And I might have filed a cert petition in the Supreme Court. But I don't think I would have been very optimistic in light of Ninth Circuit precedent and other precedent.

So I think it would be -- and I think it's debatable whether, you know, it would -- whether such a motion should be filed. So I think it's debatable whether there was deficient

performance for failure to file that motion.

And then on the issue of prejudice, certainly as to Mrs. Morgovsky, given the sentence she received, I'm not sure how there could be prejudice. But I may be missing something on that issue.

So that is sort of my -- those, I think, are the potential obstacles to a conclusion that, you know, the arguments relating to the regulation raise substantial questions on appeal.

I think any one of those potentially could prevent a conclusion that the arguments relating to the regulation present a substantial question on appeal, but I think they probably combine to give the Government a very strong case that there's no substantial question on appeal.

I don't think the argument is frivolous, but I think that in the context of existing case law it probably doesn't present a substantial question on appeal.

I realize there's a lot there, so let's go back to the first -- let's start by going back to the first point, which is, am I right that this was never raised in a pretrial motion? And if so, why doesn't the failure to raise it in a pretrial motion constitute waiver?

**MS. FALK:** I think it's fair to say that pre plea it was not raised in the record. I do think Mr. Morgovsky had some pro se inklings of it presentence.

**THE COURT:** Yes. But it was never -- in the materials that Mr. Morgovsky filed in connection with his sentencing, it was never "I want to withdraw my guilty plea because my conviction is invalid," as I recall it. It was sort of a gloss that he wanted to put on his -- on the sentencing arguments, right.

So, you know, in other words, I have never been squarely asked to decide whether the Government's effort to prosecute Mr. and Mrs. Morgovsky under this regulation were valid.

**MS. FALK:** So my understanding is the failure to raise was subjected to plain error review, but it wouldn't change the analysis because this is purely a question of law.

**THE COURT:** Okay. But you agree that it would -- that it would change it to plain error review?

**MS. FALK:** I did agree with that in my brief.

**THE COURT:** Okay.

**MS. FALK:** But constitutional claims are never waived. In other words, a guilty plea itself doesn't bar a defendant from challenging the constitutionality of a conviction on direct appeal. And that's the *Class* case.

**THE COURT:** Well, that -- *Class* says that a constitutional challenge to a statute, the challenge to the constitutionality of a statute is not waived by a guilty plea.

But all sorts of constitutional issues and rights and claims are waived by guilty pleas every day in courts

throughout the land. I mean, when you plead guilty, you waive your Fourth Amendment claims that would come up in a suppression motion.

**MS. FALK:** Right. But this is a constitutional challenge to the regulation. He was convicted by means of a regulation. And we're saying that regulation --

**THE COURT:** -- is not authorized by the statute.

**MS. FALK:** And thus unconstitutional and an unconstitutional delegation.

**THE COURT:** Well, it seems to me that you have made two arguments.

**MS. FALK:** Correct.

**THE COURT:** One is that the regulation is not authorized by the statute.

**MS. FALK:** Right.

**THE COURT:** And the other is that the statute itself is unconstitutional to the extent it delegates, unconstitutionally, to the State Department the authority to adopt this regulation.

**MS. FALK:** Correct.

**THE COURT:** Right?

**MS. FALK:** That the regulation itself is a violation of nondelegation because it's creating a crime. The regulation itself is what created the crime. And that's what we're saying is un- --

**THE COURT:** But if you had brought this challenge pretrial, what would it have looked like? And I know you weren't here pretrial, but -- and welcome to the party, by the way.

**MS. FALK:** Thank you.

**THE COURT:** But if you had brought this challenge pretrial, what would it have looked like?

**MS. FALK:** I would have raised both those issues.

**THE COURT:** Right. But procedurally, sort of procedurally what would you have done? A motion --

**MS. FALK:** -- to dismiss the indictment for failure to state a federal crime.

**THE COURT:** And a motion to dismiss an indictment for failure to state a federal crime, is that -- is there case law that says that that is the kind of thing that cannot be waived?

**MS. FALK:** Yes. My understanding is jurisdictional defects can never be waived under the *Broncheau* case.

**THE COURT:** But is it right to think of that as a jurisdictional defect?

**MS. FALK:** I do think so. Because if it doesn't state a federal -- if it doesn't state a federal crime, then there's no jurisdiction in federal court. So I think it's constitutional. I think it's jurisdictional. I think it easily passes something that can be reviewed.

**THE COURT:** I have not dug as deeply into this issue

as I have maybe on some of the others in this case, but it seems to me that -- it's not something that the federal government was incapable of doing -- right? -- creating this crime of conspiracy. Your argument is just that they didn't quite do it in the right way; right?

**MS. FALK:** That the legislature didn't do it. And at various points in the history where they added conspiracy to similar statutes they specifically did not add conspiracy to this particular statute. So why not?

**THE COURT:** Okay. All right.

But doesn't that -- I mean, we've got a list of potential problems with Mr. Morgovsky's arguments. This is the first on the list.

**MS. FALK:** Right.

**THE COURT:** You know, and it's already made worse for you by the fact that it would be plain error review and not de novo review; right?

**MS. FALK:** Well, but it's a legal challenge. I'm not actually sure that it matters in -- it's a pure question of law.

There's nothing -- the Ninth Circuit is not hindered in any way from considering this issue because it's coming up now. It would be the same analysis, it's just they don't maybe have the benefit of a district court's pass on a legal issue. But it certainly affects substantial rights, which is usually the

hiccup in an *Olano* analysis; right? I mean, he could be convicted completely wrongfully if the Ninth Circuit agreed with me. So I don't really see plain error review as a very big hurdle at all.

**THE COURT:** So, in other words, you're saying in this context, given the issue that you've teed up, you agree that because it was not raised pretrial, it's reviewed for plain error.

But the actual standard of review that would be applied in this case, the actual standard that the Ninth Circuit would apply to considering the validity of the regulation, would not be any different than if it had been raised.

**MS. FALK:** I don't think so.

**THE COURT:** Then what's the point of having a rule saying you have to raise the rule issue pretrial?

**MS. FALK:** Because in a lot of context there's factual components to it because it allows the district court to make a different decision.

**THE COURT:** But it sounds like what you're arguing is that there was no obligation on Mr. Morgovsky's part to raise this issue pretrial.

**MS. FALK:** I'm not saying that at all.

**THE COURT:** Well, then, what's the penalty for not raising it? If review is the same, then what's the -- what's the penalty -- I mean, usually when people don't raise

things -- I mean, the reason we have these rules about waiver is if you didn't raise it in the trial court, you can't raise it on appeal. Or we're going to have much more limited type of review on appeal, only to make sure that somebody -- you know, that it wasn't structural error or something along those lines; right?

But what you seem to be saying is, in arguing that it would be the exact same type of review on appeal, that this legal question would be reviewed in the exact same way under the same standard, what you seem to be arguing is that Mr. Morgovsky was not actually -- there was no rule requiring Mr. Morgovsky to raise this constitutional challenge or raise this challenge to the indictment pretrial.

**MS. FALK:** Well, I just want to be careful to not waive any ineffective assistance of counsel claim in the future that could -- I don't think it's best practice, but I don't think it forecloses his claim.

In other words, there are some very -- there's a very tiny category of issues where I think what the Court is saying is exactly true.

**THE COURT:** That you don't have to raise it pretrial.

**MS. FALK:** That there's no penalty for not doing so.

**THE COURT:** Yeah, yeah. And you think --

**MS. FALK:** This fits into that.

**THE COURT:** There's not a waiver issue? In other

words, the first issue I identified when I came out here and ticked off these issues, failure to raise it pretrial, your position is that's actually not an issue at all? The failure to raise the issue pretrial does not matter one bit in this context?

**MS. FALK:** I don't believe it does.

**THE COURT:** Okay.

Now, the second issue is the -- is an issue, I guess, that's specific to Mrs. Morgovsky. So I'll ask you, Ms. Moeel, why -- and this is an issue I believe you have not addressed in any of your papers, if I recall correctly. If I missed it, forgive me. There's a lot of papers flying around in this case.

Why doesn't the appeal waiver in the plea agreement foreclose Mrs. Morgovsky from attacking the regulation in her appeal?

**MS. MOEEL:** Sure. Thank you, Judge.

I believe I addressed it, although somewhat briefly, in doc 435, which is my motion on her behalf for bail pending appeal.

And I relied primarily on the recent Supreme Court case in *Class*, *Class versus United States*, where the Court --

**THE COURT:** The Court did not discuss at all whether -- what somebody can waive in a plea agreement. *Class* was only about whether the act of pleading guilty resulted in a

 waiver of the ability to challenge the constitutionality of a statute.

So it seems to me that *Class* has nothing to do with the Government's argument that Mrs. Morgovsky agreed to waive this argument on appeal. In fact, I think the fairly strong implication of *Class* is had Mr. Class included in the plea agreement that he was waiving the right to challenge the constitutionality of the statute under which he was convicted, then he would have been out of luck.

**MS. MOEEL:** Well, I think that -- I mean, the Government itself has recognized in their response to the -- or, rather, in their motion to dismiss Mrs. Morgovsky's appeal in the Ninth Circuit, which is pending, that an appellate waiver doesn't apply in her case to a sentence that was obtained in violation of law.

And if she's sentenced in violation of a law that is constitutionally defective, I think she's allowed to raise the issue whether her sentence --

**THE COURT:** Hang on a second.

Mr. Morgovsky, I'm going to have to ask you to sit down.

**MS. FALK:** This is my fault, Your Honor.

**THE COURT:** You have -- throughout the tenure of this case you have been disruptive in these proceedings.

**THE DEFENDANT:** I'm sorry.

**THE COURT:** And today is no exception. And so I'm

 going to have to ask you to sit down for the remainder of the proceedings.

**THE DEFENDANT:** I'm sorry, Your Honor.

**MS. MOEEL:** I'm sorry, Your Honor. I'll repeat that briefly, that the Government has indicated that one of the exceptions to the appellate waiver is if Mrs. Morgovsky's sentence was obtained in violation of law.

Essentially, if she had an illegal sentence and if she had an illegal sentence based on an unconstitutional statute, I think that applies here. Whether -- so I think that that would be my answer to that. And I think -- I do think that the *Class* case is on point with respect to that.

**THE COURT:** Where? Show me the language.

**MS. MOEEL:** Well, the language -- they say Class did not relinquish his right to appeal the district court's constitutional determination simply by pleading guilty.

**THE COURT:** Right.

**MS. MOEEL:** And he had a plea agreement --

**THE COURT:** And they looked at the plea agreement, and they examined the plea agreement to see if there was language in the plea agreement by which he relinquished his right to challenge the constitutionality of the statute.

And there wasn't language in the plea agreement that relinquished his right to challenge the constitutionality of the statute. There wasn't any general language in the plea

 agreement, like there is in this one, that says, "I agree not to challenge my conviction on appeal." Rather, there were some very specific arguments in his plea agreement that he was agreeing not to pursue on appeal.

And so the question for the Court was simply, does the act of pleading guilty cause you to relinquish your right to challenge the constitutionality of the statute under which he pled guilty? And the answer is no.

I don't see how that helps Mrs. Morgovsky.

**MS. MOEEL:** Well, then, I don't understand what the exception regarding a sentence obtained in violation of law would apply to if not for a sentence --

**THE COURT:** But those are cases about sentencing. Those are cases about people appealing their sentences and creating exceptions when somebody appeals their sentence.

There's a general appeal waiver for appealing your sentence. There are a couple of exceptions for when you can appeal your sentence. Like if it goes over the statutory maximum or something like that. Right?

**MS. MOEEL:** Right.

**THE COURT:** So I don't understand how that --

**MS. MOEEL:** I mean, I think primarily, also back to one thing Your Honor was talking about with respect to Mrs. Falk, our position is that a challenge to the constitutionality of a federal statute is actually a question

of law to be reviewed de novo. And that jurisdictional question of whether the Government has the right to drag someone into federal court on a case is an important jurisdictional claim that is never waived.

**THE COURT:** So what you're saying is that every defendant all across the country who gets charged by the Government, doesn't challenge the constitutionality of the statute pretrial, agrees in a plea agreement to waive appeal of their conviction, every defendant across the country retains the ability to appeal and challenge the constitutionality of the statute under which they were convicted?

**MS. MOEEL:** If it is a jurisdictional claim that they're raising, whether or not --

**THE COURT:** So the answer is yes? Your answer is, every single defendant across the country, after entering a plea agreement with the Government by which they agree not to appeal their conviction, can nonetheless appeal their conviction to challenge the constitutionality of the statute?

If that's not your position, then explain to me why Mrs. Morgovsky is in a different position from any other defendant around the country who fits that description.

**MS. MOEEL:** Right. Well, I -- I think that -- I think that has to be our position with respect to the statutory challenge. I mean, she has a different argument with respect to the ineffective assistance, yes.

**THE COURT:** While I have you, let me ask you this. Do you have any other case law to support that position than what you have cited in your papers?

**MS. MOEEL:** No, not yet.

**THE COURT:** Okay.

So while I have you, while we're talking, why don't we -- why don't I ask you the other kind of -- about the other issue that is specific to Mrs. Morgovsky, which is the issue of prejudice on her ineffective assistance claim.

Now, the argument, as I understand it, is that: They should have charged me under 18 U.S.C. Section 371 instead of under this regulation. And under this regulation I was exposing myself to a 20-year sentence. And under 18 U.S.C. 371, I would have only been exposed to a five year statutory maximum.

But Mrs. Morgovsky argued for no custody and got a sentence of 18 months, if I recall correctly.

**MS. MOEEL:** Right.

**THE COURT:** Was it 18 months?

**MS. MOEEL:** Right.

**THE COURT:** So let's just assume for the sake of argument that the issue was waived and counsel was not -- counsel's performance was deficient in failing to raise the argument. For the sake of argument, let's assume that for the ineffective assistance of counsel claim.

 You also have to show prejudice. Where is the prejudice here?

**MS. MOEEL:** Well, we submit on that, Your Honor. I think --

**THE COURT:** Okay.

**MS. MOEEL:** May I have a moment?

(Defense counsel confer off the record.)

**MS. MOEEL:** I mean, I think what Ms. Falk is reminding me is that the issue would be that there's no guarantee that they could indict on 18 U.S.C. 371. We don't know.

And if there was a new --

**THE COURT:** Why not? What would be the reason why they could not indict under Section 371?

**MS. MOEEL:** Well, I mean, I don't know why they chose to not indict on 18 U.S.C. 371. Perhaps there were issues with respect to statute of limitations or any other --

**THE COURT:** But a defendant attempting to show ineffective assistance of counsel has the burden --

**MS. MOEEL:** Right.

**THE COURT:** -- of demonstrating -- of course, you don't have the burden of demonstrating it here, but you have the burden of showing that you would be able -- there's a likelihood that you would be able to demonstrate it in the Court of Appeal; right?

So you have the burden of demonstrating prejudice or

you're going to have the burden of demonstrating prejudice. How are you going to meet that burden?

You can't just meet it by saying, hey, maybe there was some problem with charging him under Section 371.

**MS. MOEEL:** I mean, it seems to me --

**THE COURT:** Excuse me, charging her under 371.

**MS. MOEEL:** -- that what we have here is prior counsel, through whatever reason, failed to raise a claim that, as Your Honor noted, is not for the list, that Your Honor would have raised had you been litigating this case.

**THE COURT:** Probably. I mean, I would have had to investigate it more. But I think I probably would -- as I sit here now, I think I probably would have said, look, you know, this is a real long shot because of existing case law, but this might be an issue on which we want to take a shot on getting the law changed. And we might need to go all the way to the *en banc* court to do it because of existing Ninth Circuit precedent, but it's probably worth -- it's probably worth a shot.

Or maybe I would say, you know what, it's not worth a shot because they can turn around and charge us under 18 U.S.C. Section 371 anyway. I don't know.

But let's assume, for the sake of argument only, that it was deficient performance not to raise the issue pretrial. What -- I understand the prejudice argument for Mr. Morgovsky,

 but I still don't understand what your prejudice argument would be for Mrs. Morgovsky, given her sentence.

**MS. MOEEL:** I mean, Your Honor is seeing that I am having a difficult time describing exactly what would be her prejudice because -- and perhaps if we had an opportunity to develop the appeal we might be able to uncover additional things.

But, I mean, I think for now it's hard to say because we don't have a crystal ball and because she did get a sentence under the statutory maximum and under the guidelines, it's true. But, at the same time, I just have a hard time with the idea that a lawyer might miss a constitutional argument that may or may not, you know, work.

And if she had filed the challenge she might be in a position to stay out pending appeal, including pending appeal all the way up to the Supreme Court, and that she didn't have a chance to do that because she wasn't advised properly by her lawyer. And that now, because Your Honor was considering -- you know, considerate towards her at sentencing, she isn't going to have a chance to raise those constitutional issues. That seems to me not to sit right.

**THE COURT:** Okay. But, of course, this is not about whether she will have the opportunity to raise the ineffective assistance of counsel claim. This is only about whether she has presented substantial questions relating to that claim that

would be likely to result in a reversal of -- a reversal of the conviction; right?

And on that point there's another issue. And this is an issue I forgot to bring up at the outset, and this applies to Mr. and Mrs. Morgovsky. And it's another obstacle, I think, to establishing a substantial question on appeal. With respect to the ineffective assistance of counsel claim, I would think that it is virtually certain that the Ninth Circuit would decline to take up the ineffective assistance of counsel claim on direct appeal and say that that is something that is more appropriately left for a 2255 petition. That is typically what the Ninth Circuit does.

And in this case, you know, the ineffective assistance claim would be dependent, I think, on some factual -- resolution of some factual issues about communications that took place between the Morgovskys and their lawyers, for example.

I think this is probably the last thing that I need to ask you about with respect to Mrs. Morgovsky's appeal before I -- or motion before I turn back to Ms. Falk. But what -- do you have any response to that?

**MS. MOEEL:** No, Your Honor.

**THE COURT:** Okay.

So, Ms. Falk, let's turn back to you. Obviously we don't -- for Mr. Morgovsky, we do not have an issue of an

appeal waiver in a plea agreement because there was no plea agreement.

Is there anything else you want to say about the question of whether Mr. Morgovsky waived this on appeal by not raising it in a motion pretrial, before we turn to the other issues?

**MS. FALK:** Only that actually it's my understanding that the claim will still be reviewed de novo because it's a constitutional claim whether he raised it or not.

**THE COURT:** Right.

**MS. FALK:** Okay.

**THE COURT:** So, in other words, this is not the type of claim that a defendant is required -- in your view, this is not the type of claim that a defendant is required to raise in the trial court?

You can just proceed through the trial court, get convicted, get sentenced, and then raise an issue like this for the first time on appeal, and it will get the exact same type of review?

**MS. FALK:** Yes.

**THE COURT:** That's your position?

**MS. FALK:** That's our position.

**THE COURT:** Just to make sure I have it, what are your best couple of cases for that position?

**MS. FALK:** I have a -- sorry. I lost it. On the de novo review issue --

 **MS. MOEEL:** Your Honor, I'm sorry, if I may -- while you look at that.

**MS. FALK:** Yes.

**MS. MOEEL:** What I cited in my papers is *United States versus Laursen*, L-a-u. And that's 847 F.3d 1026.

**MS. FALK:** That's where I'm getting the standard.

**THE COURT:** Okay.

**MS. FALK:** Okay.

**THE COURT:** All right. Now, in light of *Gurrola-Garcia*, how can you -- how could I conclude that there's a substantial question on appeal as it relates to this regulation?

**MS. FALK:** Okay. Twofold. Well, so *Gurrola-Garcia* dealt with a predecessor statute, which was 401.

**THE COURT:** Right.

**MS. FALK:** And they did an extensive legislative history analysis of that particular statute in coming to that conclusion.

The Ninth Circuit noted that if the regulation extended or modified --

**THE COURT:** Hold on. Give me one quick second. Let me pull it up so I can be with you.

**MS. FALK:** Okay.

**THE COURT:** And tell me what page you're on.

**MS. FALK:** Sure. So, Your Honor, I actually just

became aware of *Gurrola-Garcia* a very short time ago, I will say. So --

**THE COURT:** Like in this hearing?

**MS. FALK:** Like yesterday evening.

**THE COURT:** Okay. Good.

**MS. FALK:** And, I'm sorry, I was -- anyway neither here nor there.

So my understanding of *Gurrola-Garcia* is it was an evaluation of an attempt provision --

**THE COURT:** Right.

**MS. FALK:** -- under 22 U.S.C. 401, in 1934.

**THE COURT:** Right.

**MS. FALK:** So that's not the same statute we're dealing with here.

**THE COURT:** Right. It's the predecessor statute.

**MS. FALK:** Correct. And that what the Ninth Circuit said at 1077 --

**THE COURT:** Yes.

**MS. FALK:** -- is that if the regulation extended or modified Section 1934, it would be invalid.

**THE COURT:** Yes.

**MS. FALK:** Right. And then it came to the conclusion that under the legislative history and analysis of that particular statute, it did not; it was authorized.

**THE COURT:** I mean, I don't really see the Court's

 ruling as turning on a detailed analysis of the legislative history.

There's some brief mention of the sparse history on the Mutual Security Act, but it's mainly just an analysis of the language of the statute which is similar to the language of the statute that we're dealing with here, and in particular an analysis of the word "control"; right?

And you have this paragraph on the page that you cited to me, 1077, that says -- starts "Given the wide sweep of the word 'control,' Section 127.01 of the regulations is well within the grant of the authority of the president." And then it goes on to explain why.

And that paragraph seems equally applicable here, and so I don't understand why *Gurrola-Garcia* wouldn't control.

**MS. FALK:** Okay. So I --

**THE COURT:** And then *Gurrola-Garcia* also goes on to address the nondelegation issue and rejects that argument.

**MS. FALK:** Right. And now that *Gundy* is up on cert, I think that's all --

**THE COURT:** Well, but that's a very different case. I mean, if you want to -- I mean, that's a case about sex offender registration. This is a case about foreign affairs power and the executive branch's exercise of the foreign affairs power.

And *Gurrola-Garcia* explains that one of the reasons why

this regulation is not an improper delegation is because it's a grant of power to the State Department to exercise its foreign affairs authority.

So I think regardless of what happens in the case about the sex offender registration, that doesn't -- I don't think there's any reason to believe that it's going to disturb this Ninth Circuit ruling or the number of other Circuit rulings that have reached the same conclusion about nondelegation in this context.

**MS. FALK:** Okay. So we can agree to disagree on that point. I read it differently. I think there's a new wealth of -- I mean, this is opening up nondelegation in a way that it hasn't in many, many years. And we don't really know.

And the standard on appeal is a very low bar for bail pending appeal. It doesn't have to be a slam dunk winner. It just has to be a fairly debatable question.

**THE COURT:** I understand. But you have a Ninth Circuit -- not only -- it seems to me that you may be in a position where not only do you not have a slam dunk winner but you have a Ninth Circuit case that either directly or almost directly precludes your argument, which I presume, by the way, is why Mr. Morgovsky's lawyers didn't want to bring the motion.

But be that as it may, who knows what was going on in everybody's minds. You know, it seems like given the existing Ninth Circuit case law, you have something that is very, very

far from a slam dunk winner.

And so what -- is there anything else you want to sort of argue on, with respect to *Gurrola-Garcia*, that I might not be thinking about?

**MS. FALK:** Just that it's a different -- it's a different statute. I understand it dealt with attempt. It's not conspiracy. I mean, conspiracy is a different crime. Attempt --

**THE COURT:** Talk to me more about why that might matter.

**MS. FALK:** Attempt is a way of committing a crime. Conspiracy is a whole different crime. It's not just adding an element. It's actually creating a mode of criminal liability. So I would distinguish it on that basis.

**THE COURT:** So, in other words, a regulation that includes attempt would not -- would not constitute an expansion of a statute or the creation of a new crime, but a regulation that includes conspiracy would.

**MS. FALK:** Yes. It's one way.

**THE COURT:** And I understand that point. And that sort of gets at why I might have filed the motion. But if you read *Gurrola-Garcia* its rationale does not seem to allow for that distinction to be drawn.

I mean, if you read the paragraph that I started to read to you, given the wide sweep of the word "control," what the

Court seems to be saying in *Gurrola-Garcia* is that Congress, through this statute, gave the State Department the ability to control the export of arms to other countries.

And if somebody is in the process of making that crime happen, if somebody is involved in the process of shipping arms from the United States to Russia, then even if they haven't completed it yet, even if they're only attempting to do so but haven't completed it yet, or even if they've conspired to do so but actually haven't done it yet, that is something that is as much in the interest of the executive branch to criminalize and prevent from happening, and that it would be inconsistent with the ability of the executive branch to effectively enforce a statute like this if they didn't have the ability to, by regulation, criminalize -- attempt is what they were talking about, but equally so conspiracy.

So I do understand that there is -- in many contexts there is a very important and meaningful distinction between attempt and conspiracy. But under the -- as it relates to this case and as it relates to the rationale set forth by the Ninth Circuit in *Gurrola-Garcia*, I'm not sure that it's a distinction with a difference.

**MS. FALK:** So --

(Defense counsel confer off the record.)

**MS. FALK:** Ms. Moeel is reminding me of another distinction here, which is that it's not clear that the

penalties substantively change with attempt versus what the
Congress authorized in terms of, like, attempts.  There's no
global attempt statute, right, like there is an aiding and
abetting statute.

But here there is an alternative of 371.  And that was a
five year stat max.  And so not only what this regulation did
is enable a different form of liability but it also quadrupled
the typical stat max for a conspiracy that Congress would have
authorized.

And so I think that, coupled with the fact that it's a new
form of criminal liability both goes to the nondelegation and
to the substantive distinction with *Gurrola-Garcia*, which is
what I would raise.

    **THE COURT:**  Let me ask you -- I mean, let me ask you
one other question on this issue, at least one other question.

I think normally what we are saying about the difference
between attempt and conspiracy is true, right, that attempt is
kind of whatever subspecies or whatever of the crime itself,
and conspiracy is a separate crime.  Right?

But I think historically there have been exceptions to
that general idea that a conspiracy is a separate crime.
Right?  For example, adultery.

And I think maybe -- I think maybe like, you know, selling
alcohol back -- back in the days when you were not allowed to
sell it was an example of this, that for certain types of

crimes, crimes where it takes two to tango, that there is no -- there is no real meaningful difference between the conspiracy crime and the substantive crime such that the two crimes do merge in the way that an attempt crime merges and the actual substantive crime would merge, okay.

And another question that I wonder about is maybe violation of the Arms Export Control Act is an example of that. I mean, in other words, to complete a violation of the Arms Export Control Act I think it pretty much is always going to take two to tango.

So maybe in this specific context the crimes of conspiracy and the substantive crime of violating the statute would merge such that there's not a meaningful distinction in this context between attempt and conspiracy.

**MS. FALK:** So is what the Court's saying --

**THE COURT:** Somebody has got to receive the weapons on the other end; right?

**MS. FALK:** Yeah. My understanding of the conviction was just an agreement. So even if you agreed with somebody else to provide the articles that then subsequently got exported, that you could be even held liable for just that small part of whatever the --

**THE COURT:** Right, the conspiracy. You can be held liable for the conspiracy.

**MS. FALK:** Right.

**THE COURT:** But if you are convicted of both exporting arms to another country in violation of the statute and conspiring to export arms to another country in violation of the statute, perhaps this is one of those rare circumstances where those two crimes would merge, because in both instances it takes two to tango, like in the case of adultery.

**MS. FALK:** Isn't that true with drug distribution? You have to have it and give it to somebody else. Then, to me, everything merges.

I'm not understanding the distinction the Court is drawing here versus any other iteration of conspiracy.

**THE COURT:** Well, maybe you're right about that. Maybe it would depend on the nature of the conspiracy allegations.

Maybe if the conspiracy was no broader -- like, I would think -- I don't know. You probably know better than I do, but if we had a drug case like, you know, possession with intent to distribute meth, and the person was also charged with conspiracy to possess with intent to distribute meth, but the conspiracy was no broader than the act of possessing with intent to distribute meth, I'm guessing you would argue that those two crimes merge.

And you would argue, well, maybe if the conspiracy was broader -- and usually the crime would not merge, but if the Government is only charging a conspiracy to do what was done,

 that the two crimes would merge.

**MS. FALK:** Part of my handicap here, Your Honor, I have to say I actually don't know in great detail what Mr. -- I assume if the Government could have charged Mr. Morgovsky with direct export that they would have done so, and they wouldn't have relied on this regulation.

**THE COURT:** I don't know. I have to tell you one of the problems in this case and one of the reasons we're here is the Government, throughout this case, has been pretty sloppy.

So I don't think the Government's decision to charge under this regulation versus that statute or, you know, the Government's decision not to charge this and yes to charge that, I don't assume that there was any careful thought put into any of that.

**MS. FALK:** Well, it's been hard to discern from the filings.

**THE COURT:** The first example is the indictment -- right? -- which put all these counts together which obviously shouldn't have been put together. And I think it started there and it just has continued throughout this case.

So, you know, I don't know whether -- I'm guessing the Government probably could have charged him with actual exporting night vision goggles.

**MS. FALK:** Conspiracy is sort of the darling of the prosecutor's arsenal. It's the easiest thing to prove usually.

But until I get more familiar with the entire record in this case, I would have a hard time speaking to whether it would merge in this case or not.

**THE COURT:** And the issue here, right, is that this is not about whether Mr. Morgovsky wins his appeal or not.

**MS. FALK:** Correct.

**THE COURT:** This is about whether he has raised substantial questions that are likely to result in reversal of the conviction.

And in some ways that cuts in your favor. But in another way it cuts against you, I think, which is, you know, you have to -- as we sit here today, I mean, Mr. Morgovsky got convicted of this quite a while ago. And as we sit here today, you have to show that there are substantial questions.

And if you're not -- if, you know, more investigation is needed to show that there is substantial questions, that's fine. But it means that you haven't met your burden to get the motion granted for bail pending appeal. And like virtually every other defendant that you represent, he's going to have to go into custody as planned.

**MS. FALK:** But the standard is not that high. There's no likelihood of success on appeal that I need to show.

**THE COURT:** So you seem to be arguing -- so the statute says that the substantial question is likely to result in reversal. "Likely to"; right?

You're saying the Ninth Circuit has read those words out of the statute?

**MS. FALK:** "The term 'likely to result in reversal' defines the type of question that must be presented." *Handy*, 761 F.2d, at 1283. "In the Ninth Circuit, an appellate need not establish that he will probably prevail on appeal." So, yes, I'm saying the Ninth Circuit has interpreted that language differently --

**THE COURT:** That's quite a slight of hand. Does that mean that "likely" is no longer in the statute?

**MS. FALK:** I'm just --

**THE COURT:** Is that really still the standard?

**MS. FALK:** I'm just reading the *Handy* case, Your Honor.

It's about what reasonable jurors could differ --

**THE COURT:** Where?

**MS. FALK:** I'm at *Handy*.

**THE COURT:** Oh, yeah, I remember this Judge Reinhardt opinion, yeah.

**MS. FALK:** Oh, Judge Reinhardt.

**THE COURT:** What page is it on again?

**MS. FALK:** 1283. "In short, a substantial question is" --

**THE COURT:** Sorry. I apologize. Let me just get to it.

**MS. FALK:** I'm sorry, I know that Your Honor does not like to be interrupted.

**THE COURT:** I do like to be interrupted. I wish these conversations were more like a dinnertime conversation.

**MS. FALK:** I've never been good at that in court.

**THE COURT:** Okay. So I'm now on that page. So where are you?

**MS. FALK:** Right. 1283. It says, "The term 'likely to result in reversal or order for a new trial' defines the type of question that must be presented."

**THE COURT:** Is that still good law in the Ninth Circuit? I see that -- that "likely" does not mean likely? If it does, that's fine. But the statute says that it -- a substantial question has to be raised that is likely to result in reversal of the conviction; right?

So is there -- do you have any other Ninth Circuit cases that make the point in a somewhat less obtuse way as is made in this case?

**MS. FALK:** *Handy* is kind of old standard.

**THE COURT:** Okay.

**MS. FALK:** If you could just give me a minute, Your Honor.

**THE COURT:** So what is it, like -- is it like the probable cause standard or something like that? It doesn't need to be greater than 50 percent, but it needs to be

 probable?

**MS. FALK:** A quote in *Handy* is, "In short, a substantial question is one of more substance than would be necessary to a finding that it was not frivolous."

**THE COURT:** Okay. But it also has to be likely to result in the reversal of a conviction; right?

**MS. FALK:** It has to be the type of question that would. In other words, if it's just a complaint about something that would have no import in the case, then even if it's a great complaint it doesn't matter.

**THE COURT:** Okay.

**MS. FALK:** So *Handy* is good law.

**THE COURT:** Okay.

**MS. FALK:** My understanding.

**THE COURT:** Okay.

**MS. FALK:** I have not heard of it being reversed.

If I could just have a minute, though, because I want to review this page and make sure I'm not missing any great quotes here.

**THE COURT:** Sure.

**MS. FALK:** What *Handy* basically says, Your Honor, is my understanding is that they revert to the position they had before Congress made this great provision and added that language. That's what page 1283 is saying.

"Most important were the following: Congress added a new

requirement that the question be of a type that, if resolved in defendant's favor, would be likely to result in reversal or a new trial." And they shifted the burden of proof to the defendant.

But they say reviewing the changes as a whole, they don't -- they say great, but then we don't change our prior definition of substantial question, which is basically you just have to raise the bar a little bit above nonfrivolous.

I think we have done that with this issue.

**THE COURT:** I see. Okay. I understand. I understand what you and what *Handy* are saying now.

So is another way of saying that, that anytime you raise a nonfrivolous question on appeal that you're entitled to bail pending appeal as long as it doesn't fit within the category of crimes -- you know, drug crimes or gun crimes or whatever?

**MS. FALK:** If it's the type of question that would result in a reversal.

Can I just give the Court an example?

**THE COURT:** Yes.

**MS. FALK:** So I tried a case in front of Judge Breyer, a gun-in-a-school-zone case. And the Government kind of forgot that they needed to prove a school zone element, the type of school. And so we got all this last-minute stuff, and there was a big flurry about who decides whether it's a school within the meaning of the statute, the jury or the judge.

Lots of debates during trial. The judge ruled. He's absolutely confident in his ruling. We raised Rule 29. He's confident. He says, after reviewing the law --

**THE COURT:** Judge Breyer is confident?

**MS. FALK:** Yes. We asked for bail pending appeal, and the Judge said, Absolutely.

He turns to the Government and says, "I'm pretty sure that I'm right. I'm pretty sure that I know exactly how this is going to turn out. But can I say that it's definitely more than frivolous?" And so Mr. Burns remains out of custody.

So I do think that the bar is low. I think bail pending appeal is not some impossible thing to get. I think people often do get it who have questions that actually relate to their conviction as opposed to what their sentence was because those questions don't actually come up that much in this court.

**THE COURT:** So it's interesting, right, because, I mean, I guess it depends partly, I guess, on how you define a nonfrivolous question. And, you know, if you define -- do you define it in the abstract or do you define it with respect to and with reference to existing case law?

Because the existing case law is so strongly against Mr. and Mrs. Morgovsky on this issue that you know that it does seem -- you know, if you're thinking about it from that static standpoint, maybe there is an argument that it's frivolous. But if you're thinking about it from a more dynamic standpoint,

and, you know, is this the kind of issue that maybe we could eventually get the law to change on, then I would say it's not frivolous.

But in this context how are you supposed to analyze that question?

**MS. FALK:** Well, and I know the Court is dismissive of the comparison between the *SORNA* case and this, but I read the cert petition on the *SORNA* case, and I find it to be pretty similar in terms of that's the only issue the Supreme Court wanted to hear about. And I do think it helps Mr. Morgovsky's case on appeal that they granted cert and they're considering it.

And the bar being so low and there being so many other factors in this case about keeping him out, at least an objective review, not having been here for two and a half years, just a pure paper review of the factors, which the Court didn't seem like it wanted to hear about in respect to my surrender motion, you know, why there's good reasons to keep him out. Forget the bail pending appeal motion. The Court tentatively came out and said that you were only going to hear the motion for bail pending appeal.

**THE COURT:** Oh, you mean like the health stuff and whatnot?

**MS. FALK:** The health stuff, the pending charges, the new counsel, and all of that.

And he also has a pretty good choice of counsel issue on appeal as well. We haven't even discussed that. That would be a sentencing issue. So I understand it's in a bit of a different posture.

**THE COURT:** Okay.

**MS. FALK:** And I would like to be heard on the surrender.

**THE COURT:** Go ahead.

**MS. FALK:** Because I just want to make sure the Court understands what is going to happen procedurally if the Court -- well, if I don't get automatic -- if the Court denies motion for bail pending appeal, if I don't get the automatic stay in the Ninth Circuit. I try to be as transparent about that whole process as possible.

**THE COURT:** Can you explain it to me again?

**MS. FALK:** Yes, I will explain it to you.

What will happen if the Court denies the motion is that we will have -- and denies an extension of the surrender to allow us to get a motion on file in the Ninth Circuit is we'll basically have 24 hours to get a brief on file with the Ninth Circuit, along with a transcript.

So the court reporter has indicated she will be available tonight to prepare the daily of this hearing. We've been working on trying to convert this to a motion for bail pending appeal at the Ninth. But it will trigger an automatic stay,

just the filing of the motion itself. So his stay will be continued by operation of the rule.

**THE COURT:** Okay.

**MS. FALK:** What's complicated about that is that there's never been put in place any kind of order system or communication between the Ninth Circuit and the BOP. There's no way that the BOP would get that information that the stay has been stopped -- a stay has been effective.

So as far as the Bureau knows, they think he still has to show up and --

**THE COURT:** Can you explain to me why that is? That's because no order would actually be issued? Just by an operation of law, the filing of the motion for bail pending appeal would stay the surrender date --

**MS. FALK:** Yes.

**THE COURT:** -- is that what you're saying?

**MS. FALK:** Yes. There's an attorney from our appellate unit who has had discussions with the emergency motion attorney -- or maybe it was the duty attorney at the Ninth Circuit who confirmed yesterday that they don't issue emergency orders; that applying for an emergency order to have something to give to the marshal service would really not help the situation. There's just never been a mechanism put in place on this issue to somehow let the Bureau know that the operation of the rule is at stake.

We have definitely confirmed that the Ninth Circuit considers it automatic.

**THE COURT:** Okay.

**MS. FALK:** Okay. So there's sort of a logistics issue we would have to work out. And, I mean, I may ask the Court to confirm that rule. And I would hope that the Court, if we got the brief on file within the time period, would at least issue the order and cite that rule so we'd have something to give the Marshal Service, which could give it to the Bureau of Prisons so they're not issuing warrants.

**THE COURT:** Well, I would think that if the Ninth Circuit's rule is that -- I mean, it's a Ninth Circuit rule, it sounds like, from what you're telling me --

**MS. FALK:** Correct.

**THE COURT:** -- that the filing of the motion for bail pending appeal automatically stays the surrender date.

**MS. FALK:** Right.

**THE COURT:** Okay. So it seems like it's incumbent upon the Ninth Circuit, if necessary, to figure out how to get that communicated to the Bureau of Prisons.

Now, so I don't think that -- you know, the apparent, you know, doubt about whether the Ninth Circuit is going to be able to make that sort of communication, it doesn't seem to me is a reason to extend the surrender date.

What I am, you know, potentially more sympathetic to is

 not making, you know, your life miserable, the Government's life miserable, and the Ninth Circuit's life miserable trying to turn this around in 24 hours or whatever.

I mean, I don't think it's a big deal to create a couple of extra days breathing room for everybody to, you know, have a chance to take a look at this.

**MS. FALK:** Okay.

**THE COURT:** So, you know, I would entertain -- I mean, obviously the government may object to still another extension of the surrender date, and I will listen to that. But I wouldn't be categorically opposed to that in the interest of making life a little bit easier for everybody.

**MS. FALK:** Okay. So I appreciate that. And so then let's get to the bigger picture of this case.

So the appeal is going to go forward, and there's still pending charges. And if the bail pending appeal motion is denied by the Ninth Circuit, of course, Mr. Morgovsky will have to report with these pending charges.

He can't -- he will report to Taft, and the Government will immediately have to writ him out of Taft. So he will be out at Santa Rita Jail.

**THE COURT:** Well, not immediately. I mean, it depends when the trial is on the next charges.

**MS. FALK:** Correct. And from my perspective, I would want Mr. Morgovsky at Taft, not at Santa Rita Jail. It makes

preparing for trial quite difficult given the distance --

**THE COURT:** You would want him in Alameda County.

**MS. FALK:** No. For his health reasons I would want him at the Bureau of Prisons, where he's going to get much better care. In fact, Taft was the institution requested for that reason.

**THE COURT:** Okay.

**MS. FALK:** So I would feel personally -- in other words, I want to put the burden on myself to go visit him at Taft, to prepare for trial, which is going to be very, very, very difficult.

So I'll do it if the Court and the Government really feel like there is no way, given what has happened in this case, he can be allowed to stay the surrender until these charges are resolved, I'll do it. But it's going to be very, very difficult.

The only alternative to make him more accessible to me is to bring him up and put him in Santa Rita, which I would be asking the Government to writ him earlier for my convenience at his detriment, which I honestly cannot do.

So it makes resolving Counts One through Four quickly more difficult.

**THE COURT:** Okay. Well, I'm not sure how much of a priority it is to resolve Counts One through Four quickly, quite frankly.

Part of me was wondering if we should wait until this appeal is resolved before resolving those counts.

**MS. FALK:** I hadn't even thought about that possibility.

**THE COURT:** You know, what's -- I'm sure the Government would object to that. But, you know, the Government really wanted to go forward on these counts. The Government wanted to go forward on sentencing.

By the way, it never entered my mind that there would be any problem with going forward on sentencing. I don't recall anybody suggesting, anybody from either side suggesting that there would be any problem with going forward on sentencing. Even after you teed up the issue, I'm not sure there's any problem with having gone forward on sentencing. But the most important point, I think, for now is that nobody objected to it.

But since that's what the Government wanted to do, and since the Government got a sentence that it presumably -- I don't think it's quite what the Government wanted, but presumably the Government feels it accomplished more or less what it wanted to accomplish, maybe we should just wait until after this appeal is resolved before we go to trial on the other counts.

**MS. FALK:** Great.

**THE COURT:** Okay. So that addresses that issue at

least.

**MR. SAMPSON:** We do --

**THE COURT:** I haven't decided the question. I'm just saying that that would address the issue --

**MS. FALK:** Yes.

**THE COURT:** -- that you're raising for now.

**MS. FALK:** Okay.

**THE COURT:** Anything else you want to raise?

**MS. FALK:** No. I mean, if that's going to be -- that's a big issue.

So I have provided the Court with a lot of briefing about Mr. Morgovsky's health issues. He was designated to the place that he requested. There are a number of appointments he has, but I suspect they could be accomplished while this motion for bail pending appeal is being litigated.

I don't know how fast the Circuit decides those issues, but I imagine they're going to give the Government a fair opportunity to respond and then me to reply.

**THE COURT:** If they need to respond.

Okay. Anything else? I know Mr. Morgovsky was trying to talk to you earlier. Do you want to take a quick opportunity to chat with Mr. Morgovsky and see if there's anything else that he would like you to convey?

**MS. FALK:** Sure. Thank you.

**THE COURT:** Go ahead.

(The defendant conferred with counsel off the record.)

**MS. FALK:** Thank you, Your Honor.

The only request is I think perhaps I was too short on Mr. Morgovsky's health issues, the importance of the March appointment.

I know the Court thought about potentially giving us more time to get a brief together for the Ninth Circuit in the event the Court denies the motion for bail pending appeal. But I don't know if there's any way we could work some kind of stay until the end of March to accomplish that purpose for him so he could get a pacemaker installed before he goes to the Bureau, if he needs one.

**THE COURT:** Okay. I understand that argument.

**MS. FALK:** Okay.

**THE COURT:** Okay.

**MS. FALK:** Otherwise, there are some complications on this with respect to the shutdown and the preparation of a daily transcript. It's a lot of money to ask the court reporter to prepare a daily transcript as opposed to a 30-day transcript. So to the extent the Court waits a week versus 30 days, I certainly could get a brief together in that period of time and file it exactly on the 30 days.

But I have to at least ask, because we're in that posture right now with respect to, you know, Mr. Kalar very rarely authorizes daily transcript. Certainly never during trial. It

really has to be extraordinary. And I'm not sure even -- I think it's either daily -- I'm not sure what the breakdown of the time periods are, but it's quite a bit of difference to have a 30 day versus a daily.

**THE COURT:** Okay.

**MS. MOEEL:** Your Honor, briefly, before the Government looks like they want to jump in.

With respect to Mrs. Morgovsky, I would ask, if you are considering a stay of the surrender date for Mr. Morgovsky to file his appeal in the Ninth Circuit, I would make that same request.

Your Honor knows, I think I mentioned that there is a motion to dismiss the appeal pending in the Ninth that they haven't taken up and a motion for Mrs. Morgovsky to obtain appointed counsel, which looks like won't actually be resolved until the motion to dismiss is resolved. So it may be that the Ninth decides to dismiss our appeal. But, in any event, I will need to file a motion for bail pending appeal if the Court denies her here. So we join in that surrender request.

And I've learned that the Bureau of Prisons has looked at your amended order recommending a designation for her locally within California, but they have decided to stay with their original designation in Minnesota.

And the FIRST STEP Act does say that the Bureau of Prisons shall designate within 500 miles. So I have to just figure out

if there's anything I can do, either with the BOP or otherwise, to ask the BOP to reconsider that designation.

So that would be another reason for a stay of the surrender date.

**THE COURT:** Okay.

**MR. SAMPSON:** With respect to Mrs. Morgovsky, Your Honor, Mrs. Morgovsky in June stood before this Court. She told you that she understood that she was waiving her right to appeal; she was waiving her right to attack a sentence other than ineffective assistance. She told you she was happy with her attorney.

On October 31st, with Ms. Moeel being her attorney at that point, she told the Court that she was sorry for committing her crimes and that she was going to accept -- I believe she said she was going to accept her sentence.

**THE COURT:** The fact that she says she's sorry doesn't have anything to do with this.

**MR. SAMPSON:** Well, Your Honor --

**THE COURT:** People have a right, within the confines of whatever they've waived, to appeal. So the fact that she said sorry is not something to be used against her in any way.

**MR. SAMPSON:** It is not that she said sorry, Your Honor, it's that she acknowledged that what she did constituted a crime.

But now, Your Honor, with respect to the bail on appeal

 issue, having been sentenced she's asking that you delay the sentence so that she does not have to serve the sentence that she agreed she would do while she's violating her plea agreement by pursuing an appeal that she waived.

Your Honor, I think it's inappropriate for Mrs. Morgovsky -- for this Court to continue her bail so that she can pursue an appeal that she waived.

With respect to Mr. Morgovsky, Your Honor, 3143 and *Handy* I do not believe stand for the proposition that if you're able to just allege an issue with a Hail Mary chance of succeeding, that that's sufficient for purposes of 3143(b).

And, Your Honor, there will not be an order for a new trial. He pled guilty. The sentence -- it is extremely unlikely that he would be sentenced to a term that would not include any imprisonment.

**THE COURT:** It wouldn't be an order for new trial; it would be reversal of conviction; right? If there is success on appeal on this argument that you can't be convicted under this regulation because the regulation doesn't create a crime, then the conviction would be reversed; right?

**MR. SAMPSON:** Well, that goes back to Title 22. The statute creates the crime. The regulation defines it. And so --

**THE COURT:** That's presuming you're going to win your argument. And the point is that if they win or if they -- if

they have raised a substantial question on appeal, that where if they won not only would it likely result in reversal of the conviction, it would definitely result in reversal of the conviction.

**MR. SAMPSON:** On Count Nine, yes, Your Honor. If the Court --

**THE COURT:** So why are you talking about the fact that it's not going to lower the sentence and it's not going to result in a new trial? I mean, it would result in the conviction being reversed.

**MR. SAMPSON:** It would result in the conviction on Count Nine being reversed.

**THE COURT:** Right.

**MR. SAMPSON:** There's two money laundering counts. The Court sentenced Mr. Morgovsky to nine years on those counts concurrently. And so it is unlikely that he would receive a zero jail sentence.

**THE COURT:** Does it matter? I meant to ask that question to Ms. Falk. But the money laundering, does it matter that the money laundering was in furtherance of this conspiracy?

**MR. SAMPSON:** It does not say that the money laundering is in furtherance of the conspiracy, Your Honor. It says it's to promote the carrying on of violations of the ITAR statute.

**THE COURT:** What's the difference?

**MR. SAMPSON:** Well, they would have to succeed in not just winning on the idea that the conspiracy is not allowed by statute but that the entire statute itself is invalidated.

And, Your Honor, just going back 30 minutes or so, I'm not aware of any authority that says that a conspiracy has to be in a different statute than the substantive crime.

And, Your Honor, there's only one criminal statute that -- under Title 22, as far as I'm aware. It says violations of this statute and any -- of this title and the rules promulgated thereunder are punishable by 20 years.

So it provides the penalty, and it says --

**THE COURT:** I'm sorry, could you say that one more time? I apologize. I didn't follow.

**MR. SAMPSON:** It said that violations --

**THE COURT:** What said?

**MR. SAMPSON:** The criminal statute 2778, 22 U.S.C --

**THE COURT:** Okay.

**MR. SAMPSON:** -- says that violations of the rules promulgated under the title, Title 22, governing exports, are punishable by 20 years of prison. And it then explicitly delegates it to the agency to define the violations of that statute.

So, Your Honor, the statute itself is a -- it says how it's violated, although it delegates it to the State

Department, but it dictates the penalty.

**THE COURT:** Right.

**MR. SAMPSON:** And so, Your Honor, it's a little -- it is like the case -- and I don't have it before me, Your Honor, but the Ninth Circuit case from the '80s, that Your Honor mentioned, it does sound substantially similar to that and substantially different from the 10(b)(5), the securities case that was cited. Because under that the regulation -- not the statute, but the regulation -- didn't say conspiracies. In this case the regulation does.

And so, Your Honor, for those reasons the Government's position is that it is unlikely to result in the categories of relief that 3143 provides for, and that although it may not be a frivolous claim, it is not one that warrants -- not one that raises a substantial question of law, at least the way the Ninth Circuit has ruled in the case that Your Honor mentioned.

**THE COURT:** Let me ask a question about that. Hold on one second. Pulling up this statute. I know the language is parroted in the papers, but I just want to pull up the actual statutory language to make sure I have it in front of me, the bail pending appeal statute.

**MR. SAMPSON:** 3143.

**THE COURT:** So what you're saying is that even if this -- even if they were to succeed on this appeal, and even if the Ninth Circuit were ultimately to rule that you should

not have charged them under this regulation, that although that would be likely to result in reversal on Count Nine, it would not be likely to result in reversal on Counts Ten and Eleven.

**MR. SAMPSON:** And certainly -- I'm sorry, Your Honor.

**THE COURT:** And, therefore, the statute is not satisfied.

**MR. SAMPSON:** Yes, Your Honor.

And, further, that it would not result in a sentence -- it would not result in a reduction down to less than the total amount of time for the appeal process, which would likely be a year and a half or more from the nine years he was sentenced.

**THE COURT:** Okay. But if you are to read the statute -- I feel like I had a case where this came up one time.

If you were to read the statute literally, you might say, well, who cares that it's not going to result in reversal on Counts Ten and Eleven? Because it is going to -- it is the type of substantial question that would likely result in the reversal of conviction on Count Nine.

Is there any case law that says, well, even if you meet that standard as to a particular count, if you would remain in prison other counts, it doesn't -- you don't win your motion?

**MR. SAMPSON:** I think that's assumed by subsection 4.

**THE COURT:** Okay. Well, but it's "or." The statute says "or." It lists 1, 2, 3, and 4, and --

**MR. SAMPSON:** That's correct, Your Honor. But --

**THE COURT:** I don't think you're right about --

**MR. SAMPSON:** It's any one of those four.

**THE COURT:** Right. So it would be reversal in this case. So if you're going to apply a strictly literal reading of the statute, you might say it doesn't matter about Counts Ten and Eleven because it would result -- would likely result in a reversal on Count Nine.

But my vague memory is that there is case law on this issue, but you didn't cite it to me, and -- you know, just like you didn't cite the *Gurrola-Garcia* case.

I believe there's case law that says if you -- you know, you don't get to win on a motion for bail pending appeal if there are other counts that would not be disturbed that would keep you in custody. But I need to go back and research that.

**MR. SAMPSON:** But to be fair, Your Honor, the defendant is arguing that those would fail as well. The Government just disagrees with that characterization.

**THE COURT:** Right. But you argue that they wouldn't. So one step in making that argument is the fact that they wouldn't matter for purposes for the motion for bail pending appeal.

**MR. SAMPSON:** Yes, Your Honor. And I will look for a case that covers that. I'm sure Your Honor will find it.

**THE COURT:** Don't worry about it.

**MR. SAMPSON:** But, Your Honor, I think that practically speaking if that is the case that other counts would stand, despite a constitutional question on one count, unless they all fall, Your Honor, and unless the Court finds that it would have sentenced him to less than the period of the appeal, then it doesn't trigger a 3143(b).

**THE COURT:** Okay. All right. Anything else from the Government?

**MR. SAMPSON:** Your Honor, with respect to reasons that are not -- that are not covered by 3143, Mr. Morgovsky's health and logistic issues, they are just not covered -- they are just not a consideration that the Court should make.

Additionally, Your Honor, I think it is inappropriate to wait for the entire appeal process to resolve before taking up Counts One through Four, Your Honor. The Government is not agreeing that if it's happy with the result on appeal that it would dismiss those counts.

**THE COURT:** It would be up to you whether to dismiss them or not. And you may well not dismiss them. But in terms -- but the Government wanted to go forward with these counts and wanted to go forward with sentencing -- I don't know.

**MR. SAMPSON:** The Court didn't give us that chance. Actually, the Court found that because my office didn't file a reply it waived that issue, and it decided the order.

**THE COURT:** But you wanted to go forward with sentencing after Mr. Morgovsky was convicted of this count; right?

**MR. SAMPSON:** I looked at that issue. And we didn't ask, Your Honor. There was a hearing set for July 3rd. That was three weeks after the trial date that was supposed to happen after the guilty plea. And the Court set the matter on a particular schedule. Neither party raised or objected to the order that the Court chose.

**THE COURT:** Right. So now that we've gone down that path, and we now have this situation where a judgment has been entered against Mr. Morgovsky on this count, on these three counts -- sorry -- and has been sentenced and is appealing the sentence, in the grand scheme of things, like considering priorities and considering all the things the Government could spend its money on, you know, some issues are more urgent than others, and there's, of course, a docket management issue from the Court's standpoint, as well, why -- what's the problem with waiting until the appeal is resolved before going forward on the other counts?

It would be the Government's prerogative, of course, to go forward on those counts regardless of what happens on appeal. But what's -- what time sensitivity is there?

**MR. SAMPSON:** Well, Your Honor, without -- without violating Rule 11, Your Honor, the result -- the litigation on

appeal may affect the Government's decisions with respect to the other counts.

**THE COURT:** Okay. Well, all the more reason then to wait, it sounds like.

**MR. SAMPSON:** Well, it may not be as favorable to Mr. Morgovsky --

**THE COURT:** Well, that's up to him and you. That has nothing to do with when I schedule the trial.

**MR. SAMPSON:** Understood, Your Honor. The Government does want to get to a resolution of this case. And we have tried many, many times to do so. Not just with scheduling a trial, Your Honor, but with discussions with Mr. Morgovsky's attorneys.

**THE COURT:** Okay.

**MS. FALK:** So we are being diligent. I understand the Court has not missed an opportunity to be critical about the Government's case with respect to One through Four when it comes up, but we do --

**THE COURT:** Remind me what One through Four are.

**MR. SAMPSON:** Those are the remaining bank fraud counts.

**MS. FALK:** The Hawaii counts.

**THE COURT:** The Hawaii counts. Critical of the Government's case on the Hawaii counts? You mean because you put them together with the other counts?

**MR. SAMPSON:** No, no. The Court -- well, the Court has --

**THE COURT:** What other ways have I been critical?

**MR. SAMPSON:** The Court has mused many times about the Government's priorities and why it wants to pursue those counts at all.

**THE COURT:** Oh, in light of these other counts. Okay. Anyway, I don't recall that, but I'm sure the criticism was justified.

Okay. Anything else that you want to say?

**MR. SAMPSON:** No, Your Honor.

**THE COURT:** All right. I did forget to ask you about the money laundering counts.

**MS. FALK:** Yes, Your Honor.

It's our position that -- there's no Ninth Circuit authority that I found, but there's Tenth Circuit authority, and Eighth Circuit authority in *O'Hagan*, about if the underlying activity is reversed, and that's the unlawful specified activity of the conviction that the money laundering rests on and the money laundering convictions are reversed as well.

And in the *Rahseparian* case that I cited in our papers, a Tenth Circuit case --

**THE COURT:** Could I ask you a question about that? Does it matter the reason why the underlying -- the conviction

for the underlying count is reversed?

**MS. FALK:** Not to my knowledge, it does not matter. And I also point to the open plea. The basis of the plea on the money laundering was the unlawful activity, the proceeds of his agreement.

**THE COURT:** Right.

**MS. FALK:** So if he didn't violate the law by entering that agreement, then there was no unlawful proceeds. And, therefore, the money -- we will be very strongly arguing that money laundering counts will be reversed as well.

**THE COURT:** But the idea is the proceeds of his unlawful activities, namely his -- the successful conspiracy to export arms to Russia were laundered; right? Is that -- is that the upshot?

**MS. FALK:** The proceeds of the agreement.

**THE COURT:** Okay. What's the difference? It's the proceeds of successfully -- it's the proceeds relating to shipping arms; right?

**MS. FALK:** The proceeds of his agreement.

**THE COURT:** Okay.

**MS. FALK:** That's all he admitted in the open application.

**THE COURT:** The agreement --

**MS. FALK:** Is the proceeds of his agreement.

**THE COURT:** To?

**MS. FALK:** Export.

So if by agreeing to export and not actually exporting he didn't violate the law, then any proceeds he generated are not unlawful because it was only by means of that agreement.

So I just would refer back to the open plea form --

**THE COURT:** Okay.

**MS. FALK:** -- and looking at what he actually admitted to doing that was the basis of his conviction on money laundering.

**THE COURT:** Okay.

**MR. SAMPSON:** That open plea form may say "agreement," Your Honor. The indictment does not say that they are the proceeds of the conspiracy. It says they're for promoting and carrying on of unspecified unlawful activity, specifically the exportation of defense articles without a license.

So, Your Honor, I think that his open plea to Ten and Eleven would stand unless 2778 as a whole was completely carved out and invalidated.

**MS. FALK:** We would just argue there's no factual basis for his conviction.

**THE COURT:** Another interesting issue.

**MS. FALK:** Another interesting issue, Your Honor. Another substantial question.

**THE COURT:** Not sure if it's substantial, but it's interesting.

Okay. Anything else?

**MS. FALK:** No, Your Honor.

**THE COURT:** Okay. Thank you.

**MS. FALK:** Except for timing.

**THE COURT:** Sorry, let's talk about timing.

**MS. FALK:** Timing is important.

**THE COURT:** Yeah. So here's what I'm going to do. I will issue a written ruling on this tomorrow, okay.

**MS. FALK:** Okay.

**THE COURT:** And are you surprised -- you look surprised. Do you think I should do it today?

**MS. FALK:** No. I was only surprised -- I don't know why I was surprised. I was surprised because I thought the Court was going to give us some extra time.

**THE COURT:** I'm going to give you a little extra time.

**MS. FALK:** Okay.

**THE COURT:** The surrender date is when?

**MS. FALK:** Friday.

**THE COURT:** Friday. Okay.

So what I'm going to do is I'm going to extend the surrender date by seven days, to make life a little bit easier or less difficult for everybody. So the new surrender date is the 25th. I will issue a written ruling tomorrow. And that will give everybody a little bit of breathing room.

But I'm instructing you to contact the Ninth Circuit

motions unit to let -- immediately, to let them know that I plan to issue a written ruling tomorrow, so that they can give you any deadlines that they want to give you for any briefs that they're expecting you to file.

**MS. FALK:** Oh, I think the way that it would work is just we would -- we would have to file the brief before the surrender date. And then we get the automatic -- what I still need to iron out is how we communicate that to the BOP.

**THE COURT:** Okay. Nonetheless, I want you to contact the Ninth Circuit's motions unit to tell them I'll issue a written ruling tomorrow, so if the Ninth Circuit needs to scramble to do anything they get notice for it.

So I know that seven days is not a ton of time. I understand the arguments for why -- the various arguments for why you think you should get more time.

I don't -- assuming that I do deny the motion -- which I'm strongly leaning towards doing, but I want to ruminate on what we've discussed here today. Assuming I deny the motion, I don't believe it's appropriate to grant more time than seven days. And the seven days is simply to make life a little easier for the lawyers and the appellate court.

**MS. FALK:** Great. Your Honor, will the Court issue a written order staying the surrender for the seven days? Because I do have to get that to the Bureau of Prisons.

**THE COURT:** I need to do a written order? Sure.

**MS. FALK:** They are really pressuring me to find out what's happening because of the bed space.

**THE COURT:** I will happily do that. I will do that today. And thank you for your time.

**MR. SAMPSON:** Your Honor, I would just add one more thing. I would ask that the Court set a status hearing on Counts One through Four and exclude time between now and then.

Last night I produced to Ms. Falk a preliminary exhibit list on those counts. It will obviously be updating. But she and I have been discussing a possible future trial on those counts. For that reason, I would ask the Court to exclude time between now and a future status date on those counts.

**THE COURT:** So my plan is to vacate all deadlines and resume after the appeal is resolved. So I assume, in light of that, there is no objection to the exclusion of time.

**MS. FALK:** Your Honor, that's my client's -- I have to make sure.

**THE COURT:** Of course.

(The defendant conferred with counsel off the record.)

**MS. FALK:** Your Honor, we don't have any objection to the exclusion of time and kicking the trial until after the appeal is resolved.

**THE COURT:** Okay. So all deadlines are vacated as they relate to the remaining counts, and a trial on those matters will be scheduled after the appeal is decided. And the

parties can schedule a status conference with the Court, can reach out and schedule a status conference with the Court after the appeal is resolved.

**MR. SAMPSON:** Your Honor, could the Court's minutes reflect that the Government's request for a trial date is overruled? The Government may request to have that reviewed or reconsidered.

**THE COURT:** Sure.

**MR. SAMPSON:** Thank you.

**THE COURT:** Okay. Great. Thank you.

**MS. FALK:** Thank you, Your Honor.

**MR. SAMPSON:** Thank you.

(At 3:15 p.m. the proceedings were adjourned.)

\- - - -

CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE: Thursday, January 17, 2019

Katherine Sullivan

Katherine Powell Sullivan, CSR #5812, RMR, CRR
U.S. Court Reporter

Case: 18-10448, 05/14/2019, ID: 11296122, DktEntry: 38-2, Page 105 of 206

# EXHIBIT 4

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,
Plaintiff,
v.
IRINA MORGOVSKY,
Defendant.

Case No. 16-cr-00411-VC-3

**ORDER DENYING MOTION FOR BAIL PENDING APPEAL**

Re: Dkt. No. 435

Irina Morgovsky's motion for bail pending appeal is denied, because her attack on the regulation under which she was convicted does not present a substantial question. This is so for several reasons:

1. As discussed in the order denying her husband's motion for bail pending appeal, Mrs. Morgovsky did not challenge the conspiracy regulation under which she was convicted in the district court. Therefore, her claim will be reviewed on appeal for plain error, if at all.

2. In addition to not raising the issue, Mrs. Morgovsky entered a plea agreement by which she waived her right to appeal her conviction and sentence except to argue ineffective assistance of counsel. This precludes the due process challenge to her conviction on appeal. Nothing in *Class v. United States*, 138 S. Ct. 798 (2018), calls into question Mrs. Morgovsky's ability to enter a plea agreement waiving the right to appeal her conviction in this context. In *Class*, the Supreme Court concluded that the defendant's plea agreement did not include a waiver of the right to challenge the constitutionality of the statute on appeal, and then held that a guilty plea alone (or a plea agreement without an appeal waiver on the relevant issue), does not bar a defendant from challenging the constitutionality of the statute under which he was convicted. *See*

*id.* at 803.[1]

3. As discussed in the order denying her husband's motion, the reasoning in *Gurrola-Garcia* (and cases from other circuits) effectively forecloses Mrs. Morgovsky's arguments that the regulation is not authorized by statute and that, if it is authorized, the statute violates the nondelegation doctrine.

4. With respect to Mrs. Morgovsky's ineffective assistance claim, as discussed in the order denying her husband's motion, the strong likelihood is that the Ninth Circuit will decline to consider this argument on direct appeal and in any event, it would be difficult to conclude that counsel's decision not to challenge the indictment constituted deficient performance. Moreover, even if the Ninth Circuit considered this claim on direct appeal, and even if counsel's performance were deficient, Mrs. Morgovsky suffered no prejudice. If her attorney had made the claim in the district court and won, the government would then have charged her under the general conspiracy statute, 18 U.S.C. § 371, rather than the regulation, as Mrs. Morgovsky contends it first should have done. In that scenario, she would have received the same 18-month sentence, so she can't show prejudice.

**IT IS SO ORDERED.**

Dated: January 17, 2019

VINCE CHHABRIA
United States District Judge

[1] Incidentally, another difference between *Class* and this case is that the defendant in *Class* raised his constitutional challenge in the district court. It's difficult to imagine that the Supreme Court would have granted certiorari had he not done so.

# EXHIBIT 5

No. 18-10486

**IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

NAUM MORGOVSKY,
*Defendant-Appellant.*

On Appeal from the United States District Court
for the Northern District of California,
the Honorable Vince Chhabria, Presiding.
No. 16-cr-00411-VC

# APPELLANT'S MOTION FOR BAIL PENDING APPEAL

STEVEN G. KALAR
Federal Public Defender
Northern District of California
TODD M. BORDEN
ELIZABETH M. FALK
Assistant Federal Public Defenders
450 Golden Gate Avenue, 19th Floor
San Francisco, California 94102
(415) 436-7700
*Counsel for Defendant-Appellant*
NAUM MORGOVKSY

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** .......... **II**

**INTRODUCTION** .......... **1**

**BACKGROUND** .......... **1**

**STANDARD OF REVIEW** .......... **3**

**ARGUMENT** .......... **3**

**I. STANDARD FOR BAIL PENDING APPEAL** .......... **3**

**II. MORGOVSKY IS NOT A FLIGHT RISK, DOES NOT POSE A DANGER TO THE COMMUNITY, AND IS NOT PURSUING THIS APPEAL FOR DILATORY PURPOSES.** .......... **4**

**III. MORGOVSKY'S APPEAL WILL RAISE MULTIPLE SUBSTANTIAL QUESTIONS.** .......... **5**

A. The district court violated Morgovsky's Sixth Amendment right to choice of counsel, a structural error. .......... 5

B. Morgovsky's plea colloquy violated Rule 11, amounting to reversible plain error. .......... 9

C. Count 9 failed to state an offense, and Morgovsky's guilty plea therefore lacked a valid factual basis because section 2278 does not criminalize conspiracy. .......... 12

**CONCLUSION** .......... **24**

## TABLE OF AUTHORITIES

### Federal Cases

*Bell v. Burson*,
402 U.S. 535 (1971) .......... 15

*Castro Cortez v. INS*,
239 F.3d 1037 (9th Cir. 1999) .......... 14

*Central Bank N.A. v. First Interstate Bank*,
511 U.S. 164 (1994) .......... 14, 15

*City of Arlington v. FCC*,
569 U.S. 290 (2013) .......... 16

*Dixon v. United States*,
548 U.S. 1 (2006) .......... 15

*Fiore v. White*,
531 U.S. 225 (2001) .......... 21, 22

*Gundy v. United States*,
138 S. Ct. 1260 (2018) .......... 20

*In re Glenfed Inc.*,
60 F.3d 591 (9th Cir. 1995) .......... 14

*INS v. Chadha*,
462 U.S. 919 (1983) .......... 15

*J.W. Hampton Jr. & Co. v. United States*,
276 U.S. 394 (1928) .......... 18

*Mistretta v. United States*,
488 U.S. 361 (1989) .......... 18

*Mobil Oil Corp v. Higgenbotham*,
436 U.S. 618 (1978) .......... 14

*Regalado Cuellar v. United States*,
553 U.S. 550 (2008) .......... 11

*Robinson v. Ignacio*,
360 F.3d 1044 (9th Cir. 2004) .......................................................... 5

*Touby v. United States*,
500 U.S. 160 (1991) .......................................................... 18, 19, 20

*United States v. Bass*,
404 U.S. 336 (1971) .......................................................... 15

*United States v. Broncheau*,
597 F.2d 1260 (9th Cir. 1979) .......................................................... 22

*United States v. Brown*,
785 F.3d 1337 (9th Cir. 2015) .......................................................... 5

*United States v. Chi Tong Kuok*,
671 F.3d 931 (9th Cir. 2012) .......................................................... 19

*United States v. Covian-Sandoval*,
462 F.3d 1090 (9th Cir. 2006) .......................................................... 10

*United States v. Dhafir*,
461 F.3d 211 (2d Cir. 2006) .......................................................... 20

*United States v. Garcia*,
340 F.3d 1013 (9th Cir. 2003) .......................................................... 3

*United States v. Golb*,
69 F.3d 1417 (9th Cir. 1999) .......................................................... 11

*United States v. Gonzalez-Lopez*,
548 U.S. 140 (2006) .......................................................... 5, 7-8

*United States v. Gurrola-Garcia*,
547 F.2d 1075 (9th Cir. 1976) .......................................... 16, 17, 18, 20

*United States v. Handy*,
761 F.2d 1279 (9th Cir. 1985) .......................................................... 3-4

*United States v. Lee*,
183 F.3d 1029 (9th Cir. 1999) .......................................................... 10

*United States v. Lichtenberg*,
309 Fed. App'x 107 (9th Cir. 2009) .................................................. 23

*United States v. Martinez*,
277 F.3d 517 (4th Cir. 2002) .......................................................... 11

*United States v. Monzon*,
429 F.3d 1268 (9th Cir. 2005) .................................................. *passim*

*United States v. Nichols*,
784 F.3d 666 (10th Cir. 2015) .......................................................... 19

*United States v. O'Hagan*,
92 F.3d 612 (8th Cir. 1996) ............................................................ 23

*United States v. Pena*,
314 F.3d 1152 (9th Cir. 2003) ..................................................... 9, 10

*United States v. Pepe*,
895 F.3d 679 (9th Cir. 2018) .................................................... 16, 22

*United States v. Portillo-Cano*,
192 F.3d 1246 (9th Cir. 1999) ........................................................... 9

*United States v. Quinn*,
401 F. Supp. 2d 80 (D.D.C. 2005) ........................................... 15, 17

*United States v. Rahseparian*,
231 F.3d 1257 (10th Cir. 2000) .................................................. 22-23

*United States v. Rivera Corona*,
618 F.3d 976 (9th Cir. 2010) ............................................................. 5

*United States v. Saavedra-Velazquez*,
578 F.3d 1103 (9th Cir. 2009) .......................................................... 22

*United States v. Santos*,
553 U.S. 507 (2008) ......................................................................... 15

*Wayman v. Southard*,
23 U.S. (10 Wheat.) 1 (1825) ............................................................ 16

**Federal Statutes**

18 U.S.C. § 371 .......... 12, 17, 21

18 U.S.C. § 1956 .......... 2, 11

18 U.S.C. § 3143 .......... 4

22 U.S.C. § 1934 .......... 16, 17, 18

22 U.S.C. § 2278 .......... *passim*

50 U.S.C. § 4610 .......... 14

**Other**

22 C.F.R. § 127.1 .......... 12, 13, 15

Fed. R. Crim. P. 11 .......... 9, 10

Ninth Circuit Rule 9-1.2 .......... 3

U.S. Const. Art. I .......... 15

## INTRODUCTION

Naum Morgovsky respectfully moves for bail pending appeal of his conviction and sentence for conspiracy to export munitions and two related money-laundering charges. The district repeatedly found Morgovsky was neither a flight risk nor danger to the community by clear and convincing evidence. Accordingly, the sole question presented in this motion is whether Morgovsky's appeal presents a substantial question.

It does. First, at a critical stage of the proceedings below, the district court denied Morgovsky's Sixth Amendment right to the counsel of his choice, a structural error. Second, the plea colloquy violated Rule 11 in two ways amounting to reversible plain error. Third, Morgovsky's conviction on the conspiracy count is illegal and unconstitutional because his statute of conviction does not criminalize conspiracy, and the administrative regulation purporting to criminalize conspiracy was promulgated without statutory authority and in violation of the nondelegation doctrine. These questions are fairly debatable and warrant granting bail pending appeal.

## BACKGROUND

Morgovsky was charged with four counts of bank-fraud and identity-theft offenses related to certain real-estate transactions (Counts 1-4). (CR 67 at 3-5.) The same indictment charged him with conspiracy to violate the international traffic in arms regulations, in violation of 22 U.S.C. § 2778[1]

[1] Section 2278 codifies part of the Arms Export Control Act ("AECA").

(Count 9); one count of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (Count 10); and one count of money laundering, in violation of 18 U.S.C. § 1956(a)(2)(A) (Count 11). (CR 67 at 9-11.) The district court granted Morgovsky's motion to sever Counts 1-4 from Counts 9-11. (CR 105, 137.)

Morgovsky later entered an open guilty plea to Counts 9-11. (CR 306.) Counts 1-4 remain pending in the district court, and stayed until the resolution of this appeal. (CR 449 at 66-67.) After his plea but before sentencing on Counts 9-11, Morgovsky's retained counsel moved to withdraw, citing irreconcilable differences and a conflict between counsel and Morgovsky. (CR 333.) After conducting an *in camea* hearing, the district court denied Morgovsky's retained counsel's motion to withdraw, and did not permit Morgovsky to retain new counsel for sentencing. (CR 343.) The district court did briefly continue the sentencing hearing, and ultimately imposed a 108-month sentence. (CR 394.) Morgovsky timely appealed (CR 400), and the Federal Public Defender was later appointed to represent him on appeal and on pending Counts 1-4. (CR 402, 412).

Except for a brief period in custody immediately following his arrest, Morgovsky has been continuously out on bail for the two-and-a-half-year duration of his case, even after his guilty plea and sentencing. (CR 5, 282, 371 at 73-76.) In its finding that Morgovsky had demonstrated by clear and convincing evidence that he was neither a flight risk nor a danger to the community, the district court observed that Morgovsky, who is 69 years

old and suffers from a number of serious health problems, had "been scrupulous in his compliance with the terms of pretrial release for the last two years." (CR 371 at 73-76.)

Morgovsky moved for bail pending appeal. (CR 442.) After conducting a hearing on the motion (CR 449), the district court issued a written order denying bail pending appeal, concluding that Morgovsky had failed to raise a substantial question. (CR 452). The district court did, however, extend Morgovsky's surrender date by one week to January 25, 2019, to permit an automatic stay under Ninth Circuit Rule 9-1.2(e). (CR 445.)

## STANDARD OF REVIEW

This Court reviews de novo the district court's order denying bail pending appeal, and reviews for clear error underlying factual findings. *See United States v. Garcia*, 340 F.3d 1013, 1015 (9th Cir. 2003).

## ARGUMENT

### I. Standard for bail pending appeal

This Court should grant bail pending appeal if the defendant can show (1) by clear and convincing evidence that he is neither a flight risk nor a danger to the community; (2) that the appeal is not for purposes of delay; and (3) that the appeal raises a "substantial question" that is likely to result in reversal, an order for a new trial, or a noncustodial sentence or a

sentence shorter than the anticipated duration of the appeal. *See* 18 U.S.C. § 3143(b)(1); *United States v. Handy*, 761 F.2d 1279, 1281-83 (9th Cir. 1985).

A "substantial question" is one about which reasonable jurists could differ, i.e., one which is "fairly debatable." *See Handy*, 761 F.2d at 1281-83. The defendant does not need to show a likelihood of success on appeal. *See id.* at 1283-84. The term "likely to result in reversal or an order for a new trial" defines the "type of question that must be presented." *Id.* at 1283. An appellant need not establish that he will probably prevail on appeal to qualify for release pending appeal. *Id.* At 1280-81 "[Q]uestions that are novel and not readily answerable" are "fairly debatable." *Id.* at 1281.

## II. Morgovsky is not a flight risk, does not pose a danger to the community, and is not pursuing this appeal for dilatory purposes.

The district court repeatedly found that Morgovsky was neither a flight risk nor a danger to the community, both when it allowed him to remain on bail following his guilty plea and his sentencing. *See* CR 5, 282, 371 at 73-76. The court did not address whether Morgovsky was a flight risk or danger in its order denying bail pending appeal, presumably because it again concluded that he was neither. *See* CR 452. Likewise, there is no indication that Morgovsky is appealing for the purposes of delay, and the district court made no such finding. *See id.* Thus, the sole disputed question presented in this motion is whether Morgovsky's appeal raises a "substantial question."

**III. Morgovsky's appeal will raise multiple substantial questions.**

A. The district court violated Morgovsky's Sixth Amendment right to choice of counsel, a structural error.

The district court committed structural error when it denied Morgovsky retained counsel of his choice for sentencing. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 150 (2006). A non-indigent criminal defendant has a Sixth Amendment right to "be defended by the counsel be believes to be the best." *Id*. at 146. "The right to select counsel of one's choice . . . has been regarded as the root meaning of the constitutional guarantee." *Id*. at 147.

The right to retained counsel of one's choice in this Circuit is absolute "unless a contrary result is compelled by 'purposes inherent in the fair, efficient and orderly administration of justice.'" *United States v. Brown*, 785 F.3d 1337, 1344 (9th Cir. 2015). A defendant may replace retained counsel "'for any reason' [or no reason] subject to only the orderly administration of justice qualification." *Id.* at 1346. The only time conflict between the defendant and his retained counsel "enters the analysis" is if "the court is required to balance the defendant's reason for requesting substitution against the scheduling demands of the court." *United States v. Rivera Corona*, 618 F.3d 976, 981 (9th Cir. 2010). This standard applies equally to a defendant facing sentencing. *See Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

**1. Morgovsky sought to replace his lawyer due to a serious attorney-client conflict at the sentencing stage.**

Two weeks prior to sentencing on Counts 9 through 11, counsel for Morgovsky filed two detailed declarations, two motions and a reply brief seeking to withdraw. *See* CR 333, 333-1, 338, 338-1, 340, 340-1. Counsel indicated he and Morgovsky had "fundamental disagreements" on strategic decisions and that he "c[ould] no longer represent him for any purpose." *See* CR 333. Counsel stressed the conflict was real and was not a manufactured or illusory conflict designed by Morgovsky to manipulate the process. *See* CR 338. He concluded he could not "ethically represent" Morgovsky at the upcoming sentencing hearing. *See* CR 340-1.

Morgovsky then filed a detailed declaration and pro se motion seeking discharge of retained counsel three days before sentencing. *See* CR 341. He expressed complete dissatisfaction with his attorney's sentencing work, both in the PSR process and in the filed memorandum. *Id*. Morgovsky further stated he had located a substitute attorney who was available, conflict-free, licensed, and could start work right away once funds had been raised. *Id*. When the Court did not respond, Morgovsky filed a 127-page supplemental sentencing memorandum pro se on the day of sentencing. *See* CR 438. The Court ultimately ordered the government to respond to one of these pro se arguments, thereby demonstrating that Morgovsky's complaints about his attorney were not frivolous. *See* CR 366 at 69:1-23.

All the evidence before the district court indicated that the attorney-client relationship had been severed beyond repair by the time of sentencing. On October 31, 2018, the day of sentencing, the district court held an *in camera* hearing on the issue. *See* CR 366[2]

**2. The district court abused its discretion by applying the wrong legal standard denying Morgovsky's choice of counsel.**

At the *in camera* hearing, the district court denied Morgovsky substitution of counsel because it found that Morgovsky would not be prejudiced at sentencing if retained counsel remained on his case. *See* CR 366 at 19:6-11. Repeatedly, the district court asked Morgovsky and retained counsel to explain what arguments the district court would miss absent a new lawyer's appointment. *See* CR 366 at 26:15-25, 36:11-23, 37:12-16-17. In this vein, the court concluded that as long as all the appropriate arguments were presented before sentencing, whether by conflicted counsel or Morgovsky himself, then proceeding with sentencing on schedule was essentially a no-harm, no-foul situation. By requiring Morgovsky to demonstrate prejudice in order to change his counsel, the district court erred:

> [T]he Sixth Amendment right to counsel of choice . . . commands, not that a [sentencing] be fair, but that a particular guarantee of fairness be provided—to wit, that the accused be defended by the counsel he believes to be best. . . . In sum, the right at stake here

---

[2] The *in camera* hearing transcript is currently maintained by the district court *ex parte* and under seal. Government counsel was excluded from the hearing. *See* CR 366

> is the right to counsel of choice, not the right to a fair [sentencing]; and that right was violated because the deprivation of counsel was erroneous.  No additional showing of prejudice is required to make the violation "complete."

*See Gonzalez-Lopez*, 548 U.S. at 146.

Importantly, the district court *did not* make any findings at the *in camera* hearing that justified the denial of substitution of counsel to ensure "the fair administration of justice" or meet "the scheduling demands of the court"—the only permissible grounds for denying counsel under this Court's precedent.  At no time did the district court mention its calendar concerns at the *in camera* hearing.  *See* CR 366.

Moreover, to the extent the district court found that the conflict was illusory and solely designed by Morgovsky for manipulative purposes, the district court clearly erred.  *See* CR 366 at 21:24-22:17 31:7-17.  At the *in camera* hearing, both Morgovsky's retained attorney (who has been practicing federal criminal law for nearly 50 years) and his associate repeatedly assured the Court that the conflict was genuine and had commenced well before the October 31, 2018 motion hearing.  *See* CR 366 at 15:18, 17:2, 24:4-15.  Morgovsky also produced and read an email from retained counsel at the hearing showing that *counsel himself* first moved to declare a conflict and withdraw absent any such suggestion from Morgovsky.  *Id*. at 45:8-25.  Retained counsel also agreed that he had failed to make legitimate sentencing arguments Morgovsky wanted, *see id.* at

18:18-19; 20:24-25, and that he may have missed settlement opportunities on Counts 1-4. *See* CR 366 at 57:5; 57:19-23.

In sum, nothing in the exchange between the district court and counsel suggested the conflict between Morgovsky and his attorney was anything but genuine. Because the district court committed structural error in denying Morgovsky choice of counsel, remand is required.

B. Morgovsky's plea colloquy violated Rule 11, amounting to reversible plain error.

Morgovsky's guilty plea to all three offenses violated Rule 11, amounting to reversible plain error requiring that his guilty plea be set aside. *See United States v. Monzon*, 429 F.3d 1268, 1271 (9th Cir. 2005) (stating plain-error standard). First, the district court failed to advise Morgovsky of the nature of the charges to which he was pleading. *See* Fed. R. Crim. P. 11(b)(1)(G). This Court has interpreted Rule 11(b)(1)(G) to require district judges to advise defendants of the elements of each offense, before accepting a guilty plea. *See United States v. Pena*, 314 F.3d 1152, 1156 (9th Cir. 2003); *United States v. Portillo-Cano*, 192 F.3d 1246, 1252 (9th Cir. 1999).

Here, the district court never advised Morgovsky of the elements of any of the three offenses, mentioning only the names of the offenses. *See* CR 306 at 30-31. This is plain error. *See Pena*, 314 F.3d at 1156 ("Merely naming the charge against [defendant] is 'inadequate [because it] did not inform the

defendant of the nature (as opposed to the formal legal description) of the charges against him'" (quoting *United States v. Longoria*, 113 F.3d 975, 977 (9th Cir. 1997))). Under identical circumstances in *Pena*, this Court reversed the defendant's conviction on plain-error review. *See id.* at 1157-58. Further, given the complicated nature of the three different offenses to which Morgovsky was pleading, the error here is even more likely to result in reversal. *Cf. United States v. Covian-Sandoval*, 462 F.3d 1090, 1095 (9th Cir. 2006) (determining that final prong of plain-error standard was not satisfied because of the "straightforward nature of an attempted entry offense").

A second Rule 11 violation compounds the first: the district court failed to determine a valid factual basis for the offenses charged. *See* Fed. R. Crim. P. 11(b)(3). This Court has reversed guilty pleas unsupported by a valid factual basis, even on plain-error review. *See, e.g., Monzon*, 429 F.3d at 1273-74 (reversing guilty plea where "statement of facts did not demonstrate all the elements of the" offense).

Here, the exceptionally short factual basis to the plea failed to establish the elements of each of the three offenses charged. *See* CR 306 at 32-33. First, as to Count 9, an element of a section 2278 violation is that the defendant lacked the requisite license to export the prohibited articles. *See United States v. Lee*, 183 F.3d 1029, 1032 (9th Cir. 1999). Nowhere in the plea colloquy did the district court establish that Morgovsky (or any coconspirator) was unlicensed. Second, as to Count 10, an element of

section 1956(a)(1)(B)(i) is that the defendant knew the underlying acts, which provided the laundered proceeds, were illegal. *See United States v. Golb*, 69 F.3d 1417, 1428 (9th Cir. 1999). Here, nothing in the plea colloquy established that Morgovsky knew that the alleged conspiracy to export certain components was illegal. Third, as to Count 11, section 1956(a)(2)(A) requires proof that the defendant acted with intent to carry out the specified unlawful activity. *See* 18 U.S.C. § 1956(a)(2)(A); *Regalado Cuellar v. United States*, 553 U.S. 550, 561 n.3 (2008). Again, the plea colloquy did not establish this element. Thus, as to all three offenses, the district court failed to determine that every element was supported by a valid factual basis. *See Monzon*, 429 F.3d at 1273-74 (reversing guilty plea on plain-error review where no factual basis existed as to each element).

In sum, the district court committed two serious Rule 11 errors, each of which this Court has independently found to be reversible plain error. Cumulatively, such errors are even more prejudicial. *See United States v. Martinez*, 277 F.3d 517, 532 (4th Cir. 2002) (under cumulative-error doctrine, two Rule 11 errors are more likely to affect defendant's substantial rights). Accordingly, Morgovsky has raised a "fairly debatable" question concerning the validity of his plea.

C. Count 9 failed to state an offense, and Morgovsky's guilty plea therefore lacked a valid factual basis because section 2278 does not criminalize conspiracy.

Count 9 of the superseding indictment charged Morgovsky solely with *conspiracy* to violate 22 U.S.C. § 2778. *See* CR 67 at 9-10. The indictment also cited certain administrative regulations, including 22 C.F.R. § 127.1(a)(4), which was promulgated by an executive agency—the State Department—and which states that it is unlawful to conspire to export certain defense articles. *See* 22 C.F.R. § 127.1(a)(4); 71 FR 20534-01 (2006). In Count 9, the government did not charge Morgovsky under the general federal conspiracy statute, 18 U.S.C. § 371, which carries a five-year statutory maximum sentence (rather than the 20-year maximum sentence that section 2778 carries). *See* CR 67 at 9-10. In turn, Counts 10 and 11—the money laundering charges—are both predicated on the conspiracy charged in Count 9. *See* CR 67 at 10-11.

At Morgovsky's plea hearing, he admitted only to conduct constituting conspiracy. *See* CR 306 at 32-33. Likewise, on Counts 10 and 11, he admitted only to money-laundering conduct that was "designed to conceal the proceeds of the unlawful activity," i.e., the conspiracy. *See id.*

**1. Congress did not criminalize *conspiracy* liability when it promulgated section 2278, and administrative regulations purporting to expand criminal liability under section 2278 for conspiracy are *ultra vires*.**

Although Count 9 charged Morgovsky only with conspiracy to export certain defense articles, the text of section 2278 contains no reference to conspiracy liability. *See* 22 U.S.C. § 2278. Rather, section 2278(c) states that it is a criminal violation not just to violate the text of section 2278, but also to violate "any rule or regulation issued" under 22 U.S.C. §§ 2278 or 2279. *See* 22 U.S.C. § 2278(c). The extent of the President's authority to draft implementing regulations for this criminal statute is set forth in 22 U.S.C. § 2278, subsections (a), (b), (e), (f), (g), (j), and (k). None of those subsections have at any time permitted the President expand a defendant's criminal liability.

The enactment of 22 C.F.R. § 127.1(a)(4) was thus accomplished wholly without statutory authorization; it is accordingly constitutionally invalid. To be clear, the main argument here is not that Congress *lacked* the authority to delegate such power to the Executive branch; the argument is that Congress specifically *declined* to do so when it limited the President's power to enact implementing regulations for specific purposes and failed to create a separate crime of conspiracy to export or import munitions when it enacted section 2278. "There is a big difference between filling a gap left by Congress' silence and rewriting rules that Congress has

affirmatively and specifically enacted." *Mobil Oil Corp v. Higgenbotham*, 436 U.S. 618, 625 (1978).

A brief review of legislative history supports Morgovsky's claim. In drafting section 2278, Congress quite deliberately excluded conspiracy. This has remained true throughout the many revisions of the AECA, including the 1985 revision when Congress simultaneously amended the Export Administration Act ("EAA") to include conspiracy liability, while declining to do so for the AECA. *See* 50 U.S.C. § 4610(b)(1). In 1989, Congress amended the AECA by incorporating certain civil penalties and administrative sanctions, but it again refused to incorporate the EAA's provision for conspiracy liability. "Congressional silence is instructive." *Castro Cortez v. INS*, 239 F.3d 1037, 1052 (9th Cir. 1999).

Moreover, in the securities context, the Supreme Court has found that civil liability cannot be extended to aiders and abettors, absent statutory authorization. *See Central Bank N.A. v. First Interstate Bank*, 511 U.S. 164, 173 (1994) ("With respect, however, to the first issue, the scope of conduct prohibited by § 10(b), the text of the statute controls our decision. . . . We have refused to allow [Rule] 10-b-5 challenges to conduct not prohibited by the statute."). In *In re Glenfed Inc.*, 60 F.3d 591 (9th Cir. 1995), this Court applied the holding of *Central Bank* and concluded that conspiracy liability did not lie under the Securities Act for the same reason. *Id.* at 592. *Central Bank*'s reasoning that the text of Securities Act alone controls the scope of civil liability applies with even greater force in the criminal context, where

defendants have even greater due process protections, including the rule of lenity, under the Fifth Amendment.[3] *See id.*; *see also United States v. Bass*, 404 U.S. 336, 347 (1971) ("[A]mbiguity concerning the ambit of criminal statutes should be resolved in favor of lenity."); *Bell v. Burson*, 402 U.S. 535, 540 (1971) ("[P]rocedures adequate to determine a welfare claim may not suffice to try a felony charge.").

In sum, the executive branch, in promulgating 22 C.F.R. § 127.1(a)(4), created an additional crime of conspiracy to export or import munitions. But it is black letter law that "[t]he definition of the elements of a criminal offense is entrusted to the legislature, particularly in the case of federal crimes, which are solely creatures of statute." *Dixon v. United States*, 548 U.S. 1, 7 (2006). "In a criminal case . . . the law must be written by Congress." *United States v. Santos*, 553 U.S. 507, 523 (2008).

Article I of the Constitution states, "All legislative powers herein granted shall be vested in a Congress of the United States." U.S. Const. art. I, § 1. Article I requires that laws be made according to "a single, finely wrought and exhaustively considered, procedure," including bicameralism and presentment. *INS v. Chadha*, 462 U.S. 919, 951 (1983). The Supreme Court has long has recognized that defining crimes is "strictly and

---

[3] A court relied on the rule of lenity when it held that the International Emergency Economic Powers Act ("IEEPA") did not authorize the executive to criminalize conspiracy solely via an administrative regulation. *See United States v. Quinn*, 401 F. Supp. 2d 80, 96 (D.D.C. 2005).

exclusively legislative." *Wayman v. Southard*, 23 U.S. (10 Wheat.) 1, 42–43 (1825). Because the executive branch has no constitutional authority to legislate crimes, Morgovsky's conviction for Count 9 cannot stand. "The power [of agencies] to act and how they are to act is authoritatively prescribed by Congress, so that when they act improperly, no less than when they act beyond their jurisdiction, what they do is ultra vires." *City of Arlington v. FCC*, 569 U.S. 290, 297 (2013).

The district court erroneously concluded that Morgovsky's statutory and constitutional arguments about Count 9 do not present a substantial questions because they are foreclosed on appeal by *United States v. Gurrola-Garcia*, 547 F.2d 1075 (9th Cir. 1976). *See* CR 452 at 2. This conclusion is incorrect for a number of reasons. First, *Gurrola-Garcia* did not address 22 U.S.C. § 2278 at all, but a now-repealed predecessor statute, 22 U.S.C. § 1934. *Id*. at 1076. "When Congress amends statutes, our decisions that rely on the older versions of the statutes must be re-evaluated in light of the amended statute." *United States v. Pepe*, 895 F.3d 679, 686 (9th Cir. 2018) (quoting *United States v. McNeil*, 362 F.3d 570, 574 (9th Cir. 2004)). Thus, *Gurrola-Garcia* does not bind this Court because congressional amendments to the relevant statutes constitute "intervening authority." *See id.*

Second, *Gurrola-Garcia* addressed a regulation that criminalized *attempt* to export munitions, not *conspiracy* to export munitions. In its holding that Congress intended to delegate its authority to the President to thwart attempts to export and import munitions, the Court looked to specific

legislative history that made it clear that "congressional purpose" in enacting section 1934 was "to thwart and penalize attempts." 547 F.2d at 1077-78 (discussing draft bill incorporated into section 1934 that specifically referenced the criminalization of attempt to export munitions). No such parallel legislative history exists with respect to congressional intent to thwart conspiracy to export munitions under AECA for good reason: Congress had already codified the substantive crime of conspiracy under 18 U.S.C. § 371 at the time AECA was enacted. Nowhere in the legislative history of AECA does Congress indicate an intent to create a new substantive offense of conspiracy to export munitions that both quadrupled the statutory maximum and replaced the general conspiracy statute. *Cf. Quinn*, 401 F. Supp. 2d at 96 (finding no congressional intent to criminalize conspiracy under the IEEPA based on the same rationale).

Third, *Gurrola-Garcia*'s holding was also based on its reasoning that without the regulation criminalizing attempts, the "entire Congressional scheme would be ineffectual" as to munitions imports and exports because there would be no mechanism to prosecute perpetrators at the border. 547 F.2d at 1077. Not so with respect to conspiracy to export, as section 371 criminalizes conspiracies to commit all federal crimes.

Finally, as the district court itself noted, conspiracy and attempt are fundamentally different in that a regulation that criminalizes "attempt" solely adds a mode of conviction to the underlying criminal statute, but does not expand it, while a regulation that criminalizes "conspiracy"

would create a new crime, which is an unconstitutional expansion or modification of that statute. *See* CR 449 at 29 ("THE COURT: And I understand that point. And that sort of gets at why I might have filed the motion."); *see also Gurrola-Garcia*, 574 F.2d at 1077 ("Nevertheless, if 22 C.F.R. § 127.01 extends or modifies section 1934, it is invalid."). Because Morgovsky's appeal presents an entirely different question than the one contemplated by *Gurrola-Garcia*, Morgovsky's argument is certainly not foreclosed and is "fairly debatable."

**2. Alternatively, section 2278 violates the nondelegation doctrine.**

The nondelegation doctrine protects the constitutional separation of powers by limiting Congress's delegation of its legislative powers. *See, e.g., Mistretta v. United States*, 488 U.S. 361, 371-72 (1989). Under the nondelegation doctrine, Congress may delegate legislative power only if Congress has provided an "intelligible principle" for the exercise of the delegated power. *See J.W. Hampton Jr. & Co. v. United States*, 276 U.S. 394, 409 (1928). The Supreme Court has suggested that in the criminal context a higher standard than an "intelligible principle" may govern whether a congressional delegation of the power to define a crime is lawful. *See Touby v. United States*, 500 U.S. 160, 165–66 (1991).

Specifically, the drug statutes at issue in *Touby* gave the Attorney General three criteria to determine whether new substances could be administratively added to a schedule of prohibited drugs. *See* 500 U.S. at

166. Here, whatever standard applies, Congress gave no guidance whatsoever to the executive branch concerning the scope of criminal conduct that could be criminalized by executive fiat. *See* 22 U.S.C. §§ 2278-79. Congress's "delegation" here thus lacked the required intelligible principle. Instead, Congress simply gave the Executive carte blache to define the scope of criminal liability, running contrary to other delegations that have been upheld as constitutional. *Cf. United States v. Nichols*, 784 F.3d 666, 673 (10th Cir. 2015) (Gorsuch, J., dissenting from the denial of rehearing en banc) ("Indeed, distilling *Touby* to its essence, at least three "meaningful" limitations emerge: (1) Congress must set forth a clear and generally applicable rule (unauthorized persons may not possess the drug) that (2) hinges on a factual determination by the Executive (does the drug pose an imminent hazard?) and (3) the statute provides criteria the Executive must employ when making its finding (does the drug in question currently have an accepted medical use?)"). The "delegation" here fails all three *Touby* limitations outlined by then-Judge Gorsuch. *See id.* While Congress may delegate to the Executive the factual question of what defense articles are subject export controls, it may not give the Executive a blank check to determine what actions in relation to those articles is a crime that may result in up to 20 years in prison. *See id.; cf. United States v. Chi Tong Kuok*, 671 F.3d 931, 938-39 (9th Cir. 2012) (upholding delegation to executive to determine munitions list of defense articles whose export is restricted under § 2278).

Notably, the Supreme Court is currently considering a case raising the issue of whether the Sex Offender Registration and Notification Act's delegation to the executive branch (namely, to the Attorney General) the right to define the scope of criminal liability under that Act violates the nondelegation doctrine. *See Gundy v. United States*, 138 S. Ct. 1260, 1261 (2018) (granting certiorari). If our nation's highest court believes the issue of whether another federal criminal statute's delegation of the right to define the scope of criminal liability to the executive branch violates the nondelegation doctrine warrants its review, then surely Morgovsky has demonstrated that his argument on appeal meets the low bar of being "fairly debatable."

The district court brushed aside the nondelegation argument based on this Court's holding in *Gurrola-Garcia*, and deference to the executive in foreign affairs. *See* CR 452 at 3. First, *Gurrola-Garcia* is not controlling because it interpreted a different, now-repealed statute. Second, *Gurrola-Garcia* is not good law on the nondelegation issue, given the intervening 40 years of Supreme Court precedent, especially *Touby* (and possibly *Gundy*). Third, although deference is owed to the executive branch in foreign affairs, it does not obviate the need for an "intelligible principle" in any delegation. *See, e.g., United States v. Dhafir*, 461 F.3d 211, 215 (2d Cir. 2006). Indeed, the district judge stated that if he were representing Morgovsky, he would have filed a motion to dismiss Count 9 for the reasons articulated by Morgovsky, *see* CR 449 at 6 ("I think if I were defense counsel I would have

filed a motion to dismiss the indictment to the extent that it relied on the regulation."), strongly suggesting that this issue is a substantial question and a novel one.

### 3. The standard of review does not make Morgovsky's appeal insubstantial.

Because section 2278 does not include conspiracy liability, Count 9 of the indictment fails to state a crime. A defendant's conviction for conduct that is not prohibited by a criminal statute violates due process. *See, e.g.*, *Fiore v. White*, 531 U.S. 225, 228 (2001). Likewise, the conviction would also have to be reversed because Morgovsky's guilty plea to Count 9, in which he admitted only to conspiracy (*see* CR 306 at 32-33; CR 294 at 2) does not provide a valid factual basis to support his conviction under section 2278. *See Monzon*, 429 F.3d at 1271-74. While the government might have charged Morgovsky with conspiracy under section 371, it opted not to. (Even if the government had pursued a section 371 charge, the statutory maximum sentence would have been only five years, rather than twenty.)

The district court brushes aside these concerns, stating that Morgovsky's arguments are unlikely to prevail under plain-error review. *See* CR 452 at 2. But it is far from clear that plain-error review would apply because Morgovsky's challenges to Count 9 are pure questions of law. The Court has repeatedly held that a defendant may raise a forfeited claim for the first time on appeal if it raises a "pure question of law" and the

government isn't prejudiced.[4] *See, e.g., United States v. Saavedra-Velazquez*, 578 F.3d 1103, 1106 (9th Cir. 2009) (noting that this Court is not limited to plain-error review when presented with a pure question of law for the first time on appeal, and when the opposing party isn't prejudiced). Here, Morgovsky's challenges to Count 9 are just such pure questions of law, and this Court will thus not be limited to plain-error review when considering them. *See id.; see also Pepe*, 895 F.3d at 683, 692 (applying de novo review to statutory-interpretation claim raised for first time on appeal). Further, even applying plain-error review, Morgovsky's argument that section 2278 does not validly criminalize conspiracy would affect his substantial rights, and warrant reversal. *See Fiore*, 531 U.S. at 228.

**4. If this court reverses the conviction on Count 9, Counts 10 and 11 will also be reversed.**

Because the money-laundering charges (Counts 10 and 11) were predicated solely on Morgovsky's admissions to the conspiracy charged in Count 9 (CR 294 at 2), if this Court overturns the conviction on Count 9, the other two counts will fall as well. *See, e.g., United States v. Rahseparian*, 231 F.3d 1257, 1267 (10th Cir. 2000) (reversing money-laundering convictions for which the "specified unlawful activities" the convictions rested on were

[4] A defendant's claim that a count charged in the indictment failed to state an offense is a non-waivable jurisdictional defect that may be considered on appeal notwithstanding the defendant's guilty plea. *See United States v. Broncheau*, 597 F.2d 1260, 1262 n.1 (9th Cir. 1979).

vacated fraud counts, after finding no evidence in the trial record of additional valid unlawful activity to support the money-laundering counts); *United States v. O'Hagan*, 92 F.3d 612 (8th Cir. 1996), *reversed on other grounds*, 521 U.S. 642 (1997). Here, Morgovsky admitted only to *conspiracy* in his plea colloquy and written plea application, and likewise admitted only to engaging in monetary transactions designed to conceal *the conspiracy*. *See* CR 306 at 32-33; CR 294 at 2.

The district court erroneously concluded that Morgovsky's convictions on Counts 10 and 11 would stand, even if he succeeded in challenging his conviction on Count 9. *See* CR 452 at 4-5. The district court based this conclusion on allegations of direct importation of defense articles contained in the indictment and on an offer of proof by the prosecutor—neither of which Morgovsky actually admitted to during the plea hearing. A prosecutor's proffer at a plea colloquy is irrelevant unless the defendant adopts the statements as true. Here, Morgovsky did not. Accordingly, because Morgovsky's plea to Counts 10-11 was solely grounded in his admission that he derived proceeds from an unlawful *conspiracy*, a reversal on Count 9 would necessitate a reversal of Counts 10-11 due to a lack of factual basis supporting those counts. *See United States v. Lichtenberg*, 309 Fed. App'x 107, 109 (9th Cir. 2009); *Monzon*, 429 F.3d at 1271-74.

## CONCLUSION

For the foregoing reasons, this Court should grant Morgovsky bail pending appeal.

Respectfully submitted,

STEVEN G. KALAR
Federal Public Defender
Northern District of California

January 24, 2019

s/Todd M. Borden
TODD M. BORDEN
ELIZABETH M. FALK
Assistant Federal Public Defenders

**EXHIBIT 6**

Case 3:16-cr-00411-VC Document 362 Filed 07/03/18 Page 1 of 67

**Volume 2**

**Pages 1 - 67**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Vince Chhabria, Judge

UNITED STATES OF AMERICA, )
Plaintiff, )
VS. ) **NO. CR 16-00411 VC**
NAUM MORGOVSKY and IRINA MORGOVSKY, )
Defendants. )

San Francisco, California
Tuesday, June 12, 2018

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:
U.S. Department of Justice
United States Attorneys Office,
Tax Division
450 Golden Gate Avenue
Box 36055
San Francisco, CA 94102
(415) 436-7020
(415) 43-7009 (fax)
**BY: COLIN CHRISTOPHER SAMPSON**

For Plaintiff:
U.S. Attorneys Office
Oakland Branch
1301 Clay Street, #340S
Oakland, CA 94612
(510) 637-3918
(510) 637-3724 (fax)
**BY: ERIN A. CORNELL**

Reported By: Lydia Zinn, CSR No. 9223, FCRR, Official Reporter

**APPEARANCES**:

For Plaintiff:

Alex G. Tse
Acting United States Attorney
450 Golden Gate Avenue, 11th Floor
San Francisco, CA 94102-3495
(415) 436-7478
**BY: JOHN HENRY HEMANN**

For Plaintiff:

U.S. Department of Justice
National Security Division
600 E Street, NW
BICN Building, Suite 10606
Washington, DC 20530
**BY: JASON MCCULLOUGH**

For Defendant Naum Morgovsky:

Law Offices of William L. Osterhoudt
135 Belvedere Street
San Francisco, California 94117-3915
(415) 664-4600
(415) 664-4691 (fax)
**BY: WILLIAM L. OSTERHOUDT**
**FRANK S. MOORE**

For Defendant Naum Morgovsky:

The Law Offices of Frank S. Moore
235 Montgomery Street, Suite 854
San Francisco, CA 94104
(415) 292-6091
(415) 292-6694 (fax)
**BY: FRANK S. MOORE**

For Defendant Irina Morgovsky:

Law Offices of Richard Mazer
99 Divisadero Street
San Francisco, CA 94117
(415) 621-4100
(415) 621-4111 (fax)
**BY: RICHARD B. MAZER**

Also Present: Natalie Rezai-Zadeh

**Tuesday - June 12, 2018** **8:02 a.m.**

**P R O C E E D I N G S**

**---000---**

(Proceedings were heard outside the presence of the jury:)

**THE CLERK:** Calling Case Number 16-CR-00411, USA versus Naum Morgovsky. Counsel, please state your appearances for the Record.

**THE COURT:** I think we know who's here. And you can make your appearances when the jury comes in; but can I raise one issue, just before I forget, while it's on my mind? I know you had something to talk to me about, too.

**MR. OSTERHOUDT:** Of course, sir.

**THE COURT:** Just before I forget, on the issue of other-acts evidence, one thing that we did not discuss during the pretrial conference that I want to make sure is on everybody's radar screen is that the Indictment defines the "conspiracy" seemingly somewhat narrowly, in terms of the products involved. Right?

So I just want to make sure. I mean, I sort of left it open in terms of which other acts are -- which acts are other acts, and which acts are intrinsic. And -- but I wanted to make sure it's on everybody's radar that the Government has, in fact, limited the scope of the conspiracy with reference to the items listed in the Indictment. And so any acts that don't involve those -- the devices or equipment listed in the

 Indictment -- would have to be considered other acts. Does that make sense?

**MR. OSTERHOUDT:** (Nods head.)

**MR. MC CULLOUGH:** Understood, Your Honor.

I think one -- one point, just to explain the componentry -- and I think, obviously, subject to any comments Defense has on this, the Image Intensifier Tubes that are identified within the Indictment -- Image Intensifier Tubes are an item inside of a night-vision scope.

**THE COURT:** Okay.

**MR. MC CULLOUGH:** And so if we are discussing about a functioning night-vision scope that's being exported that contains the Image Intensifier Tube that is named in the Indictment, there is -- we will provide evidence that demonstrates that that Image Intensifier Tube, at times, was removed in order to further the scheme.

**THE COURT:** Okay.

**MR. MC CULLOUGH:** Point two. The other items that are identified in the Indictment are Janos lenses. Those Janos lenses are associated with thermal-vision equipment.

So night-vision equipment allows you to see at night.

Thermal-vision equipment is something that you could use during the day in a smoky or foggy environment.

**THE COURT:** Okay.

**MR. MC CULLOUGH:** And so if we're talking about

either night vision or thermal vision, both of those would be considered within the scope of the conspiracy, subject to Your Honor's limitations, as you've explained.

**THE COURT:** Okay. So sounds like we understand each other in that regard.

**MR. MC CULLOUGH:** We do.

**THE COURT:** Okay. And based on what you've just said, it looks like I should tweak the description of the charges slightly from what I have in the preliminary instructions that I've put out last night. Right? I say, "The Government has charged Irina Morgovsky and Naum Morgovsky with conspiring to export certain controlled night-vision items without a license, in violation of the Arms Export Control Act." Should I tweak that somehow?

**MR. MC CULLOUGH:** Your Honor, I think -- I think appropriately could be defined as "night-vision or thermal-vision items" or "night-vision and thermal-vision items."

I think the Defense has also often referred to items as "components"; but I think "items" is the terms that's commonly used.

**THE COURT:** Okay.

**MR. MOORE:** (Nods head.)

**THE COURT:** All right. Okay. That was the issue I wanted to raise. Did you have something?

**MR. OSTERHOUDT:** Oh, very little, Your Honor. I just -- our clients --

**THE COURT:** By the way, hold on.

**MR. OSTERHOUDT:** Yeah.

**THE COURT:** I was going to say I should note for the Record that the defendants are not here. I'm assuming they're waiving their right to be present during this discussion leading up to jury selection?

**MR. OSTERHOUDT:** Yes.

**THE COURT:** Okay. Is that true of --

**MR. MAZER:** Yes. Yes, it is, Your Honor.

**THE COURT:** Thank you.

**MR. OSTERHOUDT:** They're on their way, though. And -- they're on the way. And I think they'll be here before -- you know, before the 8:30 session, but --

**THE COURT:** They'd better be here before 8:30.

**MR. OSTERHOUDT:** Well, I understand.

But there are some things that I want to discuss with them briefly; not to take the Court or jury time, but there are some issues that we need to discuss, I think, that we began doing last evening. And I feel that I would appreciate a brief opportunity to do that when they get here, I think; I mean, as long as they get here before 8:30. A few minutes with the clients would be helpful to us, I think, in moving forward with the jury selection. I'm not trying to be cryptic, but I think

there are things we've got to discuss of importance -- of importance to the proceedings.

**THE COURT:** Okay. And you want that before the jurors -- prospective jurors come in?

**MR. OSTERHOUDT:** I would appreciate it. Yeah.

**THE COURT:** Okay. That's fine.

**MR. OSTERHOUDT:** I'm not going to take a lot of time.

**THE COURT:** That's fine. As long as it doesn't take too long, that's fine.

**MR. OSTERHOUDT:** Thank you. Thank you, Your Honor.

**THE COURT:** Okay. Is there -- let's see. Are there any other cause challenges?

**MR. OSTERHOUDT:** Not for the defendants.

**THE COURT:** Okay. And for the Government?

**MR. MC CULLOUGH:** No, Your Honor.

**THE COURT:** Okay. Is there anything else to discuss regarding jury selection? Any questions from anybody about the process, or anything like that?

**MR. OSTERHOUDT:** No.

**THE COURT:** Sorry.

**MS. CORNELL:** I have a question, Your Honor.

**THE COURT:** Sure.

**MS. CORNELL:** So on the jury questionnaire, where people might have marked it as private, how do I signify to the Court I would like to speak them, in light -- I understand it

would be during a break. Do I just mention it? How would I go about doing that?

**THE COURT:** So usually what I do is I tell people that if there's something they wish to discuss with us in private, with "private" being loosely defined, that we'll provide an opportunity for them, sort of towards the tail end of the process, to do it.

**MS. CORNELL:** Okay.

**THE COURT:** And so, you know, at that point if there's anybody that you would --

And then we'll send people -- you know, we'll send the prospective jurors out for a break. So this will probably be after *voir dire*.

So I think the way we'll do it is they'll come in. I'll do hardships with people. Then we'll have all the remaining prospective jurors introduce themselves briefly; answer a few questions that we'll hand out to them; just, *Who are you? And where do you work? And where do you live?* And stuff.

And then you guys can do your thing for about -- depending on what time it is, I'll probably give you each 45 minutes.

What did I say last time, in terms of --

Did I say?

**MS. CORNELL:** You said the Government 45, and then each defendant 30.

**THE COURT:** Okay. And I'll probably do that, unless

the initial process goes much longer than anticipated.

And then after that process, we'll have a period of time where people can discuss matters privately. And we'll excuse everybody, except for those who want to discuss something privately; and we'll bring those people in, one by one. And at that point you can let us know which -- if there's anybody other than the people who wish to speak privately with us. If there's anybody else who you wish to speak with privately, you can let us know, and we'll hold those people back, too.

Does that sound okay?

**MS. CORNELL:** Okay. Yes. Thank you.

**THE COURT:** Okay. Let me see. How many people do we have on this list?

**THE CLERK:** Fifty-one.

**THE COURT:** Fifty what?

**THE CLERK:** Fifty-one.

**THE COURT:** Fifty-one.

So, you know, I think, you know, after hardships I also may let a few people go towards the end of the list, because it seems to me that we have -- you know, we have a lot more -- we have quite a few more people than we need. So let's say, for example, I let three more people go on hardship. I might let an additional few people go at the end of the list, to avoid wasting their time here, just to let you know; but I'll think about that a little more back in my office; crunch the numbers,

 if you will.

One thing I did yesterday was I tore off the front page of each questionnaire. You might want to do that. Make life easier for you during the selection process.

And with that, I will just come back out.

So the Morgovskys will be here at 8:30?

**MR. OSTERHOUDT:** Yes, sir.

**THE COURT:** And you need some time with them?

**MR. OSTERHOUDT:** Please.

**THE COURT:** So shall I plan on coming back out here at 8:45?

**MR. OSTERHOUDT:** That would be very good.

**THE COURT:** Is that okay?

**MR. OSTERHOUDT:** Yes.

**THE COURT:** So we will plan on bringing the jury down here at 8:45.

And can I ask one question? Kristen, I have this thing called "Attorneys' List" on the bench up here.

**THE CLERK:** Mm-hm.

**THE COURT:** They have the list that the Jury Office refers to as "the Judge's List." Correct? The jurors are in the right order? I'm looking at this list (indicating), and I want to make sure --

**THE CLERK:** That's from yesterday.

**THE COURT:** Okay. Toss that one.

**THE CLERK:** Yes. That should be --

**THE COURT:** They have this list in the randomized order?

**THE CLERK:** Yes, yes.

**THE COURT:** Okay. All right. Okay. I'll be back out at -- Kristen will bring the jury down at 8:45, and I'll be back out shortly after that.

**MR. OSTERHOUDT:** Thank you.

**THE COURT:** If anybody needs me, just let Kristen know.

**THE CLERK:** Court is in recess.

(Recess taken from 8:12 a.m. until 8:51 a.m.)

(Proceedings were heard outside the presence of the jury:)

**THE COURT:** Okay. The jurors were, I guess, on their way down. So what's going on?

**MR. OSTERHOUDT:** Well, what we wanted to tell you is that we've had discussions with the Government, with a view to resolving the matter. And we've talked to Mr. and Mrs. Morgovsky about it. And it's somewhat complex. It's unfortunate that we find ourselves at the 11th hour, but we do. We have such -- an agreement to which they've agreed. And our question is whether it makes sense to impanel a jury under those circumstances.

Obviously, it has to be put down. You know, the Government put time limitations on us, and we are aware of

those. They wanted to have it resolved.

The disposition is different for Mr. Morgovsky than Mrs. Morgovsky.

We think, though, if the matter resolves a potentially lengthy trial, then it's worthwhile. And that's why I brought it to your attention. I don't know if it makes sense to impanel the jury while that's happening.

**MR. MOORE:** With the proviso that the Government doesn't want the jury to be dismissed in any way. So, you know, we understand. We don't want to interrupt the flow if things fall apart, but we are committed to doing the deal that has been proposed.

**THE COURT:** Well, I mean, I guess I have a gut reaction to this, but I'm happy to hear from -- you know, from everybody on it. I guess my gut reaction is that, you know, everything seems a little precarious here, you know, from my standpoint, at least. I mean, you all know better than I do, but I mean, my --

You know, I would not be inclined -- I certainly don't want to keep the prospective jurors waiting up there for too long. And I would also be reluctant to let the prospective jurors go until there's a -- you know.

**MR. MAZER:** Absolutely.

**THE COURT:** And so I sort of tentatively lean towards picking a jury right now, and letting you -- you know, letting

you work on this after we pick a jury; but I'm open to other suggestions if you all have them. I -- you know, that's just my gut reaction.

**MR. MOORE:** Well, the term right now -- the proposed term is we had until 11:00 o'clock to accept. So I don't know exactly what "accepting" will mean for the Government; but if the 11:00 o'clock deadline is material, it needs to be honored for us to get the deal.

**THE COURT:** Mm-hm.

**MR. MOORE:** So unless there's an adjustment, that's how I see it.

**MR. SAMPSON:** I think the Court's view is correct. We do not want to dismiss or delay the jury, but 11:00 is sort of because we want to avoid swearing in the jury, and then having --

**THE COURT:** You want to avoid --

**MR. SAMPSON:** -- a resolution -- jeopardy attaching before there's a resolution.

And so, Your Honor, I think we could be somewhat flexible about that; but you know, we want to proceed ahead. And if the defendants essentially accept, and it's not a written agreement, I want to avoid Rule 11 here, but I don't want to get the Court involved, but --

**THE COURT:** Yeah.

**MR. SAMPSON:** -- I think we should essentially --

**THE COURT:** Right, but surely I can be involved to the extent that it's necessary to allow me to manage the trial, and allow me to effectively and responsibly manage the time of these members of the community who have come in as prospective jurors.

**MR. SAMPSON:** Absolutely.

**THE COURT:** So, I mean, like, how long is it going to take? Like, what needs to happen? I mean, are you envisioning that they would actually enter guilty pleas before we let the prospective jurors go?

**MR. SAMPSON:** Yes.

**MR. MAZER:** Yes.

**THE COURT:** Okay. And so what needs to happen before a guilty pleas are entered?

**MR. MAZER:** We need to spend some time with our clients, Your Honor. We worked for about a half an hour with them before the Court came in, from 8:15 to 8:45. And I think we made substantial progress, but we're not done. And I would estimate that it would not take more than half an hour -- it might take less -- for us to know whether this is going to happen.

And I think that there is a substantial chance that this will happen, and avoid a lengthy and complicated trial. I can't promise it will, but we're having a very intense discussion, and we're going over the issues. There are a

Case 18-10478, 04/11/2020, ID: 11663382, DktEntry: 23-2, Page 154 of 206

number of issues that have to be discussed.

**THE COURT:** Well, you know, I guess I don't really know what choice I have. I mean, the problem with picking the jury -- you know, bringing the jurors down now, and proceeding with jury selection -- is that you need the time to speak. Right? And you can't do that while we're picking a jury.

So, you know, it seems to me that the two options are the deadline needs to change, but if you're avoiding -- if this needs to happen before jeopardy attaches, then changing the deadline to 1:00 o'clock or 2:00 o'clock, or something, it seems to me, doesn't accomplish anything, you know, unless we were to pick the jurors, but not swear them in.

This is a little silly. Like, I don't quite understand why the deadline was 11:00 o'clock, as opposed to 8:00 a.m. this morning or, you know -- or last week.

**MR. SAMPSON:** Of course, Your Honor. Your Honor, there -- these are very late discussions. The Government does not want to be distracted by those discussions as it prepares for trial, in the event that they're not fruitful. And so the Government's always willing to consider a resolution that is efficient. That's why --

**THE COURT:** Why do we have to wait? I mean, why -- what's the problem with guilty pleas being entered after the jury's impaneled? What's the problem with that?

**MR. SAMPSON:** They can be open pleas, Your Honor.

They can be without a deal with the Government, but the Government is not going to bind itself if it's already in trial.

**THE COURT:** But why?

**MR. SAMPSON:** That's -- Your Honor, it's the Government's view that that's the appropriate outcome.

**THE COURT:** Why?

I mean, why didn't you --

I mean, if you're willing to give them a deadline of 11:00 o'clock when we're supposed to be picking a jury at 8:30, then what's the problem of giving them a deadline of 2:00 o'clock, and reaching the same deal three hours later --

**MR. SAMPSON:** I totally agree.

**THE COURT:** -- after the jury's impaneled?

**MR. SAMPSON:** That's perfectly fine, Your Honor. We can pick the jury. There will be breaks during this *voir dire*. The defendants' attorneys can talk to their clients, and we can come back. The jury does not have to be sworn in today. They can come in in the morning, and be sworn in before opening arguments. And if a plea is entered before that happens, then they can be relieved. They can be dismissed.

**THE COURT:** You -- we would pick the jury, but not swear them in?

**MR. SAMPSON:** I believe -- I believe we could swear them in in the morning, give them their instructions, and then

proceed with opening argument.

**THE COURT:** Can I ask you one more time: Why does it matter if the jury is sworn in or not? Like, what's the magic of that?

**MR. SAMPSON:** That's my -- that is the authority that I have. And I want to avoid the shoals of Rule 11 in discussing it with the Court.

**THE COURT:** That's the authority you have from whom?

**MR. SAMPSON:** The Criminal Chief.

**THE COURT:** Okay. I'm going to give you -- I'm going to give you all half an hour. Okay? You have half an hour.

**MR. MAZER:** Thank you, Your Honor.

**THE COURT:** We're in -- if necessary, I will get on the phone with the Criminal Chief to talk to them about this.

**MR. MAZER:** Thank you.

**THE COURT:** Thank you.

**MR. SAMPSON:** And, Your Honor, to be clear --

**THE COURT:** What?

**MR. SAMPSON:** -- the Court's concern is with just the timing of this?

**THE COURT:** Yeah. I'm pissed that we are keeping the jury waiting, and that you are not -- you are telling me that we -- that the offer expired -- has to expire before the jury is sworn in. I don't understand that.

You -- if you could give me a reason, then maybe I won't

be pissed; but can you give me a rational reason why the same deal couldn't be reached at 2:00 p.m., after the jury is sworn in?

**MR. SAMPSON:** I don't think I'm going to give the Court a satisfactory response.

**MR. MOORE:** And just -- this is -- the 11th hour here is not the prosecutor's fault.

We take full responsibility for, you know, the 11th hour, because it's just the way it happened. And so --

**THE COURT:** Okay. Well, that's fine, but I -- you know, I want to hear --

So I'm going to be back in half an hour.

**MR. MAZER:** Thank you.

**THE COURT:** And I want to hear from you a rational reason why the jury can't be sworn in before the deal is taken. That's what I want to hear from you. So I want you to go back and speak with Ms. Valliere, and be ready at 9:30 to explain to me why that is. Okay?

**MR. SAMPSON:** Thank you, Your Honor.

**THE COURT:** Thank you.

**MR. MOORE:** Thank you, Judge.

**THE COURT:** Thank you.

(Recess taken from 9:01 a.m. until 10:00 a.m.)

**THE COURT:** Okay. So I understand we have either plea agreements, or changes of plea in the case? Is that

right?

**MR. OSTERHOUDT:** Yes, Your Honor.

**THE COURT:** Okay. For both defendants?

**MR. OSTERHOUDT:** Yes.

**THE COURT:** Okay. First, before I forget, Mr. Sampson, I want to just say that I apologize. I have my testiest moments when I'm upset about keeping jurors waiting, and not being efficient with the time of members of the community; but when I got back to chambers I thought about it for a moment. And I understand why your Office has a policy of requiring that the offer go away before the jury is impaneled. I get it now. And so I apologize for being testy with you.

**MR. SAMPSON:** Thank you, Your Honor. And I think a better explanation that could have come from me is that we're trying to save the Court's and the jurors' time, as well.

**THE COURT:** Well, actually, that's not what I -- what I was thinking is that, you know, you can't allow defendants to see how the trial is going to go, and then decide whether to accept an offer or not. There has to be -- there has to be an -- so I apologize for --

**MR. SAMPSON:** Yes, sir.

**THE COURT:** So I apologize for being so annoyed with you. Okay. So who -- what's happening?

**MR. MAZER:** Well, we have the agreement (indicating). And I've been reviewing it with my client.

**THE COURT:** Okay.

**MR. MAZER:** We're not quite finished with it. We have a couple questions to ask the prosecutor about. If we could have a minute or two, I think we can straighten them out.

**MR. SAMPSON:** I think we can save some time, Your Honor, because the proposed agreement with Mrs. Morgovsky is dependent on Mr. Morgovsky's successful plea.

**THE COURT:** Okay.

**MR. MAZER:** That --

**MR. SAMPSON:** So we should start with Mr. Morgovsky.

**MR. MAZER:** Yeah.

**MR. SAMPSON:** And John Hemann's happy to talk to Mr. Mazer.

**MR. MAZER:** Okay.

**THE COURT:** What I would propose, actually, if it's okay with you, is -- well, maybe this doesn't make sense, but I was going to suggest if Mrs. Morgovsky needed a little bit more time, we could take a plea from Mr. Morgovsky.

I could go, then, talk to the prospective jurors, and release them.

**MR. MAZER:** Okay.

**THE COURT:** And then we can proceed with Mrs. Morgovsky.

But if you're uncomfortable with that --

**MR. SAMPSON:** I think that if it's signed by the

Defense at the time you go to talk to the jurors, we're fine with that.

**THE COURT:** Okay. All right.

**MR. MAZER:** Let me talk to Mr. Hemann. Okay?

**THE COURT:** What?

**MR. MAZER:** Are you going to take the plea from Mr. Morgovsky now?

**THE COURT:** Yes.

**MR. MAZER:** Then I'm going to talk to Mr. Hemann about -- (indicating).

**THE COURT:** Yes.

(Discussion off the record.)

**THE COURT:** And, Mr. Sampson, is it an open plea from him?

**MR. SAMPSON:** It would be to Nine through Eleven. Yes, Your Honor.

**THE COURT:** Good.

**MR. SAMPSON:** Counts Nine through Eleven, open.

**MR. OSTERHOUDT:** Your Honor, the cases are kind of bound up together, to where the remaining issues -- very few -- that Mr. Mazer is going to talk to Mr. Hemann about have to be resolved, you know, before we go forward with Mr. Morgovsky's plea.

**THE COURT:** Okay.

**MR. OSTERHOUDT:** We'll be ready to do that shortly.

**THE COURT:** Okay. I'll just sit here and wait.

**MR. OSTERHOUDT:** Thank you.

(Pause in proceedings.)

**MR. OSTERHOUDT:** Your Honor, these matters are all resolved, but he's just writing them down. So thank you for your patience.

**THE COURT:** No worries.

(Discussion off the record.)

**MR. MAZER:** Your Honor, Mr. Hemann is making some changes in Irina Morgovsky's Plea Agreement that we discussed.

**THE COURT:** Okay.

**MR. MAZER:** And he's now going to get us a clean Agreement.

**THE COURT:** Okay. And is Mr. Morgovsky's -- Mr. Morgovsky's going to be doing an open plea?

**MR. OSTERHOUDT:** Yes.

**MR. MAZER:** Yes.

**THE COURT:** And so is there an application that's been filled out? You know. We have that. I don't know if it's necessary, but do we have that?

**MR. SAMPSON:** I'm -- it has not. If there is one, I think we can --

**THE COURT:** Would you do it verbally?

**MR. SAMPSON:** -- we can work it through.

**THE COURT:** I'm fine. As long as everybody is

comfortable with just doing it verbally, I'm fine with that.

**MR. SAMPSON:** Yes, sir.

**MR. OSTERHOUDT:** Yes.

**THE COURT:** But I need to be -- you need to give me an explanation of what the maximum --

**MR. SAMPSON:** Mm-hm.

**THE COURT:** You want to do that right -- should we do that now, while we're waiting?

**MR. SAMPSON:** Yes. Let me make sure that I brought that up. It was -- let me make sure my colleague brings it up from my office.

**THE CLERK:** That's going to be tough, for PSR purposes.

**THE COURT:** Shall we make them fill out an application?

**THE CLERK:** I think we need to. I think we really should.

**THE COURT:** Do you want to print out an application for them?

**THE CLERK:** I wouldn't even know where to get it.

**THE COURT:** Kristen is suggesting that it would be better, for purposes of our recordkeeping and the PSR process and everything, if there could be an application for permission to enter a guilty plea. So I don't know where -- it must be on the Court's website somewhere.

**THE CLERK:** I'm trying to get there right now. Criminal forms.

**THE COURT:** And that way, there's a signed writing --

**THE CLERK:** Application --

**THE COURT:** -- acknowledging the maximum penalties, and any minimum penalties, and all that. I think it would be better to do that.

**MR. SAMPSON:** Agreed, Your Honor. And forgive me. I have not had the opportunity to have an open plea, so I wasn't aware of a form.

**THE COURT:** That's all right.

**MR. SAMPSON:** I do a have penalty sheet from the Indictment which could be used in place of it.

**MR. OSTERHOUDT:** The Indictment.

**MR. SAMPSON:** Yeah. So we would just cross that one (indicating) out -- that one out. They're not getting dismissed at this time, but just --

**THE COURT:** Are you printing it out for them?

**THE CLERK:** I am.

(Discussion off the record.)

(Recess taken from 10:10 a.m. until 10:47 a.m.)

(Whereupon a document was tendered to the Court.)

**MR. OSTERHOUDT:** Your Honor, we are ready to proceed.

**THE COURT:** Okay, but I'm -- what I want to do is, once I have signed agreements from both defendants, I want to

go talk to the jurors and release them, and then I'll come back and take the pleas.

Yes. I have Mr. Morgovsky's. I'm just waiting for the go-ahead on Mrs. Morgovsky's Plea Agreement, and then I'll go talk to the jurors.

**MR. OSTERHOUDT:** Oh, okay.

**THE COURT:** Shouldn't take more than five, ten minutes, and then I'll be back.

**MR. OSTERHOUDT:** Fine, Your Honor. Thank you.

(Recess taken from 10:48 a.m. until 10:50 a.m.)

**MR. SAMPSON:** I think we have what we need at this time. I think we have the signed Agreements.

**THE COURT:** Oh. You have the signed Agreements? I'll go talk to the jurors. And I'll be back in about five, ten minutes. Okay?

**MR. SAMPSON:** Thank you for your time.

(Recess taken from 10:50 a.m. until 10:57 a.m.)

**THE COURT:** Okay. So are we ready to begin with Mr. Morgovsky?

**MR. OSTERHOUDT:** Yes, Your Honor.

**MR. SAMPSON:** Yes, sir.

**THE COURT:** So let me ask. So I have this Application for Permission to Enter a Plea of Guilty from Mr. Morgovsky. And I had a clarification question, and it's with respect to the maximum penalties.

First of all, let me just get -- make clear there's -- there is no mandatory minimum prison sentence associated with any of these counts. Is that correct?

**MR. SAMPSON:** With respect to --

**MR. OSTERHOUDT:** Yeah.

**MR. SAMPSON:** -- Counts Nine to Eleven, there's no mandatory minimum.

**THE COURT:** Okay. And you list on here in the application that the maximum prison sentence is 20 years. Is that 20 years per count?

**MR. SAMPSON:** That is correct. It's 20 years per count.

**THE COURT:** Okay. So the maximum prison exposure Mr. Morgovsky is facing as a result of pleading guilty to these three counts is 60 years in prison. Is that correct?

**MR. SAMPSON:** That is correct, Your Honor.

**THE COURT:** Okay. Mr. Osterhoudt, is that consistent with your understanding?

**MR. OSTERHOUDT:** Yes.

**THE COURT:** Okay. And it says here that the maximum fine is a million dollars. I'll ask the same question: Is that a million dollars per count; or a million dollars, total, for the three counts?

**MR. SAMPSON:** So it is $1 million per count. It is $1 million for Count Nine, the ITAR count.

**THE COURT:** Okay.

**MR. SAMPSON:** It is $500,000 for each of Counts Ten and Eleven. I think we wrote the highest number on there; that perhaps it should say 1 million, semicolon, 500.

**THE COURT:** Okay. So just to be clear, for Count Nine the maximum fine is $1 million?

**MR. SAMPSON:** Yes, sir.

**THE COURT:** For Count Ten, the maximum fine is $500,000? And for Count Eleven, the maximum fine is $500,000; for a total maximum fine for the three counts of $2 million. Is that right?

**MR. SAMPSON:** Correct, Your Honor.

**THE COURT:** Mr. Osterhoudt, is that consistent with your understanding?

**MR. OSTERHOUDT:** Yes.

**THE COURT:** Okay. I think that was the only question I had. So we can proceed.

Mr. Morgovsky, I'm sure that your attorney has told you that I have to ask you a series of questions, and you have to answer those questions under oath. So I will ask the courtroom deputy to administer the oath now.

**THE CLERK:** Please raise your right hand.

**NAUM MORGOVSKY**,

called as a defendant for The Court, having been duly sworn, testified as follows:

**DEFENDANT NAUM MORGOVSKY:** Yes.

**THE CLERK:** Thank you.

**EXAMINATION**

**BY THE COURT**

**Q.** Okay. Mr. Morgovsky, now that you're under oath, if you answer any of my questions falsely, the Government can make additional Counts against you for perjury or for making false statements. Do you understand that?

**A.** Yes.

**Q.** Okay. Now, as we go through thee questions, if the process is going too quickly for you or if you don't understand any of my questions, please feel free to ask me to repeat a question. Please feel free to let me know that you don't understand. And please feel free to call "time out," and speak with your lawyer if you need to do so. Okay?

**A.** Okay.

**Q.** This is not a speed test. The only important thing here is that you fully understand everything we discuss here today.

**A.** Yes.

**Q.** Okay? Do you understand?

**A.** Yes.

**Q.** Okay. What is your full name?

**A.** Naum. N-a-u-m. Morgovsky. M-o-r-g-o-v-s-k-y.

**THE COURT:** Thank you. Mr. Osterhoudt, you want to move the microphone a little closer to Mr. Morgovsky? Thank

you.

**Q.** And are you a U.S. citizen?

**A.** Yes.

**Q.** Where were you born?

**A.** Kiev, Ukraine, former U.S.S.R.

**Q.** Okay. And you've been naturalized?

**A.** Yes.

**Q.** Okay. And how old are you?

**A.** I was born in 1949. I guess I'm 68.

**Q.** Okay. How far did you go in school?

**A.** I got an engineering degree, which is -- it's a six-year degree, which is supposed to be an equivalent of master's degree.

**Q.** Okay. And are you currently under the influence of any drug, medication, or alcoholic beverage of any kind that would hinder your ability to understand the proceedings here today?

**A.** No.

**Q.** Okay. Are you fully satisfied with the advice and information you have received from your lawyer in this case?

**A.** Yes.

**Q.** And have you had adequate time to discuss with your lawyer the -- the concept of pleading guilty here today?

**A.** Yes.

**Q.** Okay. You've had an opportunity to review and discuss with your lawyer this Application for Permission to Enter a

Plea of Guilty?

**A.** Yes.

**Q.** Okay. And you understand everything in this application?

**A.** Yes.

**Q.** Nobody has made you any promises or assurances to get you to plead guilty?

**A.** No.

**Q.** Okay. Nobody has threatened you in any way to get you to plead guilty?

**A.** No.

**Q.** And you're pleading guilty of your own free will because you are, in fact, guilty?

**A.** Yes.

**Q.** Okay. Now let's talk about what you're pleading guilty to. Now, according to this application, you are pleading guilty to Counts Nine, Ten, and Eleven in the Indictment. Is that correct?

**A.** Yes.

**Q.** Okay. And Count Nine charges you with a conspiracy to violate the International Traffic in Arms Regulations, in violation of the Arms Export Control Act. Is that correct?

**A.** Yes.

**Q.** Okay. And Count Ten charges you with money laundering. And Count Eleven charges you with money laundering. Do you understand that?

**A.** Yes.

**Q.** Okay. Now, we discussed -- I discussed this earlier with the lawyers, but I will discuss with you again the maximum penalties associated with these counts to which you are pleading guilty. Okay?

**A.** Yes.

**Q.** So for Count Nine, the conspiracy count, the maximum prison sentence is 20 years.

The maximum period of Supervised Release is three years.

There is a mandatory Special Assessment of $100.

And there's a maximum fine of $1 million.

And you would also be required to forfeit any property that you gained in the commission of the crime, or any property that you used in the commission of the crime as alleged in the Indictment.

Do you understand that?

**A.** Yes.

**Q.** Okay. And with respect to Count Ten, again, the maximum prison sentence is 20 years.

The maximum Supervised Release term: Three years.

Mandatory Special Assessment of $100.

A maximum fine of $500,000.

And, again, forfeiture.

Do you understand that?

**A.** Yes.

**Q.** Okay. And then for Count Eleven it's the same as Count Ten: Maximum prison sentence of 20 years.

Maximum Supervised Release term of three years.

Mandatory Special Assessment of $100.

Maximum fine of $500,000.

And forfeiture, as alleged in the Indictment.

You understand that?

**A.** Yes.

**Q.** So the total exposure that you have -- the maximum amount of time you could spend in prison or be sentenced to prison as a result of pleading guilty to those three counts -- is 60 years. Do you understand that?

**A.** Yes.

**Q.** Okay. Now I'm looking at paragraph 5 in this application. And I'm guessing you don't have a copy of the application in front of you.

**A.** I don't have a copy.

**Q.** So I'm going to just go ahead and read you the contents of paragraph 5. Paragraph 5 is the paragraph that provides a factual description of what you did. And I just want to -- I'll just read it to you, and ask you to confirm that that is an accurate description of what you did.

It states here -- you wrote here, *I willfully joined an agreement to export ITAR-controlled night-vision components to Russia, and engaged in international monetary transactions*

*designed to conceal the proceeds of the unlawful activity.*

Does that accurately describe the conduct that you engaged in?

**A.** Yes.

**Q.** Okay. Now, with respect to sentencing, the application that you filled out and signed makes reference to the Sentencing Guidelines, but the Sentencing Guidelines are merely advisory for me. They are not binding on me. Do you understand that?

**A.** Yes.

**Q.** And you've had adequate opportunity to discuss that with your lawyer?

**A.** Yes.

**Q.** Okay. And I have the authority -- whatever the Guideline calculation ends up being, I have the authority to impose a sentence that is more severe than what is called for by the Guidelines, or less severe than what is called for by the Guidelines. Do you understand that?

**A.** Yes.

**Q.** Okay. And even if the Government recommends a particular sentence, I may have the authority to go higher than that. Do you understand that?

**A.** Yes.

**Q.** Okay. And I won't be able to reach my own conclusion about what the appropriate sentence is for this case for you

until I've had an opportunity to review the Presentence Report that will be prepared by the Probation Office, and to review the filings that both sides make in connection with your sentencing hearing. Do you understand that?

**A.** Yes.

**Q.** Okay. And if -- at that -- after your sentencing hearing, when I hand down the sentence, if you are not happy with the sentence I hand down, you cannot withdraw your guilty plea. Do you understand that?

**A.** Yes.

**Q.** You understand that the offenses to which you are pleading guilty are felony offenses?

**A.** Yes.

**Q.** And by pleading guilty to felony offenses, you may be giving up some of your civil rights, such as the right to vote, to hold public office, to serve on a jury, to possess a firearm, and the like. Do you understand that?

**A.** Yes.

**Q.** Okay. And do you understand that by -- by pleading guilty to these counts, you are giving up your right to appeal any pretrial rulings that I have made in this case?

**A.** Yes.

**Q.** Okay. And you're not giving up the right to appeal your sentence; but any pretrial rulings, including my denial of the motion to suppress and my denial of the motion to sever the

defendants -- you're giving up your right to appeal those, and any other pretrial rulings in the case. You understand that?

**A.** Those rulings for severance were not for me, but for my wife.

**Q.** I understand that. And I appreciate your comment. It shows that you do have an understanding of -- a good understanding of these proceedings.

But it does apply to my denial of your motion to suppress.

**A.** Yes.

**Q.** Okay. You do have the right to continue to plead not guilty. Do you understand that?

**A.** Yes.

**Q.** And if you continue to plead not guilty, you have the right to a jury trial. You understand that?

**A.** Yes.

**Q.** And at that trial you would be presumed innocent; and the Government would be required to prove its case beyond a reasonable doubt. Do you understand?

**A.** Yes.

**Q.** You'd have the right to counsel at trial and at every other stage in the proceedings. Do you understand that?

**A.** Yes.

**Q.** You would have the right to testify in your defense. You'd also have the right not to testify. And if you chose not to testify, that could not be used against you at trial. Do

you understand that?

**A.** Yes.

**Q.** Okay. You'd have the right to cross-examine any Government witnesses, and the right to call your own witnesses in your defense. You understand that?

**A.** Yes.

**Q.** And by entering this guilty plea, you're giving up the trial rights I've just described, as well as other rights associated with a criminal trial. Do you understand that?

**A.** Yes.

**THE COURT:** Okay. Is there anything else I should be discussing with Mr. Morgovsky before taking his plea?

**MR. OSTERHOUDT:** (Shakes head from side to side.)

**MR. SAMPSON:** No, Your Honor.

I would note that the paragraph 5 is general. And the Government is prepared to give a proffer of what the Government would prove at trial, had this case proceeded to trial.

**THE COURT:** Why don't you go ahead and do that.

**MR. SAMPSON:** Thank you, Your Honor.

Were this case to proceed to trial, the Government would be able to prove beyond a reasonable doubt the following facts.

Your Honor, Mr. Morgovsky and Mrs. Morgovsky --

And we'll talk about Mrs. Morgovsky in a bit later.

-- used a company --

The name of the company: Hitek International.

Case 3:16-cr-00411-VC Document 306-2 Filed 07/02/18 Page 37 of 67

-- which had previously been in business in the 1990s, to purchase from the night-vision industry over a thousand Image Intensifier Tubes, which are the critical components in the night-vision rifle scope.

Your Honor, Hitek International bought these with the understanding by the sellers that they would not be exported. Mr. Morgovsky and Mrs. Morgovsky signed export statements of understanding, indicating that they would not export.

The Government would prove dozens of shipments to Moscow, Russia, to a company called "Infratech." That is a company that Mr. Morgovsky is associated with in Moscow.

Without going too much into detail, the means involved using numerous shippers -- UPS, FedEx, DHL, as well as freight forwarders -- to forward items to Moscow, Russia, or to people in Europe, which would forward them on to Moscow. They contained general descriptions of the items that were contained, to disguise the true nature of the shipments; that is, the true nature of the controlled components which cannot be exported from the United States without a license.

And they used fake company names, such as "Discount Camera," "Optics Express," other company names like that, along with, you know, mailbox addresses; UPS Store mailbox addresses.

Your Honor, further, the defendants' accounts -- accounts the defendants controlled -- received, over a 10 year period, approximately $9 million in deposits internationally. Many of

these are tied directly to statements employees of Infratech made about how much money would be paid to Mr. Morgovsky.

Further, one of those bank accounts that received deposits from abroad was in the name of an individual named Gary Piper. Gary Piper has been deceased for many decades. And the evidence would show that Mr. Morgovsky used the identity of a Gary Piper as well as the identities of other individuals in furtherance of the conspiracy.

Finally, the evidence would show, had this case proceeded to trial, that Mr. Morgovsky was involved in laundering at least $222,000 of proceeds from this export conspiracy to the United States, using the Gary Piper account as well as another business account.

**THE COURT:** Thank you.

**MR. SAMPSON:** And I would just point out, Your Honor, that I believe the Court discussed forfeiture. Ms. Cornell may address this.

**MS. CORNELL:** I just wanted -- just for the particulars, Your Honor, I would like Mr. Morgovsky to agree that, pursuant to Title 18 of United States Code Section 981(a)(1)(C), 22 United States Code Section 401, and 28 U.S.C. Section 2461(c), that the following three items that were seized at his house were properly involved in the offense alleged in Count Nine, and therefore forfeitable to the U.S.

The first one is one optic lens, size small, Tube Serial

Number 4654898, Tube Type F9815SLG.

The second one is one optic lens, size medium, Tube Serial Number 4656232, Tube Type F9815SLG.

And one optic lens, size large, Tube Serial Number 4732440, Tube Type F9815SLG.

And I'd also ask the defendant to agree that, pursuant to Title 18 United States Code Section 982(a)(1), that there's a forfeiture judgment owed to the United States in the amount of $222,929.61, which represents the property involved in the offenses alleged in Counts Nine and Ten, and therefore is forfeitable.

**BY THE COURT**

**Q.** Okay. Mr. Morgovsky, did you understand that description of the property and proceeds that you would be agreeing to have forfeited?

**A.** I understand. And I would like to say that when they're talking about forfeiture pertaining to Counts Ten and Eleven, I agree to that.

When we are talking about forfeiture of those lenses and whatever devices, it was not part of the Agreement, and I don't believe that those items are in any way connected to alleged criminal activity; and therefore, I don't see any reason why those items would be forfeited.

**THE COURT:** Okay.

**MR. SAMPSON:** There is no agreement, Your Honor.

**BY THE COURT**

**Q.** Okay. So you want to go to trial?

**A.** Pardon me?

**Q.** So you want to go to trial then?

**A.** Are they seeking -- I don't think that they're seeking to forfeit those items in the Indictment.

**MS. CORNELL:** The Court -- the Government did file a Bill of Particulars. I don't have the actual ECF number on this, but we did notify the defendants that the Government was seeking to forfeit the three optic lenses and the -- also the money judgment.

**THE COURT:** Okay. Well, do you want --

I mean, perhaps the answer is to take a time out, and maybe proceed with Mrs. Morgovsky while you discuss this, and work it out?

**MR. SAMPSON:** Mrs. Morgovsky's Plea Agreement is dependent on the successful plea of Mr. Morgovsky, so I don't think it's appropriate to start her until we resolve him.

**THE COURT:** Okay. So can we --

So where is the Bill of Particulars? Point it to me. I'll look it up on the docket.

**MS. CORNELL:** I don't have the ECF number, but I have the --

(Whereupon a document was tendered to the Court.)

**THE COURT:** And is there anything --

So the Agreement in the Application for Permission to Enter a Plea of Guilty is forfeiture as alleged.

So let's start with the Indictment. Where are the forfeiture allegations in the Indictment?

(Pause in proceedings.)

**MS. CORNELL:** All right. I'm looking at the Superseding Indictment with regard to Count Nine.

**MR. MC CULLOUGH:** Page 37.

**THE COURT:** What's the date of this? I may have the -- I may not have the --

**MR. SAMPSON:** No. That's Jury Instructions.

**THE COURT:** What?

**MS. CORNELL:** So the Superseding Indictment -- I apologize -- pursuant to Count --

**THE COURT:** Is this from April 27, or is it a later date?

**MR. SAMPSON:** Yes. That is the Superseding Indictment. Yes.

**MS. CORNELL:** Yes.

**THE COURT:** Okay. Go ahead.

**MS. CORNELL:** Bottom of page 12 starts with paragraph 49.

**THE COURT:** Mm-hm.

**MS. CORNELL:** Upon conviction on Count Nine, alleged that -- the defendants shall forfeit to the U.S. proceeds.

And then what's relevant here is Subsection (b): Any property involved in such offense, including but not limited to defense articles, or other export-controlled items intended to be illegally exported.

And then so that's for Count Nine --

**THE COURT:** Okay.

**MS. CORNELL:** -- which is the only thing that's in dispute right now.

And then the Government did file a Bill of Particulars --

**THE COURT:** Okay.

**MS. CORNELL:** -- where we provided notice to the defendants, in addition to this general language in the Superseding Indictment, that the -- pursuant to the same statutes, the Government would seek to forfeit those three optic lenses.

**THE COURT:** All right. Let me --

**MS. CORNELL:** The calendar --

**THE COURT:** Let me look at the Bill of Particulars. Do you have a rough recollection of when you might have filed it?

**MS. CORNELL:** Possibly June or July.

**THE COURT:** Of 2017?

**MR. OSTERHOUDT:** 2017.

**MS. CORNELL:** 2017.

**THE COURT:** Okay. There's a motion for Bill of

Particulars filed July 11.

**MS. CORNELL:** That was probably defendants'.

**MR. OSTERHOUDT:** It was denied. It was a Defense motion.

**MS. CORNELL:** This is just a -- it's called a "Bill of Particulars." It's basically just a notice.

**THE COURT:** Okay. So I denied the motion for a Bill of Particulars on July 25. So it was sometime after that?

**MS. CORNELL:** Those are -- yeah, but those were -- that -- the defendants' Bill of Particulars was completely unrelated to what the Government filed as a Bill of Particulars.

**THE COURT:** Understood.

(Discussion off the Record.)

**THE CLERK:** This might be it, from February 21, 2018. United States' Bill of Particulars for Forfeiture of Property.

**THE COURT:** Okay. I'm sure that's it, yeah. You said February of 2018?

**THE CLERK:** Yeah. So that is Docket Number 183.

**THE COURT:** Okay. Got it.

(Discussion off the Record.)

**THE CLERK:** Yes, that's it.

**THE COURT:** So I've pulled it up. And, you know, I have to admit that I wasn't paying attention to the serial numbers and the tube types you were rattling off --

**MS. CORNELL:** Yes.

**THE COURT:** -- but I assume that you were rattling them off direct from the Bill of Particulars.

**MS. CORNELL:** Yes, from the document that was just handed to you. I read it directly from there.

**THE COURT:** Okay. Yeah. So just to read it off again, one optic lens, size small, Tube Serial Number 4654898, Tube Type F9815SLG.

One optic lens, size medium, Tube Serial Number 4656232, Tube Type F9815SLG.

And one optic lens, size large, Tube Serial Number 4732440, Tube Type F9815SLG.

Those are the items?

**MR. MC CULLOUGH:** Yes, Your Honor.

**MR. SAMPSON:** Yes.

**THE COURT:** Okay. And so it certainly does seem consistent with the Application for Permission to Enter a Plea of Guilty that the defendant is acknowledging that these items will be forfeited.

Mr. Morgovsky, have you changed your mind?

**DEFENDANT NAUM MORGOVSKY:** Your Honor, at this point I don't understand the implications of me changing or not changing my mind, because it's not included in the application. It's not in the Indictment.

**THE COURT:** It is included in the application,

because the application states, "forfeiture as alleged." And the Government filed a Bill of Particulars, specifying that these three items would be included in the forfeiture; but --

**DEFENDANT NAUM MORGOVSKY:** So --

**THE COURT:** -- if you didn't understand that when you signed the application, or if you believe that the forfeiture of these three items should cause you to not plead guilty, that is your right.

**DEFENDANT NAUM MORGOVSKY:** I understand.

It just --

"As alleged" -- I don't know where that language comes from. If -- I mean, if this is a legitimate language in the application for a plea of guilty.

**THE COURT:** Okay. Do you want to take a time out, and speak with your lawyer about this?

**DEFENDANT NAUM MORGOVSKY:** Um.

**THE COURT:** I mean, my concern now, to be honest, is that I think you might be attempting to manipulate the proceedings here.

**DEFENDANT NAUM MORGOVSKY:** No, no.

**THE COURT:** And so -- but I want you to take whatever time you need to discuss this with your lawyer. And then we're going to come back, and you're either going to plead guilty, or you're going to go to trial.

**DEFENDANT NAUM MORGOVSKY:** I understand.

**THE COURT:** Okay. So I'm going to give you five minutes right now to speak with your lawyer. Okay? And then you will -- I mean, I am going to be sitting here. And I'm going to give you five minutes to speak with your lawyer. And then I'm going to find out from you whether you would like to plead guilty or not. Okay?

**DEFENDANT NAUM MORGOVSKY:** Your Honor, based on your language, I understand that at this point I don't have any choice but to accept that.

**THE COURT:** You have every choice. You have -- you have the absolute right not to accept this, and to refuse to plead guilty, based on your concern that you do not wish to give up these three items; that you do not wish to forfeit these three items. You have the absolute right to do that. And you do not have to plead guilty. And you can go to trial.

And so I'm going to -- we're going to take a five-minute time out right now. And I'm going to have you speak with your lawyer to make sure that you have time to calmly think about this.

And, in fact, I'll leave the bench. And I'll come back in five minutes. And then we'll find out what you would like to do.

**DEFENDANT NAUM MORGOVSKY:** Your Honor, may I explain to you why your understanding that I was trying to manipulate something was not correct?

**THE COURT:** No. It doesn't matter. We can talk about that at sentencing, if you wish.

**DEFENDANT NAUM MORGOVSKY:** Okay.

**THE COURT:** So I will --

I'm sorry?

**MR. MC CULLOUGH:** Your Honor, for the Record, I just want to make sure that there's no misunderstanding as to terminology that the Government is using here. We are talking about the three scopes that were seized from the Avondale residence, as described in the Bill of Particulars. And all of the serial numbers match those scopes. So I just wanted to communicate that to Mr. Morgovsky, to the extent that there is any confusion as to what optic lens might be.

**THE COURT:** Okay. Very good. We'll have --

**DEFENDANT NAUM MORGOVSKY:** And, Your Honor, at this point I don't see any reason to discuss it with my attorney.

**THE COURT:** Okay, but I believe -- but Mr. Morgovsky --

**DEFENDANT NAUM MORGOVSKY:** Yes.

**THE COURT:** I believe that we should take a five-minute time out to make sure that you've had enough time to think about it, and to ask any questions of your lawyer, to make sure that you don't feel unduly pressured to plead guilty, because I want to make very clear that you have the absolute right not to plead guilty in this case. And if these three

items are of significant concern to you, and you do not wish to forfeit those items, you absolutely do not need to plead guilty. And if you had a misunderstanding about what you were agreeing to in terms of forfeiture, it's totally appropriate for you not to plead guilty.

And I want to make sure that you've had adequate time to think about it, and adequate time to discuss it with your counsel. So we will be taking a five-minute break. I will be back in five minutes. And then I will ask you further questions about whether you understand what you are agreeing to forfeit if you wish to proceed. Okay?

**DEFENDANT NAUM MORGOVSKY:** Your Honor --

**THE COURT:** Mr. Morgovsky, we're taking a five-minute time out right now. Okay?

**DEFENDANT NAUM MORGOVSKY:** Okay.

**THE COURT:** Go sit down and talk to your counsel. Okay?

**DEFENDANT NAUM MORGOVSKY:** Okay.

**THE CLERK:** Court is in recess.

(Recess taken from 11:27 a.m. until 11:34 a.m.)

**MR. OSTERHOUDT:** We're ready to proceed, Your Honor.

**THE COURT:** Okay. We're back on the Record. And, Mr. Morgovsky, I'll just remind you that you're under oath.

**BY THE COURT**

**Q.** Let me ask you first: Do you believe that you've had

adequate time to consider this issue about the forfeiture of those three items?

**A.** Yes.

**Q.** Okay. And the -- it sounds like you did not understand when you filled out this Application for Permission to Enter a Plea of Guilty that you would be agreeing to forfeit those three items. Are you now prepared to agree that those three items will be forfeited?

**A.** Yes.

**Q.** Okay. And you've had adequate time to discuss that with your counsel?

**A.** Yes.

**Q.** Okay. And as I've made very clear before the break, you are perfectly entitled not to plead guilty and to go to trial in this case, if those three items are important to you and do not wish to forfeit them. Do you understand that?

**A.** Yes.

**Q.** Okay. And do you continue to wish to enter a plea of guilty?

**A.** Yes.

**THE COURT:** Okay. Anything else that I should be discussing with Mr. Morgovsky?

**MR. SAMPSON:** Not from the Government, Your Honor.

**THE COURT:** Okay. Mr. Osterhoudt?

**MR. OSTERHOUDT:** No, Your Honor.

He -- I just wanted to say by way of explanation that Mr. Morgovsky needed a little more explanation. And I take responsibility for that. And I think he wasn't trying to do anything that was manipulative or disrespectful to the Court. He wanted a little bit further information on the basis for -- we discussed it. And I appreciate Your Honor giving us the opportunity to do so.

**THE COURT:** Okay.

**Q.** So, Mr. Morgovsky, how do you plead to counts Nine, Ten, and Eleven: Guilty, or not guilty?

**A.** Guilty.

**THE COURT:** Okay. I find that Mr. Morgovsky is competent and capable of entering an informed plea; that he's aware of the nature of the charges and the consequences of the plea; and that the guilty plea is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offenses.

I therefore accept the plea, and the defendant is now adjudged guilty of the offenses.

I will go ahead and sign this application, and hand it down to Kristen.

What's today? The 12th?

**THE CLERK:** Yes.

**THE COURT:** And now we should schedule sentencing.

Mr. Morgovsky, I will refer you to our Probation Office

for the preparation of a Presentence Report. The purpose of the Presentence Report is to assist me in determining what the appropriate sentence will be for you. You'll be asked to meet with the Probation Officer. You're entitled to have your attorney there, if you wish. And once the Presentence Report is prepared, you will have an opportunity to object to anything that is in the Presentence Report.

And you will, of course, have an opportunity to file papers with me in connection with your sentencing, as will the Government. And I will consider all of that at your sentencing hearing.

So when should the hearing take place?

**THE CLERK:** September 18 at 10:30.

**THE COURT:** Does that work for everyone?

**MR. SAMPSON:** That's fine for the Government, Your Honor.

**MR. MC CULLOUGH:** Yes, Your Honor.

**THE COURT:** Sentencing will be at September 18. Unless we're in trial, it will be at 10:30 a.m. Right, Kristen?

**THE CLERK:** Yes.

**MR. OSTERHOUDT:** Thank you.

**MR. MC CULLOUGH:** Your Honor, would it be appropriate for me to address monitoring at this point, in advance of sentencing?

**THE COURT:** Sure.

**MR. MC CULLOUGH:** Your Honor, in light of defendant's use of fake identity and fake passport and identification materials, we would ask that the Court at least consider some enhanced monitoring between now and the time of sentencing, to ensure that the defendant will appear at the sentencing. We would advocate for GPS monitoring. That would be the Government's position.

**MR. OSTERHOUDT:** Your Honor, Mr. Morgovsky was on monitoring for a while, and -- quite a while. And Pretrial Services asked that he be removed, because he was absolutely compliant. There was not a single bump, except when caused by the failure of the equipment. Mr. Morgovsky is very responsible. He made appointments with me. We would confirm them with Pretrial. He would come to my office. And it allowed us much more freedom to do that, and assisted us in our preparation, even for what we did today, to be able to have that freedom. So I don't think it's necessary.

And I understand the Government's position.

Respectfully, however, I would ask the Court to allow him to remain as present, unless any problem develops. You know, his passport has been turned in. There hasn't been a whisper of complaint about him at any time.

**THE COURT:** Mr. Morgovsky is attempting to communicate something with you, and I'm happy to allow you to

do that. Go ahead. Tell him whatever you need.

**DEFENDANT NAUM MORGOVSKY:** I just wanted to point out Mr. Osterhoudt that I'm still monitoring.

**MR. OSTERHOUDT:** Yeah. Right.

**DEFENDANT NAUM MORGOVSKY:** And I have a curfew. I'm still monitored.

**MR. OSTERHOUDT:** He's still monitored. I meant that GPS monitoring was no longer required for him. And I think he's fine with what he has.

**THE COURT:** Well, what I'm going to do on that -- I think, you know, the Pretrial folks have spent a lot of time on this. A Magistrate, presumably, has spent a lot of time on this. And I think what I will ask you to do is -- it sounds like the Government is not requesting remand now. And so I will ask the Government. If the Government wishes for the terms of pretrial -- conditions of pretrial release to be altered, you can go to the Magistrate Judge and make that request.

**MR. MC CULLOUGH:** Yes, Your Honor. Thank you.

**THE COURT:** Because the Magistrate and the Pretrial Services Officer are more familiar with the situation than I am.

**MR. OSTERHOUDT:** Thank you.

**MR. MC CULLOUGH:** Thank you, Your Honor.

**THE COURT:** Okay. All right.

So we're done with Mr. Morgovsky. Right?

**MR. OSTERHOUDT:** We are. Thank you, sir.

**THE COURT:** All right. Next. Okay. Now, I understand there is a Plea Agreement in this case?

**MR. SAMPSON:** Yes, Your Honor.

**THE COURT:** I have not seen the Plea Agreement yet. Does anyone want to hand me a copy?

(Whereupon a document was tendered to the Court.)

**MR. MC CULLOUGH:** I'm handing Your Honor the original.

**THE COURT:** That's the original?

**MR. MC CULLOUGH:** Yes.

**THE COURT:** Okay. All right. Give me a moment to take a look at it. If I could ask one more question about Mr. Morgovsky's case, is it the Government's intention at the sentencing hearing to dismiss the remaining counts after Mr. Morgovsky is sentenced?

**MR. SAMPSON:** At this time it is not.

**THE COURT:** It is not. Okay.

And, Mr. Osterhoudt, you were aware of that, as well?

**MR. OSTERHOUDT:** Yes, yes.

**THE COURT:** And you informed your client of that, as well?

**MR. OSTERHOUDT:** Yeah.

**THE COURT:** Okay. Let me read through this.

(Pause in proceedings.)

**THE COURT:** And the Defense has a copy of this Plea Agreement?

**MR. MAZER:** Yes.

**THE COURT:** Okay. In front of you? With you?

**DEFENDANT IRINA MORGOVSKY:** Yes.

**MR. MAZER:** Yeah.

**THE COURT:** Okay. So on page 5 in subparagraph (g), let me just read it, just to make sure we're all on the same page. So you lined out a couple of words. And so what it is now -- what it now reads is, *In furtherance of the activities described above, I did knowingly and willfully signed checks for purchases of night vision and thermal vision described above, and misrepresented the end user in connection with purchases of the night vision and thermal vision described above.*

It looks like there's a typo there, or a typo results from the edits that you made.

So it should -- looks like it should say, *I did knowingly and willfully sign checks.*

Is that right?

**MR. SAMPSON:** Yes, Your Honor.

**MR. MAZER:** That's correct, Your Honor.

**THE COURT:** Okay. So that's just a typo. As long as we all understand that, that's fine.

**MR. MAZER:** Okay.

**THE COURT:** So it should say --

Let me read it again, because as a result of the typo I had --

**MR. MC CULLOUGH:** Your Honor, I think it's the same typo with respect to the tense of "misrepresented."

**MR. SAMPSON:** Or we could just delete the word "did."

**THE COURT:** Yeah. Okay. So if we delete the word "did," it reads, *In furtherance of the activities described above I knowingly and willfully signed checks for purchases of night vision and thermal vision described above, and misrepresented the end user in connection with purchases of the night vision and thermal vision described above.*

Is that correct?

**DEFENDANT IRINA MORGOVSKY:** Yes.

**MR. MAZER:** Yes, Your Honor, it is correct. Yes.

**THE COURT:** That's accurate. Okay.

Okay. Now, and in this -- just to clarify, in this case -- in contrast to Mr. Morgovsky's case, in this case the Government is agreeing to dismiss any open charges after sentencing on this count. Is that right?

**MR. SAMPSON:** Count Six, we will move to dismiss.

**THE COURT:** Count Six.

**MR. SAMPSON:** We do move to dismiss when the plea is entered.

**THE COURT:** When the plea is entered. Oh, okay. The Agreement says at the time of sentencing.

**MR. SAMPSON:** Oh, correct. I'm sorry, Your Honor. That's the proper language. At the time of sentencing we will move to dismiss.

**THE COURT:** Okay. Let me just look at one more thing here. Okay. All right. So that sounds good. I'm ready to proceed. Mrs. Morgovsky, as I think you know, now you need to answer a series of questions, and you need to do so under oath. So I'll ask the courtroom deputy to administer the oath to you now.

**IRINA MORGOVSKY**,

called as a defendant for the The Court, having been duly sworn, testified as follows:

**DEFENDANT IRINA MORGOVSKY:** I do.

**THE CLERK:** Thank you.

**EXAMINATION**

**BY THE COURT**

**Q.** Okay. Now, Mrs. Morgovsky, now that you're under oath, if you answer any of my questions falsely, the Government can bring charges against you for perjury or for making false statements. Do you understand that?

**A.** I do.

**Q.** Okay. And as I told your husband, please feel free at any time to call time out and ask questions of your lawyer; ask me

to repeat a question if you need me to.

**A.** Okay.

**Q.** Or tell me you don't understand if you don't understand. Okay?

**A.** Okay.

**Q.** It's not a speed test. And the only thing that's important is that you understand everything. So there's no penalty for slowing the process down. Okay?

**A.** Thank you.

**Q.** Okay. What is your full name?

**A.** Irina Morgovsky.

**Q.** Are you a U.S. citizen?

**A.** Yes.

**Q.** Where are you born?

**A.** Kiev, Ukraine, former U.S.S.R.

**Q.** And how old are you?

**A.** I'm 66 now. I'll be 67 in a month.

**Q.** And how far did you go in school?

**A.** I have mechanical degree from -- I don't know. It's called "Institute," but it's actually kind of even with university. Six years. And mechanical degree in engineering.

**Q.** And are you currently under the influence of any drug, medication, or alcoholic beverage that would hinder your ability to understand the proceedings here today?

**A.** No. I'm taking some antidepressant, but they're not

Case 18-10428, 05/31/2019, ID: 11317022, DktEntry: 12-2, Page 198 of 206

affect my ability to understand any of the proceedings.

**Q.** Okay. Thank you. Any other medication or --

**A.** No.

**Q.** Okay. Thank you.

**A.** No.

**Q.** Are you fully satisfied with the advice and information you have received from your lawyer in this case?

**A.** Yes.

**Q.** And have you had an opportunity to read and discuss the Plea Agreement before signing it?

**A.** Yes.

**Q.** Okay. And you understand the terms of the Plea Agreement?

**A.** I think so.

**Q.** We'll go over the most important parts of those to make sure. Nobody has made you any promises or assurances that are not in the Agreement, to get you to sign the Agreement?

**A.** No.

**Q.** All right. And nobody has threatened you in any way to get you to accept the Agreement?

**A.** No.

**Q.** And you're pleading guilty of your own free will because you are, in fact, guilty?

**A.** Yes.

**Q.** Okay. Now let's go over some of these most important provisions. Now, the Count you are pleading guilty to is

Count Nine in the Indictment, which charges you with conspiracy to commit a violation of the International Traffic in Arms Regulations, in violation of the Arms Export Control Act, 22 U.S.C. Section 2778. Do you understand that?

**A.** Yes.

**Q.** Okay. And let's talk about the maximum penalties for that Count that you're pleading guilty to.

The maximum prison term is 20 years.

The maximum fine is $1 million.

The maximum period of Supervised Release is three years.

There is a mandatory Special Assessment of $100.

And you will be required to forfeit the property that you acquired or used in the commission of this offense, as described in the Plea Agreement.

Do you understand that?

**A.** Yes.

**Q.** Okay. Now, let's look carefully at paragraphs 1 and 2 of the Plea Agreement.

Paragraph 1 describes the maximum penalties that we just discussed. And it also describes the elements of the offense to which you are pleading guilty.

Paragraph 2 contains a factual narrative description of what you did.

Have you had enough opportunity to go over these two paragraphs carefully with your lawyer before signing the

Agreement?

**A.** Yes.

**Q.** And do those two paragraphs contain an accurate description of what you did?

**A.** Yes.

**Q.** Okay. Now, also in your Plea Agreement there's reference to the Sentencing Guidelines, but as I mentioned to your husband, the Sentencing Guidelines are only advisory for me. They are not binding upon me. Do you understand that?

**A.** Yes. I do.

**Q.** Okay. And I have the authority to impose a sentence that is higher than what is called for -- what is advised by the Guidelines, or lower than what is advised by the Guidelines. Do you understand that?

**A.** Yes.

**Q.** Okay. And even if the Government recommends a particular sentence at your sentencing hearing, I may have the authority to go higher than that. Do you understand that?

**A.** I do.

**Q.** Okay. And I won't be able to reach my own conclusion about the appropriate sentence for you until I have reviewed the Presentence Report and the papers that both sides have filed in connection with your sentencing. Do you understand that?

**A.** Yes, I do.

**Q.** Okay. And if you're not happy with the sentence after I issue it, you are not entitled to withdraw your guilty plea. Do you understand that?

**A.** Yes.

**Q.** Okay. And you understand that the offense to which you are pleading guilty is a felony offense?

**A.** I do.

**Q.** And by pleading guilty to a felony offense, you may be giving up some civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, possess a firearm, and other similar rights. Do you understand that?

**A.** Yes.

**Q.** Okay. And by pleading guilty, you are also giving up your right to appeal all of my pretrial rulings. Do you understand that?

**A.** Yes.

**Q.** And that includes my ruling denying the motion to sever, and my ruling denying the motion to suppress. Do you understand that?

**A.** Yes.

**Q.** And you understand that by pleading guilty, you are also giving up the right to appeal your sentence or otherwise attack the validity of your sentence, other than to argue that you received ineffective assistance of counsel. Do you understand

that?

**A.** Yes.

**Q.** Okay. Now, let's talk about your trial rights. You do have the right to continue to plead not guilty. Do you understand that?

**A.** Yes.

**Q.** And if you continue to plead not guilty, you will have the right to a jury trial. You understand that?

**A.** Yes.

**Q.** And at the jury trial you would be presumed innocent, and the Government would be required to prove its case beyond a reasonable doubt. Do you understand that?

**A.** I do.

**Q.** Okay. And at that trial you'd have the right to counsel. You'd also have the right to counsel at every other stage in the proceeding. Do you understand that?

**A.** Yes.

**Q.** And you'd have a right to testify in your defense at trial. You would also have the right not to testify; and if you chose not to testify, that could not be used against you at trial. Do you understand that?

**A.** Yes.

**Q.** At trial you would also have the right to cross-examine any Government witnesses and the right to call your own witnesses in your defense. Do you understand that?

**A.** Yes.

**Q.** And by entering this guilty plea, you're giving up the trial rights I just described, as well as all other rights associated with a criminal trial. Do you understand that?

**A.** I do.

**Q.** Okay. And I guess let me just ask you one other question about the Plea Agreement. Since there was some confusion with your husband on the issue of forfeiture --

**A.** Mm-hm.

**Q.** -- I want to ask you specifically about that. Now, in paragraph 11 of the Plea Agreement, which is on page 8, it contains a description of the property that you agree to forfeit as part of this Plea Agreement.

**A.** Mm-hm.

**Q.** And it includes the three items that I was discussing with your husband.

**A.** Okay.

**Q.** Did you have sufficient opportunity to review this paragraph carefully with your lawyer?

**A.** I do. I did. I'm sorry.

**Q.** Okay. And does this accurately describe your agreement regarding the property that you agree will be forfeited?

**A.** I'm sorry. I --

**Q.** Let me ask you the question again. Does this paragraph accurately describe the property that you agree must be

forfeited?

**A.** Yes.

**THE COURT:** Okay. Is there anything else I should discuss with Mrs. Morgovsky before taking her plea?

**MR. SAMPSON:** I don't believe so. Just to clarify, in addition to the three scopes, there's the passport in the name of Victoria Ferrara. The Government -- part of the Government's promises in this case, in paragraph 17, is that the Government will not seek at sentencing a sentence above the low end of the applicable Guideline Range.

Thank you.

**THE COURT:** Okay. Thank you. Anything else, Mr. Mazer?

**MR. MAZER:** No, thank you, Your Honor.

**BY THE COURT**

**Q.** Okay. So, Mrs. Morgovsky, how do you plead to this charge: Guilty or not guilty?

**A.** Guilty.

**THE COURT:** Okay. I find that Mrs. Morgovsky is competent and capable of entering an informed plea, and that she's aware ever the nature of the charge and the consequences of the plea; and that the guilty plea is a knowing and voluntary plea supported by an independent basis in fact, containing each of the elements each of the essential elements of the offense. I therefore accept the plea, and

Case 3:16-cr-00411-VC Document 1... Filed 05/17/19 Page 205 of 206

Mrs. Morgovsky is now judged guilty of the offense.

Mrs. Morgovsky, I will refer you to the Probation Office for the preparation of a Presentence Report. As I explained to your husband, the purpose of the Presentence Report is to assist me in determining what the appropriate sentence should be for you. You will be asked to meet with the Probation Officer. You can have your lawyer there if you wish; but in any event, you'll have the right -- you will have the opportunity and the right to object to anything that is contained in the Presentence Report. And you will have the right to submit your own arguments to me in connection with your sentencing hearing.

And so we will schedule the sentencing hearing. I assume it will be on the same day --

**DEFENDANT IRINA MORGOVSKY:** Yes.

**THE COURT:** -- as Mr. Morgovsky. Is that what everybody wants?

**THE CLERK:** Yes.

**THE COURT:** Okay.

**MR. MAZER:** And that date was what, Your Honor?

**DEFENDANT IRINA MORGOVSKY:** September 17, I think.

**THE CLERK:** 18.

**THE COURT:** September 18 at 10:30 --

**MR. MAZER:** Thank you.

**THE COURT:** -- unless we're in trial, in which case

we'll move it to the afternoon.

**MR. MAZER:** Understood.

**THE COURT:** Okay.

**DEFENDANT IRINA MORGOVSKY:** Thank you.

**THE COURT:** So we will see -- unless anybody needs anything beforehand, we will see everyone on September 18 for sentencing.

**MR. MAZER:** Thank you, Your Honor.

**MR. SAMPSON:** Thank you, Your Honor. And I just want to thank the members of the jury pool that came in today and yesterday.

**THE COURT:** All right. Thank you.

(At 11:58 a.m. the proceedings were adjourned.)

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

Lydia Zinn

July 2, 2018

Signature of Court Reporter/Transcriber Date
Lydia Zinn